## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| GARY FRISCH, *et al.*, on behalf of themselves and all those similarly situated,<br><br>      Plaintiffs,<br><br>*v.*<br><br>FCA US LLC,<br><br>      Defendant. | Case No.: 2:24-cv-10546-BRM-KGA<br><br>Hon. Brandy R. McMillion<br><br>Magistrate Judge Kimberly G. Altman |

## <u>MOTION TO DISMISS THE CLASS ACTION COMPLAINT</u>

Defendant FCA US LLC moves to dismiss Plaintiffs' Class Action Complaint under Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state any claim. In support of its motion, FCA US incorporates herein by reference its accompanying Brief in Support.

Pursuant to E.D. Mich. L.R. 7.1(a), on May 16, 2024, FCA US's counsel conferred with Plaintiffs' counsel by telephone about the relief sought in this motion, and Plaintiffs did not consent to that relief.

WHEREFORE, FCA US respectfully requests that the Court grant this motion and dismiss Plaintiffs' Class Action Complaint.

Dated:  May 16, 2024                    Respectfully submitted,

                                        KLEIN THOMAS LEE & FRESARD

                              By:  /s/ Stephen A. D'Aunoy
                                   Stephen A. D'Aunoy (MO/54961)
                                   Scott H. Morgan (MO/61853)
                                   100 N. Broadway, Suite 1600
                                   St. Louis, Missouri  63102
                                   Tel:  (314) 888-2970
                                   stephen.daunoy@kleinthomaslaw.com
                                   scott.morgan@kleinthomaslaw.com

                                   -and-

                                   Fred Fresard (P43694)
                                   Ian Edwards (P82021)
                                   101 W. Big Beaver Road, Suite 1400
                                   Troy, Michigan  48084
                                   Tel:  (248) 509-9270
                                   fred.fresard@kleinthomaslaw.com
                                   ian.edwards@kleinthomaslaw.com

                                   *Counsel for Defendant FCA US LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 16, 2024, the foregoing was electronically filed using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

                                     /s/  Stephen A. D'Aunoy

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

GARY FRISCH, *et al.*, on behalf of themselves and all those similarly situated,

      Plaintiffs,

*v.*

FCA US LLC,

      Defendant.

Case No.: 2:24-cv-10546-BRM-KGA

Hon. Brandy R. McMillion

Magistrate Judge Kimberly G. Altman

---

### FCA US LLC'S BRIEF IN SUPPORT OF ITS
### MOTION TO DISMISS THE CLASS ACTION COMPLAINT

**KLEIN THOMAS LEE & FRESARD**

Fred J. Fresard (P43694)
Ian K. Edwards (P82021)
101 W. Big Beaver Rd., Ste 1400
Troy, Michigan 48084
Tel: (602) 935-8300
fred.fresard@kleinthomaslaw.com
ian.edwards@kleinthomaslaw.com

*-and-*

Stephen A. D'Aunoy (MO/54961)
Scott H. Morgan (MO/61853)
100 N. Broadway, Ste 1600
St. Louis, Missouri 63102
Tel: (314) 888-2970
steve.daunoy@kleinthomaslaw.com
scott.morgan@kleinthomaslaw.com

*Attorneys for Defendant FCA US LLC*

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................1

II.  RELEVANT FACTUAL BACKGROUND ...........................................1

   A.  The Alleged Defect. ........................................................................1

   B.  Plaintiffs' Allegations. ....................................................................2

   C.  The Vehicles' Written Warranties. ..................................................4

   D.  The Pleaded Claims and Proposed Classes. ...................................4

III.  ARGUMENT .......................................................................................5

   A.  The Governing Legal Standard. ......................................................5

   B.  The MMWA Claim (Count I). ........................................................6

   C.  The Implied Warranty Claims (Counts II, VIII, XI, XIV, XVII, XX, XXII).7

      1.  Merchantability...................................................................7

      2.  Manifestation of Defect. .....................................................8

      3.  Pre-Suit Notice...................................................................9

      4.  Privity. ..............................................................................10

   D.  The Fraud-Based Statutory Claims (Counts III, V, VI, VII, X, XIII, XVI, XIX). ..............................................................................10

      1.  Rule 9(b). ..........................................................................11

      2.  Pre-Sale Knowledge...........................................................13

      3.  Duty to Disclose.................................................................18

   E.  The UCL's "Unfair" and "Unlawful" Prongs (Count VI). ............20

   F.  The Unjust Enrichment Claims (Counts IV, IX, XII, XV, XVIII, XXI, XXIII). ……………………………………………………………..22

      1.  The Express Contract. ........................................................22

      2.  Adequate Remedy at Law. ..................................................23

      3.  No Direct Benefit. ..............................................................23

      4.  Not a Standalone Cause of Action......................................24

IV.  CONCLUSION...................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Alban v. BMW of N. Am.*, 2011 WL 900114 (D.N.J. 2011)......................................15

*Altman v. PNC Mortg.*, 850 F.Supp.2d 1057, 1077 (E.D.Cal. 2012) ......................21

*Ambrose v. Gen. Motors LLC*, 2022 WL 3701946 (E.D.Mich. 2022) ....................13

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)...............................................................5

*Baker v. Trans Union LLC*, 2008 WL 2329099 (D.Ariz. 2008)..............................23

*Beck v. FCA US LLC*, 273 F.Supp.3d 735, 753, 759, 762, 763(E.D.Mich. 2017) ...6, 7, 18, 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)...............................................5

*Blackman v. Boston Whaler, Inc.*, 649 F.Supp.3d 142, 149-50 (E.D.N.C. 2023)...10

*Brios v. Wells Fargo Bank*, 737 F.Supp.2d 1018, 1033 (N.D.Cal. 2010) ..............21

*Brown v. Hyundai Motor Am.*, 2019 WL 4126710 (D.N.J. 2019) ..........................18

*Bussian v. DaimlerChrysler Corp.*, 411 F.Supp.2d 614, 623-24 (M.D.N.C. 2006)..8

*Campos v. Polaris, Inc.*, 2024 WL 1816945 (C.D.Cal. 2024)...................................8

*Chapman v. Gen. Motors LLC*, 531 F. Supp.3d 1257, 1300 (E.D.Mich. 2021)......12

*Cohen v. Subaru of America, Inc.*, 2022 WL 721307 (D.N.J. 2022) .......................8

*Cole v. C.R. Bard, Inc.*, 2021 WL 784661 (S.D.Tex. 2021)......................................9

*Conejo v. JPMorgan Chase Bank*, 2011 WL 6149246 (C.D.Cal. 2011)................21

*Droesser v. Ford Motor Co.*, 2023 WL 2746792 (E.D.Mich. 20023) .....................6

*Dzielak v. Whirlpool Corp.*, 26 F.Supp.3d 304, 323 n.10 (D.N.J. 2014) ................9

*Elliott v. Gen. Motors LLC*, 2022 WL 1815494 (E.D.Mich. 2022) ........................17

*Fineman v. Ferragamo USA Inc.*, 672 F. Supp. 3d 1302, 1306-07 (S.D.Fla. 2023).9

*Flores v. FCA US LLC*, 2021 WL 1122216 (E.D.Mich. 2021) ........................ 15, 23

*Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020) ....................6

*Gedalia v. Whole Foods Mkt. Servs., Inc.*, 53 F.Supp.3d 943, 961 (S.D.Tex. 2014) ..................................................................................................24

*Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990 (C.D.Cal. 2020)..22

*Glass v. BMW of N. Am., LLC*, 2011 WL 6887721 (D.N.J. 2011)...........................7

*Gordon v. Home Loan Ctr., LLC*, 2011 WL 1261179 (E.D.Mich. 2011)...............13

*Gregorio v. Ford Motor Co.*, 522 F.Supp.3d 264, 280–81 (E.D.Mich. 2021)........18

*Hall v. Gen. Motors, LLC*, 2020 WL 1285636 (E.D.Mich. 2020) ......... 9, 13, 14, 22

*Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843 (C.D.Cal. 2014) .............19

*Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Mich.*, 2013 WL 2285453 (E.D.Mich. 2013) ...............................................................................................11

*Home Owners Ins. Co. v. ADT LLC*, 109 F.Supp.3d 1000, 1008-09 (E.D.Mich. 2015) ..................................................................................................11

*Inouye v. Adidas Am., Inc.*, 2023 WL 2351654 (M.D.Fla. 2023)...........................10

*Jeong v. Mercedes-Benz USA, LLC*, 2013 WL 11331283 (N.D.Tex. 2013)............8

*Johnson v. FCA US LLC*, 555 F.Supp.3d 488, 507-08 (E.D.Mich. 2021) ..............17

*Kopel v. Kopel*, 229 So.3d 812, 818 (Fla. 2017) ...................................................23

*Larsen v. Nissan N. Am.*, 2009 WL 1766797 (Cal.Ct.App. 2009) ...........................7

*Lisner v. Sparc Grp. LLC*, 2021 WL 6284158 (C.D.Cal. 2021) ............................22

*Loomis v. U.S. Bank Home Mortg.*, 912 F.Supp.2d 848, 856 (D.Ariz. 2012).........19

*Manchester v. Sivantos GmbH*, 2019 WL 3531419 (C.D.Cal. 2019) ....................24

*McCracken v. R.J. Reynolds Tobacco Co.*, 2018 WL 3130402 (E.D.Pa. 2018) .....19

*McKee v. Gen. Motors LLC*, 376 F.Supp.3d 751, 755 (E.D.Mich. 2019)................6

*Mercer v. Jaffe, Snider, Raitt & Heuer, P.C.*, 713 F.Supp.1019, 1026 (W.D.Mich. 1989) ...................................................................................................11

*Merch. One, Inc. v. TLO, Inc.*, 2020 WL 248608 (S.D.Fla. 2020).........................18

*Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) ................................................5

*Miller v. Gen. Motors, LLC*, 2018 WL 2740240 (E.D.Mich. 2018) .......... 13, 16, 23

*Oddo v. Arcoaire Air Conditioning and Heating*, 2017 WL 11631376, 12 (C.D.Cal. 2017) ......................................................................................................8

*O-Factor LLC v. Precision Extraction Corp.*, 2022 WL 580878 (D.Ariz. 2022)...10

*Plastech Engineered Prod., Inc. v. Balous*, 2007 WL 1827297 (E.D.Mich. 2007) 13

*Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 2011 WL 5244936 (E.D.Mich. 2011) .....20

*Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 707 (E.D.Mich. 2020)...................13

*Reid v. Gen. Motors LLC*, 491 F.Supp.3d 268, 275-76 (E.D.Mich. 2020) ..............9

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 255-56 (6th Cir. 2012) ...................................................................................................11

*Roe v. Ford Motor Co.*, 2019 WL 3564589 (E.D.Mich. 2019) ..............................18

*Rosipko v. FCA US, LLC*, 2015 WL 8007649, at (E.D.Mich. 2015) ......................12

*Santa Barbara Smokehouse, Inc. v. Aquachile, Inc.*, 2020 WL 6743592 (C.D.Cal. 2020) ......................................................................................................21

*Schmidt v. Ford Motor Co.*, 972 F.Supp.2d 712, 719 (E.D.Penn. 2013) ........... 9, 10

*Smith v. Gen. Motors LLC,* 988 F.3d 873, 875, 885 (6th Cir. 2021).......... 14, 16, 18

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844-45 (9th Cir. 2020).............21

*Southwood v. Credit Card Sol.*, 2016 WL 8710985 (E.D.N.C. 2016) ....................31

*Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918 (N.D.Cal. 2013) ....................19

*Walton v. Grammer Indus. Inc.*, 2021 WL 4458761 (E.D.Mich. 2021).................17

*Williams v. Tesla, Inc.*, 2022 WL 899847 (N.D.Cal. 2022) ....................................21

*Wilson v. Hewlett-Packard Co*., 668 F.3d 1136, 1145 n.5 (9th Cir. 2012) .............21

*Withers v. BMW of N. Am., LLC*, 2021 WL 4204332 (W.D.N.C. 2021) .................19

*Wozniak v. Ford Motor Co.*, 2019 WL 108845, at (E.D.Mich. 2019) ............. 12, 20

*Zafarana v. Pfizer, Inc.*, 724 F.Supp.2d 545, 560 (E.D.Pa. 2010) .........................24

**ISSUES PRESENTED**

1.    Should the Court dismiss the Magnuson-Moss Warranty Act claims when (i) the claims fail to satisfy the Act's jurisdictional requirements, (ii) Plaintiffs lack standing to assert their claims on a nationwide basis, and (iii) the underlying state law claims fail?

        The Court should respond: "yes."

2.    Should the Court dismiss the implied warranty claims where Plaintiffs have failed to establish that (i) their vehicles are unmerchantable, (ii) the defect Plaintiffs allege has not manifested in their vehicles, (iii) adequate pre-suit notice was given, and (iv) some Plaintiffs lack the necessary privity with FCA US?

         The Court should respond: "yes."

3.    Should the Court dismiss the fraud-based statutory claims when Plaintiffs' averments fall short of showing (i) Rule 9(b)'s specificity; (ii) pre-sale knowledge, or (iii) any duty to disclose?

        The Court should respond: "yes."

4.    Should the Court dismiss the "unfair" and "unlawful" claims the California Plaintiff asserts under California's Unfair Competition Law where, *inter alia*, the averments lack *facts* establishing the requisite "unfair" or "unlawful" conduct?

        The Court should respond: "yes."

5.    Should the Court dismiss Plaintiffs' claims for unjust enrichment because (i) an express contract governs the parties' rights and responsibilities, (ii) Plaintiffs have an adequate remedy at law, (iii) no Plaintiff has shown they conferred a direct benefit on FCA US, and (iv) some states do not recognize "unjust enrichment" as a standalone cause of action?

        The Court should respond: "yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Smith v. Gen. Motors LLC,* 988 F.3d 873, 885 (6th Cir. 2021)

*Beck v. FCA US LLC*, 273 F.Supp.3d 735, 762 (E.D.Mich. 2017)

*Droesser v. Ford Motor Co.*, 2023 WL 2746792, *19 (E.D.Mich. 20023)

*Hall v. Gen. Motors, LLC*, 2020 WL 1285636, *11 (E.D.Mich. 2020)

*Miller v. Gen. Motors, LLC*, 2018 WL 2740240, *13 (E.D.Mich. 2018)

# I. INTRODUCTION

Plaintiffs filed this case after FCA US LLC began voluntarily notifying consumers of a recall implemented to address a potential trend of fires in certain model-year 2021-2023 Jeep Wrangler 4xe vehicles.[1] The National Highway Traffic Safety Administration ("NHTSA") is supervising FCA US's implementation of the free recall remedy for the condition, but Plaintiffs nonetheless filed this nationwide class action in an effort to collect windfall damage awards based on the notion the remedy is not enough. The asserted claims fail for their legal deficiencies, and the Court should dismiss the Complaint.

# II. RELEVANT FACTUAL BACKGROUND

## A. The Alleged Defect.

In May 2023, FCA US opened a formal investigation following two field reports of a fire originating from the high voltage battery in a model-year 2021 Jeep Wrangler 4xe vehicle. ECF #1-6 (PageID.395).[2] Including those, FCA US has received a total of eight reports relating to fire incidents involving the high-voltage battery in a model-year 2021 or 2022 4xe vehicle. *Id.*

---

[1]The Jeep Wrangler 4xe is a type of plug-in hybrid electric vehicle ("PHEV"). *See* Class Action Complaint, ECF #1 ("Complaint" or "Comp.").

[2]*See also* Feb. 22, 2024 Part 573 Safety Recall Report, available at https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V787-9402.PDF.

At the time of each fire incident, the vehicles were parked and turned off, and six were connected to chargers.  ECF #1-2 (PageID.119).  The incidents caused "only vehicle and property damage," *id.*; none involved any accidents or injuries, ECF #1-6 (PageID.396).  On November 16, 2023, FCA US determined through its Vehicle Regulations Committee to conduct a voluntary safety recall of the affected vehicles, and six days later FCA US submitted its Part 573 Safety Recall Report to the NHTSA.  ECF #1-6 (PageID.396).

Under the recall, FCA US advised consumers "to refrain from recharging these vehicles and not to park them inside of buildings or structures, or near other vehicles" until they could take their vehicle to an authorized dealer to have the "Battery Pack Control Module (BPCM) Software Update and BPCM Integrity Procedure" performed.  *See* owner notification letters, attached as Exhs. A and B; *see also* Remedy Instructions and TSB, attached as Exh. C.  The software seeks out certain diagnostic trouble codes and, where detected, directs technicians to replace the battery pack.  *See* Exh. C, p. 1.

## B.    Plaintiffs' Allegations.

Each Plaintiff bases their claims on essentially the same rote averments:  they (i) researched their vehicles' features online, (ii) acquired them for their "hybrid vehicle" benefits and "plug-in functionality," and (iii) are now "concerned about driving, charging, and parking" their vehicles.  *Id.* at ¶¶ 19-20, 23-24, 27-28, 31-32,

35-36, 39-40, 43-44, 47-48, 51-52 (PageID.13-28).   No Plaintiff avers having a vehicle fire.  *See*, *e.g.*, *id.*

*The Arizona Plaintiffs*:  Gary Frisch leased a model-year 2021 Jeep Wrangler 4xe vehicle in May 2021 from an unspecified Phoenix dealership.  *Id.* at ¶ 18 (PageID.13).  Tammy Otto and Robert Stueve purchased the same model and model-year vehicles, also from unspecified dealers, in Flagstaff in October 2021 and Phoenix in November 2023, respectively.  *Id.* at ¶¶ 22, 26 (PageID.15, 17).

*The California Plaintiff*:  Brian Kreb purchased a model-year 2021 Jeep Wrangler 4xe vehicle in September 2021 from an unspecified San Jose dealership. *Id.* at ¶ 30 (PageID.19).

*The Florida Plaintiff*:  Harry Vasquez purchased a model-year 2021 Jeep Wrangler 4xe vehicle in September 2023 from an unspecified Tampa dealership. *Id.* at ¶ 34 (PageID.20).

*The New Jersey Plaintiffs*:  Married couple Jade and Christopher Wadleigh purchased a model-year 2021 Jeep Wrangler 4xe vehicle in July 2021 from an unspecified dealership in an unspecified place.  *Id.* at ¶ 38 (PageID.22).

*The North Carolina Plaintiff*:  David Perrera leased a model-year 2021 Jeep Wrangler 4xe vehicle in December 2021 from an unspecified dealership in an unspecified place.  *Id.* at ¶ 42 (PageID.24).

*The Pennsylvania Plaintiff*:  Dennis Berns purchased a model-year 2021 Jeep Wrangler 4xe vehicle in December 2022 from an unspecified dealership in an unspecified place.  *Id.* at ¶ 46 (PageID.25).

*The Texas Plaintiff*: Jonathan Liscano leased a model-year 2023 Jeep Wrangler 4xe vehicle in April 2023 from an unspecified McAllen dealership.  *Id.* at ¶ 50 (PageID.27).

## C.    The Vehicles' Written Warranties.

When sold new, Plaintiffs' vehicles were covered by a three-year/36,000-mile Basic Limited Warranty and a High Voltage Battery Limited Warranty with no shorter than eight-year/100,000-mile durational limits.  *See* warranty information booklets, attached as Exhs. D (at pp. 7, 11), E (at pp. 7, 11), and F (at pp. 7, 10-11).

## D.    The Pleaded Claims and Proposed Classes.

Plaintiffs assert a claim under the Magnuson-Moss Warranty Act ("MMWA"), ECF #1 (PageID.58), and they also assert claims under their respective states' laws for:

- breach of implied warranty, *id.* at PageID.62, 78, 86, 92, 99, 105, 109;

- statutory consumer protection violations, *id.* at PageID.64, 69, 73, 76, 82, 89, 95, 102;[3] and

---

[3]**Arizona**'s Consumer Fraud Act ("ACFA"); **California**'s Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"); **Florida**'s Unfair and Deceptive Trade Practices Act ("FUDTPA"); **New Jersey**'s Consumer Fraud Act ("NJCFA"); **North Carolina**'s Unfair and Deceptive Trade Practices Act ("NCUDTPA"); and **Pennsylvania**'s Unfair Trade

- unjust enrichment, *id.* at PageID.68, 81, 88, 94, 101, 108, 111.

Plaintiffs purport to bring the MMWA claim for a putative nationwide class consisting of "[a]ll persons or entities who purchased or leased one or more model-year 2021-2023 Jeep Wrangler 4xe vehicles." *Id.* at PageID.53. For their state law claims, Plaintiffs define similar "[a]ll persons or entities who purchased or leased" subclasses for each of their respective states, *i.e.*, Arizona, California, Florida, New Jersey, North Carolina, Pennsylvania, and Texas. *Id.* at PageID.53-54.

## III. ARGUMENT

### A.    The Governing Legal Standard.

To survive a motion to dismiss under Rule 12(b)(6), the complaint must have "enough *facts* to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). The plaintiff's obligation to provide the grounds of their entitlement to relief "*requires* more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added); *see also Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice").

---

Practices and Consumer Protection Law ("UTPCPL"). Plaintiffs do not assert any statutory claim under Texas law.

### a. The MMWA Claim (Count I).

This claim fails for multiple reasons.[4]

*First*, Plaintiffs fail to satisfy the MMWA's jurisdictional requirement of having at least one hundred named plaintiffs in a class action, *see* 15 U.S.C. § 2310(d)(3)(C), and this court lacks jurisdiction over an MMWA class claim without them, *see*, *e.g.*, *Droesser v. Ford Motor Co.*, 2023 WL 2746792, *19 (E.D.Mich. 20023) (citing *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020) and explaining "this Court cannot envision that Congress intended the CAFA to be used to evade or override the MMWA's specific numerosity requirement").

*Second*, Plaintiffs assert a nationwide MMWA claim in Count I, but they do not allege any injury in states other than their own. *See supra*, § II.D. Accordingly, they lack standing to bring this claim on behalf of a putative nationwide class. *See*, *e.g.*, *McKee v. Gen. Motors LLC*, 376 F.Supp.3d 751, 755 (E.D.Mich. 2019).

*Third*, as for Plaintiffs' individual claims under the MMWA, those fail because they directly depend on their underlying state-law warranty claims. *Id.* at 760; *see also*, *e.g.*, *Beck v. FCA US LLC*, 273 F.Supp.3d 735, 762 (E.D.Mich. 2017). Because Plaintiffs' implied warranty claims fail, *see infra*, § III.B, this one does too.

---

[4]*See* Comp., ¶¶ 133-149 (PageID.58-62).

**B.** **The Implied Warranty Claims (Counts II, VIII, XI, XIV, XVII, XX, XXII).**

Plaintiffs have not shown that any viable implied warranty claim exists. The Court should dismiss these Counts.[5]

**1.** **Merchantability.**

Despite Plaintiffs' identical boilerplate allegations of being "concerned about driving, charging, and parking" their vehicles, *see supra*, § II.B, not one of them pleads a single fact to suggest they are unable to use or drive their vehicles. And prolonged use of a vehicle without substantial issue means a plaintiff cannot plead a viable breach of implied warranty claim as a matter of law. *See*, *e.g.*, *Beck*, 273 F.Supp.3d at 759, 762 (claim failed where, despite alleged safety concerns, nothing suggested plaintiff actually stopped driving his vehicle); *Larsen v. Nissan N. Am.*, 2009 WL 1766797, *6 (Cal.Ct.App. 2009) ("Plaintiffs' car operated for four years without apparent problem, easily satisfying any implied warranty that might attach as a matter of law."); *Glass v. BMW of N. Am., LLC*, 2011 WL 6887721, *2, 15 (D.N.J. 2011) (claim failed because, even if vehicle "possess[ed] a dangerous safety defect" and "may not have fulfilled [plaintiff's] expectations," plaintiff drove her vehicle for many years miles without ever alleging it failed to provide minimum

---

[5]*See* Comp., ¶¶ 150-156, 219-232, 263-269, 297-304, 331-339, 366-374, 384-392 (PageID.62-64, 78-81, 86-87, 92-94, 99-100, 105-111).

level of quality); *Bussian v. DaimlerChrysler Corp.*, 411 F.Supp.2d 614, 623-24 (M.D.N.C. 2006) (no claim where plaintiff drove vehicle for 2+ years and never alleged defect caused mechanical problems or accidents, "was ever rendered inoperable by the defect," or he ever "lost faith in his [vehicle] or stopped driving [it]"); *Jeong v. Mercedes-Benz USA, LLC*, 2013 WL 11331283, *1 (N.D.Tex. 2013) (dismissing claim where vehicle was capable of providing transportation); *see also Oddo v. Arcoaire Air Conditioning and Heating*, 2017 WL 11631376, *3-4, 12 (C.D.Cal. 2017) (denying leave to amend implied warranty claims under Arizona, California, and Florida law where products were fit "for their ordinary purpose").

### 2. Manifestation of Defect.

To state an implied warranty claim in California, Florida, North Carolina, Pennsylvania, and Texas, Plaintiffs needed to, but did not, plead that the purported defect manifested, or was substantially certain to manifest, in their vehicles at least within the warranty period. *See*, *e.g.*, *Cohen v. Subaru of America, Inc.*, 2022 WL 721307, *9, 11 (D.N.J. 2022) (dismissing claims under California, Florida, North Carolina, Pennsylvania, and Texas law for lack of manifestation allegations); *see also Campos v. Polaris, Inc.*, 2024 WL 1816945, *3 (C.D.Cal. 2024) ("Plaintiffs fail to state their breach of implied warranty claims because *they did not allege that the potential clutch or fuel leak defects actually manifested* in their vehicles. *Nor is it reasonable to infer, as Plaintiffs contend, that their vehicles actually manifested the*

*defects based on the 'Stop Ride' notices alone*.") (emphasis added); *Hall v. Gen. Motors LLC*, 2020 WL 1285636, *11 (E.D.Mich. 2020) ("Because Plaintiffs' implied warranties expired before they sought service for their vehicles, they cannot state a viable breach of implied warranty claim").

### 3.    Pre-Suit Notice.

Dismissal of Counts X, XIII, XX, and XXII is appropriate for the additional reason that the Florida Plaintiff (Vasquez), the New Jersey Plaintiffs (the Wadleighs), the Pennsylvania Plaintiff (Berns), and the Texas Plaintiff (Liscano) failed to provide adequate pre-suit notice.  *See*, *e.g.*, *Fineman v. Ferragamo USA Inc.*, 672 F. Supp. 3d 1302, 1306-07 (S.D.Fla. 2023); *Dzielak v. Whirlpool Corp.*, 26 F.Supp.3d 304, 323 n.10 (D.N.J. 2014); *Schmidt v. Ford Motor Co.*, 972 F.Supp.2d 712, 719 (E.D.Penn. 2013); *Cole v. C.R. Bard, Inc.*, 2021 WL 784661, *5 (S.D.Tex. 2021).  Plaintiffs allege sending "letters from [their] counsel," Comp., ¶¶ 338, 373, 391 (PageID.100, 107, 110), but the only letter sent is dated February 26, 2024, *see* Exh. G, and by March 4, 2024 they had filed their lawsuit.

Not only did the timing of their letters not provide FCA US with any meaningful opportunity to avoid litigation, but Plaintiffs provided absolutely no information about their claims for FCA US to investigate even if Plaintiffs had given it the chance.  *See*, *e.g.*, *Reid v. Gen. Motors LLC*, 491 F.Supp.3d 268, 275-76 (E.D.Mich. 2020) ("by failing to provide adequate notice, Plaintiff deprived GM of

the opportunity to cure the non-conformance, investigate the claim, or commence settlement negotiations prior to litigation") (emphasis in original); *Schmidt*, 972 F.Supp.2d at 719 (purpose of notice "is to allow the seller an opportunity to resolve the dispute regarding an alleged breach before the buyer initiates a lawsuit").  Given the letters' timing and their (lack of substantive) content, there was never any opportunity for, and obviously no intent to provide, a chance to avoid litigation as the pre-suit notice requirements contemplate.

### 4.  Privity.

Counts II, XI, and XVII may be dismissed for the additional reason that the Arizona Plaintiffs (Frisch, Otto and Stueve), the Florida Plaintiff (Vasquez), and the North Carolina Plaintiff (Perrera) lack privity with FCA US.  *See*, *e.g.*, *O-Factor LLC v. Precision Extraction Corp.*, 2022 WL 580878, *5 (D.Ariz. 2022); *Inouye v. Adidas Am., Inc.*, 2023 WL 2351654, *7 (M.D.Fla. 2023); *Blackman v. Boston Whaler, Inc.*, 649 F.Supp.3d 142, 149-50 (E.D.N.C. 2023).

### C.  The Fraud-Based Statutory Claims (Counts III, V, VI, VII, X, XIII, XVI, XIX).

Plaintiffs assert fraud-based claims under their states' consumer protection statutes.[6]  Each of them is based on essentially identical generic averments of

---

[6]*See* Comp., ¶¶ 157-178, 187-218, 242-262, 279-296, 314-330, 349-365 (PageID.64-78, 82-86, 89-92, 95-98, 102-105).

unspecified misrepresentations and omissions concerning the defect they allege, and they all fail.

### 1.     Rule 9(b).

To succeed on their fraud-based claims, Plaintiffs must plead ***factual*** allegations detailing the alleged fraudulent statements and identifying the who, what, when, where, why, and how for each.  *See*, *e.g.*, *Home Owners Ins. Co. v. ADT LLC*, 109 F.Supp.3d 1000, 1008-09 (E.D.Mich. 2015).  Rule 9(b) applies equally to the alleged omission-based claims and requires allegations that "detail the omissions made, state the person responsible for the failure to speak, provide the context in which the omissions were made, and explain how the omissions deceived [them]." *Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Mich.*, 2013 WL 2285453, *28 (E.D.Mich. 2013); *see also Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 255-56 (6th Cir. 2012).

In a class action, the individual named plaintiffs' claims must *each* satisfy Rule 9(b) independently.   *Mercer v. Jaffe, Snider, Raitt & Heuer, P.C.*, 713 F.Supp.1019, 1026 (W.D.Mich. 1989) (complaint does "not contain a significant portion of the who, what, when, and where *of each individual plaintiff's alleged defrauding* by ... defendants") (emphasis added).  Plaintiffs' rote allegations do not come close to meeting Rule 9(b)'s specificity requirement.   Comp., ¶¶ 18-56 (PgID.13-29).

11

Absent from the Complaint is any allegation as to what any Plaintiff read, saw, or heard during their purchase experience; who communicated it; when it was communicated; and how it affected their purchase decision. *Id.* Except for a few brief excerpts from marketing brochures, *id.* at ¶¶ 61-64, 66 (PageID.31-35)—which no specific Plaintiff claims to have seen—there are no allegations at all. *Id.* at ¶¶ 18-56 (PgID.13-29).

Nor does the Complaint contain any factual allegations establishing the elements of reliance or causation. *See*, *e.g.*, *Chapman v. Gen. Motors LLC*, 531 F. Supp.3d 1257, 1300 (E.D.Mich. 2021) ("Although each states' consumer protection statutes are different, the Court can resolve this claim because they all at a minimum require deceptive conduct, reliance, and causation to be pled with the same level of particularity required by Fed. R. Civ. P. 9(b).").

The omission-based claims fare no better. Plaintiffs plead ***no*** facts at all as to when and where the purportedly omitted information should (or could) have been revealed such that they would have seen or heard it, the persons responsible for the failure to disclose, or the context of the omissions. Comp., ¶¶ 18-56 (PgID.13-29). This is fatal. Indeed, courts in this District consistently reject vague and conclusory allegations like those Plaintiffs make for failing to satisfy Rule 9(b)'s requirements. *See Wozniak v. Ford Motor Co.*, 2019 WL 108845, at *3 (E.D.Mich. 2019); *Rosipko*

*v. FCA US*, *LLC*, 2015 WL 8007649, at *3 (E.D.Mich. 2015); *Gordon v. Home Loan Ctr., LLC*, 2011 WL 1261179, *10 (E.D.Mich. 2011).

### 2.   Pre-Sale Knowledge.

Fraud claims require ***factual*** allegations showing the defendant had knowledge of the alleged defect ***before*** the plaintiff's purchase. *See Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 707 (E.D.Mich. 2020) (analyzing the issue under the laws of California, Florida, New Jersey, North Carolina, Pennsylvania, and Texas); *see also Ambrose v. Gen. Motors LLC*, 2022 WL 3701946, at *19 (E.D.Mich. 2022); *Hall*, 2020 WL 1285636 at *3.

"[W]hile knowledge may be alleged 'generally' under rule 9(b)," this "does not give Plaintiffs license to evade the less rigid—though still operative—strictures of Rule 8." *Miller v. Gen. Motors, LLC*, 2018 WL 2740240, *13 (E.D.Mich. 2018) (internal marks omitted).  Here, Plaintiffs allege, "[o]n information and belief," that "FCA knew or should have known of about the Fire Defect before it sold the Class Vehicles and certainly long before it disclosed the problem."  Comp., ¶ 86 (PageID.42); *see also*, *e.g.*, *id.* at ¶¶ 74, 102, 107, 109 (PageID.38-39, 48-50).  But "fraud allegations should not be based upon information and belief, except where the relevant facts lie exclusively within knowledge and control of the opposing party."  *Plastech Engineered Prod., Inc. v. Balous*, 2007 WL 1827297, *3 (E.D.Mich. 2007); *see also Smith v. Gen. Motors LLC,* 988 F.3d 873, 885 (6th Cir.

13

2021) ("[p]laintiffs cannot base claims of fraud on speculation and conclusory allegations.").

While Plaintiffs aver FCA US had pre-sale knowledge from things like supplier recalls, third-party studies, third-party websites, and other vehicle manufacturers' experiences, *see*, *e.g.*, Comp., ¶¶ 74, 86 (PageID.38-39, 42-43 ), that is not information within FCA US's exclusive control.   And FCA US's only connection to that supposed information is Plaintiffs' *wholly unsupported speculation* that it exists (there are no facts showing it does) and FCA US knew about it (there are no facts showing it did).

In any event, the relevant question is whether FCA US *knew* of the purported defect at *the time of Plaintiffs' respective purchases*, and Plaintiffs allege the defect is related to "thermal runaway" in battery cells.   Comp., ¶¶ 71-72, 92 (PageID.37-38, 45).   Thus, to adequately plead pre-sale knowledge, Plaintiffs would have to show FCA US *knew* the vehicles had a "thermal runaway" defect prior to selling them.   *Hall,* 2020 WL 1285636 at *4, 7-8 (finding "allegations...too vague and pleaded at too high a level of generality to support a reasonable inference that GM had pre-sale knowledge" where GM was alleged to be made aware of some defect but not the specific defect at issue).   And an even-higher knowledge standard applies to the New Jersey Plaintiffs' claims in Count XIII, which require *facts* showing

14

FCA US knew *"with certainty"* that *their* vehicle would fail. *See*, *e.g.*, *Alban v. BMW of N. Am.*, 2011 WL 900114, *10 (D.N.J. 2011) (emphasis added).

Despite the rank speculation, Plaintiffs effectively concede FCA US did not have knowledge of a specific "thermal runaway" defect when they acknowledge that FCA US's investigation into the root cause of the fires "is unknown" and only that the fires appear "connected" to the battery packs in some unspecified way. Comp., ¶¶ 3, 70 (PageID.8, 36). It logically follows that FCA US does not, and at the time of sale did not, have knowledge of any specific defect, "thermal runaway" or otherwise. And the mere existence of "thermal runaway" as a potential phenomenon does not in itself show that FCA US knew of its occurrence in Plaintiffs' vehicles. *See*, *e.g.*, *Flores v. FCA US LLC*, 2021 WL 1122216, *22 (E.D.Mich. 2021) ("If such allegations were sufficient, every plaintiff alleging a product to be defective could show pre-sale knowledge of a defect simply by criticizing the design of the product as being obviously defective.").

Furthermore, Plaintiffs wholly fail in their attempt to suggest pre-sale knowledge based on supposed "industry" knowledge, testing, and consumer complaints:

*Third-Party "Industry" Knowledge*: Plaintiffs point to a purported set of "well-documented risks of spontaneous combustion" inherent to lithium-ion batteries, Comp., ¶¶ 74, 78-107 (PageID.38-49), and thereafter concluded, "[o]n

information and belief," that these issues "were known" to FCA US and that even so FCA US "skimped on available protection measures," *id.* at ¶¶ 86, 102, 141 (PageID.42, 48, 59).

But such allegations of generalized industry knowledge do not suffice as a matter of law to show knowledge of a specific defect, particularly where there are no *facts* showing when or how FCA US came to know of it. *Smith,* 988 F.3d at 875, 885 (affirming dismissal for insufficient knowledge allegations where knowledge predicated, in part, "on information and beliefs about automobile industry standards" because "evidence showing the requisite knowledge for fraud cannot escape a motion to dismiss by resting on information and belief without supporting facts").

Plaintiffs also point to supposedly "similar fire issues in BMW and Ford-manufactured vehicles," Comp., ¶ 86 (PageID.42-43), but aside from saying those vehicles also used "Samsung batteries" Plaintiffs provide *no* detail to suggest the origination or circumstances of those fires have any bearing on the defect they allege here. This is deficient too. *See*, *e.g.*, *Miller*, 2018 WL 2740240 at *13 ("The connection between GM's knowledge of a safety defect and various recalls by different auto manufacturers of struts from the 'same supplier' used by GM is tenuous at best, and Plaintiff makes no attempt to bridge the gap between those recalls and GM's alleged knowledge of a safety defect[.]").

*Generic Pre-Sale "Testing"*:  Plaintiffs aver, "[o]n information and belief," that "any adequate testing of the [subject vehicles] would have revealed the Lithium-ion batteries' propensity to spontaneously combust as the result of runaway propagation" and that "[e]ither FCA followed these standards and testing protocols and discovered the risk, or it failed to follow these protocols."  Comp., ¶ 107 (PageID.49).  But even if "*would have*" is the applicable standard (it is not), vague and generic pre-suit testing allegations like these are insufficient to show pre- sale knowledge.  *See*, *e.g.*, *Elliott v. Gen. Motors LLC*, 2022 WL 1815494, *5 (E.D.Mich. 2022) ("Plaintiff has alleged no facts regarding the outcome of testing and/or data that would raise an inference that [the manufacturer] knew of the defect before Plaintiff purchased his vehicle."); *Walton v. Grammer Indus. Inc.*, 2021 WL 4458761, *6 (E.D.Mich. 2021) ("allegations that a manufacturer knew or should have known about a defect based on pre-production testing … are generally insufficient to support an inference that the defendant knew about a defect at the time it sold the car") (quotations omitted); *see also Johnson v. FCA US LLC*, 555 F.Supp.3d 488, 507-08 (E.D.Mich. 2021).

<u>Consumer Complaints</u>:  Plaintiffs also rely on the notion that "consumer complaints [were] lodged with NHTSA and elsewhere online" or "with FCA directly," Comp., ¶ ¶ 86, 109 (PageID.42-43, 50), but Plaintiffs do not identify even one such complaint, whether made *before* their vehicle purchases *or* after.  That is

an entirely insufficient basis upon which to suggest pre-sale knowledge.  *See*, *e.g.*,

*Smith*, 988 F.3d at 885-86 (allegations of consumer complaints "made both online

and directly to Ford, did not show Ford's knowledge of a defect in its cars"); *see*

*also Gregorio v. Ford Motor Co.*, 522 F.Supp.3d 264, 280–81 (E.D.Mich. 2021);

*Roe v. Ford Motor Co.*, 2019 WL 3564589, *6 (E.D.Mich. 2019); *Beck*, 273

F.Supp.3d at 753.

### 3.    Duty to Disclose.

Plaintiffs' consumer protection claims are based upon supposed omissions

and require allegations establishing a duty to disclose.  While the duty differs among

states, all Plaintiffs fail to plead *facts* establishing the duty.

*Special Relationship Required*:  The Florida, New Jersey, and Pennsylvania,

consumer protection claims fail because each state's law imposes a duty to disclose

*only* if there is a fiduciary or other relationship of trust or confidence between the

parties, or because the state's courts have never recognized such a duty in an arms-

length transaction, or both.  *See*, *e.g.*, *Merch. One, Inc. v. TLO, Inc*., 2020 WL

248608, *6-7 (S.D.Fla. 2020) ("A duty to disclose arises when one party has

information that the other party has the right to know because of the fiduciary or

other relationship of trust or confidence between them."); *Brown v. Hyundai Motor*

*Am*., 2019 WL 4126710, *8 (D.N.J. 2019) ("Absent a confidential relationship, no

duty   to   disclose   exists   between   parties   engaged   in   arms-length   business

18

transactions."); *McCracken v. R.J. Reynolds Tobacco Co.*, 2018 WL 3130402, *5 (E.D.Pa. 2018) (dismissal where "no special relationship" existed between manufacturer and consumer).  The Plaintiffs in those states do not plead such a relationship, and to the extent they are premised on an omission theory Counts X, XIII, and XIX fail thereby.

*Other Bases For A Duty To Disclose*:  Under the laws of the remaining states, a defendant's acts can trigger a duty to disclose in four distinct situations.

*First,* knowledge that the other party is mistaken about a material fact and would reasonably expect disclosure can establish a duty to disclose under Arizona, a law.  *Loomis v. U.S. Bank Home Mortg.*, 912 F.Supp.2d 848, 856 (D.Ariz. 2012). But the Complaint lacks the necessary fact-based allegations to give rise to a duty.

*Second*, exclusive or superior pre-purchase knowledge of a defect can establish a duty under California and North Carolina law, *see*, *e.g.*, *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, *11 (C.D.Cal. 2014); *Withers v. BMW of N. Am., LLC*, 2021 WL 4204332, *5 (W.D.N.C. 2021), but, for the same reasons Plaintiffs fail to demonstrate pre-sale knowledge, Plaintiffs fail to show any duty to disclose on this basis either.

*Third*, affirmative acts of active concealment can also establish a duty to disclose in California and North Carolina, *see*, *e.g.*, *Herremans*, 2014 WL 5017843 at *11; *Withers*, 2021 WL 4204332 at *5; *see also Taragan v. Nissan N. Am., Inc.*,

2013 WL 3157918, *7 (N.D.Cal. 2013) ("allegation of active concealment must plead more than an omission; rather, a plaintiff must assert affirmative acts of concealment"),  but Plaintiffs do not claim, let alone identify, any qualifying conduct.

*Fourth*, misleading partial statements can establish a duty to disclose under Arizona, and California law.  *See Wozniak,* 2019 WL 108845 at *3 n.5.  But the only statements Plaintiffs point to are excerpts from a few marketing brochures advertising  "innovation" and "freedom and legendary capability," and characteristics like "most capable," "strong," "quick," "expansive," and "easy on the planet."  Comp., ¶¶ 61-64, 66 (PageID.31-35).

Even setting aside the fact that no Plaintiff avers encountering, much less relying on, any of these brochures—which vitiates any duty to disclose, *see, e.g.*, *Beck*, 273 F.Supp.3d at 755 ("A plaintiff must plead reliance on at least some misleading partial representations.")—the representations in the brochures constitute nothing more than nonactionable puffery.  *Id.* at 749; *see also Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 2011 WL 5244936, *6 (E.D.Mich. 2011).

### D.    The UCL's "Unfair" and "Unlawful" Prongs (Count VI).

Plaintiff Kreb's wholly conclusory allegations of "unfair" or "unlawful" conduct under California's UCL are legally inadequate.[7]

---

[7]*See* Comp., ¶¶ 200-210 (PageID.73-75).  FCA US addresses the claim under the UCL's "fraudulent" prong with the other fraud-based claims.  *See* § III.D, *supra*.

*First*, because he has not pleaded an actionable violation of the UCL's "fraudulent" prong, see *supra*, § III.D, any claim under the "unfair" and "unlawful" prongs must also be dismissed because "the failure to disclose a fact that a manufacturer does not have a duty to disclose … does not constitute an unfair or unlawful practice." *Wilson v. Hewlett-Packard Co*., 668 F.3d 1136, 1145 n.5 (9th Cir. 2012) (affirming dismissal); *see also Williams v. Tesla, Inc*., 2022 WL 899847, *5 (N.D.Cal. 2022).

*Second*, Plaintiff pleads no facts tying the UCL claim to any legislative policy, anti-competitive behavior, or conduct that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," which he must do to state an "unfair" prong claim. *Conejo v. JPMorgan Chase Bank*, 2011 WL 6149246, *5 (C.D.Cal. 2011); *see also Santa Barbara Smokehouse, Inc. v. Aquachile, Inc*., 2020 WL 6743592, *5-7 (C.D.Cal. 2020) (conclusory allegations insufficient).

*Third*, any "unlawful" claim should be dismissed because Plaintiff has not established the violation of any other law. *See*, *e.g.*, *Altman v. PNC Mortg*., 850 F.Supp.2d 1057, 1077 (E.D.Cal. 2012); *Brios v. Wells Fargo Bank*, 737 F.Supp.2d 1018, 1033 (N.D.Cal. 2010).

*Fourth*, and finally, dismissal is required because the UCL provides "purely equitable relief," and Plaintiff has failed to plead facts showing he lacks an adequate remedy at law. *See*, *e.g.*, *Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844-45

(9th Cir. 2020) (affirming dismissal of UCL claim where plaintiff "fail[ed] to demonstrate that he lacks an adequate legal remedy"); *Lisner v. Sparc Grp. LLC*, 2021 WL 6284158, *8 (C.D.Cal. 2021) (finding that plaintiffs "must establish that they lack an adequate remedy at law to seek restitution, which they fail to do here"); *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, *3-4 (C.D.Cal. 2020) (dismissing UCL claim with prejudice where plaintiff could "not bring equitable claims" in absence of "facts that could support a finding that monetary relief is insufficient to compensate him and the putative class for the alleged harm").

## E.  The Unjust Enrichment Claims (Counts IV, IX, XII, XV, XVIII, XXI, XXIII).

These claims are also subject to dismissal for multiple reasons.[8]

### 1.  The Express Contract.

The enrichment claim is not cognizable "because there is an express contract that covers the same subject matter–namely, the express limited warranty that [defendant] provided at the time the Class Vehicles were first purchased." *Hall*, 2020 WL 1285636 at *9. The written express warranty that FCA US issued fully allocates the parties' rights and obligations relating to potential vehicle defects. Except for Arizona, every state at issue bars unjust enrichment claims where the

---

[8]*See* Comp., ¶¶ 179-186, 233-241, 270-278, 305-313, 340-348, 375-383, 393-401 (PageID.68-69, 81-82, 88, 94-95, 101, 108-109, 111-112).

parties have expressly allocated their rights and responsibilities in a writing.  This includes claims where, as here, a plaintiff asserts it for the sole purpose of attempting to obtain more benefits than they actually bargained for in the written contract they entered into.  *See, e.g., Miller*, 2018 WL 2740240 at *15.  And it is irrelevant that Plaintiffs do not plead an express warranty claim.  *Id.* (dismissing express warranty claims, and then unjust enrichment claims because "no contract will be implied in law to defeat the [defendant's] Limited Warranties' express terms").

### 2.      Adequate Remedy at Law.

Separately, where an adequate remedy at law exists, an unjust enrichment claim fails.  And Plaintiffs have the pleading burden to show their legal remedies are inadequate.  *See Flores,* 2021 WL 1122216 at *15 (dismissing claims under California law for plaintiffs' "failure to plead that their legal remedies are inadequate").  Here, Plaintiffs have not met their burden, and the Complaint makes clear that an adequate legal remedy (damages) exists if Plaintiffs could plead a viable claim.

### 3.      No Direct Benefit.

In Arizona, Florida, and North Carolina, a plaintiff must plead they conferred a *direct* benefit upon defendant.  *See*, *e.g.*, *Baker v. Trans Union LLC*, 2008 WL 2329099, *2 (D.Ariz. 2008) ("Plaintiff has alleged no facts to show that Plaintiff directly conferred any benefit to Defendant.");  *Kopel v. Kopel*, 229 So.3d 812, 818

(Fla. 2017) ("plaintiff must directly confer a benefit to the defendant"); *Southwood v. Credit Card Sol.*, 2016 WL 8710985, *15 (E.D.N.C. 2016) (plaintiff must allege he "conferred a direct, measurable benefit to the other party").

Here, Plaintiffs proffer only a conclusory allegation that they "conferred a benefit" on FCA US because it "has benefitted from selling, leasing, and distributing" the subject vehicles." Comp., ¶¶ 181-182, 273-274, 343-344 (PgID.68, 88, 101). But Plaintiffs nowhere plead they conferred a direct benefit on FCA US. Indeed, Plaintiffs had no dealings at all with FCA US and all confirm they purchased their vehicles from third-party dealerships. *Id.* at ¶¶ 18, 22, 26, 30, 34, 38, 42, 46, 50 (PgID.13, 15, 17, 19, 20, 22, 24, 25, 27).

### 4.    Not a Standalone Cause of Action.

California, New Jersey, and Texas do not recognize unjust enrichment as an independent cause of action. *Manchester v. Sivantos GmbH*, 2019 WL 3531419, *5 (C.D.Cal. 2019) ("California does not recognize a standalone cause of action for unjust enrichment."); *Zafarana v. Pfizer, Inc.*, 724 F.Supp.2d 545, 560 (E.D.Pa. 2010) ("There is no separate tort cause of action for unjust enrichment in New Jersey"); *Gedalia v. Whole Foods Mkt. Servs., Inc.*, 53 F.Supp.3d 943, 961 (S.D.Tex. 2014) ("unjust enrichment is an element of restitution and not an independent cause of action.").

## IV.  CONCLUSION

For the reasons set forth herein, FCA US LLC respectfully requests that the

Court grant this motion and dismiss the Class Action Complaint.

### KLEIN THOMAS LEE & FRESARD

|  | */s/ Stephen A. D'Aunoy* |
|---|---|
| Fred J. Fresard (P43694) | Stephen A. D'Aunoy (MO/54961) |
| Ian K. Edwards (P82021) | Scott H. Morgan (MO/61853) |
| 101 W. Big Beaver Rd., Ste 1400 | 100 N. Broadway, Ste 1600 |
| Troy, Michigan  48084 | St. Louis, Missouri  63102 |
| Tel:  (602) 935-8300 | Tel:  (314) 888-2970 |
| fred.fresard@kleinthomaslaw.com | steve.daunoy@kleinthomaslaw.com |
| ian.edwards@kleinthomaslaw.com | scott.morgan@kleinthomaslaw.com |

*Attorneys for Defendant FCA US LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

*/s/ Stephen A. D'Aunoy*