# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**STAN PARIS,** an individual, on behalf of himself and all others similarly situated,

       Plaintiff,

  v.

**FIAT CHRYSLER AUTOMOBILES (FCA) US, LLC,**

       Defendant.

**CASE NO.:**

**JURY TRIAL DEMANDED**

**CLASS ACTION**

## <u>CLASS ACTION COMPLAINT</u>

# **TABLE OF CONTENTS**

Page(s)

I.   **INTRODUCTION** ........................................................................... 1

II.  **JURISDICTION AND VENUE** ................................................. 3

III. **PARTIES** ....................................................................................... 4

    A.   Plaintiff ................................................................................. 4

    B.   Defendant ............................................................................. 5

IV. **FACTUAL ALLEGATIONS** ...................................................... 6

    A.   The Underhood Fire Risks .................................................. 6

    B.   FCA's Marketing to Class Vehicle Owners and Lessees Emphasized the Safety and Reliability of the Class Vehicles .............................................. 13

      1.   2021-2023 Jeep Wrangler ............................................... 13

      2.   2021-2023 Jeep Gladiator ............................................... 15

      3.   2022-2024 Jeep Grand Cherokee .................................. 17

    C.   Certain Class Vehicles Have Faced Recalls for Other Fire Risks ............ 19

V.   **CLASS ACTION ALLEGATIONS** ........................................ 20

    A.   Numerosity of the Class ..................................................... 22

    B.   Existence and Predominance of Common Questions of Fact and Law .... 22

    C.   Typicality ............................................................................. 23

    D.   Adequacy of Representation ............................................... 24

    E.   Predominance and Superiority ........................................... 24

VI. **TOLLING OF THE STATUTES OF LIMITATIONS** ........... 26

VII. **CLAIMS** ....................................................................................... 27

    COUNT ONE (Violation of 15 U.S.C. Section 2301, *et seq.* – the Magnuson-Moss Warranty Act) ............................................... 27

    COUNT TWO (Breach of Implied Warranty of Merchantability Under Pennsylvania Law – 13 Pa.C.S.A. 2314, *et. seq*) ............................................... 28

COUNT THREE
(Common Law Unjust Enrichment –
Alleged on behalf of the Pennsylvania Subclass) ........................................30

COUNT FOUR
(Breach of Implied Warranty of Merchantability Under Arizona Law -
A.R.S. § 47-2314 *et. seq.*)...............................................................................31

COUNT FIVE
(Common Law Unjust Enrichment -
Alleged on behalf of the Arizona Subclass ) ..................................................32

**VIII. PRAYER FOR RELIEF** ...............................................................................33

**IX.  DEMAND FOR JURY TRIAL** .....................................................................34

Plaintiff Stan Paris an individual, on behalf of himself and on behalf of all others similarly situated (*i.e.*, the members of the Plaintiff Classes and Subclasses described and defined within this Complaint), brings this class action complaint against Defendant **FCA US, LLC**. Plaintiff herein alleges as follows:

## I.    INTRODUCTION

1.    This consumer class action arises out of Defendant FCA US, LLC's (hereinafter "FCA" or "Defendant") sale of defective 2020-2024 Jeep Wrangler, 2021-2023 Jeep Gladiator, and 2022-2024 Jeep Grand Cherokee vehicles (hereinafter "Class Vehicles") prone to underhood fire.

2.    This case is brought by one of the many individuals who purchased a Class Vehicle at risk of an underhood fire—Plaintiff Stan Paris ("Plaintiff" or "Mr. Paris") from Carlisle, Pennsylvania. Mr. Paris purchased a 2023 Jeep Wrangler Unlimited 4XE on July 14, 2024. Plaintiff, for himself and all others similarly situated, brings this class action in response to the serious defect in their Jeeps that can result in catastrophic damages to their vehicles.

3.    The Class Vehicles are at risk of vehicle fires due to – on information and belief – a defect in the power steering pump electrical connector and/or the high voltage battery, that can cause underhood fires when the Class Vehicles are parked, the ignition is in an "OFF" state or being driven. (the "Underhood Fire Risk" or "Fire Risk").[1]

4.    In early September 2024, The National Highway Traffic Safety Administration ("NHTSA") opened a preliminary investigation ("PE24024)") that

---

[1] *781,000 Jeeps Caught Up In NHTSA Investigation Over Underhood Fires*, CARSCOOPS (Sept. 9, 2024), https://www.carscoops.com/2024/09/781000-jeeps-caught-up-in-nhtsa-investigation-over-underhood-fires/ (last visited Nov. 15, 2024).

"covers more than 781,000 Jeep Wrangler and Gladiator vehicles from 2021-2023."[2] To this date, there have been at least nine complaints of engine fires including one that caused injury.[3]

5.     Also, in late September 2024, the NHTSA issued recall number 24V720000 that covers 2020-2024 Jeep Wranglers and 2022-2024 Jeep Grand Cherokees due to fire risks. "The high voltage battery may fail internally and lead to a vehicle fire while parked or driving."[4]

6.     FCA either knew or should have known about the Underhood Fire Risks before the NHTSA started its preliminary investigation and/or issued recall number 24V720000 based on a previous recall (23V787000) for fire risk and consumer complaints of spontaneous underhood fires in the Class Vehicles made to FCA, auto safety regulators, and reported online.

7.     Many of the Class Vehicles have been recalled for other defects that also cause a fire risk.[5] As of today, FCA does not have a proven and effective fix for the defects related to the Fire Risks alleged in this Complaint. While FCA claims to have a remedy for the high-voltage battery Fire Risk, they made a similar claim over a year ago when they issued recall number 23V787000 for the same defect. Despite this, their remedy failed to resolve the Fire Risk. In fact, FCA has since expanded

---

[2] *Jeep Wrangler, Gladiator engine fires investigated by NHTSA*, THE DETROIT NEWS (Sept. 9, 2024),
https://www.detroitnews.com/story/business/autos/chrysler/2024/09/09/jeep-engine-fires-investigated-by-nhtsa/75142212007/ (last visited Nov. 14, 2024).
[3] *Id.*
[4] https://www.nhtsa.gov/vehicle/2023/JEEP/WRANGLER/SUV/4WD#recalls (last visited Nov. 27, 2024).
[5] *See Consumer Alert: Important Jeep Grand Cherokee and Jeep Wrangler PHEVs "Park Outside" Recall for Fire Risk*, NTHSA (Oct. 1, 2024),
https://www.nhtsa.gov/press-releases/jeep-wrangler-grand-cherokee-phevs-fire-risk (last visited Nov. 15, 2024).

the recall to include over 100,000 additional vehicles for the same unresolved Fire Risk.[6]

8.      As a result of FCA's breaches of implied warranties of merchantability and failure to remedy the Fire Risks, Class Vehicle owners and lessees have been burdened with vehicles that do not perform as advertised and **cannot be safely parked like other cars**. Due to the defects, Plaintiff and Class Members are and have been deprived of the benefit of their bargain in purchasing or leasing their Class Vehicles. Further, Plaintiff and Class Members have suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Had Plaintiff and Class Members known of the Underhood Fire Risks, they would not have purchased or leased the Class Vehicles or would have paid substantially less for them. Owners and lessees of Class Vehicles that experienced spontaneous fires also incurred damages for repairs, towing charges, property damages, and other miscellaneous costs.

9.      Plaintiff brings this action individually and on behalf of himself and on behalf of all others similarly situated (*i.e.*, the members of the Plaintiff Classes and Subclasses described and defined within this Complaint). Plaintiff seeks monetary damage, injunctive and other equitable relief for Defendant's misconduct in the design, manufacture, marketing, sale, and lease of the Class Vehicles as alleged in this Class Action Complaint. Plaintiff further seeks damages and repair under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312, and state laws of implied warranty of merchantability and unjust enrichment.

## II.      JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312 and 28 U.S.C. § 1331.

---

[6] https://www.nhtsa.gov/vehicle/2023/JEEP/WRANGLER/SUV/4WD#recalls (last visited Nov. 27, 2024).

11.     Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, a resident of Pennsylvania, seeks relief on behalf of a Class, which will result in at least one Class Member belonging to a different state than that of Defendant. Defendant FCA US, LLC is headquartered in Michigan. Plaintiff seeks damages, which, when aggregated among a proposed class in the thousands, exceeds the $5,000,000 threshold for federal court jurisdiction by many multiples. Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

12.     This Court has personal jurisdiction over Plaintiff because Plaintiff resides in Cumberland County, Pennsylvania and submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant because it has conducted and continues to conduct substantial business and transactions in this judicial district, because FCA has violated statutory and common law in this judicial district, and because FCA is headquartered in Michigan.

13.     Venue is proper in the United States District Court for the Eastern District of Michigan Southern Division pursuant to 18 U.S.C. § 1391(b) because FCA is headquartered in this district and transacts substantial business in this district.

## III.     **PARTIES**

### A. **Plaintiff**

14.     Plaintiff Stan Paris (hereinafter "Plaintiff" or "Mr. Paris") is a resident and citizen of Carlisle, Pennsylvania. Plaintiff purchased a Class Vehicle primarily for personal, family, and household use. He purchased a used 2023 Jeep Wrangler 4XE Hybrid on July 14, 2024 from Airpark Dodge Chrysler Jeep, a dealership located in Scottsdale, Arizona. Mr. Paris made the decision to purchase a 2023 Jeep Wrangler Unlimited 4XE Hybrid based upon his reading about the hybrid Jeep and information provided during his visit to the dealership regarding the gas mileage and

reliability of the vehicle. Based on information and belief, marketing materials were disseminated by Defendant throughout Pennsylvania, Arizona, and the rest of the United States regarding the safety and reliability of the Class Vehicles.

15.     Despite the advertised safety and reliability of the Class Vehicles, neither FCA nor its agents, dealers, or representatives disclosed to Plaintiff the Underhood Fire Risks. Mr. Paris has been left with a vehicle that could catch fire at any second, resulting in an immediate risk to his vehicles' occupants, including his 22-month-old child, his fiancé, his stepson, and property surrounding his vehicle. It is difficult for Plaintiff to park his vehicle away from other vehicles and structures. Plaintiff has been parking his 2023 Jeep Wrangler 4XE Hybrid at an outdoor airport parking lot, at a cost of $26 per day because of the Underhood Fire Risks. Plaintiff would not have purchased the vehicle or would have paid less for it if he had known about the Underhood Fire Risks.

### B. **Defendant**

16.     Defendant FCA US, LLC is a corporation, formerly known as Chrysler Group, LLC, organized and in existence under the laws of the State of Delaware. FCA is wholly owned by Stellantis N.V., a Dutch corporation with headquarters in Amsterdam, Netherlands.

17.     Defendant's principal place of business and headquarters is at 1000 Chrysler Drive, Auburn Hills, Michigan 48326. At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in the United States under the Jeep Brand.

18.     FCA US, LLC offers passenger cars, utility vehicles, minivans, trucks, and commercial vans, as well as distributes automotive service parts and accessories. As the North American arm of Fiat Chrysler Automobiles, FCA US, LLC manufactures, markets, distributes, and sells automobiles throughout the United

States and worldwide. Defendant is engaged in interstate commerce by selling vehicles in every state of the United States.

19.   From its headquarters in Michigan, Defendant FCA US, LLC marketed the Class Vehicles to consumers. Defendant developed and distributed promotional materials including owner's manuals, advertising, brochures, and warranty booklets throughout all fifty states.

## IV.   FACTUAL ALLEGATIONS

### A. The Underhood Fire Risks

20.   The National Highway Traffic Safety Administration ("NHTSA") opened Investigation No. PE24024 on September 6, 2024 to investigate a defect causing underhood fires in an estimated 781,459 Jeep Wrangler and Jeep Gladiator Vehicles for the model years 2021, 2022 and 2023.[7] The problem description is as follows: "Underhood fires while vehicle in ignition off state."[8]

21.   As of today, there have been nine reported compartment fires in the Class Vehicles.[9] It is suspected that, as to the 2021-2023 Jeep Wrangler and Gladiator Vehicles, these fires originated from the power steering pump electrical connector in the passenger front side of the engine compartment.[10] A majority of these fires occurred while the vehicle's ignition was off.[11] At least one injury has been reported from these fires.[12]

---

[7] *ODI Resume PE24024*, NHTSA.GOV (Sept. 6, 2024),
https://static.nhtsa.gov/odi/inv/2024/INOA-PE24024-19581.pdf (last visited Nov. 7, 2024).
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

22.     The NHTSA opened its ongoing investigation "to assess the cause, scope, and frequency of the alleged defect."[13] The NHTSA further notes that "[a]n ignition "OFF" vehicle fire can result in increased occupant injury, injury to persons outside the vehicle, and property damage, with little to no warning."[14]

23.     The NHSTA has contacted FCA, "and learned of several thermal events originating at the power steering pump electrical connector in recent model year Jeep Wrangler and Gladiator vehicles."[15] "The location of the pump connector is located at the passenger front side of the engine compartment" which coincides with the majority of fire reports known to the Office of Defects Investigation ("ODI").[16]

24.     At least nine complaints were submitted to FCA and the NHTSA through Vehicle Owner Questionnaires ("VOQ") revealing the following nine underhood vehicle fires:

**NTSA ID Number**: 11403621
**Incident Date**: March 16, 2021
**Consumer Location**: Rumson, NJ
**VIN#**: 1C4HJXENXMW****
**Summary of Complaint**: OUR 2021 JEEP STARTED SMOKING IN THE ENGINE AND WITHIN 10 MINUTES BURST INTO FLAMES. THE ENTIRE FRONT END WAS DAMAGED BEYOND REPAIR / BURNED AND FIRE STATIONS HAD TO PUT OUT THE FIRE. MY DAUGHTER, DOGS AND I WERE ABLE TO MAKE IT OUT OF THE CAR BUT VERY SCARY.
**Affected Product**: Jeep Wrangler 2021[17]

---

[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Complaints, NHTSA ID: 11403621*, NHTSA.GOV (Mar. 18, 2021), https://www.nhtsa.gov/?nhtsaId=11403621 (last visited Nov. 18, 2024).

**NTSA ID Number**: 11426759
**Incident Date**: September 27, 2021
**Consumer Location**: Bellingham, WA
**VIN#**: 1C4HJXCN3MW****
**Summary of Complaint**: The engine caught on fire after a short drive. The fire burned the entire top of the rear of the engine and completely through the wiring harness before I could extinguish it with a fire extinguisher and water. The fire appears to have started at the top rear of the engine where the fuel line enters the intake. The manufacturer, Stellantis, hired a special investigator from EAA/Bosch to look at it, and he agrees that it is similar to fires in similar engines that were recalled in October 2020, NHTSA Campaign number 21V-665. Stellantis has not responded to repeated requests for resolution.
**Affected Product**: Jeep Wrangler 2021[18]

**NHTSA ID Number**: 11442560
**Incident Date**: November 13, 2021
**Consumer Location:** Wickenburg, AZ
**VIN#:** 1C4HJXEG4MW****
**Summary of Complaint:** My 2021 Jeep Wrangler with 1900 miles caught on fire and was a total loss, preliminary investigation believes the cause of the fire to be a gas leak. There were no indications or warning lights, saw black smoke coming from the engine compartment by the time I pulled over and got out of the vehicle it was on fire and within minutes the entire car was engulfed by flames and it was a total loss.
**Affected Product:** Jeep Wrangler 2021[19]

**NHTSA ID Number**: 11525680
**Incident Date**: May 11, 2023
**Consumer Location:** Unknown
**VIN#:** 1C4JJXP61PW****
**Summary of Complaint:** I am not sure if this is something that should be reported or not. My Jeep caught on fire in a drive thru on 5/11/23. It was only 3.5 months old and had 3,465 miles on it. I saw smoke coming from under the hood, then big black billowing smoke, when some guys got the

---

[18] *Complaints, NHTS ID: 11436759*, NHTSA.GOV (Oct. 14, 2021), https://www.nhtsa.gov/?nhtsaId=11436759 (last visited Nov. 18, 2024).
[19] *Complaints, NHTS ID: 11442560*, NHTSA.GOV (Dec. 3, 2021), https://www.nhtsa.gov/?nhtsaId=11442560 (last visited Nov. 18, 2024).

hood open there were flames coming from behind the engine. They were able to put it out with a fire extinguisher but it caused a lot of damage. It is available for inspection but I would need to know ASAP since it is at the dealer. About 3 minutes prior I was on the highway and this could have ended up so much worse as I had my two dogs with me as well. I contacted Jeep and they sent Engineering Analysis Associates/Bosch Automotive Service Solutions out to examine the car and they said "the information at hand would not permit us to associate the fire with a manufacturing or assembly error". No reason for the fire was given. Vehicle was inspected by insurance rep, investigator hired by the manufacturer. Police and fire dept were on scene at the time but did not create a report, just gave me an incident #. No warnings, messages or anything warned of the fire. I was able to drive it around to the front of the building to get it away from the building and other cars while their was smoke coming out of it. No warnings lights came on at all that I could see on the dash. I want to report this incase any other Wrangler 4XE's end up having the same issue.
**Affected Product:** Jeep Wrangler 2023[20]

**NHTSA ID Number**: 11585273
**Incident Date**: August 6, 2023
**Consumer Location:** New Franken, WI
**VIN#:** 1C6HJTFG9NL****
**Summary of Complaint:** My 2022 Jeep Gladiator burned to the ground with 2,500 miles. Jeep sent out their fire investigator and they said it was not a manufacture defect on their part. Allstate sent out their fire investigator and he said it WAS a Jeep manufacturer issue. Both Jeep and Allstate denied to give me copies of the report findings. My Jeep was parked and engine cold when it started smoldering and went up in flames. my VIN is [XXX] . I lost 12 months of payments plus $1800 in Ceramic coating along with another $2,000. in additional add ons.
**Affected Product:** Jeep Gladiator 2022[21]

**NHTSA ID Number**: 11567979
**Incident Date**: January 24, 2024
**Consumer Location:** Auburn, WA

---

[20] *Complaints, NHTS ID: 11525680*, NHTSA.GOV (May 11, 2023), https://www.nhtsa.gov/?nhtsaId=11525680 (last visited Nov. 18, 2024).
[21] *Complaints, NHTS ID: 11585273*, NHTSA.GOV (Apr. 25, 2024), https://www.nhtsa.gov/?nhtsaId=11585273 (last visited Nov. 18, 2024).

**VIN#:** 1C6JJTBG6NL****
**Summary of Complaint:** Our 2022 Gladiator has 1,758 miles on it and no modifications. It was last driven about two weeks ago. It burned to the ground [XXX] while parked next to our house. The fire started in the engine compartment. There were no warnings of symptoms and our jeep app showed everything was normal when last driven. It was investigated by the VRFA and I am waiting for their report. Insurance has not yet inspected. We reported it to the dealership we bought it from. On the [XXX] website, there is another 2022 Gladiator, also low mileage, that also burned to the ground while parked. That person's insurance stated that they believe it burned due to a manufacturer defect but there are no recalls.
**Affected Product:** Jeep Gladiator 2022[22]

**NHTSA ID Number**: 11570607
**Incident Date**: January 6, 2024
**Consumer Location:** Layton, UT
**VIN#:** 1C4JJXFM2MW****
**Summary of Complaint:** Fire started about 15 minutes after parking the Jeep. Flames and smoke first appeared in engine compartment on passenger side where an electrical panel is located. Fire spread quickly and burnt out entire front of vehicle before the fire department was able to extinguish the flames. Vehicle is a total loss.
**Affected Product:** Jeep Wrangler 2021[23]

**NHTSA ID Number**: 11573476
**Incident Date**: February 19, 2024
**Consumer Location:** Forestville, CA
**VIN#:** 1C6JJTBM7NL****
**Summary of Complaint:** I was driving my Jeep Gladiator on [XXX] Shasta Co, CA, on a snowy mountain highway. I had my husband, two children and two dogs in the vehicle. Without warning the power steering went out. Within 20 seconds a steering wheel light appeared on the dash. Within approximately 20 more seconds, I was able to pull over into a plowed turnout. As soon as we stopped the vehicle we noticed a fire in the engine compartment. We were able to extinguish it within a few minutes with our

---

[22] *Complaints, NHTS ID: 11567979*, NHTSA.GOV (Jan. 26, 2024), https://www.nhtsa.gov/?nhtsaId=11567979 (last visited Nov. 18, 2024).
[23] *Complaints, NHTS ID: 11570607*, NHTSA.GOV (Feb. 7, 2024), https://www.nhtsa.gov/?nhtsaId=11570607 (last visited Nov. 18, 2024).

fire extinguisher. The vehicle has approximately 15000 miles on it and is under warranty. It is currently under inspection to determine if it falls under warranty.

**Affected Product:** Jeep Gladiator 2022[24]

**NHTSA ID Number**: 11576144
**Incident Date**: March 6, 2024
**Consumer Location:** Titusville, NJ
**VIN#:** 1C4HJXEM2NW****
**Summary of Complaint:** The detective reported that the 2022 Jeep Wrangler spontaneously caught on fire. The contact stated that after the owner parked the vehicle, approximately six hours later a fire occurred which started in the engine compartment of the vehicle. The fire department was called to the scene and extinguished the flames. During the incident the vehicle was destroyed. No injuries were reported. A police and fire report was taken at the scene and the vehicle was later tow away. The cause of the failure was not yet determined. The manufacturer and local dealer were not notified by the contact. The contact was concern that the vehicle had experienced the same failure listed in the NHTSA Campaign Number: 23V787000(Electrical System) which did not include the diesel models. The contact indicated that the vehicle had experienced that same failure listed in the recall. The failure mileage was unknown.

**Affected Product:** Jeep Wrangler 2022[25]

25.     Similarly, on September 27, 2024, the NHTSA issued recall number 24V720000 relating to underhood fires in 2020-2024 Jeep Wranglers and 2022-2024 Jeep Grand Cherokees. The recall expands recall number 23V787000 that was issued in November 2023, for the same issue. The recall notice states, "[t]he high voltage battery may fail internally and lead to a vehicle fire. Owners are advised to park outside and away from structures, and not to recharge their vehicles until they are

---

[24] *Complaints, NHTS ID:  11573476*, NHTSA.GOV (Feb, 19, 2024), https://www.nhtsa.gov/?nhtsaId=11573476 (last visited Nov. 18, 2024).
[25] *Complaints, NHTS ID:  11576144*, NHTSA.GOV (Mar. 8, 2024), https://www.nhtsa.gov/?nhtsaId=11576144 (last visited Nov. 18, 2024).

repaired. Vehicles in this recall that were previously recalled for the same issue under NHTSA Recall 23V-787 will need to have the new remedy performed."[26]

26.    According to the Safety Recall Report associated with recall number 23V787000, "[s]ome 2022-2024 Jeep Grand Cherokee Plug-In Hybrid Electric Vehicles ("PHEVs") may have been built with a battery pack which contains cells which are susceptible to separator damage."[27] The potentially affected vehicle production period is May 17, 2021 through November 16, 2023.[28] The total affected Jeep Grand Cherokee vehicles is 35,802.[29]

27.    The Class Vehicles are simply unsafe and not suitable for their intended use.

28.    On information and belief, FCA knew or should have known about the Underhood Fire Risks before NHTSA opened its investigation into the matter related to the power steering pump electrical connector, due to consumer complaints lodged directly with FCA, through the NHTSA, and online generally. On information and belief, FCA received complaints about underhood fires at least by March 2021.[30]

29.    FCA knew or should have known about the Underhood Fire Risks before recall number 24V720000 was issued related to the high voltage battery because FCA had already issued a recall a year ago for the same issue.

30.    Plaintiff's counsel continues to investigate whether additional model years of Jeep Wrangler, Jeep Grand Cherokee, and Jeep Gladiator vehicles are also at risk of underhood fire. Vehicle manufacturers, including FCA are required by law to monitor NHTSA complaints to determine whether their vehicles or vehicle

---

[26] *Recalls,* https://www.nhtsa.gov/recalls?nhtsaId=24V720000 (last visited Nov. 27, 2024).

[27] *Safety Recall Report*, RCLRPT-24V720-8602.PDF (last visited Jan. 6, 2025).

[28] *Id.*

[29] *Id.*

[30] *Complaints, NHTSA ID: 11403621*, NHTSA.GOV (Mar. 18, 2021), https://www.nhtsa.gov/?nhtsaId=11403621 (last visited Nov. 7, 2024).

components should be recalled. Therefore, FCA had knowledge of the above NHTSA complaints and of all NHTSA complaints filed regarding its vehicles, including the Class Vehicles.[31] Despite being aware of the serious Fire Risks associated with the Underhood Fire Risk Vehicles, FCA has failed to inform consumers about the NHTSA investigation concerning the power steering pump electrical connector or that the recall number 24V720000 was forthcoming while certain Class Vehicles continued to be sold. FCA has not provided a proven remedy for the high-voltage battery defect, and both defects are linked to underhood fires in the Class Vehicles.

### B. FCA's Marketing to Class Vehicle Owners and Lessees Emphasized the Safety and Reliability of the Class Vehicles.

31.    In its marketing brochures and literature, FCA emphasized the safety and reliability of the Class Vehicles.

#### 1. 2021-2023 Jeep Wrangler

32.    The brochures and literature for the 2021, 2022 and 2023 Jeep Wranglers prominently advertised their advanced safety features:

---

[31] See TREAD Act, Pub. L. No. 106- 414, 114 Stat. 1800 (2000).



2021 Jeep Wrangler Brochure.[32]



2022 Jeep Wrangler Brochure.[33]

[32] 2021, Wrangler, CDN.DEALERPROCESS.ORG,
https://cdn.dealereprocess.org/cdn/brochures/jeep/ca/2021-wrangler.pdf (last visited Nov. 18, 2024).
[33] 2022, Wrangler, CDN.DEALERPROCESS.ORG,
https://cdn.dealereprocess.org/cdn/brochures/jeep/ca/2022-wrangler.pdf (last visited Nov. 18, 2024).



2023 Jeep Wrangler Literature.[34]

### 2. **2021-2023 Jeep Gladiator**

33. Defendant similarly represented the safety and durability of the 2021, 2022 and 2023 Jeep Gladiator models.

 

---

[34] 2023, Wrangler, WWW.STELLANTISFLEET.COM, https://www.stellantisfleet.com/content/dam/fca-fleet/na/fleet/en_us/shopping-tools/brochures-literature/docs/buyers-guide/2023/23DOMFLT_FBG_JP_Wrangler.pdf (last visited Dec. 16, 2024).



2021-2023 Jeep Gladiator Brochures.[35]







[35] 2021, Gladiator, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Jeep/Gladiator/Jeep_US%20Gladiator_2021.pdf (last visited Nov. 19, 2024); 2022, Gladiator, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Jeep/Gladiator/Jeep_US%20Gladiator_2022.pdf (last visited Nov. 19, 2024); 2023, Gladiator, DIGIMAG.RRD.COM, https://digimag.rrd.com/Chrysler/DNL/2023-CDN-Jeep-Gladiator-English-Catalog.pdf (last visited Nov. 19, 2024).

2021-2023 Jeep Gladiator Brochures.[36]

34. Defendant further advertised the reliability and performance of Jeep Gladiator engines.



2021-2023 Jeep Gladiator Brochures. [37]

### 3. **2022-2024 Jeep Grand Cherokee**

35. Defendant similarly represented the safety and durability of the 2022, 2023 and 2024 Jeep Grand Cherokee models.



---

[36] *Id.*

[37] 2022, Gladiator, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Jeep/Gladiator/Jeep_US%20Gladiator_2022.pdf (last visited Nov. 19, 2024); 2023, Gladiator, DIGIMAG.RRD.COM, https://digimag.rrd.com/Chrysler/DNL/2023-CDN-Jeep-Gladiator-English-Catalog.pdf (last visited Nov. 19, 2024).



2022 Jeep Grand Cherokee Brochure.[38]



2023 Jeep Grand Cherokee Literature.[39]

---

[38] 2022, Grand Cherokee, WWW.AUTO-BROCHURES.COM , https://www.auto-brochures.com/makes/Jeep/Grand%20Chrerokee/Jeep_US%20GrandCherokee_2022-2.pdf (last visited Dec. 12, 2024).

[39] 2023, Grand Cherokee, WWW.STELLANTISFLEET.COM, https://www.stellantisfleet.com/content/dam/fca-fleet/na/fleet/en_us/shopping-tools/brochures-literature/docs/buyers-guide/2023/23DOMFLT_FBG_JP_G_Cherokee.pdf (last visited Dec. 16, 2024).



2024 Jeep Grand Cherokee Brochure.[40]

36.     The Class Vehicles do not perform as Defendant advertised. Class Vehicle owners and lessees were promised safe and reliable vehicles. Further, drivers and lessees reasonably expected their vehicles could be safely parked like any other car or SUV.

37.     Instead of performing as Defendant advertised, the Class Vehicles pose a significant safety and reliability risk to Class Vehicle owners and lessees, their families, other occupants in the vehicles, and surrounding property.

## C. **Certain Class Vehicles Have Faced Recalls for Other Fire Risks.**

38.     This is not the first recall for certain Class Vehicles, nor the first time for unexpected fires.

39.     In January 2021, certain model year 2021 Jeep Wranglers and Gladiators were recalled by FCA under campaign 23V116000 for "clutch pressure plate[s] that could overheat and fracture," causing an increased risk of fire.[41] To remedy this issue, FCA stated that it "will notify owners, and dealers will add software to reduce engine torque capability when clutch assembly temperatures rise

---

[40] 2024, Grand Cherokee, AUTOCATALOGARCHIVE,COM, https://autocatalogarchive.com/wp-content/uploads/2024/06/Jeep-Grand-Cherokee-2024-CA.pdf (last visited Dec. 12. 2024).
[41] Recalls, NHTSA ID: 21V028000, NHTSA.GOV (Jan. 29, 2021), https://www.nhtsa.gov/?nhtsaId=21V028000 (last visited, Nov. 19, 2024).

to a level that may damage the inner pressure plate, free of charge."[42] However, in February 2023, FCA re-recalled certain model year 2021 Jeep Wranglers and Gladiators along with certain 2022-2023 Jeep Wranglers and Gladiators for the same overheating clutch pressure plates defect that could result in a fire under campaign 23V116000.[43] To remedy this issue, FCA stated that "[d]ealers will replace the clutch assembly and update software, free of charge."[44]

40.     In March 2023, certain model year 2021-2022 Jeep Wranglers were recalled by FCA under campaign 23V191000 because "[a] stud on the frame assembly may puncture the fuel tank in a crash, which can result in a fuel leak," increasing risk of fire.[45] To remedy this issue, FCA stated that dealers "will inspect and, if necessary, remove the frame stud and apply paint, free of charge."[46]

## V.     CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this class action pursuant to FRCP 23(b)(3), on behalf of himself and all others similarly situated, as a member of two proposed nationwide classes – the Investigation Class and the Recall Class (collectively, "Classes"), as defined as follows:

> **Investigation Class:** All persons or entities who purchased or leased one or more Class Vehicles in the United States and said vehicle is included in NHTSA Investigation PE24024.

> **Recall Class:** All persons or entities who purchased or leased one or more Class Vehicles in the United

---

[42] *Id.*

[43] Recalls, NHTSA ID: 23V116000 (Feb. 23, 2023), https://www.nhtsa.gov/?nhtsaId=23V116000 (last visited, Nov. 19, 2024).

[44] *Id.*

[45] Recalls, NHTSA ID: 23V191000 (March 23, 2023), https://www.nhtsa.gov/?nhtsaId=23V191000 (last visited, Nov. 19, 2024).

[46] *Id.*

States and said vehicle is subject to Recall 24V720000.

Excluded from the above Classes are Defendant, its officers, directors and employees, and any entity in which Defendant has a controlling interest, the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact or assignees thereof, attorneys who are prosecuting this case, and the Court. Unless otherwise specified, individual members of the Investigation Class and individual members of the Recall Class are, together, collectively referred to as "Class Members."

42.    This action is brought as a class action and may properly be so maintained pursuant to the provisions of Federal Rules of Civil Procedure 23. Plaintiff may amend or modify the description of the Classes with greater specificity or further division into subclasses or limitation to particular issues, based on the results of discovery.

43.    In addition to, and in the alternative to the claims asserted on behalf of the Classes, Plaintiff also brings this action on behalf of a **Pennsylvania Investigation Subclass** that comprises: "All residents of Pennsylvania who purchased or leased a Class Vehicle in the State of Pennsylvania and said vehicle is included in NHTSA Investigation PE24024" (hereafter "Pennsylvania Investigation Subclass").

44.    In addition to, and in the alternative to the claims asserted on behalf of the Classes, Plaintiff also brings this action on behalf of a **Pennsylvania Recall Subclass** that comprises: "All residents of Pennsylvania who purchased or leased a Class Vehicle in the State of Pennsylvania which is subject to Recall 24V720000" (hereafter "Pennsylvania Recall Subclass"). Hereafter, the Pennsylvania Investigation Subclass and Pennsylvania Recall Subclass are collectively referred to as the "Pennsylvania Subclasses," and individual members are "Pennsylvania Subclass Members."

45.     In addition to, and in the alternative to the claims asserted on behalf of the Classes, Plaintiff also brings this action on behalf of an **Arizona Investigation Subclass** that comprises: "All residents of Arizona who purchased or leased a Class Vehicle in the State of Arizona which is included in the NHTSA Investigation PE24024" (hereafter "Arizona Investigation Subclass").

46.     In addition to, and in the alternative to the claims asserted on behalf of the Classes, Plaintiff also brings this action on behalf of an **Arizona Recall Subclass** that comprises: "All residents of Arizona who purchased or leased a Class Vehicle in the State of Arizona and said vehicle is subject to Recall 24V720000 (hereafter "Arizona Recall Subclass"). Hereafter, the Arizona Investigation Subclass and Arizona Recall Subclass are collectively referred to as the "Arizona Subclasses," and individual members are "Arizona Subclass Members."

### A. Numerosity of the Classes

47.     The members of the Classes are so numerous and geographically dispersed that their individual joinder is impracticable. While Plaintiff does not know the precise number of Class Members and members of the Subclasses, Plaintiff is informed and believes that there are more than 781,000 Class Vehicles in the Classes. Inasmuch as the Class Members may be identified through business records regularly maintained by Defendant and its employees and agents, and through other sources, the media, the number and identities of class members can be ascertained. Members of the Classes can be notified of the pending action by e-mail, mail, and supplemental published notice, if necessary.

### B. Existence and Predominance of Common Questions of Fact and Law

48.     There are questions of law and fact common to the Classes. These questions predominate over any questions affecting only individual Class Members. These common legal and factual issues include, but are not limited to:

  a.  Whether Defendant engaged in the conduct alleged herein;

b. Whether Defendant had knowledge of the heightened fire risks in the Class Vehicles when they placed Class Vehicles into the stream of commerce in the United States;

c. Whether Defendant should have had knowledge of the heightened fire risks in the Class Vehicles when they placed Class Vehicles into the stream of commerce in the United States;

d. When Defendant became aware of the defects causing fires in Class Vehicles;

e. Whether Defendant knowingly failed to disclose the existence and cause of the defects in the Class Vehicles;

f. Whether Defendant knowingly concealed the defects in the Class Vehicles;

g. Whether Defendant's conduct as alleged herein violates the Magnuson-Moss Warranty Act.

h. Whether Defendant's conduct as alleged herein violates the implied warranty of merchantability.

i. Whether Defendant has been unjustly enriched.

j. Whether Plaintiffs and Class Members overpaid for their vehicles.

k. Whether Defendant's conduct as alleged herein violates the other laws as set forth in the causes of action;

l. Whether Plaintiff and Class Members have suffered an ascertainable loss as a result of the defects;

m. And whether Plaintiff and Class Members are entitled to damages and equitable relief.

**C. <u>Typicality</u>**

49. Plaintiff's claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendant's

substantially uniform misconduct as described above. The Plaintiff representing the Classes is advancing the same claims and legal theories on behalf of himself and all other members of the Classes that he represents, and there are no defenses that are unique to Plaintiff. The claims of the Plaintiff and the Class Members arise from the same operative facts and are based on the same legal theories.

### D. <u>Adequacy of Representation</u>

50.     Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Classes he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel.

### E. <u>Predominance and Superiority</u>

51.     This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3), because questions of law and fact common to the Classes predominate over the questions affecting only individual members of the Classes and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct. Further, it would be virtually impossible for the members of the Classes to individually redress effectively the wrongs done to them. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents the potential for inconsistent or contradictory judgments. By contrast, the class action device presents the potential to manage these difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of

bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

52.     The Plaintiff contemplates the eventual issuance of notice to the proposed Class Members setting forth the subject and nature of the instant action. Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, the Plaintiff would contemplate the use of additional media and/or mailings.

53.     This action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

a. Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Classes will create the risk of:

i. inconsistent or varying adjudications with respect to individual members of the Classes which would establish incompatible standards of conduct for the party opposing the Classes; or

ii. adjudication with respect to individual members of the Classes which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b. The party opposing the Classes has acted or refused to act on grounds generally applicable to each member of the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole; or

c.  Common questions of law and fact exist as to the members of the Classes and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

i. The interests of the members of the Classes in individually controlling the prosecution or defense of separate actions;

ii. The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class;

iii. The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

iv. The difficulties likely to be encountered in the management of a Class Action.

## VI.  TOLLING OF THE STATUTES OF LIMITATIONS

54.  To the extent that there are any statutes of limitations applicable to Plaintiff's and Class Members' claims, the running of the limitations periods has been tolled by, inter alia, the following doctrines or rules: equitable tolling, the discovery rule, fraudulent concealment, equitable estoppel, the repair rule, and/or class action tolling.

## VII. CLAIMS

### COUNT ONE
### Violation of the Magnuson-Moss Warranty Act
### (15 U.S.C. § 2301, *et seq.*)
### (Alleged on behalf of all Classes)

55.    Plaintiff re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

56.    Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

57.    Defendant is a "supplier" and a "warranter" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

58.    The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

59.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(d)(1) provides for a cause of action for any consumer who is damaged by the failures of a warrantor to comply with a written warranty.

60.    Pursuant to 15 U.S.C. § 2310(e), Plaintiff and the Class Members are not required to provide Defendant notice of this class action and an opportunity to cure until the time the Court determines the representative capacity of Plaintiff pursuant to FRCP 23.

61.    Through implied warranties, Defendant warranted that the Class Vehicles are free from defects, of merchantable quality, and fit for their ordinary and represented use.

62.    Defendant breached the warranties as described herein. Plaintiff and other Class Members face the risk of spontaneous car fires and must park their vehicles away from structures and other vehicles to prevent property damages,

serious bodily injury, and death. As such, the Class Vehicles do not perform as promised and are unfit and unreasonably dangerous for ordinary use.

63.     Defendant knew or should have known, of the defects and potential Fire Risks in the Class Vehicles.

64.     Plaintiff and Class Members were damaged as a result of Defendant's breach of the implied warranty of merchantability because they received a product incapable of performing as Defendant represented without extreme risks to Plaintiff's and Class Members' safety, rendering the Class Vehicles less valuable than represented.

65.     Plaintiff and the Class Members are entitled to damages caused by Defendant's breach of the implied warranty of merchantability, including economic damages based upon either a return of Plaintiff's and Class Members' purchase price; and/or the difference between the price paid for the Class Vehicles as warranted and the actual value of the Class Vehicles as delivered, and consequential damages.

66.     Plaintiff seeks the establishment of a program, funded by FCA, for Plaintiff and Class Members to recoup out-of-pocket costs related to the Underhood Fire Risks and the Class Vehicles.

67.     In addition, Plaintiff and Class Members are entitled to reasonable attorneys' fees and costs as determined by the Court.

### COUNT TWO
**Breach of the Implied Warranty of Merchantability Under Pennsylvania Law**
**(13 Pa.C.S.A. 2314, *et. seq.*)**
**(Alleged on behalf of the Pennsylvania Subclasses)**

68.     Plaintiff and the Pennsylvania Subclasses re-allege and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

69.     FCA was at all relevant times a "merchant" within the meaning of 13 Pa.C.S.A. 2314(a).

70.     The Class Vehicles are "goods" under 13 Pa.C.S.A. 2314(b). Thus, an implied warranty of merchantability is attached to the Class Vehicles.

71.     The Class Vehicles were not merchantable when they were sold or leased because of the unreasonable risk of spontaneous fire alleged herein. The Class Vehicles have a common defect because they all contain a power steering pump electrical connector and/or high voltage battery that makes the vehicles susceptible to the Underhood Fire Risk which causes an unreasonable risk of property damage, serious bodily harm, and death to owners and lessees of the Class Vehicles and their property, bystanders, and passengers. Thus, the Class Vehicles were unmerchantable and unfit for their ordinary use when sold/leased and at all times thereafter.

72.     FCA breached the implied warranty of merchantability under Pennsylvania law by selling Class Vehicles containing these defects which lead to a spontaneous fire of the Class Vehicles while parked or driving. Plaintiff and Pennsylvania Subclass Members were thus deprived of the benefit of their bargain.

73.     Plaintiff and Pennsylvania Subclass Members are and were third-party beneficiaries of FCA's contracts with certified and authorized retailers who leased or sold the Class Vehicles to Plaintiff and the Pennsylvania Subclass.

74.     FCA had notice of these defects within a reasonable time of Plaintiff's knowledge of the defective nature of the Class Vehicles through the filing of complaints with the NHTSA regarding the Underhood Fire Risks and other means. FCA has not remedied the Underhood Fire Risks within the requisite time period.

75.     FCA's breach of the implied warranty of merchantability under Pennsylvania law directly and proximately damaged Plaintiff and Pennsylvania Subclass Members in an amount to be determined at trial.

76.     Plaintiff and Pennsylvania Subclass Members seek all damages and relief to which they are entitled.

### COUNT THREE
### Unjust Enrichment
### (COMMON LAW)
### (Alleged on behalf of the Pennsylvania Subclasses)

77.     Plaintiff and the Pennsylvania Subclasses re-allege and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

78.     Plaintiff brings this claim on behalf of himself and the Pennsylvania Subclasses.

79.     Plaintiff and Pennsylvania Subclass Members paid Defendant the value of non-defective, fully operational Class Vehicles with no risk of fires and no defects. In exchange, Defendant provided Plaintiff and Pennsylvania Subclass Members with defective vehicles that are not fully operational and cannot be operated due to a heightened risk of fire.

80.     Further, Defendant provided Plaintiff and Pennsylvania Subclass Members with Class Vehicles that are in need of repair, contrary to its advertisements assuring safety and reliability of the Class Vehicles. Plaintiff and Pennsylvania Subclass Members provided Defendant with the value of the Class Vehicles with no defects.

81.     Defendant knew or had reason to know that the defective vehicles are not fully operational and cannot be operated without risk due to a heightened risk of fire.

82.     As such, Plaintiff and Pennsylvania Subclass Members conferred value upon Defendant which would be unjust for Defendant to retain under Pennsylvania law.

83.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Pennsylvania Subclass Members have suffered and continue to suffer various injuries. As such, they are entitled to damages in the amount of their monetary loss, and restitution of all amounts by which Defendant was unjustly enriched through its misconduct.

## COUNT FOUR
**Breach of the Implied Warranty of Merchantability Under Arizona Law**
**(A.R.S. § 47-2314 *et. seq.*)**
**(Alleged on behalf of the Arizona Subclasses)**

84.     Plaintiff and the Arizona Subclasses re-allege and incorporate by reference each of the allegations contained in the preceding paragraphs in this Complaint as though fully set forth herein.

85.     FCA was at all relevant times a "seller" and "merchant" within the meaning of A.R.S. § 47-2314A.

86.     The Class Vehicles are "goods" under A.R.S. § 47-2314B. Thus, an implied warranty of merchantability is attached to the Class Vehicles.

87.     The Class Vehicles were not merchantable when they were sold or leased because of the unreasonable risk of spontaneous fire alleged herein. The Class Vehicles have a common defect because they all contain a power steering pump electrical connector and/or high voltage battery that makes the vehicles susceptible to the Underhood Fire Risk which causes an unreasonable risk of property damage, serious bodily harm, and death to owners and lessees of the Class Vehicles and to their property, bystanders, and passengers. Thus, the Class Vehicles were unmerchantable and unfit for their ordinary purpose when sold/leased and at all times thereafter.

88.     FCA breached the implied warranty of merchantability under Arizona law by selling Class Vehicles containing these defects which lead to spontaneous

fire of the Class Vehicles while parked or driving. Plaintiffs and Arizona Subclass Members were thus deprived of the benefit of their bargain.

89.     Plaintiff and Arizona Subclass Members are and were third-party beneficiaries of FCA's contracts with certified and authorized retailers who leased or sold the Class Vehicles to Plaintiff and the Arizona Subclass Members.

90.     FCA had notice of these defects within a reasonable time of Plaintiff's knowledge of the defective nature of the Class Vehicles through complaints filed with  the NHTSA regarding the Underhood Fire Risk and otherwise. FCA has not remedied the Underhood Fire Risks within the requisite time period.

91.     FCA's breach of the implied warranty of merchantability directly and proximately damaged Plaintiff and Arizona Subclass Members in an amount to be determined at trial.

92.     Plaintiff and Arizona Subclass Members seek all damages and relief to which they are entitled.

**COUNT FIVE**
**Unjust Enrichment**
**(COMMON LAW)**
**(Alleged on behalf of the Arizona Subclasses)**

93.     Plaintiff and the Arizona Subclasses re-allege and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

94.     Plaintiff and Arizona Subclass Members paid Defendant the value of non-defective, fully operational Class Vehicles with no risk of fires and no defects. In exchange, Defendant provided Plaintiff and Arizona Subclass Members with defective vehicles that are not fully operational and cannot be operated due to a heightened risk of fire.

95.     Further, Defendant provided Plaintiff and Arizona Subclass Members with Class Vehicles that are in need of repair or recall, contrary to its advertisements

assuring that consumers' safety and security is what matters most. Plaintiff and Arizona Subclass Members provided Defendant with the value of Class Vehicles with no defects.

96.     Defendant knew or had reason to know that the defective vehicles are not fully operational and cannot be operated without undue and heightened risk of fire.

97.     As such, Plaintiff and Arizona Subclass Members conferred value upon Defendant which would be unjust for Defendant to retain under Arizona law.

98.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and Arizona Subclass Members have suffered and continue to suffer various injuries. As such, they are entitled to damages in the amount of Plaintiff's monetary loss, and restitution of all amounts by which Defendant was enriched through its misconduct.

WHEREFORE, Plaintiff and the Classes and Subclasses pray for relief as set forth below.

## VIII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Stan Paris, on behalf of himself and the members of the Classes and Subclasses demands judgment against and general and special relief from Defendant as follows:

1.     An order certifying that the action may be maintained as a Class Action as defined herein and appointing Plaintiff and his counsel of record to represent the Classes and Subclasses as defined above;

2.     Determination that FCA US, LLC is financially responsible for all Class Members' notice and administration of Class Members' relief;

3.     Repair and restitution for the Underhood Fire Risks including recovery of the purchase price of their Class Vehicles, or the overpayment for their vehicles.

4.  An order awarding Plaintiff and the Class Members actual, general and special, incidental, compensatory, consequential damages, and restitution and/or disgorgement;

5.  An order awarding Plaintiff and the Class Members punitive damages;

6.  For prejudgment and post- judgment interest upon such judgment at the maximum rate provided by law;

7.  Reasonable attorneys' fees and costs; and

8.  Such other and further relief that this Court may deem proper.

## IX.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

Dated: January 7, 2025        **MANTESE HONIGMAN, PC**

By: */s/ Kenneth R. Chadwell*
    KENNETH R. CHADWELL (P39121)
    1361 E. Big Beaver Road
    Troy, MI 48083
    kchadwell@manteselaw.com
    Telephone: (248) 457-9200
    Fax: (248) 457-9201
    *Attorney for Plaintiff*

**COTCHETT, PITRE & McCARTHY, LLP**

By: */s/ Karin B. Swope*

    KARIN B. SWOPE
    THOMAS E. LOESER
    ELLEN J WEN
    1809 7th Avenue, Suite 1610
    Seattle, WA 98101
    kswope@cpmlegal.com
    tloeser@cpmlegal.com
    ewen@cpmlegal.com
    Telephone: (206) 802-1272
    Fax: (650) 697-0577

    ANNE MARIE MURPHY (*pro hac vice* to be submitted)
    840 Malcom Road, Suite 200
    Burlingame, CA 94010
    amurphy@cpmlegal.com
    Telephone: (650) 697-6000
    Fax: (650) 697-0577

    *Attorneys for Plaintiff*

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**

By: */s/ Gayle M. Blatt*

    GAYLE M. BLATT
    P. CAMILLE GUERRA
    110 Laurel Street,
    San Diego, CA 92101-1486
    gmb@cglaw.com
    camille@cglaw.com
    Telephone: (619) 238-1811
    Fax: (619) 544-9232

    *Attorneys for Plaintiff*