# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| GARY FRISCH, *et al*., on behalf of themselves and all others similarly situated, | Case No. 2:24-cv-10546-BRM-KGA |
| Plaintiffs, | Hon. Brandy R. McMillion |
| v. | Magistrate Judge Kimberly G. Altman |
| FCA US LLC, | |
| Defendant. | |

# PLAINTIFFS' OPPOSITION TO DEFENDANT FCA US LLC'S MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS PLAINTIFFS' <u>SECOND AMENDED CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

I.    INTRODUCTION AND BACKGROUND .......................................................1

II.   FCA HAS NO BASIS TO COMPEL ARBITRATION ....................................3

   A.   FCA Fails to Demonstrate Formation of Any Agreement to Arbitrate. .........4

   B.   FCA's Delegation Clause is Inapplicable Because this Court Must Determine Whether the Parties Agreed to Arbitrate....................................................................7

   C.   The Warranty Arbitration Clause is Unconscionable and Unenforceable.......9

III.  THE MOTION TO DISMISS SHOULD BE DENIED ...................................10

   A.   Legal Standard ...............................................................................................10

   B.   Plaintiffs Properly Pled Their Magnuson-Moss Warranty Act Claim...........10

   C.   Plaintiffs' Implied Warranty Claims Are Well-Pled .....................................11

      1.   The Class Vehicles are not merchantable because they can spontaneously catch fire and explode. .........................................................................................11

      2.   FCA's argument that the defect must "manifest" lacks merit. ...................12

      3.   Plaintiffs' claims do not fail for lack of pre-suit notice. ............................14

      4.   Plaintiffs' claims do not fail for lack of privity. ........................................16

   D.   Plaintiffs' State Statutory Claims are Well-Pled...........................................17

      1.   FCA vastly overstates the Rule 9(b) requirement. .....................................17

      2.   Plaintiffs have sufficiently pled pre-sale knowledge. ...............................18

        a.   This Court may find pre-sale knowledge of the Fire Risk Defect based on even a single NHTSA report. ...............................................................20

        b.   Pre-sale knowledge may be inferred for vehicles sold before the first NHTSA-reported fire..........................................................................................21

        c.   Plaintiffs are not required to plead pre-sale knowledge for many of the state law claims.................................................................................................23

      3.   FCA had a duty to disclose the Fire Risk Defect. ......................................25

      4.   The Economic Loss Doctrine does not bar Plaintiffs' claims....................28

      5.   FCA's North Carolina UDTPA-specific arguments are meritless.............29

      6.   FCA's Oklahoma CPA "regulated activities" argument fails....................30

      7.   Plaintiffs have properly pled their California UCL claims. .......................31

   E.   Plaintiffs' Unjust Enrichment Claims are Well-Pled.................................32

IV.   CONCLUSION ...............................................................................................35

## TABLE OF AUTHORITIES

### Cases

*Aceto Corp. v. TherapeuticsMD, Inc.*,
  953 F. Supp. 2d 1269 (S.D. Fla. 2013) ...............................................33

*Alexander v. Del Monte Corp.*,
  2011 WL 87286 (E.D. Mich. Jan. 11, 2011) ........................................24

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ...............................................................................9

*Baker v. Trans Union LLC*,
  2008 WL 2329099 (D. Ariz. June 4, 2008) ..........................................34

*Bassett v. NCAA*,
  528 F.3d 426 (6th Cir. 2008) ................................................................10

*Becker v. Delek US Energy, Inc.*,
  39 F.4th 351 (6th Cir. 2022) ...................................................................7

*Bermel v. BlueRadios, Inc.*,
  440 P.3d 1150 (Colo. 2019) ..................................................................28

*Bernardoni v. FCA US LLC*,
  2024 WL 3103316 (E.D. Mich. June 20, 2024) .....................................8

*Biederman v. FCA US, LLC*,
  2025 WL 458831 (N.D. Cal. Feb. 11, 2025) .........................................32

*Bledsoe v. FCA US LLC*,
  378 F. Supp. 3d 626 (E.D. Mich. 2019) ...............................................10

*Boykin v. Fam. Dollar Stores of Mich., LLC*,
  3 F.4th 832 (6th Cir. 2021) .....................................................................5

*Bradley Woodcraft, Inc. v. Bodden*,
  251 N.C. App. 27, 34, 795 S.E.2d 253 (2016) .....................................29

*Brown v. Loancare, LLC*,
  2020 WL 7389407 (W.D.N.C. Dec. 16, 2020) .....................................29

*Buffa v. Cygnature Constr. & Dev., Inc.*,
  796 S.E.2d 64 (N.C. Ct. App. 2016) .....................................................29

*Carriuolo v. Gen. Motors LLC*,
  72 F. Supp. 3d 1323 (S.D. Fla. 2014) ..................................................33

*Chapman v. Gen. Motors LLC*,
  531 F. Supp. 3d 1257 (2021) .......................................................... 14, 26

*Chow v. Aegis Mortg. Corp.*,
  286 F.Supp.2d 956 (N.D. Ill. 2003) .....................................................24

*Coastal Leasing Corp. v. O'Neal*,
  405 S.E.2d 208 (N.C. Ct. App. 1991) .................................................................16
*Cohen v. Subaru of America, Inc*.,
  2022 WL 721307 (D.N.J. Mar. 10, 2022) ...........................................................13
*Dairy, LLC v. Milk Moovement, Inc.*,
  2022 WL 2392622 (E.D. Cal. July 1, 2022) ........................................................34
*Daniel v. eBay, Inc.*,
  319 F. Supp. 3d 505 (D.D.C. 2018) .......................................................................5
*DeGasperi v. Valicenti*,
  181 A.2d 862 (Pa. Super. Ct. 1962) .....................................................................33
*DeMidio v. REV Recreation Grp., Inc.*,
  2018 WL 1744958 (N.D. Ind. Apr. 10, 2018) .......................................................7
*Dinwiddie v. Suzuki Motor of Am., Inc.*,
  111 F. Supp. 3d 1202 (W.D. Okla. 2015) ............................................................30
*Dollar Rent A Car Sys., Inc. v. P.R.P. Enters., Inc.*,
  2006 WL 1266515 (N.D. Okla. May 8, 2006) .....................................................33
*Droesser v. Ford Motor Co.*,
  2023 WL 2746792 (E.D. Mich. Mar. 31, 2023) ..................................................11
*Duncan v. Savannah, LLC*,
  637 S.W.3d 633 (Mo. Ct. App. 2021) ..................................................................24
*ESG Cap. Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016) .............................................................................35
*Estate of Pilgrim v. Gen. Motors, LLC*,
  596 F. Supp. 3d 808 (E.D. Mich. 2022) ...............................................................10
*Fisher v. FCA US LLC*,
  712 F. Supp. 3d 930 (E.D. Mich. Jan. 17, 2024) .................................................12
*Ford v. Midland Funding, LLC*,
  264 F. Supp. 3d 849 (E.D. Mich. 2017) .................................................................6
*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
  960 S.W.2d 41 (Tex. 1998) ..................................................................................29
*Francis v. Gen. Motors, LLC*,
  504 F. Supp. 3d 659 (E.D. Mich. 2020) .................................................. 14, 20, 34
*Gant v. Ford Motor Co.*,
  517 F. Supp. 3d 707 (E.D. Mich. 2021) ...............................................................30
*Gavenda v. Strata Energy, Inc.*,
  705 S.W.2d 690 (Tex. 1986) ................................................................................35
*Goff v. Nationwide Mut. Ins., Co.*,

825 F. App'x 298 (6th Cir. 2020) ..............................................................5

*Goldsmith v. Camden Cty. Surrogate's Office*,
 975 A.2d 459 (N.J. Super. 2009) .........................................................35

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
 561 U.S. 287 (2010)................................................................................4

*Great Earth Cos., Inc. v. Simons*,
 288 F.3d 878 (6th Cir. 2002)..................................................................5

*Gregg v. Ameriprise Fin., Inc.*,
 245 A.3d 637 (Pa. 2021) .......................................................................24

*Gregorio v. Ford Motor Co.*,
 522 F. Supp. 3d 264 (E.D. Mich 2021)................................... 12, 15, 16

*Harrison v. Gen. Motors*,
 2023 WL 348962 (E.D. Mich. Jan. 19, 2023) ............................. 10, 12

*Heller v. Lexton-Ancira Real Est. Fund, Ltd., 1972*,
 809 P.2d 1016 (Colo. App. 1990) ........................................................25

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 586 U.S. 63 (2019)..................................................................................8

*Himan v. Thor Indus., Inc.*,
 2022 WL 683650 (N.D. Ind. Mar. 8, 2022) ..........................................6

*Housepian v. Blue Cross Blue Shield Mich.*,
 2023 WL 3186946 (E.D. Mich. May 1, 2023) ......................................7

*In re Auto. Parts Antitrust Litig.*,
 50 F. Supp. 3d 869 (E.D. Mich. 2014)........................................... 33, 34

*In re Cardizem CD Antitrust Litig.*,
 105 F. Supp. 2d 618 (E.D. Mich. 2000).................................................33

*In re Chevrolet Bolt EV Battery Litig.*,
 633 F. Supp. 3d 921 (E.D. Mich. 2022)....................................... passim

*In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*,
 706 F. Supp. 3d 746 (E.D. Mich. 2023)....................................... passim

*In re Duramax Diesel Litig.*,
 298 F. Supp. 3d 1037 (E.D. Mich. 2018) ..................................... 17, 18

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
 446 F. Supp. 3d 218 (E.D. Mich. 2020)....................................... 14, 32

*In re Ford Super Duty Roof Crush Litig.*,
 No. 22-12079 (Sept. 30, 2024) .............................................................25

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*,
 568 F. Supp. 3d 837 (E.D. Mich. Oct. 26, 2021)................................10

*In re Generic Pharm. Pricing Antitrust Litig.*,
  368 F. Supp. 3d 814 (E.D. Pa. 2019) ...................................................32
*In re MyFord Touch Consumer Litig.*,
  291 F. Supp. 3d 936 (N.D. Cal. 2018) ................................................12
*In re Nickelodeon Consumer Privacy Litig.*,
  2014 WL 3012873 (D. N.J. July 2, 2014)...........................................34
*In re Packaged Seafood Prods. Antitrust Litig.*,
  242 F. Supp. 3d 1033 (S.D. Cal. 2017)...............................................33
*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  155 F. Supp. 3d 772 (N.D. Ill. 2016) ........................................... 15, 16
*In re Toyota Motor Corp.*,
  2012 WL 12929769 (C.D. Cal. May 4, 2012) .....................................28
*iStar RC Paradise Valley LLC v. Five Star Dev. Cmtys. LLC*,
  2011 WL 4852293 (D. Ariz. Oct. 13, 2011) ........................................34
*Johnson v. FCA US LLC*,
  555 F. Supp. 3d 488 (2021)..................................................................10
*Kopel v. Kopel*,
  229 So.3d 812 (Fla. 2017) ...................................................................34
*Lessin v. Ford Motor Co.*,
  2020 WL 6544705 (S.D. Cal. Nov. 6, 2020) .......................................15
*Lozada v. Dale Baker Oldsmobile, Inc.*,
  91 F. Supp. 2d 1087 (W.D. Mich. 2000)...............................................9
*Lyman v. Ford Motor Co.*,
  2022 WL 856393 (E.D. Mich. Mar. 22, 2022) ......................................7
*Martis v. Grinnell Mut. Reinsurance Co.*,
  905 N.E.2d 920 (Ill. App. 2009) .........................................................34
*Mercado v. Audi of Am., LLC*,
  2019 WL 9051000 (C.D. Cal. Nov. 26, 2019)......................................28
*Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*,
  72 F. App'x 916 (4th Cir. 2003)...........................................................33
*MetroPCS v. Devor*,
  215 F. Supp. 3d 626 (N.D. Ill. 2016) ..................................................35
*Milisits v. FCA US LLC*,
  2021 WL 3145704 (E.D. Mich. July 26, 2021) ............................. 16, 18
*Miller v. Samsung Elecs. Am., Inc.*,
  2015 WL 3965608 (D.N.J. 2015) ........................................................15
*Mills v. Barnard*,

869 F.3d 473 (6th Cir. 2017)..................................................................32

*Munters Corp. v. Swissco-Young Indus., Inc.*,
(App. 1 Dist. 2002) 100 S.W.3d 292, *review dismissed* ......................25

*Myers v. Liberty Lincoln-Mercury, Inc.*,
365 S.E.2d 663 (N.C. 1988)...................................................................24

*Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond v. Withumsmith Brown,
P.C.*, 692 F.3d 283 (3d Cir. 2012) ........................................................16

*Orthman v. Premier Pediatrics, PLLC*,
545 P.3d 124 (Okla. 2024) .....................................................................33

*Pension Fund v. Marine Bank*,
85 N.Y.2d 20 (N.Y. 1995).......................................................................24

*Perea v. Walgreen Co.*,
939 F. Supp. 2d 1026 (C.D. Cal. 2013) ..................................................31

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
842 So.2d 773 (Fla. 2003) .....................................................................24

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
223 Cal. App. 4th 1105 (2014)...............................................................24

*Raymo v. FCA US LLC*,
475 F. Supp. 3d 680 (E.D. Mich. 2020)..................................................35

*Roberts-Banks v. Fam. Dollar of Tenn., Inc.*,
2019 WL 5075832 (E.D. Tenn. Oct. 9, 2019)...........................................5

*Rose v. Zaring Homes, Inc.*,
702 N.E.2d 952 (Ohio Ct. App. 1st Dist. 1997) .....................................24

*Sanchez-Knutson v. Ford Motor Co.*,
52 F. Supp. 3d 1223 (S.D. Fla. 2014) ....................................................16

*Schmidt v. Ford Motor Co.*,
972 F. Supp. 2d 712 (E.D. Pa. 2013) .....................................................34

*Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*,
2024 WL 4507355 (E.D. Mich. Oct. 16, 2024)........................................17

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)................................................................................16

*Simon v. Pfizer Inc.*,
398 F.3d 765 (6th Cir. 2005)....................................................................4

*Sisemore v. Dolgencorp, LLC*,
212 F. Supp. 3d 1106 (N.D. Okla. 2016) ................................................30

*Solo v. United Parcel Serv. Co.*,
947 F.3d 968 (6th Cir. 2020)....................................................................4

*State ex rel. Horne v. AutoZone, Inc.*,
    258 P.3d 289 (Ariz. Ct. App. 2011) ......................................................23

*State ex rel. Rosenblum v. Johnson & Johnson*,
    362 P.3d 1197, 1203 (Or. App. 2015) ..................................................24

*State v. A.N.W. Seed Corp.*,
    802 P.2d 1353 (Wa. 1991)....................................................................25

*Stevenson v. Louis Dreyfus Corp.*,
    811 P.2d 1308 (N.M. 1991)..................................................................24

*Stoecker v. Echevarria*,
    975 A.2d 975 (N.J. App. Div. 2009) ....................................................24

*Thomas v. Metro. Life Ins. Co.*,
    540 F. Supp. 2d 1212 (W.D. Okla. 2008) ............................................31

*Toca v. Tutco, LLC*,
    430 F. Supp. 3d 1313 (S.D. Fla. 2020) ................................................15

*Trotter v. Am. Mod. Select Ins. Co.*,
    220 F. Supp. 3d 1266 (W.D. Okla. 2016) ............................................24

*U.S. Bank N.A. et al. v. Hill*,
    540 P.3d 1 (Okla. 2023) .......................................................................31

*Villalobos v. CarMax Auto Superstore Cal., LLC*,
    2014 WL 1600413 (S.D. Cal. Apr. 17, 2014) ......................................24

*VocalSpace, LLC v. Lorenso*,
    2010 WL 11527374 (E.D. Tex. Jan. 29, 2010) ....................................35

*Weber, Hodges & Godwin Com. Real Est. Servs., LLC v. Hartley*,
    750 S.E.2d 919 (N.C. Ct. App. 2013)...................................................29

*Weinberg v. Advanced Data Processing, Inc.*,
    147 F. Supp. 3d 1359 (S.D. Fla. 2015) ................................................33

*Weiss v. Gen. Motors LLC*,
    418 F. Supp. 3d 1173 (S.D. Fla. 2019) ................................................16

*White v. FCA US LLC*,
    No. 21-11696 (E.D. Mich. Mar. 31, 2023) ..........................................10

*White v. Gen. Motors*,
    2022 WL 3597161 (D. Colo. July 7, 2022) ..........................................29

*Williams v. Wells Fargo Bank N.A.*,
    2011 WL 4368980 (S.D. Fla. Sept. 19, 2011).......................................32

## Other Authorities

28 U.S.C. § 1332(d) ..................................................................................10

49 U.S.C. §§ 30101-170 ............................................................................28

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................ 17, 18

## STATEMENT OF ISSUES PRESENTED

1. Should this Court reject FCA's efforts to compel Plaintiffs to individual arbitrations based on inconspicuous arbitration clauses buried in lengthy written warranties that Plaintiffs did not receive, review, or have knowledge of prior to purchasing their vehicle?

   Plaintiffs' answer: Yes.

2. Should this Court deny FCA's motion to dismiss the Magnuson-Moss Warranty Act claim where Plaintiffs have an independent basis for jurisdiction and have sufficiently pled viable state law implied warranty claims?

   Plaintiffs' answer: Yes.

3. Should this Court reject FCA's argument that the Class Vehicles are merchantable when they contain a defective battery that can, and has, caused vehicle fires and explosions?

   Plaintiffs' answer: Yes.

4. Should this Court reject FCA's argument that the defect must "manifest" to maintain an implied warranty claim where Plaintiffs have adequately alleged that the defect has manifested in the vehicles, and the contention that the defect must manifest, *i.e.*, catch fire, has been rejected in this District?

   Plaintiffs' answer: Yes.

5. Have Plaintiffs provided FCA with adequate pre-suit notice?

   Plaintiffs' answer: Yes.

6. Have Plaintiffs adequately explained that the implied warranty of merchantability claims under the laws of Arizona, Florida, Illinois, North Carolina, Ohio, Oregon, and Washington should not be dismissed for lack of privity where the issue of privity is fact-intensive and better suited for summary judgment, and several of the states at issue recognize exceptions to the privity requirement?

   Plaintiffs' answer: Yes.

7. Should this Court deny FCA's motion to dismiss Plaintiffs' statutory consumer protection claims where Plaintiffs' allegations satisfy Rule (9), where

Plaintiffs adequately allege FCA's pre-sale knowledge of the defect, and where Plaintiffs adequately allege that FCA had a duty to disclose the defect?

> Plaintiffs' answer: Yes.

8.  Should this Court deny FCA's motion to dismiss Plaintiffs' statutory consumer protection claims under the laws of Colorado, North Carolina, and Texas when the economic loss doctrine does not bar Plaintiffs' claims?

> Plaintiffs' answer: Yes.

9.  Should this Court deny FCA's motion to dismiss Plaintiff's North Carolina statutory consumer protection claim where Plaintiff's allegations satisfy the statute's requirements, and Plaintiff alleged in-state injuries because he purchased his vehicle from an FCA authorized dealer in North Carolina?

> Plaintiffs' answer Yes.

10. Should this Court deny FCA's motion to dismiss Plaintiff's Oklahoma statutory consumer protection claim where the statute's safe harbor for regulated activities does not apply here?

> Plaintiffs' answer: Yes.

11. Should this Court deny FCA's motion to dismiss Plaintiffs' claims under California's Unfair Competition Law (UCL) where Plaintiffs' allegations satisfy the UCL?

> Plaintiffs' answer: Yes.

12. Should the Court deny FCA's motion to dismiss Plaintiffs' unjust enrichment claims where Plaintiffs adequately allege that FCA received a benefit from the sale of the Class Vehicles, Plaintiff do not allege express warranty claims, the mere existence of an express warranty does not preclude unjust enrichment claims, and unjust enrichment claims may be pled as standalone claims?

> Plaintiffs' answer: Yes.

## STATEMENT OF CONTROLLING
## OR MOST APPROPRIATE AUTHORITY

*Boykin v. Fam. Dollar Stores of Mich., LLC*,
     3 F.4th 832 (6th Cir. 2021)

*In re Auto. Parts Antitrust Litig*.,
     50 F. Supp. 3d 869 (E.D. Mich. 2014)

*In re Chevrolet Bolt EV Battery Litig*.,
     633 F. Supp. 3d 921 (E.D. Mich. 2022)

*In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*,
     706 F. Supp. 3d 746 (E.D. Mich. 2023)

*In re Duramax Diesel Litig.*,
     298 F. Supp. 3d 1037 (E.D. Mich. 2018)

*FCA US LLC Monostable Electronic Gearshift Litig*.,
     280 F. Supp. 3d 975 (E.D. Mich. 2017)

*Fisher v. FCA US LLC*,
     712 F. Supp. 3d 930 (E.D. Mich. Jan. 17, 2024)

*Ford v. Midland Funding, LLC*,
     264 F. Supp. 3d 849 (E.D. Mich. 2017)

*Francis v. Gen. Motors, LLC*,
     504 F. Supp. 3d 659 (E.D. Mich. 2020)

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
     561 U.S. 287 (2010)

*Milisits v. FCA US LLC*,
     2021 WL 3145704 (E.D. Mich. July 26, 2021)

*Solo v. United Parcel Serv. Co.*,
     947 F.3d 968 (6th Cir. 2020)

## I.     INTRODUCTION AND BACKGROUND

This case involves a dangerous defect with the high voltage hybrid battery ("HV Battery") system in 2020-2024 Jeep Wrangler 4xe and 2022-2024 Jeep Grand Cherokee 4xe plug-in hybrid electric vehicles (the "Class Vehicles"). The HV Batteries of these Class Vehicles can catch fire and explode (the "Fire Risk Defect"), which can and has resulted in property damage and serious injuries as documented in Plaintiffs' Second Amended Complaint (ECF No. 30, the "SAC").

Plaintiffs and the other putative Class Members are owners or lessees of these Class Vehicles. They paid a substantial premium for their hybrid Class Vehicles compared to the gas-powered equivalents. However, pursuant to FCA US LLC's ("FCA" or "Defendant") instructions, they have been deprived of the Class Vehicle's advertised hybrid functionality. FCA has issued two recalls in the past two years— the "B9A" Recall in 2023 (the "2023 Recall") and the "95B" Recall in 2024 (the "2024 Recall"). In announcing its recalls, FCA expressly instructed Class Members not to charge their Class Vehicles (*i.e.*, not to plug in their plug-in hybrids) and even to park outside of their garages and away from any other structures or vehicles to minimize (but not eliminate) the risk of fire-related injury or death.

FCA's recalls have focused on attempted software "remedies." To be clear, FCA has not and could not remedy a physical *hardware* defect with the HV Batteries through a *software* solution. Rather, FCA's attempted "remedies" are limited to

trying to diagnose the most at-risk HV Batteries and then replacing them with *identical* HV Batteries, which will not cure the Fire Risk Defect. FCA has already admitted that the 2023 Recall was ineffective. The 2024 Recall, another software update, appears to be similarly ineffective.

In addition to the fires and explosions reported before this litigation commenced, there are numerous reports of Class Vehicles catching fire and/or exploding even *after* receiving the 2024 Recall "remedy." The NHTSA Complaint database (of which the Court may take judicial notice[1]) shows at least five reports of fires ***in 2025 alone***, including one where a Class Vehicle fire burned down the Class Member's house in the middle of the night and another that caught fire shortly after receiving the 2024 Recall "remedy" on December 19, 2024. Upon information and belief, there have been additional fires in 2025 that have not been reported to NHTSA.

Every Class Member has been harmed by their overpayment for these defective vehicles, lost use of hybrid functionality, and the requirement that they park away from structures or other vehicles. Plaintiffs and Class Members have also been unable to realize the substantial gas savings promised to them when they paid a hefty price premium for their Class Vehicles; indeed their vehicles provide *worse*

---

[1] The NHTSA Complaint database is available at https://www.nhtsa.gov/nhtsa-datasets-and-apis.

gas mileage than gas-only equivalents because of the 800-lb HV Battery's dead weight. Unsurprisingly, the secondary market value of these cars has also plummeted and Plaintiffs and Class Members, who have been justifiably too afraid to keep their incendiary Class Vehicles, have had to take substantial losses in trading in or selling the vehicles due to the Fire Risk Defect.

Plaintiffs' claims, brought on behalf of themselves and other owners/lessees of Class Vehicles from their respective states, are well pled. FCA's attempt to avoid responsibility, by seeking to compel arbitration, lacks merit for multiple reasons, first and foremost because there is no agreement to arbitrate here. FCA's arguments for dismissal ignore allegations in the SAC and are premised on fundamental misconstructions of applicable state laws. FCA's motions should be denied.

## II.    FCA HAS NO BASIS TO COMPEL ARBITRATION

FCA's motion to compel arbitration is limited to two paragraphs about an express warranty booklet that is irrelevant to Plaintiffs' claims. There is no basis to bind Plaintiffs to an inapplicable and unsigned arbitration provision buried in a glove box warranty booklet that was never presented to Plaintiffs or Class Members at the time of purchase or lease, that they did not agree to. Despite the numerous automotive defect class actions in this District, no judge has allowed an automotive manufacturer to rely on and enforce these hidden warranty booklet arbitration provisions, which would essentially provide defendants immunity from class actions

where consumers seek redress for the design and sale of dangerous, defective vehicles.[2] FCA's motion to compel should be denied.[3]

## A. FCA Fails to Demonstrate Formation of Any Agreement to Arbitrate.

FCA's arbitration motion is premised entirely on language in its warranty booklet. Critically, FCA presents no evidence that Plaintiffs ever agreed to arbitrate through the warranty booklet (or otherwise).[4] As the moving party, FCA "ha[s] the initial duty to present evidence that would allow a trier of fact to find all required

---

[2] FCA itself previously withdrew a motion to compel arbitration based on the limited warranty arbitration provisions after plaintiffs voluntarily dismissed their breach of express warranty claims (which have not been alleged here). In doing so, FCA explained that, after a "review of the law," it was "not going to win on" the mutual assent theory and be able to compel plaintiffs to arbitration. *See* Ex. 1, Mot. Hr'g. Tr. 48:10-49:12, *Fisher v. FCA US LLC*, No. 2:23-10426 (E.D. Mich. Dec. 12, 2023) (Leitman, J.).

[3] FCA failed to raise any arbitration arguments in its first motion to dismiss, which sought dispositive rulings on the merits of Plaintiffs' claims. ECF No. 16. Accordingly, FCA has waived any such arguments. *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020) ("[A] motion to dismiss that seeks 'a decision on the merits' and 'an immediate and total victory in the parties' dispute' is entirely inconsistent with later requesting that those same merits questions be resolved in arbitration." (citation omitted)). Not only was FCA's first motion silent on arbitration, its responses to Plaintiffs' pre-suit notice letters likewise failed to mention anything about arbitration. *See* Exs. 2-5, FCA's Response Letters to Plaintiffs' Pre-suit Notice Letters.

[4] *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ("[T]he court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce."); *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) ("[A]rbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." (citation omitted)).

elements of a contract" under the Rule 56 summary judgment standard, *i.e.*, to show that Plaintiffs agreed to arbitrate their claims against FCA.[5] The court must "determine whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists" with all facts and inferences drawn "in the light most favorable" to the opposing party.[6] If the opposing party shows "a genuine issue of material fact as to the validity of the agreement to arbitrate," the motion to compel arbitration must be denied.[7]

Here, the ***only*** "evidence" that FCA presents of formation are a few unsigned, generic warranty booklets. ECF Nos. 32-2–32-6. FCA provides no evidence that any of the Plaintiffs actually received these booklets when they purchased/leased their Class Vehicles, let alone agreed to the terms therein.[8] *Ford v. Midland Funding,*

---

[5] *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 839 (6th Cir. 2021).

[6] *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *Goff v. Nationwide Mut. Ins., Co.*, 825 F. App'x 298, 302 (6th Cir. 2020) (same).

[7] *See, e.g.*, *Roberts-Banks v. Fam. Dollar of Tenn., Inc.*, 2019 WL 5075832, at *3 (E.D. Tenn. Oct. 9, 2019).

[8] If the warranty booklets did in fact come with Plaintiffs' Class Vehicles (which FCA has not established), Plaintiffs could not have received them until *after* they completed their purchase/lease transactions and received the keys to their vehicles. FCA has provided no evidence to suggest otherwise and, because arbitration provisions are material terms to a contract, FCA could not impose arbitration after the transaction was completed. *See, e.g.*, *Daniel v. eBay, Inc.*, 319 F. Supp. 3d 505, 512 (D.D.C. 2018) ("[T]he party cannot agree to a newly-added arbitration clause without personal notice of that provision."); *Himan v. Thor Indus., Inc.*, 2022 WL

*LLC*, 264 F. Supp. 3d 849, 855 (E.D. Mich. 2017) ("It is axiomatic, however, that a party cannot assent to an agreement—even through conduct—if the agreement was never sent or otherwise communicated to her."). Nor does FCA present any evidence that any Plaintiff signed the "Agreement to Arbitrate" that resides in the warranty booklet, even though the booklet itself clearly contemplates that a *signature* is required for acceptance:

> [Y]ou agree that any dispute arising out of or relating to any aspect of the relationship between you and FCA US LLC will not be decided by a judge or jury but instead by a single arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules in effect at the time you **signed the Agreement to Arbitrate**.[9]

In fact, as set forth in the attached Declarations, Plaintiffs neither received the warranty booklets nor agreed to the arbitration provisions therein before or during the purchase/lease of their Class Vehicles.[10] FCA's motion to compel also fails

---

683650, at *7 (N.D. Ind. Mar. 8, 2022) (declining to compel arbitration where the defendants "failed to establish that [the plaintiff] ever knew that the arbitration clause existed within the limited warranty much less that she ever agreed or intended to be bound by it").

[9] ECF No. 32-2, PageID.5368; ECF No. 32-3, PageID.5401; ECF No. 32-4, PageID.5434; ECF No. 32-5, PageID.5467; 32-6 at PageID.5500 (emphasis added).

[10] *See* Plaintiffs' Declarations at Exhibits 6-32. Although these declarations are enough to show a genuine issue of material fact, discovery will further confirm the absence of any valid arbitration agreement. After all, FCA's vehicle warranty is merely a commitment that FCA will repair defects in its vehicles; it is not an independent contract that Plaintiffs entered into directly with FCA at the time of sale. *See*, *e.g.*, *DeMidio v. REV Recreation Grp., Inc.*, 2018 WL 1744958 (N.D. Ind.

because the warranty booklet arbitration language was never presented as a condition of sale or lease for the Class Vehicle. Thus, Plaintiffs did not provide mutual assent to arbitrate their claims against FCA.[11] Since FCA has failed to show evidence of mutual assent or signed agreement, at the very least a genuine issue of material fact exists as to whether Plaintiffs agreed to arbitrate through FCA's warranty booklet. FCA has not satisfied its heavy Rule 56 burden.

## B. FCA's Delegation Clause is Inapplicable Because this Court Must Determine Whether the Parties Agreed to Arbitrate.

Where, as here, the very formation of the purported arbitration agreement is in dispute, it is up to the court—not an arbitrator—to decide the issue.[12] Even if FCA did establish formation (it has not), it would also be for the Court to decide whether FCA's *delegation clause* is valid.[13] The burden is on FCA to show that the parties'

---

Apr. 10, 2018) ("[Defendant's] argument that the Plaintiffs should be bound by the arbitration provision simply on the basis that it was included in the written limited warranty is unavailing.").

[11] *See, e.g.*, *Housepian v. Blue Cross Blue Shield Mich.*, 2023 WL 3186946, at *3 (E.D. Mich. May 1, 2023) ("To establish mutuality of agreement, [the moving party] must demonstrate a 'meeting of the minds' on all essential contract terms.").

[12] *See e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Lyman v. Ford Motor Co.*, 2022 WL 856393, at *3 (E.D. Mich. Mar. 22, 2022) ("Where an agreement contains a so-called delegation provision, the court must first determine whether a valid arbitration clause exists."); *Midland*, 264 F. Supp. 3d 849 at 854 (similar).

[13] *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) ("If the validity

arbitration agreement delegated arbitrability by "clear and unmistakable" evidence. *Henry Schein, Inc.*, 586 U.S. at 69. FCA cannot meet that burden here, because the delegation language in the warranty booklet's arbitration clause is neither clear nor unmistakable on this issue.

FCA claims the arbitration provision delegates disputes over the "existence, scope, or validity of the arbitration agreement" to an arbitrator (*see* ECF No. 32, PageID.5337-38), but the lone language in the warranty booklet that FCA cites for that merely indicates that arbitration will be "administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules." *See supra*, n. 8.[14] Far from clearly delegating the issue to the arbitrator, this clause expressly contemplates that a ***court*** has the ability to decide which claims could be subject to arbitration:

> If **a court** or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy (such as declaratory relief), then that claim or remedy (and only that claim or remedy) shall be severed and must be brought in court and any other claims must be arbitrated.

---

of a delegation provision is challenged in response to a motion to compel arbitration, then the court, rather than the arbitrator, must address those challenges."). *Bernardoni v. FCA US LLC*, 2024 WL 3103316 (E.D. Mich. June 20, 2024), cited by FCA, is inapposite because the parties there did not dispute formation of the signed arbitration contract. *See id.* at *2. Here, formation is very much in dispute.

[14] The clause does not reference AAA Consumer Arbitration Rule R-14 regarding the scope of jurisdiction of the arbitrator (and the hyperlink FCA cites in its briefing is likewise missing).

*See id*. Certainly, this provision does not ***clearly and unmistakably*** delegate arbitrability to an arbitrator. This Court must decide arbitrability.

### C. The Warranty Arbitration Clause is Unconscionable and Unenforceable.

Even if FCA could establish formation (it has not), the arbitration provision is unconscionable and thereby unenforceable in any event. The clause in the warranty booklet suffers from both procedural and substantive unconscionability. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011).

As to procedural unconscionability, Plaintiffs did not, and could not have, negotiated the arbitration language in a form warranty booklet they were not even provided with before they purchased or leased their vehicles. Nor can FCA credibly argue that Plaintiffs had any ability to bargain over this form provision.[15]

The provision is also substantively unconscionable because, *inter alia*, it purports to require Plaintiffs to arbitrate *all claims* related to FCA, and not just those related to FCA's express warranty. The unfairness is well demonstrated here; Plaintiffs' claims are not about FCA's express warranty, and yet FCA is trying to use the express warranty's arbitration language to compel Plaintiffs' claims into

---

[15] *See, e.g.*, *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F. Supp. 2d 1087, 1100 (W.D. Mich. 2000) (arbitration agreement was procedurally unconscionable where plaintiffs "had no reasonable opportunity to review the agreement"). The same is true for the arbitration provision's 30-day opt-out. Plaintiffs could not have timely requested to opt out where FCA never notified them of this provision at all.

arbitration. This would effectively insulate FCA from any type of claim in court.

## III. THE MOTION TO DISMISS SHOULD BE DENIED

### A. Legal Standard

To survive a motion to dismiss, a complaint need only provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 634 (E.D. Mich. 2019). The Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Plaintiffs Properly Pled Their Magnuson-Moss Warranty Act Claim.

Contrary to FCA's suggestion, Courts in this District have repeatedly held that Plaintiffs can pursue nationwide MMWA claims and the proper time to address standing for nationwide claims is at class certification.[16] This Court has jurisdiction over Plaintiffs' MMWA claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") and courts in this District routinely allow MMWA claims where the court has jurisdiction under CAFA.[17] Moreover, because Plaintiffs have properly

---

[16] *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 948-49 (E.D. Mich. 2022); *Johnson v. FCA US LLC*, 555 F. Supp. 3d 488, 495-99 (2021); *White v. FCA US LLC*, No. 21-11696 (E.D. Mich. Mar. 31, 2023) (Ex. 33, at PageID.1546).

[17] *See e.g.*, *Estate of Pilgrim v. Gen. Motors, LLC*, 596 F. Supp. 3d 808, 821 (E.D. Mich. 2022); *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 568 F. Supp. 3d 837, 841-44 (E.D. Mich. Oct. 26, 2021); *Harrison v. Gen. Motors*, 2023 WL 348962, *16 (E.D. Mich. Jan. 19, 2023). FCA cites *Droesser v. Ford Motor Co.*,

pled their state law warranty claims (*see infra* Section III.C), Plaintiffs' MMWA

claims are properly pled.

### C. Plaintiffs' Implied Warranty Claims Are Well-Pled.

### 1.   The Class Vehicles are not merchantable because they can spontaneously catch fire and explode.

It is difficult to imagine a vehicle more unfit for its ordinary or intended use

than one at risk of spontaneously exploding. As Judge Lawson explained in a similar,

hybrid battery fire risk case, involving FCA's Chrysler Pacifica vehicle:

> The plaintiffs allege — and the defendant admitted in its October 2022
> recall letter — that the vehicles have a defect that creates a risk of
> spontaneous and destructive immolation . . . Based on those
> circumstances, a reasonably prudent owner in the plaintiffs' position
> has little choice other than to persist in adherence to the defendant's
> initial recall directives to (1) abstain entirely from charging the vehicles
> from grid power, and (2) never leave the vehicles unattended in any
> location proximate to any structure or other vehicles.
> . . .
> [R]easonable drivers certainly and nearly universally would concur
> that a vehicle which is forbidden to park near any structure or other
> vehicle at any time is scarcely "useful" even in the ordinary sense of
> "getting from point A to point B," considering the multitude of public
> locations where it is likely to be difficult or impossible to access any
> available parking spots and still follow the defendant's restrictions.[18]

Here, Plaintiffs similarly allege that their vehicles are dangerous, unsafe, and

---

2023 WL 2746792, at \*18-19 (E.D. Mich. Mar. 31, 2023), but that decision ignored
the weight of Sixth Circuit authority and instead followed a Ninth Circuit decision.

[18] *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 706 F. Supp. 3d 746, 780
(E.D. Mich. 2023); *see also Chevy Bolt*, 633 F. Supp. 3d at 979 ("The alleged fire-
risk defect clearly constitutes a serious safety defect, and is enough to render a
vehicle unmerchantable.").

unreliable because they contain a defective HV Battery that can cause, and has caused with alarming frequency, vehicle fires and explosions. SAC ¶¶ 1-8, 273. This unremedied safety defect makes each Class Vehicle unfit to drive (or even store, since most of the fires have occurred while the car is parked and turned off) regardless of whether it has caught fire. FCA argues that "prolonged use of Plaintiffs' vehicles without a problem" should defeat their claims, but courts consistently reject this argument because the mere fact that a vehicle can provide transportation does not automatically render that vehicle merchantable (*i.e.*, regardless of any defects and associated risks).[19]

### 2.       FCA's argument that the defect must "manifest" lacks merit.

FCA insists that Plaintiffs' vehicles themselves must catch fire within the warranty period for them to bring an implied warranty claim. But as Judge Lawson recently summarized in *Chrysler Pacifica*, "courts sensibly have rejected such an absurd construction of the warranty guarantee, holding that 'it would be perverse to require [the plaintiff] to be involved in an accident to prove that her car manifested

---

[19] *See e.g.*, *Fisher v. FCA US LLC*, 712 F. Supp. 3d 930, 945 (E.D. Mich. Jan. 17, 2024) ("For an automobile to be merchantable in the usual sense, the law requires more than that it simply move from point to point under its own power. Ordinary car buyers reasonably expect, and the law allows that they should expect, cars not only to provide transportation, but also do so in a reasonably safe and reliable manner."); *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 290 (E.D. Mich 2021); *Harrison*, 2023 WL 348962, at *12; *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 945-49 (N.D. Cal. 2018).

the defect.'" As Judge Lawson reasoned:

> The allegedly indefinite and ongoing consignment to uselessness of such a primary operating capability, which was featured prominently in defendant's product literature as a major selling point of the cars, certainly constitutes "manifestation" of a problem by any reasonable construction of that term. And that manifestation allegedly has occurred with all of the class vehicles at least within the extended powertrain warranty period. [20]

This reasoning applies with full force here. In November 2023, FCA issued an initial recall advising Plaintiffs and putative Class Members "not to recharge their vehicles, and to park outside and away from structures and other vehicles until the remedy was available and effectuated." SAC ¶¶ 10-11. In fall 2024, FCA announced a second recall that admitted the 2023 Recall was ineffective, added tens of thousands of additional vehicles, and provided the consumers with similar instructions about not charging their vehicles or parking near any structures or other vehicles. *Id*. ¶¶ 15-16. Certainly, the Fire Risk Defect manifested in the Class Vehicles within the warranty period. Equally certain, a vehicle which cannot be

---

[20] 706 F. Supp. 3d at 782 (citation omitted). FCA's sole reliance on *Cohen v. Subaru of America, Inc*., 2022 WL 721307, at *9, 11 (D.N.J. Mar. 10, 2022), an unpublished out-of-district case to argue that several states (CA, FL, NJ, NC, PA, and TX) require manifestation to state implied warranty claims, is misplaced. First, *Cohen* did not individually analyze each state's laws regarding manifestation. Second, *Tijerina*, decided after *Cohen*, held allegations that plaintiffs purchased vehicles with a defect and that "the ordinary use of the Class Vehicles to reliably and safely transport them was precluded by the consequences of an inherent defect in their vehicles," sufficiently supported "that a defect exists notwithstanding it has yet to manifest in some Class Vehicles." *Tijerina*, 2023 WL 6890996, at *16-20 (D.N.J. Oct. 19, 2023).

charged is not a "hybrid" and results in reduced gas mileage.

### 3.   Plaintiffs' claims do not fail for lack of pre-suit notice.

Plaintiffs provided FCA pre-suit notice of its alleged wrongdoing by letters dated February 26, 2024 and February 28, 2024, prior to filing their initial complaint. *See* Exs. 34 and 35; ECF No. 24-62, PageID.3359. On June 14, 2024 and November 23, 2024, prior to filing the FAC and SAC, Plaintiffs provided FCA with pre-suit notice for those Plaintiffs who were named for the first time in the FAC and SAC. Exs. 36 and 37. FCA has acknowledged receipt of these pre-suit letters. ECF No. 32, PageID.5342.

These letters constitute sufficient pre-suit notice.[21] In this District, courts routinely conclude that "[w]here the buyer gives some notice of the breach, the issues of timeliness and sufficiency are questions of fact."[22] As such, "[p]articularly in the absence of any showing by the defendant that it was not afforded a commercially reasonable opportunity to address the alleged defect, dismissal on the pleadings is disfavored."[23] FCA's state-specific notice arguments for Florida, New

---

[21] *Chevy Bolt*, 633 F. Supp. 3d at 977; *Chrysler Pacifica*, 706 F. Supp. 3d at 783.

[22] *Chrysler Pacifica*, 706 F. Supp. 3d at 776-77, 783 (quoting *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d 218, 227 (E.D. Mich. 2020)).

[23] *Id*. at 777 (quoting *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 682 (E.D. Mich. 2020)); *Chevy Bolt*, 633 F. Supp. 3d at 977 (2022) (quoting *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1305 (2021))).

Jersey,[24] Illinois,[25] Pennsylvania,[26] and Texas[27] each fail as well.

Finally, the Sixth Circuit has held that state law pre-suit notice requirements are inapplicable in federal court because they are procedural rules that conflict with the Federal Rules of Civil Procedure. *Albright v. Christensen*, 24 F.4th 1039, 1046-49 (6th Cir. 2022) (holding that "presuit-notice requirements in diversity cases do not apply in the federal courts"); *see also Pledger v. Lynch*, 5 F. 4th 511 (4th Cir. 2021). Requiring litigants to commence federal proceedings with pre-suit notices to defendants, instead of in court, conflicts with Federal Rules 3 (requiring that "[a] civil action is commenced by filing a complaint with the court") and 8 (specifying

---

[24] In Florida and New Jersey, pre-suit notice is not required to a remote manufacturer. *See Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1323 (S.D. Fla. 2020); *Tijerina*, 2023 WL 6890996, at *20. FCA's reliance on *Miller v. Samsung Elecs. Am., Inc.*, 2015 WL 3965608, at *15 (D.N.J. 2015) is misplaced. Unlike here, the plaintiff in *Miller* provided *no* pre-suit notice. Additionally, the court in *Miller* dismissed an express, not implied, warranty claim for failure to give notice (as required by a provision of the written warranty there).

[25] Direct notice is not required in Illinois where, as here, plaintiffs allege that defendant had actual knowledge of the defect. *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 800 (N.D. Ill. 2016); SAC ¶¶ 10-11, 341-353.

[26] In Pennsylvania, "[t]he filing of a complaint has been held to satisfy the notice requirement for a breach of warranty claim." *Gregorio*, 522 F. Supp. 3d at 290.

[27] In Texas, a buyer need only allege that "some notice" was provided, and "issues regarding the timeliness and sufficiency of the notice are questions fact." *Lessin v. Ford Motor Co.*, 2020 WL 6544705, at *5, *9 (S.D. Cal. Nov. 6, 2020).

what a pleading should contain).[28]

### 4. Plaintiffs' claims do not fail for lack of privity.

FCA argues that implied warranty claims from certain states fail for lack of privity, but this argument fails as a matter of law under the respective laws of those states.[29] Moreover, courts in this District have repeatedly held that the issue of whether privity exists in this context is fact-intensive and better suited for summary judgment. *See, e.g.*, *Milisits v. FCA US LLC*, 2021 WL 3145704, at \*6-7 (E.D. Mich. July 26, 2021). None of Plaintiffs' claims should be dismissed on privity grounds.

---

[28] This conflict is particularly pronounced if a state pre-suit notice deficiency is considered to be incurable and a bar to recovery. Federal Rules 3 and 8 are obviously valid, and there is no need to conduct an *Erie* analysis. *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond v. Withumsmith Brown, P.C.*, 692 F.3d 283, 303 (3d Cir. 2012) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 410 (2010)).

[29] **FL**: "Florida courts accept the premise that plaintiffs who purchase a vehicle from an authorized dealership are in privity with the manufacturer." *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1182-83 (S.D. Fla. 2019); *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014) (applying third-party beneficiary exception to implied warranty claim under Florida law). **IL**: Illinois law recognizes privity exceptions for direct-to-consumer advertisements and warranties like those here. *See In re Rust-Oleum*, 155 F. Supp. 3d at 806–07; SAC ¶¶ 69-70, 510. **NC**: North Carolina recognizes an exception to privity for third-party beneficiaries. *Gregorio*, 522 F. Supp. 3d at 293 (recognizing a third-party beneficiary exception to privity under North Carolina law where plaintiffs purchased from the manufacturer's authorized dealership) (citing *Coastal Leasing Corp. v. O'Neal*, 405 S.E.2d 208 (N.C. Ct. App. 1991)). A privity exception also arises "when the plaintiff relies on written labels or advertisements of a manufacturer." *In re Rust-Oleum*, 155 F. Supp. 3d at 807 (Illinois and North Carolina).

**D. Plaintiffs' State Statutory Claims are Well-Pled.**

    **1.**    **FCA vastly overstates the Rule 9(b) requirement.**

Rule 9(b) requires Plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "is not intended to be an insurmountable hurdle for claimants to overcome; the complaint must give the party adequate notice of the charges—it need not [marshal] all of the evidence against him." *Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*, 2024 WL 4507355, at *11 (E.D. Mich. Oct. 16, 2024); *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1055 (E.D. Mich. 2018) ("Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim."). Plaintiffs' allegations here—which include substantial detail to support their fraud and omission-based theories—readily satisfy Rule 9(b). The pertinent allegations appear throughout the operative complaint (*see e.g.*, SAC ¶¶ 9-24, 257-395, 421), including a summary in the "Fraudulent Concealment" section. SAC ¶¶ 396-98.

Moreover, "[w]hen it comes to claims of fraud by omission or fraudulent concealment, the plaintiff faces a slightly more relaxed pleading burden; the claim 'can succeed without the same level of specificity required by a normal fraud claim.'" *Duramax*, 298 F. Supp. 3d at 1055; *see also Chrysler Pacifica*, 706 F. Supp. 3d at 762 (listing elements for satisfying Rule 9(b) for omissions-based claims). This is because "[f]raudulent acts can be specifically described, but omissions are, by

very definition, more amorphous." *Duramax*, 298 F. Supp. 3d at 1055. Plaintiffs adequately pled actionable omissions here, including that: (1) FCA knew of the Fire Risk Defect, prior to any Class Vehicle being sold (*infra* section III.D.2.b); (2) FCA should have disclosed the existence of the Fire Defect to Plaintiffs, who would have reasonably considered such information important (*supra* section III.C.1); (3) FCA could have disclosed the Fire Risk Defect in any of its pervasive advertisements that the Class Vehicles were capable for use as a safe electric vehicle;[30] and (4) FCA fraudulently omitted the Fire Risk Defect from these communications to obtain sales of the Class Vehicles.[31]

### 2. Plaintiffs have sufficiently pled pre-sale knowledge.

Rule 9(b) explicitly provides that "knowledge, and other conditions of a person's mind may be alleged ***generally***." *Chevy Bolt*, 633 F. Supp. 3d at 956. The test is whether "[t]aken together, [Plaintiffs'] contentions plausibly allege that FCA had pre-sale knowledge of the" Fire Risk Defect. *Milisits*, 2021 WL 3145704, at \*9. Plaintiffs have sufficiently pled FCA's pre-sale knowledge by alleging, *inter alia*:

- Long-standing industry knowledge summarized in the 2017 NHTSA publication regarding the dangers of thermal runaway in li-ion batteries, SAC ¶¶ 258-69;

- Long-standing industry knowledge regarding specific risks of nickel-rich NMC

---

[30] *See generally* SAC ¶¶ 204-44, describing how FCA marketed and <u>even labeled</u> the Jeep Wrangler 4xe and Grand Cherokee 4xe.

[31] *See, e.g.*, SAC ¶¶ 30-200 ("Had Plaintiff[s] known of the Fire Risk Defect, he[/she] would not have purchased the Jeep Wrangler 4xe…").

batteries used in Class Vehicles, including the potential for violent combustion based on this chemical composition and the knowledge that such batteries require larger safety margins for charging to avoid failure, *id.* ¶¶ 270-85;

- FCA's knowledge of similar thermal runaway defects in plug-in hybrid vehicles manufactured by BMW and Ford that, like Class Vehicles, also used li-ion HV Batteries manufactured by Samsung, *id.* ¶ 335;

- FCA's accumulation of knowledge regarding a similar defect in FCA's own similarly designed plug-in hybrid Chrysler Pacifica, which began combusting in the same pattern and manner as Class Vehicles starting in 2019, well-before the first Class Vehicle rolled off the lot, *id.* ¶¶ 334-48;

- FCA's investigation into, and subsequent recall of, the 2017-2019 Chrysler Pacifica plug-in hybrid, *id.*;

- In light of the foregoing, a reasonable inference that FCA would have (or should have) done more pre-launch testing of Class Vehicles because of the similarities in its plug-in hybrid design, *id.* ¶¶ 336-48;

- FCA's knowledge of more than twenty documented Class Vehicle fires that occurred while plugged-in and turned off, where the fire's point of origin is clearly the hybrid battery, including at least thirteen Class Vehicle fires FCA has acknowledged thus far, *id.* ¶¶ 306-33;

- FCA's knowledge of its predictably ineffective 2023 Recall, which acknowledged that it had bought back and inspected Class Vehicles that caught fire while plugged in, *id.* ¶¶ 368-75;

- FCA's 2024 Recall, which expanded the 2023 Recall to include more than 120,000 additional Class Vehicles and is consistent with the physical damage defect Plaintiffs alleged was the likely reason. *Id.* ¶¶ 272-76.

Taken together, these contentions plausibly allege pre-sale knowledge by FCA,

which may be alleged generally, before any Plaintiff purchased their Class Vehicle.

FCA improperly "attempts to parse the allegations regarding the various

19

sources of its alleged knowledge and consign each to immateriality, but that is not how pleadings are read by federal courts." *Francis*, 504 F. Supp. 3d at 683. Instead, "[t]he allegations are construed as a whole and read in a light most favorable to the plaintiffs, not piecemeal and in a vacuum as the defendant would take them." *Id.* While several of Plaintiffs' individual allegations would arguably suffice here on their own, as repeatedly observed by courts in this District, in examining allegations pertinent to pre-sale knowledge, even pieces of evidence that are not independently sufficient to allege pre-sale knowledge may cumulatively serve to "nudg[e] [Plaintiffs'] allegations of knowledge from the realm of the possible into the realm of the plausible." *Chrysler Pacifica*, 706 F. Supp. 3d at 764 (citing *Chevy Bolt*, 633 F. Supp. 3d at 956).

### a. This Court may find pre-sale knowledge of the Fire Risk Defect based on even a single NHTSA report.

FCA argues that Plaintiffs must plead more NHTSA-reported HV Battery fires in Class Vehicles to be able to allege FCA's pre-sale knowledge. Plaintiffs' SAC alleges at least twenty such fires, and the NHTSA database shows at least eight. SAC ¶¶ 332-33. Moreover, as one Court recently observed, "[e]ven a single incident of spontaneous combustion is so significant that it would draw immediate and intense scrutiny." *Chevy Bolt*, 633 F. Supp. 3d at 958 ("a vehicle's spontaneous combustion is neither routine nor ordinary and it likely would have been more than a mere 'blip on [GM's] complaints-and-repairs radar.'" (citation omitted)). As

described in the preceding section, Plaintiffs have alleged facts that create a plausible inference of FCA's cumulative pre-sale knowledge.

### b. Pre-sale knowledge may be inferred for vehicles sold before the first NHTSA-reported fire.

FCA also ignores relevant caselaw to suggest that Plaintiffs cannot allege that FCA had knowledge before the first NHTSA-reported fire occurred. In *Chevy Bolt*, the first vehicle fire was reported to NHTSA in 2019, but the court held that Plaintiffs plausibly alleged GM had pre-sale knowledge of the defect earlier, specifically for model years 2017 through 2022. *Id*. While noting "the evidence of knowledge is strongest after [the] first fire in 2019," the court held that "the complaint overall 'raises a plausible allegation of knowledge of the problem at the time when the vehicles were manufactured, before any Plaintiffs bought their [Bolts].'" *Id*. (second alteration in original) (citation omitted).

FCA neglects to mention that it made a similar argument, unsuccessfully, in *Chrysler Pacifica*. There, after the Pacifica was originally released in 2017, fires and explosions began in 2018, and FCA eventually recalled the vehicles in 2022. *Id*. at 758. The court held that Plaintiffs plausibly alleged pre-sale knowledge of the fires for the entire duration the Pacifica was on the market, even preceding the first sale. The court explained that "the plaintiffs plainly allege[d] that the defendant was aware, well before the vehicles went to market, of decades of academic engineering publications, surveyed in the comprehensive 2017 NHTSA Safety Report." *Id*. The

court also credited allegations of fires in vehicles from other manufacturers, including "problems in 2017 model year GM and Hyundai vehicles that also used battery packs made by LGES, and which also experienced spontaneous fire issues, eventually prompting voluntary recalls." *Id*. at 764. The court ultimately held that, "[b]ased on the date range of [fire] reports from September 2018 through December 14, 2021, it is a fair inference that the initiation of the formal investigation was prompted by an accumulation of concerns that arose over time, perhaps even earlier than the documented reports cited in the complaint." *Id*.

As in *Chevy Bolt* and *Chrysler Pacifica*, Plaintiffs here plausibly allege pre-sale knowledge earlier than the first NHTSA fire report, including but not limited to pre-sale knowledge based on the earlier fire defect in its Chrysler Pacifica plug-in hybrids. In *Chrysler Pacifica*, the court observed that "[a]llegations about a defendant's knowledge of problems with preceding materially similar designs extant in the industry has been held sufficient to support an inference of prior knowledge at the pleading stage." 706 F. Supp. 3d at 765 (citation omitted). In seeming anticipation of having to confront this statement of law, FCA insists here that the design of the Chrysler Pacifica is not similar enough to be compared to the Class Vehicle.[32] That is inconsistent with Plaintiffs' allegations, which are to be taken as

---

[32] FCA also argues that the incidence of fire in Chrysler Pacificas is "numerically insignificant," even though there have been nearly two dozen fires attributed to those

true for purposes of this motion.

As alleged, the Fire Risk Defect here is materially similar to the defect that caused fires in the Chrysler Pacifica: both have a propensity to combust in the HV Battery system located under the backseat while charging and off, SAC ¶¶ 334-38, and both are similarly designed, with dual electric motors, a similar battery size, and the battery location beneath the back seats, where the fires in vehicles tend to originate. *Id*. ¶¶ 339-43. Additionally, FCA issued near-identical recalls advising Chrysler Pacifica owners, and later Class Vehicle owners, to park away from their homes after numerous reports of the vehicle catching fire. *Id*. ¶¶ 344-46. Thus, FCA would have had knowledge of the Fire Risk Defect from the time that fires began in the Chrysler Pacifica, long before any of the Class Vehicles involved in this case were ever sold. Thus, the facts supporting FCA's pre-sale knowledge here are even stronger than in *Chrysler Pacifica*.

### c. Plaintiffs are not required to plead pre-sale knowledge for many of the state law claims.

Plaintiffs have sufficiently pled FCA's pre-sale knowledge despite the fact that knowledge or scienter is not even a required element for all Plaintiff states, except Colorado.[33] As for Colorado, Plaintiffs sufficiently allege that FCA *did* have pre-suit

---

vehicles, many of which destroyed entire homes. In *Chrysler Pacifica* and *Chevy Bolt*, the courts recognized the enhanced concern paid to even a single report of fire.
[33] **AZ**: *State ex rel. Horne v. AutoZone, Inc*., 258 P.3d 289, 295 (Ariz. Ct. App. 2011) ("It is not necessary to show a specific intent to deceive"); **CA**: *Prakashpalan v.*

*Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1133 (2014) ("Traditional fraud requirements, such as intent or actual reliance, are inapplicable to the UCL."); *see also Villalobos v. CarMax Auto Superstore Cal., LLC*, 2014 WL 1600413, at *3 (S.D. Cal. Apr. 17, 2014) ("Rule 9(b) does not apply to CLRA pleadings because, most importantly, the CLRA makes no mention of any scienter or knowledge requirements."); **FL**: *PNR, Inc. v. Beacon Prop. Mgmt., Inc*., 842 So.2d 773, 777 (Fla. 2003) (holding that "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment"); **IL**: *Chow v. Aegis Mortg. Corp*., 286 F.Supp.2d 956 (N.D. Ill. 2003) ("The deceptive act and intent requirements of the Illinois Consumer Fraud Act (ICFA) can be satisfied by innocent misrepresentations of a defendant[.]"); **MI**: *Alexander v. Del Monte Corp*., 2011 WL 87286, at *2 (E.D. Mich. Jan. 11, 2011) (it is "irrelevant whether the alleged deception was intentional rather than inadvert" because inadvertently deceptive actions may still be subject to MCPA liability); **MO**: *Duncan v. Savannah, LLC*, 637 S.W.3d 633, 643 (Mo. Ct. App. 2021) ("It is the defendant's conduct, not his intent, which determines whether a violation has occurred."); **NJ**: S*toecker v. Echevarria*, 975 A.2d 975 (N.J. App. Div. 2009) ("The Consumer Fraud Act (CFA) establishes three categories of unlawful practices; the first category is an affirmative misrepresentation, even if not made with knowledge of its falsity or an intent to deceive …."); **NM**: *Stevenson v. Louis Dreyfus Corp*., 811 P.2d 1308 (N.M. 1991) (the "'knowingly made' requirement [of the statute] is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading"); **NY**: *Pension Fund v. Marine Bank*, 85 N.Y.2d 20, 26 (N.Y. 1995) ("Although it is not necessary under the statute that a plaintiff establish the defendant's intent to defraud or mislead, proof of scienter permits the court to treble the damages up to $1,000 (General Business Law § 349 [h])."). **NC**: *Myers v. Liberty Lincoln-Mercury, Inc*., 365 S.E.2d 663, 664 (N.C. 1988) (holding that "to prevail in a Chapter 75 case, a purchaser of misrepresented merchandise does not have to prove fraud, bad faith or intentional deception as at common law; it is enough that the goods bought were misrepresented"); **OH**: *Rose v. Zaring Homes, Inc*., 702 N.E.2d 952, 956 (Ohio Ct. App. 1st Dist. 1997) ("Intent to deceive is not an element required for a violation of the deceptive-practices portion of the act."); **OR**: *State ex rel. Rosenblum v. Johnson & Johnson*, 362 P.3d 1197, 1203 (Or. App. 2015); **OK**: *Trotter v. Am. Mod. Select Ins. Co*., 220 F. Supp. 3d 1266, 1269 (W.D. Okla. 2016) ("A person can commit a 'nonwillful' violation of the DTPA."); **PA**: *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 650 (Pa. 2021) ("The absence of any reference

knowledge of the Fire Risk Defect and yet advertised, sold, and leased these vehicles to Plaintiffs and the Class Members.[34]

### 3. FCA had a duty to disclose the Fire Risk Defect.

Courts that have surveyed state laws have "recognized ***nearly universally***" the principle that "a manufacturer has a duty to disclose product defects when (1) it has superior knowledge of the problem, or (2) the defect implicates product safety." *Chrysler Pacifica*, 706 F. Supp. 3d at 769-72 (collecting cases) (emphasis added). Both this Court and Judge Lawson in *Chrysler Pacifica* previously analyzed these state laws and determined that nearly all of the jurisdictions at issue recognize a duty to disclose in "similar circumstances."[35]

---

to the actor's state of mind in the catch-all provision demonstrates that the legislature did not intend to require proof of the actor's state of mind."); **TX**: *Munters Corp. v. Swissco-Young Indus., Inc.* (App. 1 Dist. 2002) 100 S.W.3d 292, *review dismissed* ("Under the Deceptive Trade Practices Act (DTPA), a party is not required to prove intent to make a misrepresentation; making the false representation is itself actionable."); **WA**: *State v. A.N.W. Seed Corp.*, 802 P.2d 1353 (Wa. 1991) (it is an "established principle[] that intent to deceive and proof of a specific party being deceived were not necessary predicates to a [Washington] CPA violation").

[34] *Heller v. Lexton-Ancira Real Est. Fund, Ltd., 1972*, 809 P.2d 1016, 1022 (Colo. App. 1990), *rev'd on other grounds*, 826 P.2d 819 (Colo. 1992) (Colorado Rule 9(b) requirement satisfied when the plaintiff "state[s] the main facts constituting the fraud").

[35] *See In re Ford Super Duty Roof Crush Litig.*, No. 22-12079 (Sept. 30, 2024), Ex. 38, at PageID.4057-4058 (holding that "Alabama, Arizona, California, Colorado, Connecticut, Florida, Illinois, Indiana, Iowa, New Jersey, North Carolina, Oregon, South Carolina, Texas, and Washington," as well as, "Montana, New Mexico, Oklahoma, and Utah" each "recognize a duty to disclose in similar circumstances"

_The Fire Risk Defect Is A Safety Defect_. The Fire Risk Defect here poses an unreasonable safety risk because, as FCA acknowledges in its "Safety Recall," "[a] vehicle fire can result in increased risk of occupant injury and/or injury to persons outside the vehicle." ECF No. 30-31, PageID.4560-61; *see also e.g.*, SAC ¶¶ 1-2, 4-7, 10, 268, 306-333. FCA's recall instructions further advise Class Members to "refrain from recharging" their Class Vehicles and to "park away from structures or other vehicles" to reduce the risk of a fire. *Id*. ¶¶ 11, 15. This safety risk is not hypothetical. There have been more than twenty Class Vehicle fires reported, including two owned by Plaintiffs, and there have been at least two injuries associated with the Fire Risk Defect. *Id*. ¶ 333. By way of example, a recent January 31, 2025 NHTSA report emphasizes the very real risk of death caused by the Class Vehicles:

> Jeep caught on fire in my garage in the middle of the night when it was off, burnt my entire house down, 4 fire investigators [sic] and a forensic scientist, swaid [sic] the fire started in the battery compartment.[36]

There are ample facts alleged for this Court to "find a safety concern here with

---

(citing *Chrysler Pacifica*, 706 F. Supp. 3d at 769-72 (holding that: (1) Missouri, Ohio, and Pennsylvania law among others establish a duty to disclose based on superior knowledge, (2) Missouri and Oregon among others establish a duty to disclose based on misleading partial disclosures, and (3) Missouri, New York, Ohio, and Pennsylvania among others impose a duty when the defect implicates vehicle safety)). Michigan law also recognizes a duty to disclose when a defendant has superior knowledge, as recognized in *Chapman*, 531 F. Supp. 3d at 1291.

[36] NHTSA Datasets and API: Complaints, https://www.nhtsa.gov/nhtsa-datasets-and-apis#complaints.

respect to [the Fire Risk Defect] that gives rise to a duty to disclose." *Chrysler Pacifica*, 706 F. Supp. 3d at 770.

*Misleading Partial Statements*. There is also a duty to disclose based on FCA's misleading partial statements regarding the Class Vehicles. FCA aggressively marketed the features and benefits of these plug-in hybrid electric vehicles SAC ¶¶ 1-26, 204-49, including, among other things: labeling Class Vehicles as functional PHEVs, the all-electric range of Class Vehicles, the size of the HV Battery, fuel economy rating, and fast charging of the HV Battery. Given these affirmative partial statements, FCA had a duty to disclose its knowledge of the Fire Risk Defect, just as in *Chrysler Pacifica*, 706 F. Supp. 3d at 772.

*Exclusive/Superior Knowledge*. FCA unquestionably had and has superior knowledge of the Fire Risk Defect. SAC ¶ 483. The Class Vehicles, including specifically the hybrid propulsion system and HV Battery, are complex pieces of machinery and no reasonable consumer would be expected to have discovered this latent Fire Risk Defect. Plaintiffs also relied on FCA's skill, expertise, and representations as the manufacturer of the Class Vehicles. *Id.* ¶¶ 30-200, 204-49; *see also Chrysler Pacifica*, 706 F. Supp. 3d at 771-72. Plus, as discussed *supra* section III.D, Plaintiffs have sufficiently alleged FCA's knowledge of the Fire Risk Defect.

*The TREAD Act*. Courts have likewise held that manufacturers such as FCA owe legal duties of disclosure to consumers under the TREAD Act, 49 U.S.C. §§

30101-170.[37]

For all these reasons, FCA had a duty to disclose the Fire Risk Defect.

### 4.    The Economic Loss Doctrine does not bar Plaintiffs' claims.

FCA makes a two-sentence argument that the economic loss rule ("ELR") bars claims under the CCPA, NCUDTPA, and TDTPA "where the only injury alleged is economic loss or damage to the product itself, and the transaction is already covered by a written or implied warranty." ECF No. 32, PageID.5354. This vastly overstates the scope of the ELR, which "draws a line between breach of contract claims arising from commercial transactions, where commercial and contract law protect the parties' economic expectations, and tort actions intended to remedy unanticipated injuries as a result of conduct that violates a separate legal duty apart from the contract." *Chrysler Pacifica*, 706 F. Supp. 3d at 765-66. The claims in this case are based on legal duties that exist separate from any contract between FCA and Plaintiffs, including state consumer protection law, implied warranty statutes, and unjust enrichment. The ELR does not apply.[38]

---

[37] *In re Toyota Motor Corp.*, 2012 WL 12929769, at *14 (C.D. Cal. May 4, 2012) ("The Court also agreed with Plaintiffs that Toyota had a duty to disclose its noncompliance with the TREAD Act."); *Mercado v. Audi of Am., LLC*, 2019 WL 9051000, at *9 (C.D. Cal. Nov. 26, 2019) (TREAD Act creates actionable legal duties on which consumers may predicate causes of action).

[38] None of FCA's cited cases support FCA's argument. **CO**: *Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, 1157 (Colo. 2019) (holding that ELR cannot be used "to limit or abrogate a clear legislative pronouncement [such as the CCPA] by reason of such judicial policy concerns would offend the separation of powers" as "it is not this

## 5.      FCA's North Carolina UDTPA-specific arguments are meritless.

FCA overlooks that the "egregious" or "aggravating" circumstances requirement of the NCUDTPA is a relatively low bar that is meant to prevent plaintiffs from pursuing breach of contract claims disguised as NCUDTPA violations.[39] Moreover, "[v]iolations of regulatory statutes [such as the TREAD Act] can constitute *per se* unfair acts" actionable under the NCUDTPA. *Weber, Hodges & Godwin Com. Real Est. Servs., LLC v. Hartley*, 750 S.E.2d 919, at *4 (N.C. Ct. App. 2013). FCA also suggests that North Carolina Plaintiff Perrera does not adequately plead in-state injuries. To the contrary, he alleges that he leased a 2021 Jeep Wrangler 4xe from an authorized FCA dealer. SAC ¶ 150. That dealer was in

---

court's place to substitute the judiciary's policy judgments for those of the General Assembly."); *White v. Gen. Motors*, 2022 WL 3597161, at *9 (D. Colo. July 7, 2022) (discussing ELR in context of common law fraudulent concealment, not statutory CCPA). **NC**: *Bradley Woodcraft, Inc. v. Bodden*, 251 N.C. App. 27, 34, 795 S.E.2d 253, 259 (2016) ("cases applying the economic loss rule are limited in scope to claims for negligence and have never applied the doctrine to claims for fraud brought contemporaneously with claims for breach of contract."). **TX**: Where Plaintiffs allege fraud in both the inducement of sale and the recall "remedy" under the DTPA, this is not a mere allegation of breach of contract that could fall under the ELR. *See* SAC ¶¶ 1133-44; *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998) ("Texas law has long imposed a duty [separate from the contract] to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations. As a rule, a party is not bound by a contract procured by fraud.").

[39] *Brown v. Loancare, LLC*, 2020 WL 7389407, at *5 (W.D.N.C. Dec. 16, 2020); *Buffa v. Cygnature Constr. & Dev., Inc.*, 796 S.E.2d 64, at *6 (N.C. Ct. App. 2016) ("Aggravating circumstances include conduct of the breaching party that is deceptive.").

North Carolina. *See also* Ex. 25, Perrera Decl. ¶ 2. If necessary, Plaintiffs could amend to add this location to the operative pleading.

### 6. FCA's Oklahoma CPA "regulated activities" argument fails.

FCA argues that a safe harbor for regulated activities under the OCPA precludes Oklahoma Plaintiff May's claims, but FCA fails to cite any persuasive authority. FCA's citations to *Gant v. Ford Motor Co.*, 517 F. Supp. 3d 707 (E.D. Mich. 2021), and *Matanky v. Gen. Motors, LLC,* 370 F. Supp. 3d 772 (E.D. Mich. 2019, are inapposite because those cases did not involve Oklahoma claims at all. And the only Oklahoma decision FCA cites, *Dinwiddie v. Suzuki Motor of Am., Inc.*, is distinguishable because in that case the OCPA claim was premised upon a vehicle manufacturer's alleged "mishandling of the recall," not the sale of the vehicle itself. 111 F. Supp. 3d 1202, 1216 (W.D. Okla. 2015). While the recall process itself is more squarely an activity regulated by NHTSA, the sale of Plaintiff's defective Class Vehicle here, which preceded the recall, is not.[40] That is consistent with the holding in *In re General Motors Corp.*, where the court rejected an automotive manufacturer's attempt to invoke the OCPA regulated activities exemption. 2005 WL 1924335, at *3 (W.D. Okla. Aug. 8, 2005). Other cases finding the exemption

---

[40] *See Sisemore v. Dolgencorp, LLC*, 212 F. Supp. 3d 1106, 1109 (N.D. Okla. 2016) ("The OCPA safe harbor does not apply when a defendant's conduct is governed in some respects by a state or federal agency, but the specific conduct at issue is not within the scope of the agency's authority.").

to apply involved regulated transactions, and are thus also distinguishable.[41]

### 7.   Plaintiffs have properly pled their California UCL claims.

FCA argues, without explanation, that the California Plaintiffs have failed to plead "unlawful" or "unfair" conduct under California's Unfair Competition Law (UCL). This claim is well pled. "Under the 'unlawful' prong, a practice violates the UCL if it also violates another state or federal law." *Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1040 (C.D. Cal. 2013). Plaintiffs have alleged numerous violations of state and federal law in the SAC, each of which suffice to state a claim under the unlawful prong. None of FCA's cases are on point. For example, the holding of *Wilson* rests on a finding that there was no duty to disclose, 668 F.3d 1136, 1146 n.5 (9th Cir. 2012), but whether a duty to disclose exists here is plainly disputed. *See* SAC ¶¶ 500-05. The court in *Williams* compared two product defects: (1) "a suspension defect that unreasonably increases the risk of crash and threatens the health and safety of the drivers and passengers," and (2) where a car sometimes made a clicking noise while driving. 2022 WL 899847, at *5 (N.D. Cal. Mar. 28, 2022). Unsurprisingly, the court held that the latter defect was not actionable under the

---

[41] *See, e.g.*, *Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1229 (W.D. Okla. 2008) (insurance products are regulated transactions). *U.S. Bank N.A. et al. v. Hill* is likewise distinguishable. 540 P.3d 1 (Okla. 2023). *Hill* involved an alleged wrongful mortgage foreclosure and thus implicated a financial product subject to "potent" regulation and broad regulatory enforcement powers. *Id.* at 11. Here, NHTSA lacks any such enforcement authority.

unfair prong, but a safety defect that causes Class Vehicles to explode is clearly more like the suspension defect in *Williams*.[42]

### E. Plaintiffs' Unjust Enrichment Claims are Well-Pled.

FCA claims that the mere existence of written warranties for the Class Vehicles precludes Plaintiffs' unjust enrichment claims. This argument lacks merit because: (a) FCA denies privity with Plaintiffs, ECF No. 32, PageID.5342; (b) Plaintiffs have not pled express warranty claims (rendering FCA's authorities distinguishable); and (c) inferences should favor plaintiffs on a motion to dismiss, *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017).

A lack of "direct contact between a defendant and the plaintiff does not preclude a finding that the defendant received a direct benefit from that plaintiff."[43] Rather, an unjust enrichment may occur if plaintiff's detriment and defendant's

---

[42] *In re FCA US LLC Monostable Electronic Gearshift Litig.*, 280 F. Supp. 3d 975, 1009 (E.D. Mich. 2017). FCA also argues that Plaintiffs have failed to plead they lack an adequate remedy at law to recover under the UCL. This is demonstrably false. *See* SAC ¶ 511 ("Plaintiffs and the Subclass Members lack an adequate remedy at law . . ."); *see also* SAC ¶¶ 465, 542, 594, 638, 685, 844, 921, 975, 1023, 1061, 1101, 1147, 1190 (lack of adequate legal remedy for unjust enrichment); *Biederman v. FCA US, LLC*, 2025 WL 458831, * 12 (N.D. Cal. Feb. 11, 2025) ("Plaintiffs are permitted to plead in the alternative a lack of available remedies at law").

[43] *In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814 (E.D. Pa. 2019) (quotation omitted); *Williams v. Wells Fargo Bank N.A.*, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011) (passing through "third party" does not "preclude an unjust-enrichment claim").

benefit flow "from the challenged conduct."[44] Thus, inequitable acts with benefits

traceable through an intermediary plausibly allege unjust enrichment.[45]

Here, FCA sells Class Vehicles to its dealers and profits through sales and

leases via its network of dealers and sales brokered through its financing and leasing

arms.[46] FCA benefitted by receiving payments and overpayments for the Class

Vehicles due to FCA's misconduct.[47] Because FCA enticed Plaintiffs to overpay

dealers for the Class Vehicles, FCA's benefit flowed from its misconduct through the

---

[44] *See In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 869, 897 (E.D. Mich. 2014) (collecting cases and quoting *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000)). **OK**: Oklahoma's claim elements include "a connection between the enrichment and impoverishment" rather than a direct benefit. *Dollar Rent A Car Sys., Inc. v. P.R.P. Enters., Inc.*, 2006 WL 1266515 at *26-27 (N.D. Okla. May 8, 2006). FCA's citation to *Orthman v. Premier Pediatrics, PLLC*, 545 P.3d 124 (Okla. 2024) omits "a connection" from its elements of the claim and does not analyze direct benefit, and that defendant did not benefit at all from its data breach.

[45] **AZ**: *In re Pork Antitrust Litig.*, 495 F. Supp. 3d at 792; *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1089 (S.D. Cal. 2017); **FL**: *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1368-69 (S.D. Fla. 2015); *Carriuolo v. Gen. Motors LLC*, 72 F. Supp. 3d 1323, 1326 (S.D. Fla. 2014); *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1288 (S.D. Fla. 2013); **NC**: *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 72 F. App'x 916, 921 (4th Cir. 2003) (*per curiam*); *In re Pork Antitrust Litig.*, 495 F. Supp. 3d at 796; **PA**: *In re Generic Pharms.*, 368 F. Supp. 3d at 851; *DeGasperi v. Valicenti*, 181 A.2d 862 (Pa. Super. Ct. 1962).

[46] SAC ¶¶ 472, 550, 601, 692, 726, 769, 804, 851, 928, 1030, 1068, 1154.

[47] SAC ¶¶ 468-70, 546-48, 597-99, 641-43, 688-90, 721-23, 764-66, 806-08, 847-49, 924-26, 978-80, 1026-28, 1064-66, 1104-06, 1150-52, 1193-95.

dealers to FCA.[48] Where, as here, an auto manufacturer receives inflated prices for unsafe defective vehicles, it receives a direct benefit that substantiates an unjust enrichment claim.[49]

Finally, unjust enrichment claims may be pled as standalone claims and FCA's citations to the contrary are distinguishable.[50] California, Illinois, New Jersey, and Texas all recognize unjust enrichment as standalone claims.[51]

---

[48] FCA's cases, *Orthman*, 545 P.3d 124 (data breach) and *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712 (E.D. Pa. 2013) (used cars) are distinguishable. *Kopel v. Kopel*, 229 So.3d 812 (Fla. 2017) is dictum because its holding approved relating back an amended complaint. The purported benefit to the defendant in *Baker v. Trans Union LLC*, 2008 WL 2329099 (D. Ariz. June 4, 2008) was particularly "attenuated" as noted in *iStar RC Paradise Valley LLC v. Five Star Dev. Cmtys. LLC*, 2011 WL 4852293, *7 (D. Ariz. Oct. 13, 2011) (approving unjust enrichment involving multiple entities).

[49] *In re FCA Monostable*, 280 F. Supp. 3d at 1009; *Francis*, 504 F. Supp. 3d at 668 & 693 (32 states).

[50] *Dairy, LLC v. Milk Moovement, Inc.*, 2022 WL 2392622 (E.D. Cal. July 1, 2022), supports unjust enrichment "as an independent cause of action" if defendant "received and unjustly retained a benefit at [plaintiff's] expense." 2022 WL 2392622 at *8 (citation omitted). FCA's *Gedalia*, 53 F. Supp. 3d at 959 called unjust enrichment an element of restitution. *In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, *2 n.4 (D. N.J. July 2, 2014) is distinguishable as an online privacy case with no payment from plaintiff to defendants. Comments in *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. 2009) are dicta since the chiropractor did not cross-appeal and actually support unjust enrichment where a defendant breached a duty like the duty to disclose, e.g., SAC ¶¶ 397, 455, 484. *In re Auto. Parts Antitrust Litig.*, 2018 WL 2181462, at *7 (E.D. Mich. Mar. 29, 2018) (reliance on *Martis* "is misplaced").

[51] *See Francis*, 504 F. Supp. 3d at 693; *ESG Cap. Partners, LP v. Stratos*, 828 F.3d

## IV.   CONCLUSION

For these reasons, FCA's Motion to Compel Arbitration and to Dismiss should

be denied in its entirety.

DATED: February 17, 2025                Respectfully submitted,

                                        /s/ Dennis A. Lienhardt
                                        E. Powell Miller (P39487)
                                        Dennis A. Lienhardt (P81118)
                                        Dana E. Fraser (P82873)
                                        **THE MILLER LAW FIRM PC**
                                        950 W. University Drive, Suite 300
                                        Rochester, MI 48307
                                        Telephone: (248) 841-2200
                                        epm@millerlawpc.com
                                        dal@millerlawpc.com
                                        def@millerlawpc.com

                                        Roger N. Heller
                                        Phong-Chau G. Nguyen
                                        Nicholas W. Lee
                                        **LIEFF CABRASER HEIMANN & BERNSTEIN,
                                        LLP**
                                        275 Battery Street, 29th Floor
                                        San Francisco, CA 94111
                                        Telephone: (415) 956-1000
                                        rheller@lchb.com

---

1023, 1038 (9th Cir. 2016) (complaint states claim as "independent cause of action or as a quasi-contract claim for restitution" (California)); *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 635 (N.D. Ill. 2016) (plaintiff "entitled to judgment on its unjust enrichment claim"); *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 709-11 (E.D. Mich. 2020) (New Jersey law); *Goldsmith v. Camden Cty. Surrogate's Office*, 975 A.2d 459, 464 (N.J. Super. 2009) (claim "may arise outside the usual quasi-contractual setting"); *VocalSpace, LLC v. Lorenso*, 2010 WL 11527374 (E.D. Tex. Jan. 29, 2010) (Texas allows "unjust enrichment as an independent cause of action"); *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986) ("basis for recovery is unjust enrichment").

pgnguyen@lchb.com
nlee@lchb.com

John R. Davis
**SLACK DAVIS SANGER, LLP**
6001 Bold Ruler Way, Suite 100
Austin, TX 78746
Telephone: (512) 795-8686
jdavis@slackdavis.com

Robert K. Shelquist
Craig S. Davis
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave., Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
rkshelquist@locklaw.com
csdavis@locklaw.com

*Proposed Interim Co-Lead Counsel*

Todd M. Friedman
Adrian R. Bacon
Meghan E. George
**LAW OFFICES OF**
**TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com

*Additional Counsel for Plaintiffs and the
Class*