1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                           SOUTHERN DIVISION

3    **GARY FRISCH, ET AL.,**

4              Plaintiffs,
                                        **HONORABLE BRANDY R. McMILLION**
5         v.
                                        **No. 24-10546**
6    **FCA US, LLC,**

7              Defendant.
     _____/
8

9            **HEARING ON MOTION TO COMPEL ARBITRATION**

10                  **Wednesday, May 7, 2025**

11   Appearances:

12   Dennis A. Lienhardt            Ian Kennedy Edwards
     The Miller Law Firm            Klein Thomas Lee & Fresard
13   950 W. University Drive, #300  101 West Big Beaver, #1400
     Rochester, Michigan  48307     Troy, MI  48084
14   248.841.2200                   248.509.9271
     dal@millerlawpc.com            ian.edwards@kleinthomaslaw.com
15     On behalf of Plaintiffs        On behalf of Defendant

16   Roger N. Heller                Stephen A. D'Aunoy
     Lieff, Cabraser, Heimann       Klein Thomas Lee & Fresard
17   275 Battery St., 29th FL       100 N. Broadway
     San Francisco, CA  94111       St. Louis, MO  63102
18   415.956.1000                   314.602.6354
     rheller@lchb.com               steve.daunoy@kleinthomaslaw.com
19     On behalf of Plaintiffs        On behalf of Defendant

20                        -    -    -

21          *To obtain a certified transcript, contact:*
                  *Timothy M. Floury, CSR-5780*
22                   *Official Court Reporter*
              *Theodore Levin United States Courthouse*
23                 *231 West Lafayette Boulevard*
                     *Detroit, Michigan  48226*
24          *(313)234-2607 · floury@transcriptorders.com*

25   *Transcript produced using machine shorthand and CAT software.*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

1

2                          **I N D E X**

3    Motion Hearing                                      Page

4
     Argument by Mr. D'Aunoy  ........................7
5
     Argument by Mr. Heller  ........................15
6
     Argument by Mr. D'Aunoy  .......................31
7
     Argument by Mr. Heller  ........................41
8
     Matter taken under advisement by the Court ......46
9
     Certification of Reporter .......................48
10                              -   -   -

11

12

13

14

15

16                       **E X H I B I T S**

17
            Number      Description           Id'd Rcvd Vol.
18
19    ***None Marked, Offered or Received***

20                              -   -   -

21

22

23

24

25

               *24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

*Page 3*

1        Detroit, Michigan

2        Wednesday, May 7, 2025

3        1:34 p.m.

4        -   -   -

5        **THE CLERK:**  Please rise.

6        The United States District Court for the Eastern

7   District of Michigan is now in session.  The Honorable

8   Brandy R. McMillion presiding.

9        You may be seated.

10       Court calls Case No. 24-cv-10546, Frisch, et al. v.

11   FCA US, LLC.

12       Please state you're appearance beginning with the

13   plaintiff.

14       **MR. HELLER:**  Good afternoon, your Honor.  Roger

15   Heller of Lieff, Cabraser, Heimann & Bernstein for plaintiffs.

16       **THE COURT:**  Good afternoon.

17       **MR. LIENHARDT:**  Good afternoon, your Honor.  Dennis

18   Lienhardt of the Miller Law Firm for plaintiffs.

19       **THE COURT:**  Good afternoon.

20       **MR. D'AUNOY:**  Good afternoon, your Honor.  Stephen

21   D'Aunoy from Klein, Thomas, Lee & Fresard for defendant FCA US,

22   LLC.

23       **THE COURT:**  Good afternoon.

24       **MR. EDWARDS:**  Good afternoon, your Honor.  Ian

25   Edwards with Klein, Thomas, Lee & Fresard on behalf of FCA US,

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

1    LLC.

2         **THE COURT:**   Good afternoon.

3         Thank you guys all for being here this afternoon.   I

4    understand it's beautiful outside.   I have not been out there,

5    so thank you for taking your probably first warm whole day and

6    spending it in court this afternoon.

7         We have a couple things pending in this case and I

8    wanted to bring everyone in.   I did have an opportunity to and

9    I know there's a couple of motions pending, one of which

10   appears to be kind of a joint motion with two issues, whether

11   there's arbitration as well as motion to dismiss, and one --

12   and I think we also still have a motion for the counsel

13   structure that's pending.   And I will tell the parties that the

14   Court didn't get to that motion because if this ends up going

15   to arbitration, I didn't think it was necessary to kind of go

16   through putting an order in place and structures and payments

17   and who is who if we weren't going to do that.   So I'm hoping

18   the parties are at least prepared with respect to whether you

19   guys have agreed to, you know, who's going to represent, you

20   know, be able to present to the Court today with respect to --

21   and I'm happy to hear from everyone.   I'm not limiting, by any

22   means, any attorney's ability to be able to address the Court.

23        So we will get to that, but I wanted to at least note

24   for the record that that's out there and that's pending and we

25   will address that.

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

1    My bigger concern was the motion to -- well, the

2    motion to compel and motion to dismiss, which is filed in one

3    motion -- and I will tell the parties that I'm not prepared --

4    and I have reviewed the entire motions, but I'm not prepared to

5    rule on the motion to dismiss until we address the motion to

6    compel issue, because if a delegation provision is actually

7    enforceable and the case gets compelled to arbitration, then

8    the motion to dismiss is a question for the arbitrator, not for

9    me.  And so I felt that it probably made sense to just bring

10    the parties in, make sure everyone was all on the same page and

11    to be able to hear from the parties with respect at least to

12    the first part of that motion, recognizing that we would need

13    to probably, then, set another date after we can make some

14    determinations on what makes the most sense for the first half

15    of that motion.

16    So what I'd like to do today is briefly talk to you

17    about the motion to compel arbitration.  I will also note for

18    the parties, and I know that referenced in some of the briefing

19    is that there was another case pending in this district in

20    which the arbitration issue was raised and addressed with

21    respect to the glove box warranties, and I think that case was

22    cited in there.  I did have an opportunity, also, to review

23    that transcript as well, so I kind of have at least a sense of

24    what's happened there.

25    And I have had an opportunity, recognizing that this

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

*Page 6*

1  is a class case and we're having additional claims that are now

2  also being filed that reference the same batteries, you know,

3  the electric vehicle batteries.  I think we have one that has

4  been assigned to us that counsel also filed kind of notice to

5  say, hey, this is out there with respect to that kind of class

6  structure in terms of counsel.

7          So I would like to address the arbitration issue.

8  But one question the Court has -- and I will hear from all

9  parties on kind of where we think we are with respect to

10  that -- but one question I had just in my review of everything

11  that I've noted for the record, is that, at least in the

12  separate litigation that was pending in this Court, there was

13  an issue of whether there are additional agreements.  And I

14  don't want us to get down the line and then it be like, well,

15  there's more agreements.  Hold on one second.  Now we've got to

16  readdress the arbitration issue.

17          So in hearing from the parties today, I would like to

18  know if there are third-party dealership agreements or if

19  there's anything that's going to reference these glove box

20  agreements.  And I know that came up in a prior case, but I

21  just would like to be able to have the parties address that so

22  that the Court makes sure that we're fully covering our bases

23  so that we're doing this in the most efficient way possible.

24          So it is defendant's motion, so I can hear from

25  defendant first, and just recognizing that we have had an

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 7

1   opportunity to review at least with respect to the motion to

2   compel arbitration.

3         **MR. D'AUNOY:**  Yes, your Honor.  And I'll try to not

4   repeat anything that's actually in those motions.

5         I will address a couple of the issues that your Honor

6   just brought up.  First, your Honor may be referring to the

7   Fisher case, I think, when you speak of the transcript.  So

8   that one was a very different posture.  So FCA US in that case

9   moved to compel arbitration on a third-party beneficiary type

10  agreement under -- excuse me, not third party -- on an estoppel

11  theory in terms of the glove box warranty.

12        **THE COURT:**  Uh-huh.

13        **MR. D'AUNOY:**  Plaintiff, because estoppel --

14  plaintiff had pleaded breach of express warranty claims.  FCA's

15  briefing on that issue was based on estoppel.  If you're going

16  to plead those claims, you can't deny that the warranty exists,

17  and then, ultimately, they withdraw those claims, so all of our

18  briefing had been done on estoppel.  So that, you saw in the

19  transcript, where it was myself.  I stood up before the Court,

20  and based on the agreements that were made there during that

21  hearing, I withdrew that motion on behalf of FCA US.

22        Now, what happened in that case is we did then go to

23  third-party discovery after discovery started in that case.  We

24  did identify third-party agreements.  We did then, again, move

25  to compel arbitration.  And for those folks that we did, again,

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 8

1  move to compel arbitration, they've now been ordered to

2  arbitration, so we're going through that.

3         So this case, in contrast, is a little different,

4  because when FCA US moved to compel arbitration here, based on

5  what we're calling the glove box, the arbitration provision in

6  the written warranty.  We did so based on notice and a failure

7  to opt out.  So it has nothing to do with, really, an estoppel

8  theory in that way, in the same way that we had in the Fisher

9  case.

10        Now, ultimately, if your Honor decides that FCA US

11 cannot compel arbitration, we would be reserving our rights

12 because we have not had an opportunity to do third-party

13 discovery here with dealerships and to see what agreements

14 these named plaintiffs entered into in their purchase

15 transactions, so we would be reserving our rights that when we

16 do go get those agreements, if we have to in this case, and if

17 they do have arbitration agreements in them, then we would be

18 seeking to compel arbitration under those separate agreements.

19        But I am, based on your Honor's order, your written

20 order setting this hearing, I am prepared today to address the

21 written warranty and the -- or excuse me -- the arbitration

22 provision in the written warranty.  And based on the order your

23 Honor issued, it appears that the issue that may have been or

24 that the Court may be really looking at deeply is plaintiffs'

25 position that they did not receive a copy of the warranty, and,

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

1  thus, they claim they did not agree.  But that, really, your

2  Honor, has little to do with whether or not there's a valid

3  arbitration agreement.  And I'll explain why.

4        So, as your Honor found in that order, FCA produced

5  evidence that would allow a fact finder to find that a contract

6  exists, and so plaintiffs came back with these declarations.

7  But despite those declarations, your Honor, plaintiffs,

8  themselves, have repeatedly acknowledged and sought benefits

9  under the arbitration provision containing warranties on

10  multiple occasions.

11        So according to FCA US's records, your Honor,

12  Plaintiff Aiello has sought six repairs under that warranty.

13  Plaintiff Freedman has sought seven repairs.  Plaintiff Frisch

14  has sought seven repairs.  Plaintiff Landes has sought seven

15  repairs.  Plaintiff McCrary has sought five repairs.

16  Plaintiff Otto has sought six repairs.  Plaintiff Park has

17  sought seven repairs.  Plaintiff Perrera has sought six

18  repairs.  Plaintiff Stueve has sought ten repairs.  Plaintiff

19  Teger has sought four repairs.  Plaintiff Vasquez has sought

20  six repairs.  And all of the other named plaintiffs have sought

21  between one and three repairs.

22        And I know that's a lot of information, your Honor,

23  but it's important information because it shows plaintiffs

24  obviously had notice of their vehicle's warranties.  Indeed,

25  your Honor, the fact that each and every one of these

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 10

1 plaintiffs has sought a repair under that warranty, and many

2 have sought multiple repairs under that warranty, shows that

3 they were well aware of the very warranty that they're now

4 trying to disclaim.  And we all know, as we learned in law

5 school, your Honor, that you can't accept the benefits of a

6 contract while also trying to disclaim its obligations.

7       **THE COURT:**  So isn't that, essentially, just the same

8 estoppel argument, right?  You don't get to -- you don't get to

9 get the benefits of, I'm going to get my car repaired under a

10 warranty but then say, I don't want to be held to provision 7

11 in that same warranty.

12       **MR. D'AUNOY:**  The arguments are a little different,

13 your Honor, because legal estoppel, in a sense, you can't

14 assert a claim against me while disclaiming your -- the basis

15 for that claim.  So that's the Fisher situation.

16       **THE COURT:**  Okay.

17       **MR. D'AUNOY:**  So that's a different type of legal

18 estoppel.  This is just contractual estoppel, meaning you can't

19 claim the benefits of a contract while disclaiming the

20 obligation of a contract.

21       **THE COURT:**  Okay.

22       **MR. D'AUNOY:**  And I've got some cases that I'll refer

23 your Honor to, and we may have put some in our briefing.

24       But in addition, your Honor, to obtaining benefits

25 under this warranty, the owner's manuals for their vehicles,

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 11

1    which plaintiffs do not dispute at all at getting, repeatedly

2    advised them about the written warranty inside the front cover,

3    outside on the back cover, and an entire section dedicated to

4    warranty information.

5         And in addition to that, your Honor, every one of

6    their Monroney labels, the federally-mandated Monroney labels

7    that were on their vehicles specifically directed them to ask

8    your dealer for a copy of the limited warranties or to see your

9    owner's manuals for details.

10        Courts agree that any one of these, your Honor, by

11   itself is more than sufficient notice to bind plaintiffs to the

12   warranty terms, including the arbitration provision, unless

13   they opt out.  And as your Honor noted in the order that you

14   issued setting this hearing, the arbitration agreement here

15   includes an opt-out provision, and it allows consumers to opt

16   out.  And each one of these plaintiffs could have opted out by

17   sending FCA US a letter.

18        So what we have here is an arbitration agreement in

19   which plaintiffs cannot disclaim notice of receiving the

20   benefits from or actual notice of the warranty, and they didn't

21   not -- they did not opt out.

22        And none of this, your Honor, should come as a

23   surprise.  Manufacturers have been including terms, conditions,

24   arbitration agreements and product warranties and successfully

25   enforcing them for decades.

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 12

1      And the Eleventh Circuit expressly acknowledged this

2  in the Dye v. Tamko case, and that's at 908 F.3d 675 at pages

3  682 to 83.  And I'll read -- your Honor, I'll read the Court a

4  quote.  "That big box items come with purchase terms and

5  conditions should hardly come as a surprise to modern

6  consumers.  Post-purchase acceptance by retention warranties

7  are ubiquitous today; think furniture, home appliance, sporting

8  goods, et cetera.  It's not only objectively reasonable to

9  assume that such items come with terms and conditions, it's

10  also imminently reasonable to assume that by opening and

11  retaining those items, the consumer necessarily accepts the

12  accompanying terms and conditions."

13      To show an agreement -- and this is where this case

14  is different from Fisher -- to show an agreement under the

15  theory that FCA US is pursuing here, it's a two-step process.

16  And this was a two-step process that was described by the Sixth

17  Circuit in the Higgs case that we cited in our briefing.  First

18  you must show that the consumer had reasonable notice of the

19  terms and conditions; and, second, the consumer must be allowed

20  a reasonable time to opt out of the terms of the arbitration

21  agreement, either by returning the product or some other

22  method.

23      So if there's reasonable notice and an opportunity or

24  both provided, and a consumer fails to opt out within the time

25  specified, the consumer has provided his assent, his agreement,

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

1   the meeting of the minds to the terms, and are bound by them.

2   And, obviously, your Honor, reasonable notice was provided

3   here.  And I've mentioned some ways in terms of their claiming

4   the benefits of the warranty, the owner's manual and the

5   Monroney label.  And I can cite your Honor cases where courts

6   have found that those items are, in fact, sufficient and each

7   one, in and of itself, in -- in establishing that a consumer

8   had notice of a warranty.

9          For example, your Honor, the Tenth Circuit in Platt V

10  Winnebago, which is at 960 F.3d 1264, on pages 1267 to 68 and

11  on page 1276, it says, Where plaintiffs did not receive a copy

12  of a vehicle's warranty booklet before purchase, which is

13  exactly what plaintiff's argument is here, but they were

14  advised to see your dealer for complete warranty information,

15  which they can't dispute was on the Monroney label and the

16  owner's manual, they were, quote, bound by the exclusive

17  remedies of the warranty, regardless of whether they read the

18  warranty, end quote.

19         Judge Kumar in this district, your Honor, has faced a

20  similar question, not in the exact context of arbitration, but

21  when is a consumer bound by the written terms and conditions of

22  a warranty?  It's in the Grundy v. FCU US case, your Honor.  I

23  happen to be on that case.  Mr. Lienhardt for plaintiffs'

24  counsel here today happened to be on that case, too, but that's

25  at 2024 Westlaw 1699500.  And on page 6 of that order opinion,

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 14

1  your Honor, Judge Kumar said, "Plaintiffs had notice of the

2  warranty from their vehicle's respective window stickers, and

3  were, likewise, responsible for inquiring about the noted

4  restrictions and details."

5          Another case, your Honor, Marksberry v. FCA US --

6  this is in the District of Kansas.  It's 606 F. Supp. 3d 1075

7  on page 1083.  That case there, the judge held warranty terms

8  were enforceable where the truck's window sticker told

9  plaintiffs to ask the dealer for a copy of the limited

10 warranties or see your owner's manual for details.  Since

11 plaintiff -- and this is a quote -- "Plaintiff cannot place his

12 head in the sand and then argue that defendant concealed

13 something from him in the warranty information booklet."

14         And on top of that, your Honor, as I've noted,

15 plaintiffs have actually used the warranty here, which

16 precludes any argument about a supposed lack of notice.  And,

17 again, Judge Kumar in her Grundy opinion, this is at page 5 of

18 that, "Purchasers who took advantage of a warranty cannot later

19 disavow the application of that warranty's terms, even if they

20 didn't receive a copy of those terms."

21         And I'd also bring the Matthews v. REV Recreation

22 Group, a Seventh Circuit decision, to your Honor's attention,

23 which is at 931 f.3d 619 at page 623.  And there the Court

24 rejected an argument that plaintiffs weren't bound by their

25 vehicle's warranty booklet because they didn't receive a copy,

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

1   explaining, plaintiffs can't have it both ways.  By relying on

2   the contract when it works to their advantage to get repairs

3   done and then claiming ignorance of the warranty terms later

4   when it's time for litigation.

5          Your Honor, what we have here is a situation where

6   there can be, under the law, no reasonable dispute that where

7   consumers have notice of a written warranty, it allows them a

8   reasonable time to opt out, but they fail to opt out.  That

9   warranty and their terms, including binding arbitration, are

10  enforceable.  That's black letter Sixth Circuit law.

11         Here, your Honor, plaintiffs had notice.  They had

12  the opportunity to opt out.  They did not opt out.  And as the

13  Higgs case and other cases cited in FCA US's briefing and here

14  today show your Honor there is an enforceable arbitration

15  agreement.

16         This case should be sent to arbitration, and under

17  the delegation clause, all other issues should be decided by

18  the arbitrator.

19         **THE COURT:**  Great.  Thank you.

20      **MR. HELLER:**  Well, your Honor will not be surprised

21  to hear that we see things differently.

22         **THE COURT:**  Understood.

23      **MR. HELLER:**  I do agree that the third-party

24  contracts are not at issue in this point.  They have not raised

25  that as a basis for compelling arbitration.  It is possible

1   that will come up later --

2           **THE COURT:**  Okay.

3           **MR. HELLER:**  -- in the case.  But what they're asking

4   for here -- let's be clear, your Honor, what they're asking for

5   here is unprecedented.  All of the many, many auto defect cases

6   that are filed in this district every year, as your Honor is

7   aware, there are a lot of them, not a single court has ever

8   compelled arbitration based on a clause of one of these

9   warranty booklets, not one.  The only effort I'm aware of even

10  a manufacturer trying was the Fisher case, which my colleague

11  discussed and you referenced earlier.  And as you noted, and as

12  was noted earlier today, they actually dropped the argument

13  that they're making here today when the plaintiffs there

14  dropped the express warranty claim.  We do not have an express

15  warranty claim in this case.

16          And when -- and I think, you know, they thought they

17  had an estoppel argument, but when that claim was dropped,

18  counsel was actually very candid about how they feel about the

19  argument that they're making here today.

20          They told Judge Leitman, in review of the law, we're

21  not going to win on that.  Now, they'll say, well, we were only

22  arguing this under an estoppel theory, but the fact is, they

23  never renewed a motion to compel arbitration based on the

24  warranty booklet based on this argument that they're making

25  here today.  So even assuming that they didn't make it there,

1  and I'm not so sure that's true, entirely true, they -- they

2  never -- they never re-upped that argument.  This would be --

3  this would be a first.

4       And the reality, your Honor, is, from our

5  perspective, and I think from a legal perspective, they fall

6  well short of satisfying even their initial burden on this

7  issue of mutual assent.  I think that they have failed to put

8  forward evidence of the most basic elements of contract

9  formation, meaning offer and acceptance.

10       Their only proffer here is based on this warranty

11  booklet, based on this clause, it's in a warranty booklet

12  that's in the glove box, right?  And -- and the reality, your

13  Honor, is, they come in and they say, well, the tag on the car

14  says look at your warranty, and maybe there are some other

15  documents.  None of that's in the record, your Honor.  There's

16  no evidence of that in the record, so I just want to make sure

17  that that's clear.

18       And my colleague cited some case law where courts

19  have found that people are on notice of the fact that there is

20  a warranty.  It's one thing to say you're on notice that

21  there's a warranty; it's another thing to say that you're on

22  notice that there's somehow an arbitration agreement contained

23  within that warranty, where a warranty is not even a contract.

24  It's not even terms and conditions.  It's not even a contract.

25  It's not someplace where a consumer would reasonably except to

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 18

1  find an arbitration clause.  It's a really, really random place

2  to have that.  And I think the fact is, your Honor, nobody's

3  going to look at a warranty booklet until maybe sometime down

4  the road when there's an issue with their car, maybe they'll

5  look at it to see whether it's under warranty, right?  But the

6  clause that's here was not presented in any way.  There was no

7  actual notice provided to these customers that there was an

8  arbitration clause in the warranty booklet, and under the terms

9  of this clause, they were required to opt out within 30 days,

10  right?  So if your car has an issue six months down the road

11  and you open up that warranty booklet and say, hey, is this --

12  I wonder if this is under warranty, it would have been too late

13  to opt out at that point, anyway, obviously.  So I think I just

14  want to make sure that's clear.

15         The warranty, itself, was not available until

16  post-transaction.  They've sort of said that this warranty was

17  provided in connection with the transaction.  The reality is

18  it's in the glove box.  You can't see it until after the

19  transaction.  But I think, more importantly, there's no

20  evidence here that anybody signed any of these, that anybody

21  accepted the arbitration clause, electronically or otherwise.

22         To answer one of your Honor's questions from before,

23  there was no incorporation by reference of an arbitration

24  clause in anything that these people signed or otherwise agreed

25  to, and there's no evidence that FCA or anybody else provided

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 19

1   anybody with notice about an arbitration clause, right?  They

2   say they provided notice that there's a warranty.  That's much

3   different than saying there's an arbitration clause in this

4   place where it's really random and really, I think, not

5   reasonably expected to be there.  They didn't provide any

6   notice at all.  Nobody said, hey, you should be aware of this

7   warranty booklet that's in your glove box has an arbitration

8   clause; you should read that.  Nothing of that sort.  And the

9   reality, your Honor, is the law does require more.

10          I mentioned earlier that no court has compelled

11  arbitration based on one of these classes.  Well, a few courts

12  have looked at arguments, just like the argument FCA is making

13  here today, and what we see is a consistent pattern of courts

14  finding -- courts denying motions to compel arbitration in this

15  context, where the warranty or similar document was only

16  available post-transaction and nothing was said to the customer

17  about the existence of the arbitration agreement, the

18  arbitration clause, itself.

19          And I'd refer your Honor to three cases in particular

20  on that.  One is Garcia, which is a case from the Northern

21  District of Alabama, which, I believe, applied Michigan law.

22  The case number is 17-cv-1162, and the decision was from

23  February 28th, 2018.

24          Same issue, same result in a case called Himan,

25  H-i-m-a-n, versus Thor Industries.  That's 2022 Westlaw 683650.

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 20

1   That's a Northern District of Indiana case from 2022.  And the

2   same with a case called Demitio versus REV Recreation

3   Group, Inc., 2018 Westlaw 1744958.  That's another Northern

4   District of Indiana decision.  And what we see from these cases

5   is a consistent pattern of courts saying exactly the scenario

6   here is not good enough.  It's not enough to show contract

7   formation.

8           Another case that I'd refer your Honor to on this

9   point is Bacon versus Avis Budget Group, a Third Circuit

10  decision from 2000.  It's 959 F.3d 590.  And the issue there

11  was an arbitration clause was contained in the so-called rental

12  jacket that's provided to the customer after they complete the

13  rental car transaction, and the Court said, that's not enough.

14  That's not enough for contract formation.  I think what the

15  defendant had in the Avis case was far more than what FCA can

16  point to here.

17          With respect to Sixth Circuit authority in Michigan

18  law, specifically, I wanted to ask your Honor to take a look at

19  your own decision in Tucker from last year, which your Honor

20  will probably recall, the employee in that case signed, I

21  believe electronically, through an electronic portal, they

22  signed the terms and conditions that contained the arbitration

23  clause.  And I just want to ask your Honor to think about that

24  case and compare it to the facts here, where there's no

25  presentation of this at all, no notice provided to customers

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 21

1    that there's an arbitration clause, that they're giving up

2    their rights to go into court, nothing, no kind of acceptance,

3    electronic or otherwise.

4              With respect to the issue of notice and what kind of

5    notice is required before you can bind somebody to something

6    based on their action or, in this case, their inaction, Sixth

7    Circuit law and Michigan law is very clear that in order to do

8    that, you need to have conspicuous, adequate, reasonable

9    notice.  And I'd refer your Honor to a couple of cases on that

10   point.  One is the Hergenreder case, which is a Sixth Circuit

11   decision from 2011.  The cite is 656 F.3d 411.  And Jonah

12   versus Latinum, which is a case from Judge Michelson in this

13   district from last year, 2024 Westlaw 3029505.  Those two case

14   contain, I think, really good discussions of what kind of

15   notice is required if you're going to bind somebody to

16   something, and they apply that law to the facts in those case.

17   I would urge your Honor to read those cases and consider them

18   in light of the facts in this case where there was actually no

19   notice at all provided to these folks that there was an

20   arbitration clause somehow sitting in a non-contract warranty

21   booklet that's sitting in their glove box.

22             And the other case I wanted to refer your Honor to is

23   Dahdah versus Rocket Mortgage, which is a 2024 decision from

24   Judge Behm in this case, also talking about what's required in

25   terms of conspicuous notice in order to bind somebody to an

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 22

1   arbitration clause.

2          We also noted that the two cases that your Honor

3   cited in your order calling for this hearing, I think, are

4   really instructive and distinguishable from this case.  Your

5   Honor cited Galea versus FCA.  In that case, the plaintiff

6   actually signed, I believe hand signature, signed the contract

7   that had the terms and conditions in there.  So you had a clear

8   acceptance, something that's totally absent here, totally

9   missing here.

10          The other case you cited was Industrial Power.  And,

11   similarly, in that case the plaintiff signed the first

12   document, the first contract, which expressly incorporated in

13   it by reference the second contract that had the arbitration

14   clause.  Here we have no acceptance, you know, written,

15   electronic or otherwise, and we have no incorporation by

16   reference, to answer your Honor's question from earlier.

17          My colleague mentioned the Higgs case and they cited

18   a couple of other cases on the reply brief.  I think those

19   cases are actually really instructive here and they're all

20   distinguishable.  What those cases show is that if you're going

21   to bind somebody to something based on inaction, right?  In

22   here they would say you didn't opt out within 30 days, right?

23   So that's inaction; you're bound.  That's their argument.

24          If you're going to do that, there needs to be two

25   things present:  One, if you look at these cases, there needs

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 23

1   to be adequate notice.  And, again, refer you to Hergenreder

2   and Jonah, the other cases I mentioned before, and just

3   reiterate here, zero notice.  Nothing was told to these people

4   that there was an arbitration agreement sitting in some random

5   document that they would, you know, have no reasonable idea

6   that there was going to be an arbitration clause in it.

7           The other thing that needs to be present is the

8   customer really has to have an opportunity to cancel the

9   transaction.  And if you look at Higgs and if you look at

10  Taylor and Thomas, these are the three cases that FCA cited in

11  their reply brief, those two elements are present, and they're

12  totally missing here.

13          In Higgs, the plaintiff there was specifically told

14  when they called to order, there was a third-party extended

15  warranty, that they were going to be sent terms and conditions

16  and that they should read those terms and conditions, and if

17  they didn't like them, they should cancel the transaction

18  before the transaction was complete.  Totally distinguishable

19  on multiple bases.  But I'd also point out that the clause

20  there was contained in terms and conditions in an actual

21  contract, not in some warranty booklet that's -- that's not a

22  contract.

23          In Taylor, very similar situation.  The plaintiff was

24  provided a specific arbitration agreement, a single document as

25  well as multiple other documents that referred to it.  There

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 24

1    was no dispute that the customer had received those and was on

2    notice of those.  It was not in dispute.

3         Thomas is the other case they cite.  In that case the

4    plaintiff -- there was an audio recording that showed that the

5    plaintiff was told when they ordered, I believe it was coins,

6    they were told that there was an arbitration agreement, and the

7    recording showed that the plaintiff had verbally assented to

8    the arbitration agreement.  Totally different facts from what

9    we have in this case.

10        I did want to point out that, as we mentioned in our

11   brief -- and I'm not going to repeat what's in -- what's in our

12   brief -- this is really not mutual assent.  It's not even

13   close.  This is FCA trying to unilaterally impose a term, a

14   material term after the transaction is completed.  Under very

15   clear Michigan law, that's not okay.  And I'd refer your Honor

16   on that point to Bank of America versus First American Title

17   Insurance Company, which is 878 N.W. 2d at 816.  It's a 2016

18   decision from the Michigan Supreme Court that's directly on

19   point on that issue.

20        And I would say, it's even worse in this situation,

21   because it's not just FCA trying to unilaterally impose a

22   material term.  The party trying to do it does not even have a

23   contractual relationship with the customer, right?  That's --

24   which I think is a pretty important point, right?  These people

25   make purchases and leases through entirely different entities.

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

*Page 25*

1   You know, we talked earlier about the third-party agreements.

2   And this is actually a point that FCA, itself, has trumpeted.

3   If you look at pages 9 through 11 of their motion to dismiss,

4   they are saying several of our claims can't succeed because

5   there's a lack of privity between the customer and FCA.  If

6   there's no privity between the customer and FCA, how can there

7   be a binding arbitration agreement?  It doesn't make sense.

8          The last point that I would make, your Honor, on this

9   is -- is kind of specific to this case, although it did come up

10  in the Jonah case that I mentioned earlier, is that even if all

11  the other things that I said here today were not true, even if

12  you assume there was great notice and everybody was told, you

13  know, point blank there's an arbitration agreement, you should

14  go read it, there are -- they're motion has to fail here for

15  the additional reason that nobody signed an arbitration

16  agreement.  And if you look at the clause, itself, that they're

17  invoking, it seems to -- it seems pretty clear that it

18  contemplates a signature is required.  And I'm going to just

19  read briefly from the clause.  It says that the arbitration

20  rules that will apply will be those, quote, in effect at the

21  time you signed the agreement to arbitrate.  There's no

22  evidence that anybody signed any agreement to arbitrate here.

23  All of the plaintiffs who submitted declarations say the exact

24  opposite.  I don't think, ultimately, that's even going to be

25  disputed.

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 26

1        And there's actually another portion of the clause

2   that also suggests very clearly that a signature is needed.  It

3   says, you can opt out within 30 days of, quote, signing the

4   arbitration acknowledgement form at the dealer.  There's no

5   evidence, your Honor, that there is such a form, let alone that

6   any of these plaintiffs signed one of them.  So not only does

7   that present an independent basis why their motion must fail,

8   but on the opt-out point, in addition to not providing

9   sufficient notice, in addition to putting this in a

10  non-contract document that people wouldn't expect would have an

11  arbitration clause, it seems like they're telling people they

12  have to opt out within 30 days of something that never even

13  happened, so it seems like an impossibility.  It's just another

14  reason.

15       From our perspective, your Honor, they failed to

16  satisfy the initial burden in terms of -- in terms of the

17  mutual assent issue.  We think the inquiry should end there,

18  but I think at the very least, if your Honor disagreed with

19  that and felt like they have met that initial burden, at the

20  very least, we have put this at issue, both with the points

21  that I've made today and also with the named plaintiff

22  declarations, all of the named plaintiff declarations state

23  point blank that they did not receive the warranty booklet

24  before or during the transaction, that they neither saw nor

25  were informed of an arbitration clause before or during the

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

1  transaction, and that the terms of the provision were never

2  presented as a condition of sale, nor were they advised of any

3  right to opt out.

4          Under Boykin and Ford versus Midland, I think those

5  declarations, alone, would mean we can't just grant their

6  arbitration motion.  I think we would, at the very least, have

7  to have a bench trial under applicable Sixth Circuit law.  But,

8  again, I don't think we need to get there, because I don't

9  think they've satisfied their initial burden on this, for the

10  reasons -- for the reasons that I've mentioned before.

11          Happy to answer any questions that your Honor has;

12  otherwise, the only other point I'd make is just to sort of

13  take a step back and sort of remind us of the ramifications of

14  this.  If they're able to compel arbitration or even if we need

15  to have a bench trial because -- just because they stick

16  something in the glove box and never tell you there's an

17  arbitration clause in it, every single manufacturer is going to

18  do the same, and every single one of these auto defect cases,

19  at the very least, are going to get held up for months and

20  months and months as we go through this process.  But I think

21  maybe even more importantly, these auto manufacturers are going

22  to evade real responsibility for even the most severe auto

23  defects, and this case presents a really good example, because

24  the cars are literally blowing up.  Their exploding and they're

25  at risk of continuing to explode, and FCA knows that, and we

1    can't let that happen, particularly based on a clause that

2    these folks were clearly never -- never informed about and did

3    not agree to.

4            Happy to answer any questions that your Honor has.

5        **THE COURT:**  Does -- and I probably have some

6    questions for both, and it is your motion, so you'll get to

7    speak again.

8            So is it plaintiff's position that even though you're

9    not bringing an express warranty claim, because I do recognize

10   that that is the difference between this and the previous case

11   and the estoppel arguments and issues, and having reviewed that

12   transcript understand in the Fisher case that the express

13   warranty claim was ultimately dropped, and then that was when

14   the warranty book was no longer at issue.

15           So, is it plaintiff's position, because you are not

16   invoking an express warranty claim, the arbitration provision

17   in there is then, therefore, invalid, or is it simply that,

18   well, then you don't get to invoke the arbitration provision in

19   there, whether we believe it's valid or not, because we're not

20   suing under the express warranty?

21       **MR. HELLER:**  Well, I think what I would say, your

22   Honor, is, because there is no express warranty claim, I don't

23   think there's even a possible legal estoppel argument claim,

24   and I think my colleague basically acknowledged the same.  I'm

25   not sure that estoppel argument would be a very good argument,

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 29

1    legally, but there's -- putting that aside.

2          With respect to, like my colleague talked about some

3    of the plaintiffs have had repairs that were under warranty.

4          **THE COURT:**  Yeah.  So my question would be, then, so

5    what about contractual estoppel?  If they've utilized the

6    benefits of that agreement, then why are they not then held to

7    the additional provisions therein?

8          **MR. HELLER:**  So, two points I would make on that.

9    One is the warranty is not an agreement.  The warranty is

10   basically a part of the car, right?  And that is not utilizing

11   a contract.  That is having a -- that is having an issue with

12   your car.  That's all that means is their car had a problem and

13   that problem happened to be, perhaps -- we haven't seen any

14   evidence of this, right?  He just said this person has this

15   many repairs, that person has that many repairs.  There's no

16   evidence of that right in the record.  But, just because you

17   have a repair that may be covered under warranty, doesn't mean

18   that you're utilizing a contract, and it doesn't turn the

19   warranty into a contract.

20         If you look at the warranty, itself, it doesn't have

21   any of the hallmarks of a contract.  It doesn't say, here's the

22   parties.  This party is this and that party is that, and here

23   are the mutual obligations that each party has.  It's entirely

24   a one-way thing that's part of your car, right?  This is like

25   them putting an arbitration clause on the bottom of the spare

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

1  tire, something like that.

2         The other point that I would make, because your Honor

3  is saying what about contractual estoppel, I don't think

4  there's any contractual estoppel issue, because that is not --

5  that is not these folks invoking a contractual provision, that

6  is simply these people having a problem with their car.

7         **THE COURT:**  But having a problem with your car under

8  warranty, does that not, then, obligate the manufacturer to fix

9  it?  Like, doesn't that impose some responsibilities on both

10 sides of that -- I mean, I recognize you're saying, you know,

11 it's a part of the vehicle.  Fair.  But if it imposes an

12 obligation, then, on the manufacturer to repair and they can't

13 say I'm not repairing because it's under warranty, right?  So,

14 then, does that not obligate the other party such that there's

15 some type of contractual obligation based upon the terms and

16 conditions included in that warranty?

17        **MR. HELLER:**  So I think the key here lies in the

18 30-day opt-out period, right?  Because their whole argument is

19 premised on the idea that these people could have opted out,

20 right.  Their whole argument is they're somehow on notice of

21 this even though nobody told them and they had 30 days to opt

22 out.  But nobody's invoking this warranty within 30 days.

23        **THE COURT:**  Okay.

24        **MR. HELLER:**  And nobody even -- you know, as I think

25 I said earlier, nobody's even looking at a warranty booklet

1  unless and until there's a problem.  It's not something where

2  people would think for a second that there's something like an

3  arbitration clause or something restricting their ability to go

4  to court on something that's entirely outside of the warranty

5  and not related to an express warranty claim, especially.

6         **THE COURT:**  I think that's all I have question-wise.

7  It is defendant's motion, so I will give you an opportunity for

8  a brief rebuttal.  And I do have a couple questions for defense

9  counsel, but I will allow you to go ahead.

10         **MR. D'AUNOY:**  Lots to deal with here, your Honor,

11  because I think we're mixing up lots and lots of different

12  concepts.  So starting from just the very basic, there is no

13  requirement under the law that an arbitration agreement has to

14  be signed, so any notion that people didn't sign anything and

15  this and that does not carry the day for plaintiffs.

16         Now, what I heard my opposing counsel stand up here

17  and say was these people didn't have notice and they -- and

18  they signed declarations saying I didn't get the warranty, but

19  as the cases that I discussed earlier dealt with, your Honor,

20  we've dealt with this question in terms of warranties, and many

21  courts, including the Eleventh Circuit that I cited and the

22  Tenth Circuit and the Seventh Circuit and Judge Kumar in

23  Grundy.  We hear the same thing all the time:  I didn't know.

24  You didn't tell me.  I shouldn't have had to read the warranty.

25  It was hard to receipt the warranty.  All of those arguments

1    and courts that have dealt with them have repeatedly -- because

2    the law is very clear that you can't just place your head in

3    the sand and say, I didn't know.  And that's the actual quote.

4    I think it's worth saying, again, from the Marksberry V FCA US

5    case, which was all about someone claiming, you can't hold me

6    to the terms and conditions and obligations in a warranty

7    because I'm claiming I didn't get it at the time of purchase.

8    And the Court said, plaintiff cannot place his head in the sand

9    and then argue that defendant concealed something from him.

10         And Judge Kumar made the exact same finding.

11    Plaintiffs had notice of the warranty from their vehicle's

12    respective window stickers and were, likewise, responsible for

13    inquiring about noted restrictions and details.  So the idea

14    that somehow them claiming that they didn't know about the

15    warranty, despite the owner's manual, despite the window

16    sticker, despite the glove box materials, just has been

17    rejected time and again by courts, your Honor.

18         And then the terms of the signature -- and my

19    opposing counsel tried to distinguish the Higgs case, but --

20    and I'll read a quote from the Higgs case.  "Once plaintiff

21    received the agreement, he was getting -- given the opportunity

22    to reject its terms.  Instead, he kept the warranty, thereby

23    assenting to its terms, including the arbitration provision."

24         And warranties are agreements.  Court after court

25    finds that warranties are -- I said "arbitration" are

1  contracts, sorry.  They're not these amorphous just one-way

2  thing where somebody knocks on a dealership's door, FCA just

3  has to do something.  These are -- courts, time and again, find

4  that these are enforceable contracts, agreements in breach of

5  warranty cases and breach of contract cases.  So the idea that

6  these are just some amorphous being thing that aren't contracts

7  is contrary to many, many courts' findings over the years.  And

8  I've actually never heard of a Court saying that there's not --

9  it's not a contract and that there's not mutual obligations

10 going both ways, including, you know, what you have to do to

11 your vehicle.  We all know when we buy a vehicle, you need to

12 read your warranty, because do I need to do -- do I need to

13 care for my vehicle in a certain way in order for the warranty

14 to be maintained?  I buy a new refrigerator, What do I need to

15 do to make sure that refrigerator -- this is the same type of

16 situation, your Honor.

17        And the only reason, and my counsel -- or my opposing

18 counsel attempted to make a big deal about this hasn't been

19 done before.  Well, it hasn't been done before because these

20 are relatively new.  The fact that FCA is putting these

21 arbitration agreements in its warranty, much like other

22 manufacturers of other products, including, like, the shingles

23 and the housing components and all the other cases that we've

24 talked about, it just hadn't been ruled on.  It hasn't been

25 rejected, just because it's a relatively new.  I know other

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 34

1    OEMs do it, so it's not like it's going to be something that's

2    going to end the consumer's ability to rectify situations that

3    might come up with their vehicles, they're just going to have

4    to do it in arbitration; they're not going to be able to do it

5    in class actions.

6            But that has never been a reason to not enforce a

7    contract just because, you know, someone might not get to file

8    a class action, your Honor.  If these named plaintiffs -- and

9    the whole idea that vehicles are exploding and this is a very

10   important case, your Honor, this is a case about economic loss.

11   This has nothing to do with anyone actually being physically

12   injured.  There's not claims here that, you know, the vehicles

13   need to be remedied in any certain way.  Obviously, NHTSA's

14   taken care of that.  This is purely a case about economic loss.

15           These people are claiming that they overpaid for

16   their vehicles because they had a defect and they'd like to be

17   compensated for that overpayment.  Not wanting to get into the

18   merits of the claim, but, ultimately, if that claim has merits,

19   an arbitration forum could address those claims just as simply

20   and probably quicker and more efficiently than a court forum,

21   your Honor.

22           In terms of counsel, I think a couple times he

23   mentioned this and that's not in the record.  Well, obviously,

24   when we filed the motion, your Honor, we didn't know that these

25   plaintiffs were going to claim, I'd never seen the warranty,

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 35

1   because most people when they buy a vehicle look in the glove

2   box, see the warranty, ask the dealer, the Monroney label.  So,

3   obviously, some of these things that we put in are not in our

4   moving papers, but we would be happy to do a supplemental

5   record or supplemental briefing, because, you know, the facts

6   are important in terms of these people getting repairs, in

7   terms of what these people's owner's manuals said.

8          So, ultimately, if the Court doesn't find that the

9   record here is sufficient to grant the motion, we would ask

10  for, you know, additional briefing and to clean up the record

11  in terms of some of the things we talked about here today.

12         The only other thing I may have already mentioned,

13  but I have a note here, but I think even if I've said it, it's

14  worth driving the point home:  No law supports the notion that

15  an arbitration agreement has to be signed to be enforceable,

16  and we've cited cases in our briefing.

17         **THE COURT:**  How do you respond, though, to the fact

18  that the warranty, itself -- and I get that you're saying law

19  doesn't require that warranties have to be signed in order to

20  be enforceable, but the warranty, itself, the provision, the

21  arbitration provision, I believe -- and I'm looking at -- let

22  me -- I have a note here -- that the arbitration provision,

23  itself, relies upon contemplating that there's a signature on a

24  separate agreement to arbitrate.  And so I'm looking at ECF

25  number 36, page ID 5614, as well as ECF 32-2, page ID 5368.

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 36

1   And so there, if the agreement, itself, and the statement that

2   says you're being compelled to arbitration for any dispute with

3   FCA regarding this vehicle contemplates that there's a

4   signature on a separate agreement, whether required by law or

5   not, is it, then, the intent of the parties that someone has

6   sat down and gone through an arbitration agreement and signed

7   something assenting to those terms?

8        **MR. D'AUNOY:**  Yes, your Honor.  And I don't know the

9   plaintiffs briefed this or that we really address this in our

10  briefing, but if you look at the cases we've cited, it's really

11  the opportunity to opt out that -- that shows the mutual assent

12  here.  So it's you know of the provision, you have the

13  opportunity to opt out.

14       In terms of did these named plaintiffs sign a

15  separate agreement, that's something that we would have to do

16  discovery on to learn from the dealerships as to whether or not

17  they had them sign separate arbitration agreements as the

18  language you've cited.  So that would be another way in which,

19  if you deny the motion and we have to do discovery, that we

20  would want to reserve our rights to bring up if we do find

21  those.

22       **THE COURT:**  So, I mean, it does appear to me with

23  respect to -- I mean, I think there were some additional issues

24  in the briefing, and I don't know that it's necessary to go

25  into that.  I do know with respect to delegation clauses and

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 37

1   incorporation of the American Arbitration rules and -- so I do

2   know there were some arguments there, and I do note for the

3   record that the court had an opportunity to review the briefing

4   on that and I do think that the briefing is stuff with respect

5   to those issues.

6           But I'm kind of at a point where the question is, you

7   know, from a judicial economy perspective, what makes the most

8   sense in moving forward?  And, so, you know, my concern is if

9   we say warranty booklets are, you know, not enforceable for an

10  arbitration provision, are we going to be right back here,

11  because then it's going to say, you know -- and, again, I'm not

12  alluding to any decision of the court either way, but are we

13  going to be back here because, you know, there's a provision in

14  there that contemplates there's a signature on a separate

15  agreement?  And then it's, oh, wait.  I found the separate

16  agreement, and it actually says arbitration in this agreement

17  and refers to that agreement for arbitration.  And I think that

18  that was my concern in terms of addressing, you know, kind of

19  that Fisher case in the very beginning with respect to, you

20  know, I understand in that case that the actual compelling of

21  arbitration came up much later in the case, and I don't want

22  your clients to expend the money of going through, you know, we

23  rule on this and then we're proceeding in the case and then,

24  you know, eight months from now, then we're back here right

25  where we are again.

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 38

1      And so I do -- you know, I'm in a unique position

2   because I'm saying, you know, do we hold this in abeyance?  Do

3   we have a limited period of discovery?  Does that make sense

4   for this case if the ultimate argument is simply just going to

5   be, you know, as drafted, this contemplates that there may be a

6   signature on a separate agreement, so let's go look for that

7   separate agreement.  You know, that is my kind of thought

8   process right now and I'd like to hear from both parties with

9   respect to kind of your thoughts on that.

10      **MR. D'AUNOY:**  No, your Honor, that makes sense.  We

11   are always very reluctant to engage in any discovery, because,

12   as you might know the -- the argument, then, is that you've

13   waived any right to compel arbitration.  I do think that makes

14   a lot of sense, your Honor, to do some very limited discovery

15   in terms of third-party agreements that these named plaintiffs

16   signed, these named plaintiffs purchased documents, the -- in

17   some cases, plaintiffs will actually produce the purchase

18   documents that show they have an arbitration agreement.

19   Oftentimes, they wait until very late in discovery to try to

20   produce those in hopes that we're too late to compel

21   arbitration.  But, certainly, if we got early discovery of the

22   named plaintiffs' purchase agreements and we were allowed to do

23   third-party discovery of the entities from which they purchased

24   those vehicles, we could wrap up the factual basis of some of

25   the things that we've been talking about pretty quick.

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 39

1          **THE COURT:**  I do have a question, and I'm not sure if

2    you know the answer to this at this point, but does FCA require

3    that these warranty booklets be placed in the vehicles or do we

4    know that?  I mean, is it possible that the dealer didn't give

5    them to them, or is this, like, a requirement in terms of, if

6    you sell a vehicle, it has to include the following?

7          **MR. D'AUNOY:**  So -- so, I would say the more general

8    requirement is that dealerships refer plaintiffs to a place to,

9    in order to conserve paper, to go print the --

10         **THE COURT:**  Gotcha.

11         **MR. D'AUNOY:**  -- warranties.

12         I do know when I've deposed plaintiffs, some dealers

13   will go ahead and do that, just as more of a customer service

14   thing and go through it, and it helps them -- or maybe they

15   perceive it helps them sell vehicles.  So there is some

16   variation in terms of how different dealers go about doing it.

17   But I think that the general, the most general one is people

18   are referred to where they can go get the warranty.

19         **THE COURT:**  Okay.  My other question to you is just

20   with respect to whether these third-party dealer agreements

21   that the plaintiffs would have actually, I'm assuming,

22   contractually sat down to do the paperwork to purchase a

23   vehicle.

24         Are those agreements provided to the dealers by FCA,

25   or are those independent agreements that are with just

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 40

1   dealer-plaintiff as opposed to FCA-drafted agreement, approved

2   agreement?  I'm just curious.

3        **MR. D'AUNOY:**  Those are very much dealer-specific

4   agreements.

5        **THE COURT:**  Okay.

6        **MR. D'AUNOY:**  And we see this in other cases.  For

7   example, the Fisher case, I forget how many named plaintiffs

8   there were, but when we actually got all their purchase

9   paperwork from dealers, it was less than all of them that had

10  signed a variation of an agreement with a dealer that actually

11  had enforceable arbitration language in it.  So dealers are

12  using their own agreements, not FCA-vetted, approved, required,

13  nothing like that.  Some of them do have arbitration

14  provisions.  Some of them have arbitration provisions that are

15  stronger than others in terms of protecting FCA US, so there's

16  a lot of variations in those agreements.  I do know that some

17  of them now are referencing specifically other arbitration

18  agreements. So, I mean, there's just a huge variation that

19  we're seeing.

20       **THE COURT:**  Okay.  That is, I think, all the

21  questions I have.  And I would like to hear from plaintiff's

22  counsel with respect to the issue of kind of what makes the

23  most sense in moving forward.

24       **MR. D'AUNOY:**  Well, if this was my last word, your

25  Honor, I thank you very much for your time.

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 41

1      **THE COURT:**  Thank you very much for presenting.

2      **MR. HELLER:**  Your Honor, with respect to procedure

3   and the order of things, we think the proper order would be to

4   deny the existing motion to compel, which is only based on the

5   warranty booklet.  I don't think there's discovery that can

6   allow them to get over the hump on that.  I just don't think

7   there's any kind of notice that's provided.  There's no -- I

8   don't think it's disputed that nobody signed this arbitration

9   agreement or an acknowledgment to arbitrate or whatever that

10  form is that's required.  I just don't think they can win that

11  motion, even with additional discovery.  So that's what we

12  think is the best appropriate next step.

13      And then to go onto the motion to dismiss, I don't

14  think it makes sense to hold everything in abeyance until we go

15  through the third-party contract process for a couple of

16  reasons.  One is something that my colleague referred to sort

17  of towards the end there, and that's that not all of the

18  plaintiffs will have these third-party agreements that have

19  arbitration clauses, so it's not like, with the warranty

20  booklet, their argument, I guess, ostensibly applies to all of

21  the plaintiffs.  That will not necessarily be the case with

22  respect to the third-party warranty booklets.  And I believe in

23  Fisher, as counsel mentioned, several of the plaintiffs have

24  not been compelled to arbitration at all, and so the case would

25  at least go on for them here -- as applied here would

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

1    necessitate going through the motion to dismiss and the rest of

2    the litigation.

3         THE COURT:  But how do you respond to if there is an

4    arbitration provision, or at least reference to in the warranty

5    provision and a delegation clause, that the motion to dismiss

6    is not my decision; that would be the arbitrator's decision,

7    correct?

8         MR. HELLER:  Are you talking about the arbitration

9    clause in the warranty booklet or in the third-party contracts?

10        THE COURT:  It could be either, right?  I mean, I

11   think we could get into the argument of the delegation clause

12   that's actually in the warranty booklet.  I guess my concern

13   would be that, you know, as I noted from looking at the

14   provision from the warranty booklet, which, if it contemplates

15   that there is some additional agreement that's signed or if

16   this is incorporated by reference in another agreement, that

17   there is a delegation provision, or at least there's an

18   incorporation of the American Arbitration Association rules,

19   which include a delegation provision.  And so under that, that

20   would say that I am, then, divested of jurisdiction to

21   determine a motion to dismiss because that would be in the

22   purview of the arbitrator, not the Court.

23        MR. HELLER:  So two things.  Let me just try to

24   address the warranty booklet first and then the third-party

25   contract.

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 43

1    So with respect to the warranty booklet -- I don't

2  want to repeat what's in the briefing, but I don't think -- I

3  mean, the standard under Henry Schein is there needs to be

4  clear and unmistakable delegation of issues to the arbitrator.

5  And they're referencing this -- they're citing to the reference

6  to the AAA rules.  And it is true that some courts have said

7  that a reference to AAA rules, crazy as it sounds, constitutes

8  clear and unmistakable delegation of issues.  What's not true

9  is that every clause that references the AAA rules clearly and

10 unmistakably delegates.  And so the most obvious case would be

11 if the clause referenced the AAA rules, but then also

12 explicitly said these issues are for the court to decide.

13         **THE COURT:**  But doesn't the Sixth Circuit in Blanton

14 say that reference to the American Arbitration Association

15 rules provides clear and unmistakable evidence?

16         **MR. HELLER:**  Not necessarily in every case.  So if,

17 for example, the clause said, had a reference to the AAA rules,

18 but also said explicitly, the issues of enforceability, issues

19 of scope are to be decided by the Court, Well that explicit

20 language would certainly trump the, I guess we'd call it

21 implicit language by the reference to the AAA rules.

22         **THE COURT:**  But if we're talking about the warranty

23 box, it doesn't say that, correct?

24         **MR. HELLER:**  It does, actually.  So the warranty

25 booklet in this case -- it doesn't say exactly that.  I should

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

1   be clear.

2        **THE COURT:**  Okay.

3        **MR. HELLER:**  What the warranty booklet here says, it

4   says, quote, if a court or arbitrator decides that any part of

5   this agreement to arbitrate cannot be enforced as to a

6   particular claim for relief, et cetera.  So it's contemplating,

7   certainly, that a court can and may resolve issues of

8   enforceability.  And the reason why that matters is because the

9   standard under Henry Schein is it's got to be clear and

10  unmistakable.  If there's anything that creates ambiguity on

11  this issue, the default is that the court would decide.

12        So a reference to the AAA rules combined with the

13  language that I just quoted from creates sufficient ambiguity,

14  and there actually is some case law on this point that I'd

15  refer your Honor to.  There's a case from the Northern District

16  of California called In RE: Tesla Advanced Driver, and the cite

17  for that is 2023 Westlaw 6391477 at pin cite page 6.  I think

18  the language is either identical or nearly identical, meaning

19  the language creating the ambiguity, and it includes a

20  reference to the AAA rules, and it says, well, now there's

21  ambiguity.  That's not clear and unmistakable.  The key there

22  is the standard being clear and unmistakable.  So if anything

23  creates ambiguity or makes it less clear, that would be the

24  issue.

25        The -- on the third-party -- third-party agreements,

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 45

1   the dealer agreements, we don't have those in front of us,

2   obviously, so we're sort of operating in a vacuum to some

3   degree.  But what we know from the Fisher case is that what

4   happened there was the Court didn't compel the claims to

5   arbitration, the Court enforced the delegation clause in some

6   of the plaintiffs' dealer contracts.  And what we're actually

7   seeing in cases where FCA is invoking this and courts are

8   delegating issues of enforceability, meaning FCA's

9   enforceability over this third-party contract, to an

10   arbitrator, the arbitrators are pretty consistently coming back

11   with the answer of, no, FCA can't enforce this.  They're not

12   covered under this.  They're not a party to this agreement.

13   They're not -- you know, the customers are not required to

14   arbitrate claims against FCA based on these contracts that they

15   have with the dealers.

16           The point being that this motion to dismiss, even if

17   some of these plaintiffs were compelled to arbitration via the

18   delegation clause, in other words, just to decide arbitrability

19   and enforceability by FCA, it's highly likely, if not -- it's

20   not very likely that this is going to be before the Court,

21   anyway, and the motion to dismiss would be before the Court,

22   even in that context.

23           **THE COURT:**  Okay.

24           **MR. HELLER:**  Did that answer your question, your

25   Honor?

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 46

1          **THE COURT:**  It did.

2          **MR. HELLER:**  Okay.  Thank you.

3          Does your Honor have any other question?

4          **THE COURT:**  I have no more questions, so thank you

5    very much --

6          **MR. HELLER:**  Thank you very much.

7          **THE COURT:**  -- for your presentations today.

8          I am going to take this under advisement.  I think I

9    need to go back and just take a look at everything, and thank

10   you both for your presentations today, as well as your

11   references to some additional law that the Court will

12   definitely take a look at and consider.

13         My hope is to get you a decision, at least on this

14   part of the motion, sooner rather than later.  I do recognize

15   that this is going to dictate how this case goes forward, and I

16   just want to make sure that we're moving in a way that, you

17   know, takes into account, obviously, you know, the time and

18   effort that you guys are putting into this, and respecting your

19   clients' time as well.

20         And so we will take a look at this.  We -- as I said,

21   we'll try to get to at least the first portion of the combined

22   motion, and we will address at that point whether we think --

23   you know, it may very well be, if it gets to a decision that we

24   think that arbitration is not compelled, we may address the

25   motion to dismiss.  If we need to hear from the parties on

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

*Page 47*

1  that, again, I said we have reviewed it, but I didn't want to
2  prolong, if we are going to compel that issue to arbitration,
3  to have you arguing on that unnecessarily.  And, so, if we need
4  to schedule it for another hearing with respect on being heard
5  on the motion to dismiss, if that becomes at issue before this
6  Court, I'll do so at that time.
7        If, in the interim, anything comes up and you need
8  anything from the Court, please feel free to reach out and we
9  will address that, accordingly, but we will try to get you a
10 decision sooner rather than later.
11        **MR. HELLER:**  Thank you very much, your Honor.
12        **THE COURT:**  Anything further from the parties?
13        **MR. HELLER:**  Nothing here, your Honor.  Thank you.
14        **THE COURT:**  Okay.  Thank you guys so much.  And enjoy
15 the weather for me.
16        **THE CLERK:**  Court stands in recess.  Thank you.
17     (At 2:39 PM, proceedings adjourned.)
18                    -   -   -
19
20
21
22
23
24
25

*24-10546; Gary Frisch, et al. v. FCA US, LLC*

*Hearing on Motion to Compel Arbitration*
*Wednesday, May 7, 2025*

Page 48

1              **C E R T I F I C A T I O N**

2              I certify that the foregoing is a correct

3      transcription of the record of proceedings in the

4      above-entitled matter.

5

6      s/ Timothy M. Floury, CSR-5780          5/8/2025
       Timothy M. Floury, CSR-5780             Date
7      Official Court Reporter

8                                   -    -    -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*24-10546; Gary Frisch, et al. v. FCA US, LLC*