## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GARY FRISCH, *et al.*, on behalf of
themselves and all those similarly
situated,

      Plaintiffs,

v.

FCA US LLC,

      Defendant.

_____/

Case No. 2:24-cv-10546

Hon. Brandy R. McMillion
United States District Judge

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF NO. 32) AND DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO DISMISS (ECF NO. 32)

      Plaintiffs bring this class action suit against Defendant FCA US LLC ("FCA") for the risks and damages associated with the battery defects in their model years 2020-2024 Jeep Wrangler 4xe and model years 2022-2024 Jeep Grand Cherokee 4xe plug-in hybrid electric vehicles (the "Class Vehicles"). *See generally* ECF No. 30. The alleged battery defects can, and have, caused fires and explosions in the Class Vehicles. *See id.* at PageID.3504. Plaintiffs allege that the battery defect is not only dangerous, but has deprived them of the benefit of the hybrid functionality and full purchase value of their vehicles. *See* ECF No. 36, PageID.5611 ("[T]he secondary market value of these cars has also plummeted . . . ."). Before the Court is FCA's

Motion to Compel Arbitration and Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (ECF No. 32).  The Court held a hearing on the Motion to Compel on May 7, 2025.  *See* ECF No. 38.  Based on the parties' briefing and arguments made at the hearing, the Court **DENIES** Defendant's Motion to Compel and **DISMISSES WITHOUT PREJUDICE** the Motion to Dismiss contained therein.

## I.

Prior to discovering the alleged battery defect, each Plaintiff either purchased or leased their Class Vehicle from an authorized FCA dealer.  *See* ECF No. 30, PageID.3515-3590.  In the glovebox of Plaintiffs' Class Vehicles were written warranty booklets, *see* ECF Nos. 32-2, 32-3, 32-4, 32-5, 32-6 (the "Warranty Booklets"), provided by FCA, which included both a "Basic Limited Warranty and a High-Voltage Battery Limited Warranty," *see, e.g.*, ECF No. 32-2, PageID.5374. The Warranty Booklets contain a section titled "Voluntary Binding Arbitration Provision."  *See* ECF No. 32-2, PageID.5368; ECF No. 32-3, PageID.5401; ECF No. 32-4, PageID.5434; ECF No. 32-5, PageID.5467; ECF No. 32-6, PageID.5499-5500.  That provision reads, in relevant part:

> Please carefully read this voluntary binding arbitration provision, which applies to any dispute between you and FCA US LLC and its affiliates . . . .
>
> \* \* \*
>
> [Y]ou agree that any dispute arising out of or relating to any aspect of the relationship between you and FCA US LLC will not be

decided by a judge or jury but instead by a single arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules in effect at the time you signed the Agreement to Arbitrate.

\* \* \*

You may opt out of arbitration within 30 days of taking delivery of the vehicle and signing the Arbitration Acknowledgment Form at the dealer. . . . If you do not opt out, then this provision to arbitrate is binding.

*See, e.g.*, ECF No. 32-2, PageID.5368 (emphasis omitted) (the "Arbitration Provision").

None of the Plaintiffs received the Warranty Booklet "before or during the transaction where" they purchased or leased their Class Vehicle. *See* ECF Nos. 36-7–36-33 (Plaintiffs' Declarations). Nor were they informed of or presented the terms of the Arbitration Provision, including the right to opt-out, during their respective transactions. *See id.* However, they all had access to the Warranty Booklets once they had access to their vehicles,[1] which occurred before the 30-day opt-out period expired. *See, e.g.*, ECF No. 32-2, PageID.5369 ("You may opt out of arbitration within 30 days of taking delivery of the vehicle and signing the Arbitration Acknowledgment Form at the dealer."). Nonetheless, Plaintiffs maintain that they "never signed any agreement with FCA or otherwise consented to be bound by the

---

[1] At the hearing, FCA told the Court that "the more general requirement is that the dealerships refer plaintiffs to a place [online] . . . to go print the [Warranty Booklet]" but conceded that "there is some variation in terms of how different dealers go about doing it." ECF No. 43, PageID.6098.

terms of the Arbitration Provision." *See, e.g.*, ECF No. 36-7, PageID.5662-5663. None of the Plaintiffs opted out of the Arbitration Provision.

Plaintiffs brought this class action suit against FCA on March 4, 2024. *See generally* ECF No. 1 (the "Complaint"). FCA moved to dismiss the Complaint under Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim. *See* ECF No. 16. Plaintiffs amended their Complaint shortly thereafter, *see* ECF No. 18 (the "First Amended Complaint"), and the Court denied as moot FCA's Motion to Dismiss, *see* ECF No. 20. In response to Plaintiffs' Amended Complaint, FCA filed a combined Motion to Dismiss and Motion to Compel Arbitration, the latter based upon the same Warranty Booklet language they rely on here. *See* ECF No. 21. On August 21, 2024, the Court granted leave to file a Corrected First Amended Complaint to add a party that had been inadvertently omitted as one of the named plaintiffs. *See* ECF No. 23. Plaintiffs filed the Corrected Amended Complaint, *see* ECF No. 24, and again, FCA responded by filing a combined Motion to Dismiss and Motion to Compel Arbitration based upon the Warranty Booklets, *see* ECF No. 25. On October 1, 2024, "FCA US announced a voluntary safety recall (NHTSA No. 24V-720)" which affected potential Class Vehicles and was issued "to address an issue in the vehicles' batteries that could lead to a fire." ECF No. 27, PageID.3477. "Given these recent factual developments," the Court approved the parties' stipulation to allow Plaintiffs to file a Second Amended Complaint, and denied as

4

moot FCA's Motion to Compel Arbitration and Motion to Dismiss. *See id.* On November 25, 2024, Plaintiffs filed their Second Amended Complaint, *see* ECF No. 30, and on January 3, 2025, they filed a Motion to Appoint Counsel, *see* ECF No. 31. FCA responded with the combined Motion to Compel Arbitration and Motion to Dismiss that is now before the Court. *See* ECF No. 32.

The Court held a hearing on the Motion to Compel Arbitration on May 7, 2025. *See* ECF No. 38. At the hearing, the Court heard the parties on the issue of whether they agreed to arbitrate—either through the Warranty Booklets or through other agreements (such as, third-party dealership agreements or a separate "Arbitration Acknowledgment Form" as contemplated within the language of the Warranty Booklet's Arbitration Provision). *See generally* ECF No. 43 (discussing *Fisher v. FCA US LLC*, No. 23-CV-10426, 2025 WL 582451 (E.D. Mich. Feb. 21, 2025), in which the court ordered limited discovery for, and eventually compelled arbitration based on, the purchase and lease agreements the plaintiffs had entered with dealers); *see also* ECF No. 43*,* PageID.6084-6085, 6094-6095 (calling attention to the fact that the Arbitration Provision seems to contemplate that Plaintiffs signed an Arbitration Acknowledgment Form with the dealer regarding the Arbitration Provision). FCA clarified at the hearing that it moved to compel arbitration "based on a notice and a failure to opt out," and not that the Warranty Booklets had been incorporated by reference in other agreements. *See id.* at PageID.6066-6067.

Understanding the motion was based upon the Warranty Booklets as separate agreements to arbitrate—formed by notice and a failure to opt-out—the Court took the issue under advisement. *See id.* at PageID.6105. For the reasons set forth below, having reviewed the parties' briefs and caselaw cited at the hearing, the Court **DENIES** FCA's Motion to Compel Arbitration (ECF No. 32).

## II.

The Federal Arbitration Act ("FAA" or "the Act") governs arbitration agreements. 9 U.S.C. § 1 *et seq*. The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable," except when there are legal or equitable grounds "for the revocation of any contract . . . ." 9 U.S.C. § 2. The Act thus "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010) (internal citations omitted).

Parties can also "delegate threshold arbitrability questions"—such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy—to the arbiter, so long as "the parties' agreement does so by 'clear and unmistakable' evidence." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir. 2021) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*,

586 U.S. 63, 69 (2019)).  Notwithstanding the presence of a delegation clause, "[a] challenge to arbitration agreement formation is always in the jurisdiction of the courts." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300, (2010)).

Under the FAA, 9 U.S.C. § 4, the Court must "hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue . . . make an order directing the parties to proceed to arbitration." *Id.*  However, if the "making of the agreement" is in issue, the Court must proceed to a trial thereof unless the moving party presents evidence from which a reasonable jury could find that a contract exists, and the non-moving party fails to present any evidence of a genuine dispute of material fact as to the validity of the arbitration agreement. *See Memmer v. United Wholesale Mortg.*, No. 23-cv-11261, 2023 WL 8818298, at *3 (E.D. Mich. Dec. 18, 2023) (citing *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)); *In re StockX*, 19 F.4th at 881 ("To determine whether the existence of an agreement is 'in issue,' this court applies the standard for summary judgment.").

The Court applies "ordinary state-law principles that govern the formation of contracts." *In re StockX*, 19 F.4th at 881 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  Under Michigan law, "[t]he party seeking to enforce a contract has the burden of showing that it exists." *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011) (citing *Kamalnath v.*

*Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 504 (Mich. Ct. App. 1992)).  Meaning, as the moving party, FCA must first "carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists."  *In re StockX*, 19 F.4th at 881.

## III.

FCA argues that the Warranty Booklets are valid agreements to arbitrate, and that, because they contain delegation clauses, the Court should defer any gateway issues of arbitrability (such as "scope" or "enforceability") to the arbitrator.  *See* ECF No. 32, PageID.5337.  In response, Plaintiffs argue there is "no basis to bind [them] to an inapplicable and unsigned arbitration provision buried in a glove box warranty booklet that was never presented to" them and that "they did not agree to."  ECF No. 36, PageID.5611.[2]  The core of Plaintiffs' argument is that FCA has failed to show the mutual assent necessary for contract formation.  *Id.* at PageID.5615.  Plaintiffs

---

[2]  The Court notes that one argument Plaintiffs make in opposition to the Motion to Compel is that FCA has waived its right to enforce arbitration by "fail[ing] to raise any arbitration arguments in its first motion to dismiss, which sought dispositive rulings on the merits of Plaintiffs' claims." ECF No. 36, PageID.5612.  Plaintiffs are correct that even if a valid agreement to arbitrate exists, a party may waive its right to enforce arbitration by "taking actions that are completely inconsistent with any reliance on an arbitration agreement."  *Fisher*, 2025 WL 582451, at *4 (internal alterations and quotations omitted).  While it is true that "courts frequently find that a defendant waived its right to compel arbitration where it moved to dismiss a plaintiff's claims on the merits," not "every motion to dismiss is inconsistent with the right to arbitration."  *Id.* (cleaned up).  As this Court explained in *Fisher*, "there is no 'bright-line rule' that a party waives its right to compel arbitration by filing a motion to dismiss . . . . Rather, the waiver analysis rests on the totality of the circumstances."  *Id.* (internal alterations and quotations omitted).  Considering the totality of the circumstances, including the fact that FCA consistently raised its Motion to Compel since its second motion (*see* ECF No. 21) and that the Court never ruled on the merits of FCA's first Motion to Dismiss (*see* ECF Nos. 16, 20), the Court does not agree that a finding of waiver is appropriate here.  *Cf. Fisher*, 2025 WL 582451, at *4-*9; *see also* ECF No. 37, PageID.5858.

also emphasize that, even if FCA could prove each Plaintiff received the Warranty Booklet in their glovebox, the introduction of a material term like arbitration after the transaction is complete is improper.  *Id.* at PageID.5613.

FCA counters that it is irrelevant whether Plaintiffs signed, read, or were provided these Warranty Booklets prior to purchase or lease.  *See* ECF No. 37, PageID.5858.   Courts, FCA argues, regularly "enforce 'at-purchase' arbitration agreements like the ones here when the purchase has (i) some reasonable notice that terms/conditions exist and (ii) a reasonable time to opt-out."  *Id.*  Because Plaintiffs do not dispute that copies of the Warranty Booklets "were available to them in connection with their vehicle purchase or lease *and* that they were afforded a reasonable opportunity to opt-out," FCA contends they have not sufficiently put the formation of the agreement to arbitrate "in issue."  *Id.* at PageID.5859-5860.

The Court disagrees with FCA for two reasons.  First, the Court finds FCA has not met its initial burden of producing evidence that would allow a reasonable jury to find that a contract exists.[3]  Second, even if the Court were to find that FCA met its burden, Plaintiffs have successfully put formation "in issue" such that

---

[3]  Although the Court suggested an alternative finding in its Order setting the Motion for hearing, *see* ECF No. 38, PageID.5875-5876, that finding was based upon a theory of incorporation by reference that FCA denied it was bringing while at the hearing, *see* ECF No. 43, PageID.6066-6067 (contrasting the present case with the *Fisher* case, and confirming that it "moved to compel arbitration here, based on . . . notice and a failure to opt out").  Therefore, no suggestion made by this Court in the Order setting the Motion for hearing affects the decision of this Order.

compelling arbitration would be improper.  The Court will explain its reasoning as to each finding below.

## A. Formation of Agreement to Arbitrate

"Under Michigan law, '[a] valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.'" *In re StockX*, 19 F.4th at 881 (quoting *AFT Mich. v. State*, 866 N.W.2d 782, 804 (Mich. 2015)).  The fourth element, mutuality of agreement, requires a valid offer and acceptance.  *In re StockX*, 19 F.4th at 881.  "That is, there must be 'mutual assent'—*i.e.*, a "'meeting of the minds' on all the essential elements of the agreement."  *Id.* (quoting *Huntington Nat'l Bank v. Daniel J. Aronoff Living Trust*, 853 N.W.2d 481, 488 (Mich. Ct. App. 2014)).  "Whether there was a 'meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'"  *In re StockX*, 19 F.4th at 881 (quoting *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006)).

Here, the dispute centers on whether there was valid offer and acceptance.  *See Tillman v. Macy's, Inc.,* 735 F.3d 453, 456 (6th Cir. 2013) (finding this type of dispute focuses on the question of offer and acceptance).  Michigan law defines an offer as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude

it." *Hergenreder*, 656 F.3d at 417 (quoting *Kloian*, 733 N.W.2d at 770).  Acceptance of an offer occurs when the offeree "manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Kloian*, 733 N.W.2d at 771.

Acceptances made via failure to opt-out, as FCA attempts to enforce here, are not "inherently insufficient." *See Tillman*, 735 F.3d at 462; *see also id.* at 460 (holding the offeree accepted the offer when their "performance mirror[ed] that called for in the offer").  But acceptance by inaction or continued action must be coupled with adequate notice. *See Tillman,* 735 F.3d at 459*; Hergenreder*, 656 F.3d at 414-16; *Smith v. Chrysler Fin. Corp.*, 101 F. Supp. 2d 534, 539 (E.D. Mich. 2000) (citing *Renny v. Port Huron Hospital*, 398 N.W.2d 327 (Mich. 1986)) ("Adequate notice to persons who may be bound by an arbitration proceeding is a necessary element to a fair adjudication and, consequently, necessary for enforcement of an arbitration provision.").  Why?  The Court cannot infer that the inaction manifests an intent to be bound by the offer unless the offeree could know that their inaction would *mean* acceptance, rather than a mere continuation of their status quo.

Notice need not be actual to be adequate; FCA does not need to demonstrate that Plaintiffs actually read the Arbitration Provision to demonstrate they had adequate notice. *See Tillman*, 735 F.3d at 460.  Nor does adequate notice mean the offeror must *require* that the offeree read the offer. *Id.* ("[T]he fact that [the plaintiff]

was not ordered to read the [agreement to arbitrate] and [related] mailings is not, standing alone, dispositive."); *id.* ("[The offeror's] failure to require reading of the numerous arbitration-related documents that it provided [the offeree] does not amount to a failure to provide notice."). However, unlike a situation where the offeree's signature is required, electing to invite acceptance by failure to opt-out requires more of the offeror. *Cf. In re StockX*, 19 F.4th at 882 ("It was plaintiffs' duty to 'read' the contract . . . ."); *see also Memmer*, 135 F.4th at 406 ("Michigan courts presume that people who sign contracts have read and understood them, and 'one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms.'") (internal citations omitted). As this Court put it in *High v. Capital Senior Living Properties 2-Heatherwood, Inc.*, "the absence of a signature deprives the [offeror] of a presumption that it otherwise might enjoy: that one who signs a written agreement is presumed to know the nature of the document and to understand its contents." 594 F. Supp. 2d 789, 798 (E.D. Mich. 2008). In other words, for an offer to be valid, there must be evidence that the offeror conveyed to the offeree that it was extending an offer to arbitrate. *Compare Tillman*, 735 F.3d at 460 ("[The offeror] encouraged and directed [the offeree] to read the [arbitration] materials."), *with Hergenreder*, 656 F.3d at 418 (finding insufficient that the offeror told the offeree to "refer" to the

agreement containing an arbitration provision for "details" but had not mentioned the agreement contained an arbitration provision).

Two cases guide the Court's understanding of what constitutes adequate notice: *Hergenreder v. Bickford Senior Living Group, LLC* 656 F.3d 411 (6th Cir. 2011), and *Tillman v. Macy's, Inc.*, 735 F.3d 453 (6th Cir. 2013). In *Hergenreder*, the defendant-employer sought to compel arbitration based on a provision within their Dispute Resolution Procedure ("DRP"), which invited the plaintiff-employee to accept the offer to arbitrate by accepting employment or "continuing [her] employment" with defendant-employer. *Hergenreder*, 656 F.3d at 414-15. The plaintiff-employee did not sign the DRP, but had signed a number of other documents when she began her employment. *Id.* at 414. One document she signed was an acknowledgment to the Employee Handbook which affirmed that she had read and understood its terms. *Id.* The Employee Handbook "refer[red]" her to the DRP "for details," but did not explain that the DRP "contained arbitration terms and constituted an arbitration agreement." *Id.* at 417. In fact, none of the documents she signed at the start of her employment "mentioned anything about arbitration." *Id.* at 414. The Sixth Circuit rejected the defendant-employer's argument that it had provided enough notice to bind the plaintiff-employee to arbitration. *Id.* at 418 ("There was neither an offer nor an acceptance."). It held the "offer" was not valid because "the simple reference in the [h]andbook to [the DRP] for 'details' is *not* 'the

manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Id.* (emphasis in original) (quoting *Kloian*, 733 N.W.2d at 770). The *Hergenreder* court seemed to be particularly persuaded by the lack of any indication of arbitration within the Employee Handbook language:

> This statement says nothing about arbitration, and it says nothing that would indicate to [the plaintiff-employee] that accepting or continuing her job with [the defendant-employer] would constitute acceptance. Indeed, it is incorrect to conflate the fact that [the plaintiff-employee] knew generally of the DRP with the notion that she knew of the arbitration language—and [the defendant-employer's] desire to create an arbitration agreement—contained within the DRP.

*Hergenreder*, 656 F.3d at 418. It was not convinced by the defendant-employer's argument that providing access to, or general awareness of, the DRP was enough to demonstrate adequate notice was given. *See id.* at 415 (citing evidence that the DRP had been "distributed to employees"); *see also id.* at PageID.418 ("Were [the plaintiff-employee] required to read, or even notified of the importance of reading, the DRP, the analysis here might be different.").

The Sixth Circuit also found that the "acceptance" was not sufficient because, "there is no evidence that [the plaintiff-employee] knew (1) that the DRP contained arbitration information or an arbitration agreement, or, more specifically, (2) that the arbitration provisions in the DRP provided that electing to accept or continue employment with [the defendant-employer] would constitute acceptance of the

DRP's arbitration terms." *Id.* at 419. "Indeed," it continued, the plaintiff-employee "*had no reason to believe* that electing to work for [the defendant-employer] would constitute her acceptance of anything." *Id.* (emphasis added). Thus, the court could not conclude that the plaintiff-employee had "manifest[ed] an intent to be bound by the offer, and all legal consequences flowing from the offer." *Id.* "At bottom," the court concluded, the defendant-employer's argument "boils down to the following contention":

> [I]f [the offeree] has no reason to believe that a certain document contains an offer to enter into an agreement, and if she is not contractually obligated to read that document, then she will nonetheless be bound to the agreement contained in that document if she unwittingly takes actions that the document says will constitute acceptance of the offer. There is no support for this proposition in Michigan law.

*Id.* at 420.

The Sixth Circuit reached the opposite result in *Tillman*, where it held compelling arbitration was appropriate. *See* 735 F.3d at 462. *Tillman* also involved a notice-and-failure-to-opt-out type of agreement to arbitrate, where acceptance was manifested by failing to opt out of the defendant-employer's dispute-resolution process and "continuing employment" with the defendant-employer. *See id.* at 455, 458. But unlike the defendant-employer in *Hergenreder*, the defendant-employer in *Tillman*: mailed the plaintiff-employee documents that "described in detail" the arbitration component of its dispute-resolution process, including an Election Form

15

that described how to opt-out; required the plaintiff-employee to attend "a mandatory video screening" that described the dispute-resolution program (including the arbitration component), at which she was, again, provided written and oral information about the opt-out process; mailed her a brochure welcoming her to the dispute resolution program after she failed to opt out, which specifically mentioned the arbitration component; and sent her a second Election Form when it updated its dispute-resolution program that, similar to the first form of its kind, described the arbitration component and how failure to opt out of the program would constitute acceptance.  *See id.* at 455.

The Sixth Circuit found that this "was sufficient to constitute a valid offer to arbitrate disputes."  *Id.* at 459; *see also id.* at 456 ("[The defendant-employer] *effectively communicated* to [the plaintiff-employee] an offer to enter into a binding arbitration agreement . . . .") (emphasis added).  The court explicitly distinguished its decision from *Hergenreder* by emphasizing how much more notice the employer in *Tillman* had provided of its offer to arbitrate.  *See id.* at 459 ("Our conclusion [here] that [the defendant-employer] made a valid offer to [the plaintiff-employee] is consistent with our decision in *Hergenreder*, *which hinged primarily on the concept of notice*.") (emphasis added); *see also id.* (contrasting *Hergenreder*) ("[The *Hergenreder* plaintiff's] general knowledge that a dispute-resolution procedure existed did not mean that her employer communicated an offer in the absence of her

knowledge of either the arbitration language or her employer's desire to create an agreement through the dispute resolution procedure."). Its holding was not influenced by whether the defendant-employer had required the plaintiff-employee to read any of the materials, or whether the plaintiff-employee had, in fact, read them. *Id.* at 456 (rejecting the argument that the plaintiff-employee's failure to read the provided materials could negate her acceptance via failure-to-opt-out). It emphasized that, under Michigan law, an offeror need not "obligate the offeree to read an offer that has been conveyed" in order for it to be a valid offer. *See id.* at 460 ("[The defendant-employer's] failure to require reading of the numerous arbitration-related documents that it provided her does not amount to a failure to provide notice."). Having found the defendant-employer provided adequate notice, the Sixth Circuit easily concluded that the plaintiff-employee's subsequent conduct "objectively suggest[ed] that she accepted the arbitration agreement by continuing her employment without returning an opt-out form." *Id.*

This case is much more like *Hergenreder* than it is *Tillman*. FCA claims Plaintiffs were adequately notified of the Arbitration Provision because: (1) they had access to the Warranty Booklets "in connection with" their purchase or lease; (2) they received owner's manuals that "repeatedly advised them about the written warranty inside the front cover, outside on the back cover, and [include] an entire section dedicated to warranty information"; (3) the federally-mandated Monroney

labels on their Class Vehicles "specifically directed them to ask [the] dealer for a copy of the limited warranties or to see [their] owner's manual for details"; and (4) some Plaintiffs had claimed the benefits contained within the Warranty Booklets. ECF No. 43, PageID.6070-6072.   While FCA's first three arguments might demonstrate that FCA put Plaintiffs on notice of *the written warranties*, none of this evidence demonstrates FCA notified Plaintiffs of the agreement to arbitrate contained therein.   Like the documents the plaintiff-employee was given in *Hergenreder*, none of this evidence shows FCA gave Plaintiffs any "reason to believe" that the Warranty Booklets contained "an offer to enter into an agreement" to arbitrate.   *See Hergenreder,* 656 F.3d at 418 ("[I]t is incorrect to conflate the fact that [the plaintiff-employee] knew generally of the DRP with the notion that she knew of the arbitration language—and [the defendant-employer's] desire to create an arbitration agreement—contained within the DRP.").   Put differently, none of the evidence demonstrates FCA adequately conveyed an offer to arbitrate to Plaintiffs. Without notice of the offer, one cannot infer Plaintiffs' inaction as anything more than them "unwittingly tak[ing] actions that the [Arbitration Provision] says will constitute acceptance."   *Id.* at 420.   For this reason, the Court cannot find FCA has met its burden in providing evidence from which a reasonable jury could find mutual assent.

The cases FCA cites in support of its proposition that the notice provided here was sufficient either do not bind this Court or are otherwise distinguishable.  *See Dye v. Tamko Bldg. Prods., Inc.*, 908 F.3d 675, 680 (11th Cir. 2018) (applying Florida law to find that a product's packaging—which conspicuously displayed the mandatory arbitration provision—was a valid offer to which the purchaser assented by unwrapping and retaining the product, because the wrapping provided a "reasonable opportunity for consumers to review and accept" the terms of purchase); *id.* at 681 ("[The] packaging provided conspicuous notice of its offer—something a reasonable, objective person would understand as an invitation to contract."); *id.* at 682 ("*No hidden terms—no buried treasure*.") (emphasis added); *see also Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1276 (10th Cir. 2020) (holding the plaintiffs were "bound by . . . the warranty regardless of whether they read the warranty before *signing* the agreement") (emphasis added).

FCA's fourth category of "evidence" of notice—that many Plaintiffs have availed themselves of the benefits of the Warranty Booklet they now seek to disclaim—fares better than the others.  *See Grundy v. FCA US LLC,* No. 20-11231, 2024 WL 1699500, at *4 (E.D. Mich. Feb. 29, 2024) (holding the plaintiffs to the condition contained within the written warranty they were trying to enforce) ("When customers invoke and seek to enforce a limited warranty, as plaintiffs do here, they cannot also claim they are not bound by the terms of that warranty."); *Mathews v.*

*REV Recreation Grp., Inc.*, 931 F.3d 619, 623 (7th Cir. 2019) ("[The plaintiffs] cannot have it both ways: relying on the contract when it works to their advantage to get repairs done and then alleging that it is unconscionable when it doesn't."). But ultimately, it does not carry the day.

The Court agrees that the outcome might be different if FCA had presented evidence that Plaintiffs had availed themselves of the warranties. *See Guelff v. Mercy Health Servs.*, No. 200040, 1999 WL 33444156, at *2 (Mich. Ct. App. May 25, 1999) (holding that the plaintiff "conveyed assent to the written policies," including the provision to arbitrate, when "she availed herself of many of the benefit provisions contained" therein); *see also Hergenreder,* 656 F.3d at 420 (distinguishing its holding from the holding in *Guelff* because there was no evidence that the plaintiff in *Hergenreder* had "availed herself of the benefits contained" within the document housing the arbitration provision). On those facts, the Court could find Plaintiffs had adequate notice of the Arbitration Provision and infer that Plaintiffs' failure to opt-out was a manifestation of an intent to be bound by its terms.[4] However, those

---

[4] The Court does not decide, at this time, whether evidence that Plaintiffs exercised the written warranties would be enough to bind them to the Arbitration Provision. It may be true that Plaintiffs were reasonably notified that the Warranty Booklets contained written warranties, and consequently that they may be held to the conditions to exercising those warranties, whether or not they are actually familiar with the warranty's terms. But as Plaintiffs' counsel put it at the hearing: "It's one thing to say [they were] on notice that there's a warranty; it's another thing to say that [they were] on notice that there's somehow an arbitration agreement contained within that warranty . . . ." ECF No. 43, PageID.6067. The Court is skeptical that evidence of exercising the warranties is enough to bind the Plaintiffs to an arbitration provision they had no reason to know

facts are not present in the record.  While FCA made this exact argument at the hearing, *see* ECF No. 43, PageID.6068, it has provided no evidence substantiating that Plaintiffs have exercised the written warranties.

Thus, the Court finds FCA has not carried its initial burden to produce evidence that would allow a reasonable jury to find that an agreement to arbitrate exists based on notice and a failure to opt-out of the Arbitration Provision contained within the Warranty Booklets.  This holding aligns itself with other courts that have found similar scenarios insufficient to infer mutual assent under Michigan law.  *See, e.g.*, *Garcia v. Tiffin Motor Homes, Inc.*, No. 17-cv-01162 (N.D. Ala. Feb. 28, 2018), Dkt. No. 16 (applying Michigan law) ("[I]t is difficult for the [c]ourt to conclude as a matter of law that the plaintiff assented to the arbitration and venue provisions in the [a]greement, since there is no allegation or evidence that those provisions were ever discussed or that the plaintiff's decedent otherwise even knew of them."); *Himan v. Thor Indus., Inc.*, No. 3:21-CV-239 JD, 2022 WL 683650, at *7 (N.D. Ind.

---

would be contained therein and cannot reasonably be expected to learn about before the time to opt-out has expired.  *Cf. Marksberry v. FCA US LLC,* 606 F. Supp. 3d 1075, 1083 (D. Kan. 2022) (holding the plaintiffs to the inspection condition of their express warranties) ("[E]ven if [the plaintiff] only obtained the booklet after the purchase of the truck, there is no dispute that the truck's window sticker stated that certain restrictions apply to the warranties, and to ask the dealer for a copy of the limited warranties or to see the owner's manual for details.").  How reasonable is it to expect a purchaser to have issues with their vehicle (such that they would be prompted to open their Warranty Booklet) within the first 30 days?  Are Plaintiffs really given a reasonable opportunity to opt-out if they are only likely to discover that opportunity once it has expired?  *Cf. Tillman*, 735 F.3d at 462 ("[The plaintiff-employee] had over a year to opt out of the agreement.").  The Court does not resolve the question here, but rather invites the parties to brief the issue if and when targeted discovery reveals that Plaintiffs have exercised their written warranties.

Mar. 8, 2022) ("The Court sides with [the plaintiff] given the evidence before it because the [d]efendants have failed to establish that [the plaintiff] ever knew that the arbitration clause existed within the limited warranty much less that she ever agreed or intended to be bound by it."); *DeMidio v. REV Recreation Grp., Inc.*, No. 1:17-CV-326, 2018 WL 1744958 (N.D. Ind. Apr. 10, 2018).

### B. Plaintiffs Have Put Mutual Assent "In Issue"

Even if the Court had found FCA met its initial burden of demonstrating the requisite adequate notice for contract formation, Plaintiffs have successfully put the making of the agreement in issue.  For Plaintiffs to "establish a 'genuine' dispute over whether [they] accepted the contract," they must "present specific facts, as opposed to general allegations, that would allow a rational trier of fact to find that [they] did not acknowledge the agreement or learn about the arbitration condition . . . in other ways."  *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 839-40 (6th Cir. 2021) (distinguishing a party's unequivocal denial of assent with a claim that "the party does not 'remember' signing an arbitration contract or receiving information about arbitration").

Here, Plaintiffs flatly deny signing any agreement "or otherwise consent[ing] to be bound by the terms of the Arbitration Provision."  *See, e.g.*, ECF No. 36-7, PageID.5662-5663.  They also deny ever being presented the Arbitration Provision or otherwise "advised of any right to opt-out of" it. *See, e.g.*, *id.*  There is no evidence

in the record demonstrating Plaintiffs learned of the Arbitration Provision before this lawsuit.  The Court therefore finds Plaintiffs have established a genuine dispute on the issue of mutual assent.  *Cf. Boykin*, 3 F.4th at 836 (holding that the offeree's affidavit unequivocally stating that "no one had ever told him arbitration was a condition of his employment" and that he had not attended the mandatory arbitration information session was sufficient to put the agreement to arbitrate in dispute, despite the offeror's evidence that it had adequately notified the offeree that arbitration was a condition of his employment); *see also id.* at 844 ("[The plaintiff-offeree] unequivocally denies taking the arbitration training session, and [the defendant-offeror] has offered no other evidence showing that he learned of this arbitration condition in other ways.").

## IV.

Accordingly, the Court **DENIES** FCA's Motion to Compel Arbitration (ECF No. 32) and **DENIES WITHOUT PREJUDICE** FCA's Motion to Dismiss, contained therein (ECF No. 32).  Further, being aware of the possibility that other agreements and evidence may exist that could reveal Plaintiffs agreed to the Warranty Booklet arbitration provision or separately agreed to arbitrate disputes with FCA, **IT IS HEREBY ORDERED** that the parties conducted "limited targeted

discovery" on the remaining contract-formation questions.[5]   *Boykin*, 3 F.4th at 844; *see also* ECF No. 43, PageID.6065-6067 (discussing third-party dealership agreements or other documents that potentially "reference these glovebox agreements"); *see also id.* at PageID.6084-6085, 6094-6095 (discussing the Arbitration Acknowledgment Form referenced in the Arbitration Provision); *id.* at PageID.6068 (listing Plaintiffs that sought repairs under the written warranties).

**IT IS FURTHER ORDERED** that the period of discovery on these issues shall last no longer than **90 days** and shall be completed on or before **September 5, 2025**.  The Parties are **ORDERED** to appear for a Status Conference before the Court on **September 8, 2025** at **11:00 a.m.** to inform the Court of the status of completed limited discovery, as well as any further need to seek arbitration in this matter.

**IT IS SO ORDERED.**

Dated: June 5, 2025                                  s/Brandy R. McMillion
      Detroit, Michigan                        BRANDY R. MCMILLION
                                   United States District Judge

---

[5] The Court notes that the parties should use this period of limited discovery to bring forward ***all*** possible evidence that the parties have agreed to arbitrate.  An argument raised later that could have been discovered and addressed at this stage may constitute waiver.