## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GARY FRISCH, *et al.*, on behalf of
themselves and of all those similarly
situated,

               Plaintiffs,

      v.

FCA US LLC,

               Defendant.

Case No.: 2:24-cv-10546

District Judge Brandy R. McMillion

Magistrate Judge Kimberly G. Altman

### DEFENDANT FCA US LLC'S
### RENEWED MOTION TO COMPEL PLAINTIFFS TO ARBITRATION

Pursuant to 9 U.S.C. §§ 3 and 4 of the Federal Arbitration Act ("FAA"),
Defendant FCA US LLC ("FCA US") respectfully moves this Court to enter an
order compelling Plaintiffs Kim Aiello, Dennis Berns, Stefani Carter, Daken Fee,
Kevin Freedman, Gary Frisch, Kerry Johnston, Daniel Kongos, Brian Kreb, Ashley
Landes, Nataliia Liakhova, Jonathan Liscano, Erin May, Jonathan McCrary, Donald
Moore, Tammy Otto, Eve Park, David Perrera, Sheryl Reid, Kanon Spackman,
Robert Stueve, Thomas Teger, Harry Vasquez, Christopher Wadleigh, and Heidi
Walker to arbitration and staying proceedings on their claims pending arbitration.

In support of this motion, FCA US relies on the accompanying brief and
exhibits.

Pursuant to Local Rule 7.1(a), counsel for FCA US conferred with counsel for Plaintiffs, explained the nature and legal bases of this motion, and requested but did not obtain concurrence in the relief sought.

Respectfully submitted,

**KLEIN THOMAS LEE & FRESARD**

By:   */s/ Stephen A. D'Aunoy*
Stephen A. D'Aunoy (MO/54961)
Scott H. Morgan (MO/61853)
100 N. Broadway, Ste. 1600
St. Louis, Missouri 63102
T:  (314) 888-2970
steve.daunoy@kleinthomaslaw.com
scott.morgan@kleinthomaslaw.com

Fred J. Fresard (P43694)
Ian K. Edwards (P82021)
89 Kercheval Ave.
Grosse Pointe Farms, Michigan 48236
T:  (248) 764-5275
fred.fresard@kleinthomaslaw.com
ian.edwards@kleinthomaslaw.com

*Counsel for FCA US LLC*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| GARY FRISCH, *et al.*, on behalf of themselves and of all those similarly situated, | Case No.: 2:24-cv-10546 |
| Plaintiffs, | District Judge Brandy R. McMillion |
| v. | Magistrate Judge Kimberly G. Altman |
| FCA US LLC, | |
| Defendant. | |

## FCA US LLC'S BRIEF IN SUPPORT OF ITS
## RENEWED MOTION TO COMPEL PLAINTIFFS TO ARBITRATION

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................... ii

STATEMENT OF ISSUES .................................................................................... v

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ vi

INDEX OF EXHIBITS ......................................................................................... vii

I.   INTRODUCTION .........................................................................................1

II.  BACKGROUND.............................................................................................1

    A. Certain Plaintiffs Signed Arbitration Agreements..........................................2

    B. The Applicable Warranty Booklets Have An Arbitration Provision. .............3

    C. Plaintiffs "Availed Themselves" Of Their Warranties' Benefits. ...................4

III. ARGUMENT .................................................................................................6

    A. The Applicable Legal Standard. ....................................................................6

    B. Plaintiffs Who Signed Contracts Containing Arbitration Agreements Should Be Compelled to Arbitration.............................................................................8

        1.   *An Arbitrator Should Decide Whether The Claims Are Arbitrable.* .........8

        2.   *Arbitration Is Required Even If The Court Considers Arbitrability.* ......13

    C. Plaintiffs Who Availed Themselves Of Their Warranties' Benefits Should Be Compelled to Arbitration. .............................................................................20

        1.   *The Warranty Contract Was Formed At Purchase Or Lease.* .................21

        2.   *Plaintiffs Reaffirmed Their Acceptance Through Their Actions.* ............22

        3.   *Plaintiffs Are Equitably Estopped From Refusing Arbitration.* ..............24

IV.  CONCLUSION ............................................................................................24

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)........................................6

*AT&T Techs. v. Comms. Workers of Am.*, 475 U.S. 643 (1986) ............................7

*AtriCure, Inc. v. Meng*, 12 F.4th 516 (6th Cir. 2021)...............................................24

*Battle v. Gen. Motors, LLC*, 2024 WL 51025 (E.D.Mich. 2024)...........................11

*Becker v. Delek US Energy, Inc.*, 39 F.4th 351 (6th Cir. 2022) ...............................9

*Bernardoni v. FCA US LLC*, 2024 WL 3103316 (E.D.Mich. 2024)......................11

*Bossart v. GM, LLC*, 2022 WL 3573855 (E.D.Mich. 2022) ..................................11

*Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577 (6th Cir. 2021).................................13

*Collins v. BMW of N. Am., Ltd. Liab. Co.*, 2021 WL 242938 (S.D. Cal. 2021)......19

*Cunningham v. Ford Motor Co.*, 2022 WL 2819115 (E.D. Mich. 2022) ..............10

*Danley v. Encore Capital Grp., Inc.*, 680 Fed.Appx. 394 (6th Cir. 2017).............12

*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985).........................................6

*Dept. of Revenue v. Gen. Motors LLC*, 104 So.3d 1191 (Fla. Dist. Ct. App. 2012) ....................................................................................................................21

*Dixon v. Monaco Coach Corp.*, 2009 WL 187837 (N.D.Ind. 2009) .....................23

*Fisher v. FCA US LLC*, 769 F.Supp.3d 587 (E.D.Mich. 2025)..............................11

*Gallo v. Moen Inc.*, 813 F.3d 265 (6th Cir. 2016) ..................................................18

*Gen. Motors Corp. v. Dept. of Treas.*, 644 N.W.2d 734 (Mich. 2002) ...................21

*Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000) .........................................7

*Guelff v. Mercy Health Servs.*, 1999 WL 33444156 (Mich.Ct.App. 1999) .............23

*Harper v. GM, LLC*, 2023 WL 2586298 (E.D. Mich. 2023)........................... 10, 12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019)...... 6, 7, 8, 20

*In re Chevrolet Bolt EV Battery Litig.*, 633 F.Supp.3d 921 (E.D.Mich. 2022).......11

*Javitch v. First Union Sec., Inc.*, 315 F.3d 619 (6th Cir. 2003) ...............................7

*Lyman v. Ford Motor Co.*, 2023 WL 2667736 (E.D. Mich. 2023) .........................10

*Mann v. Equifax Info. Servs.*, 2013 WL 3814257 (E.D. Mich. 2013)....................16

*Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624 (6th Cir. 2004).......................16

*Mathews v. REV Recreation Grp., Inc.*, 931 F.3d 619 (7th Cir. 2019) ...................22

*McDougal v. Comcast Corp.*, 2017 WL 3726040 (S.D.Fla. 2017).........................23

*Mendoza v. Hyundai Motor Am.*, 2022 WL 19333333 (C.D.Cal. 2022) ................23

*Merricks v. Monaco Coach Corp.*, 2008 WL 5210856 (W.D.Va. 2008) ................23

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)............19

*O'Connor v. BMW of N. Am., LLC*, 2020 WL 5260416 (D. Colo. 2020)...............20

*Roe v. Ford Motor Co.*, 2023 WL 2449453 (E.D.Mich. 2023) ...............................11

*Seawright v. Am. Gen. Fin., Inc.*, 507 F.3d 967 (6th Cir. 2007) ............................14

*Select Rehab., LLC v. Sana Health, Inc.*, 2018 WL 2009578 (E.D.Mich. 2018) ....22

*Sherer v. Green Tree Serv. LLC*, 548 F.3d 379 (5th Cir. 2008) ..............................19

*Simpson v. Nissan of N. Am., Inc.*, 2023 WL 5120240 (M.D.Tenn. 2023) .............11

*Stackpole Intl. Engineered Prods., Ltd. v. Angstrom Auto. Grp., LLC,* 52 F.4th 274 (6th Cir. 2022)..............................................................................................22

*Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000) ...............................................14

*Swiger v. Rosette*, 989 F.3d 501 (6th Cir. 2021)............................................. *passim*

*Watson Wyatt & Co. v. SBC Holdings, Inc*, 513 F.3d 646 (6th Cir. 2008) .............15

**Statutes**

9 U.S.C. § 4 ............................................................................................6

**Rules**

Consumer Arbitration Rules of the American Arbitration Association ("AAA") .....4

## STATEMENT OF ISSUES

1.   Whether the Court should compel Plaintiffs Kim Aiello, Dennis Berns, Daken Fee, Kevin Freedman, Gary Frisch, Kerry Johnston, Daniel Kongos, Brian Kreb, Ashley Landes, Nataliia Liakhova, Erin May, Donald Moore, Tammy Otto, David Perrera, Sheryl Reid, Kanon Spackman, Robert Stueve, Harry Vasquez, Christopher Wadleigh, and Heidi Walker to arbitrate their claims against FCA US, including any dispute over whether the claims are arbitrable, because they signed arbitration agreements containing a "delegation clause" when they purchased or leased their vehicles.

         The Court should answer "yes."

2.   Alternatively, if the Court reaches the question of whether the claims are arbitrable, whether the Court should hold that these Plaintiffs' claims are arbitrable and compel them to arbitration.

         The Court should answer "yes."

3.   Whether the Court should compel Plaintiffs Kim Aiello, Stefani Carter, Gary Frisch, Daniel Kongos, Brian Kreb, Ashley Landes, Jonathan Liscano, Erin May, Jonathan McCrary, Donald Moore, Tammy Otto, Eve Park, David Perrera, Kanon Spackman, Thomas Teger, and Harry Vasquez to arbitrate their claims against FCA US because they accepted the terms of the warranty (which includes an arbitration provision) when they purchased or leased and again when they sought and received warranty repairs.

         The Court should answer "yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Becker v. Delek US Energy, Inc.*, 39 F.4th 351 (6th Cir. 2022)

*Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842 (6th Cir. 2020)

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019)

*In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873 (6th Cir. 2021)

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010)

*Stackpole Intl. Engineered Prods., Ltd. v. Angstrom Auto. Grp., LLC,* 52 F.4th 274 (6th Cir. 2022)

*Swiger v. Rosette*, 989 F.3d 501 (6th Cir. 2021)

*Fisher v. FCA US, LLC*, 769 F.Supp.3d 587 (E.D.Mich. 2025)

*Grundy v. FCA US*, 2024 WL 1699500 (E.D.Mich. 2024)

*Select Rehab., LLC v. Sana Health, Inc.*, 2018 WL 2009578 (E.D.Mich. 2018)

## INDEX OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Motor Vehicle Retail Order for Kim Aiello |
| B | Buyer's Order for Dennis Berns |
| C | Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision) for Dennis Berns |
| D | Notice of Agreement to Arbitrate for Daken Fee |
| E | Retail Buyer's Order for Daken Fee |
| F | Delivery Agreement for Kevin Freedman |
| G | Motor Vehicle Lease Agreement for Gary Frisch |
| H | Motor Vehicle Lease Agreement for Kerry Johnston |
| I | Arbitration Agreement and Lease Agreement for Kerry Johnston |
| J | Motor Vehicle Buyer's Order for Daniel Kongos |
| K | Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision) for Brian Kreb |
| L | Arbitration Agreement for Ashley Landes |
| M | Motor Vehicle Lease Agreement for Nataliia Liakhova |
| N | Arbitration Agreement for Nataliia Liakhova |
| O | Purchase Agreement for Erin May |
| P | Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision) for Erin May |
| Q | Motor Vehicle Lease Agreement for Donald Moore |
| R | Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision) for Tammy Otto |

| S | Vehicle Lease Order for David Perrera |
|---|---|
| T | Motor Vehicle Lease Agreement for Sheryl Reid |
| U | Motor Vehicle Lease Agreement for Kanon Spackman |
| V | Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision) for Robert Stueve |
| W | Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision) for Harry Vasquez |
| X | Motor Vehicle Retail Order for Christopher Wadleigh |
| Y | Motor Lease Agreement for Heidi Walker |
| Z | Service Records for Kim Aiello's Repairs Paid Under Warranty |
| AA | Service Records for Stefani Carter's Repairs Paid Under Warranty |
| BB | Service Records for Gary Frisch's Repair Paid Under Warranty |
| CC | Service Record for Daniel Kongos' Repair Paid Under Warranty |
| DD | Service Record for Brian Kreb's Repair Paid Under Warranty |
| EE | Service Record for Ashley Landes's Repair Paid Under Warranty |
| FF | Service Record for Jonathan Liscano's Repair Paid Under Warranty |
| GG | Service Record for Erin May's Repair Paid Under Warranty |
| HH | Service Records for Jonathan McCrary's Repairs Paid Under Warranty |
| II | Service Record for Donald Moore's Repair Paid Under Warranty |
| JJ | Service Records for Tamy Otto's Repairs Paid Under Warranty |
| KK | Service Records for Eve Park's Repairs Paid Under Warranty |
| LL | Service Records for David Perrera's Repairs Paid Under Warranty |

| MM | Service Records for Kanin Spackman's Repair Paid Under Warranty |
|----|-----|
| NN | Service Records for Thomas Teger's Repairs Paid Under Warranty |
| OO | Service Records for Harry Vasquez's Repairs Paid Under Warranty |
| PP | 2021 Jeep Wrangler Warranty Information – Hybrid |
| QQ | 2022 Jeep Warranty Information – Wrangler 4xe |
| RR | 2022 Jeep Warranty Information – Grand Cherokee 4xe |
| SS | 2023 Jeep Warranty Information – Gas / Diesel / 4xe |
| TT | 2024 Jeep Warranty Information |
| UU | Kim Aiello's Response to FCA US LLC'S First Set of Interrogatories |
| VV | Stefani Carter's Response to FCA US LLC'S First Set of Interrogatories |
| WW | Gary Frisch's Response to FCA US LLC'S First Set of Interrogatories |
| XX | Daniel Kongos's Response to FCA US LLC'S First Set of Interrogatories |
| YY | Brian Kreb's Response to FCA US LLC'S First Set of Interrogatories |
| ZZ | Ashley Landes's Response to FCA US LLC'S First Set of Interrogatories |
| AAA | Jonathan Liscano's Response to FCA US LLC'S First Set of Interrogatories |
| BBB | Erin May's Response to FCA US LLC'S First Set of Interrogatories |
| CCC | Jonathan McCrary's Response to FCA US LLC'S First Set of Interrogatories |

| DDD | Donald Moore's Response to FCA US LLC'S First Set of Interrogatories |
|---|---|
| EEE | Tammy Otto's Response to FCA US LLC'S First Set of Interrogatories |
| FFF | Eve Park's Response to FCA US LLC'S First Set of Interrogatories |
| GGG | David Perrera's Response to FCA US LLC'S First Set of Interrogatories |
| HHH | Kanon Spackman's Response to FCA US LLC'S First Set of Interrogatories |
| III | Thomas Teger's Response to FCA US LLC'S First Set of Interrogatories |

# I.  INTRODUCTION

In this nationwide class action, twenty-eight plaintiffs claim they bought defective vehicles.[1]  The question that underlies this motion is whether this Court or an arbitrator will hear those claims.  For the plaintiffs who agreed to arbitration— which is most of them—an arbitrator should.

Some plaintiffs affirmatively signed arbitration agreements, and others agreed to arbitration by accepting and using their written warranties.  For either or both of those reasons, the Court should grant FCA US's motion.

# II.  BACKGROUND

Plaintiffs acquired model-year 2020-2024 Jeep Wrangler 4xe and model-year 2022-2024 Jeep Grand Cherokee 4xe plug-in hybrid electric vehicles, and Plaintiffs allege these vehicles may experience fires when being charged.  *See*, *e.g.*, SAC, ¶¶ 1-2 (PageID.3503).

At the start of this case, FCA US moved to compel Plaintiffs to arbitration based on the arbitration provisions in their vehicles' written warranty booklets.  *See*, *e.g.*, ECF Nos. 32, 36, 37.  The Court denied the motion but noted that "contract-formation questions" existed, ordering limited discovery on that issue and explaining "that other agreements and evidence may exist that could reveal Plaintiffs agreed to

---

[1] *See*, *e.g.*, Second Amended Class Action Complaint ("SAC"), ECF #30.

the Warranty Booklet arbitration provision or separately agreed to arbitrate disputes with FCA." *See* ECF No. 44, pp. 23-24 (PageID.6130-31).

Through that discovery process, FCA US learned that twenty Plaintiffs signed arbitration agreements when they got their vehicles, sixteen enforced their vehicles' written warranties for services and repairs, and of these eleven did both.

## A.    Certain Plaintiffs Signed Arbitration Agreements.

Plaintiffs Aiello, Berns, Fee, Freedman, Frisch, Johnston, Kongos, Kreb, Landes, Liakhova, May, Moore, Otto, Perrera, Reid, Spackman, Stueve, Vasquez, Wadleigh, and Walker all signed sales or lease contracts with arbitration agreements.[2]  Some of these Plaintiffs signed more than one such agreement.[3]

While the specific language of their agreements and provisions varies somewhat, what *all* these Plaintiffs have in common is that each of them signed an agreement that puts threshold disputes about arbitrability to an arbitrator, either

---

[2] Aiello: Ex. A, p. 4; Berns: Ex. B, p. 2, and Ex. C, p. 5; Fee: Ex. D, p. 2, and Ex. E; Freedman: Ex. F, p. 1; Frisch: Ex. H, p. 7; Johnston: Ex. H, p. 7; and Ex. I; Kongos: Ex. J, p. 1; Kreb: Ex. K, pp. 2-3; Landes: Ex. L; Liakhova: Ex. M, p. 6, and Ex. N; May: Ex. O, p. 1, and Ex. P, p. 4; Moore: Ex. Q, p. 4; Otto: Ex. R, p. 5; Perrera: Ex. S, p. 9; Reid: Ex. T, p. 6; Spackman: Ex. U, p. 7; Stueve: Ex. V, p. 4; Vasquez: Ex. W, p. 5; Wadleigh: Ex. X, p. 2; Walker: Ex. Y, p. 7.

[3] These are Berns, Fee, Johnston, Liakhova, and May.  *See supra*, n.2.

through an express delegation clause or through a provision incorporating the Consumer Rules of the American Arbitration Association ("AAA").[4]

## B.      The Applicable Warranty Booklets Have An Arbitration Provision.

The written warranties for Plaintiffs' vehicles include a binding arbitration provision requiring that Plaintiffs arbitrate "any dispute arising out of or relating to any aspect of the relationship between [them] and FCA US." *See* Exs. PP, QQ, RR, SS, at p. 5; Ex. TT, at pp. 8-9. The warranty booklet informs purchasers of that provision on multiple occasions. For example, the inner cover of the booklet states:

> Please note that this new vehicle limited warranty contains a binding arbitration provision that may affect your legal rights, and you agree that, pursuant to the arbitration provision contained in this book, that either you or FCA US LLC may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the binding arbitration provision contained in "section 1.3" of this new vehicle limited warranty for additional information concerning the agreement to arbitrate. The binding arbitration provision contained in this warranty book does not affect any rights a consumer has to participate in any of

---

[4] Berns, Fee, Freedman, Johnston, Kreb, Landes, Liakhova, May, Otto, Perrera, Reid, Stueve, Vasquez, and Walker signed agreements with delegation clauses. *See* Exs. B, D, F, I, K, L, N, O, P, R, S, T, V, W, Y. The agreements that Aiello, Fee, Frisch, Johnston, Kongos, Liakhova, Moore, Reid, Spackman, and Wadleigh signed direct that the AAA's Consumer Rules govern, *see* Exs. A, E, G, H, J, M, Q, T, U, X, which task the arbitrator with deciding "any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim," *see* Consumer Arbitration Rules, Rule 14 (effective January 1, 2016), available at: https://adr.org/sites/default/files/Consumer%20Rules.pdf.

FCA's nonbinding arbitration programs or any voluntary arbitration programs sponsored by any state or government agency.

*See* Exs. PP-TT.

In addition, the Table of Contents' first section is called "Your Legal Rights Under These Limited Warranties" and mentions in all caps the "VOLUNTARY BINDING ARBITRATION PROVISION," and it directs purchasers to page 5 (or page 8 for model-year 2024). *See* Exs. PP, QQ, RR, SS, at p. 2; Ex. TT, at p. 3. There, the "VOLUNTARY BINDING ARBITRATION PROVISION" describes the arbitration provision, how to exercise it, and *how to opt out*, and it allows purchasers thirty days to opt out in a letter to FCA US "stating your name, Vehicle Identification Number (VIN), and intent to opt out of the arbitration provision."

That same section alerts purchasers that "if you do not opt out, then this provision to arbitrate is binding," and it provides that the Consumer Arbitration Rules of the AAA will govern such claims. *Id.*

**C.     Plaintiffs "Availed Themselves" Of Their Warranties' Benefits.**

At least sixteen Plaintiffs used their warranties to receive free services and repairs:

| Plaintiff | Vehicle | When | Exhibit |
|---|---|---|---|
| Aiello | 2024 Wrangler 4xe | 01/23/2024, 05/02/2024, 05/20/2024,  06/12/2024 | Ex. Z |
| Carter | 2021 Wrangler 4xe | 02/24/2023; 11/14/2023 | Ex. AA, (showing code |

| | | | "W" for warranty repair) |
|---|---|---|---|
| Frisch | 2021 Wrangler 4xe | 07/09/2021 | Ex. BB |
| Kongos | 2022 Wrangler 4xe | 02/01/2025 | Ex. CC |
| Kreb | 2021 Wrangler 4xe | 12/21/2023 | Ex. DD, pp. 6, 10 |
| Landes | 2021 Wrangler 4xe | 09/05/2023 | Ex. EE (showing code "W" for warranty repair) |
| Liscano | 2023 Wrangler 4xe | 05/19/2023 | Ex. FF |
| May | 2021 Wrangler 4xe | 05/06/2024 | Ex. GG |
| McCrary | 2021 Wrangler 4xe | Mileage was 10,464, 29,301 and 32,191 | Ex. HH |
| Moore | 2021 Wrangler 4xe | 09/24/2024 | Ex. II, pp. 1-3 |
| Otto | 2021 Wrangler 4xe | 07/23/2024; 07/29/2024 | Ex. JJ |
| Park | 2021 Wrangler 4xe | 07/28/2023; 04/02/2024 | Ex. KK |
| Perrera | 2021 Wrangler 4xe | 11/28/2022; 12/11/2023; 12/13/2023; 04/25/2024 | Ex. LL |
| Spackman | 2022 Grand Cherokee 4xe | 06/21/2023 | Ex. MM |
| Teger | 2021 Wrangler 4xe | 12/29/2023; 04/03/2024 | Ex. NN, pp. 1-3, 5-6. |
| Vasquez | 2021 Wrangler 4xe | 10/02/2023 | OO, pp. 2-5 |

## III.  ARGUMENT

Where, as here, an arbitration agreement delegates threshold arbitrability disputes to arbitration, "a court possesses no power to decide the arbitrability issue" and must send the parties to arbitration.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019); *see also Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021).  But, even if the Court considers arbitrability questions, it still should compel arbitration based on the plain language of the agreements and Plaintiffs' acceptance of the agreements' terms by their actions.

### A.    The Applicable Legal Standard.

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  The statute reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (cleaned up).  The FAA "leaves no place for the exercise of discretion by a district court," but instead "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also* 9 U.S.C. § 4 (allowing parties to petition district courts for an order compelling arbitration).

"[C]ourts must rigorously enforce arbitration agreements according to their terms."  *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir.

2021) (cleaned up).  This rule also applies to agreements requiring an arbitrator to "decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein*, 586 U.S. at 67-68 (2019) (cleaned up).

When an arbitration agreement delegates arbitrability issues to an arbitrator, "a court may not decide" them.  *Id.* at 68-69.  This holds true "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at 68.  A delegation clause is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

When a contract contains an arbitration clause, "there is a presumption of arbitrability." *AT&T Techs. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000).  Any doubts "should be resolved in favor of arbitration." *Javitch v. First Union Sec., Inc*., 315 F.3d 619, 624 (6th Cir. 2003).

**B.      Plaintiffs Who Signed Contracts Containing Arbitration Agreements Should Be Compelled to Arbitration.**

1.      *An Arbitrator Should Decide Whether The Claims Are Arbitrable.*

Aiello, Berns, Fee, Freedman, Frisch, Johnston, Kongos, Kreb, Landes, Liakhova, May, Moore, Otto, Perrera, Reid, Spackman, Stueve, Vasquez, Wadleigh, and Walker have signed contracts with provisions that delegate to an arbitrator all "gateway" questions of "arbitrability."  *See* Exs. A, B, C, D, E, F, G, H, I, K, J, L, M, N, O, P, Q, R, S, T, U, V, W, X, Y.

Because these delegation clauses "clearly and unmistakably show[] that the parties agreed to arbitrate issues of arbitrability," the Court must compel arbitration. *Swiger*, 989 F.3d at 506-07; *see also Henry Schein*, 586 U.S. at 67-68 ("we have held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy").

In *Swiger*, the plaintiff signed a contract stating that "any dispute . . . related to this agreement will be resolved through binding arbitration," 989 F.3d at 503, and the non-signatory defendant moved to compel arbitration, *id.* at 504.  The district court denied the motion, but the Sixth Circuit reversed, holding that a "valid delegation clause precludes courts from resolving any threshold arbitrability disputes, even those that appear 'wholly groundless.'"  *Id.* at 505.

8

*Swiger* controls.  Where, as here, a delegation clause exists, questions "about *who should decide* whether the parties have to arbitrate the merits" are for the arbitrator.  *Id.* at 507 (emphasis in original).  Because the plaintiff signed a contract requiring her to arbitrate disputes over the scope of the agreement, the arbitrability issue "must be considered by an arbitrator."  *Id.*; *see also Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) ("The practical effect of a delegation provision is that if arbitrability is challenged, then the arbitrator, not the court, must address the challenge.")

Similarly, in *Blanton v. Domino's Pizza Franchising LLC*, the Sixth Circuit affirmed an order sending to arbitration a dispute about whether the non-signatory defendant could enforce an arbitration provision in a contract between a franchisee and the franchisee's employee.  962 F.3d 842 (6th Cir. 2020).  *Blanton* reasoned that a court cannot "disregard" a contract through which a party has "agreed to arbitrate 'arbitrability.'"  *Id.* at 844.  And where the parties have agreed to arbitration under the AAA Consumer Arbitration Rules, "district courts in our circuit have long found that the incorporation of the AAA Rules provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'"  *Id.* at 846.

Applying these precedents, the Eastern District of Michigan has compelled arbitration in many cases against automakers when the plaintiffs signed sales contracts with arbitration provisions containing a delegation clause.  Just by way of

9

example, in *Harper v. GM, LLC*, the court compelled plaintiffs to arbitrate their claims against non-signatory General Motors because they "signed sales paperwork at their respective dealerships that contained an arbitration clause" saying any claims relating to the purchase of the vehicle, "including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute," will "be resolved by neutral, binding arbitration."  2023 WL 2586298, **1-2 (E.D. Mich. 2023).

The Court reached the same result in *Lyman v. Ford Motor Co.*, where the plaintiffs brought claims against Ford based on alleged defects in their pickup trucks. 2023 WL 2667736 (E.D. Mich. 2023).  Through discovery, Ford learned that when the plaintiffs had purchased their vehicles, they signed contracts with arbitration provisions that contained a delegation clause mirroring the clause at issue in *Harper*. *Id.* at **2-3.  *Lyman* reasoned that, "under binding Sixth Circuit precedent …, where an arbitration agreement contains a clear delegation clause, the arbitrator must determine issues of arbitrability—including any challenge to Ford's ability to enforce the arbitration agreement as a non-signatory."  *Id.* at *4.

And, in *Cunningham v. Ford Motor Co*., the court compelled the arbitration of claims against Ford because a delegation clause in the sales contracts provided "clear and unmistakable evidence that the parties have agreed have an arbitrator decide arbitrability."  2022 WL 2819115, *4 (E.D. Mich. 2022).  Thus, "it is for the

arbitrator, not this Court, to decide whether Ford, as a non-party to the Sales Contracts, may compel [plaintiffs] to arbitrate their claims." *Id.*

Many other decisions also recognize that, when an arbitration agreement contains a delegation clause, "*Swiger* compels the conclusion that it is for the arbitrator, not the Court to decide whether [the automaker] as a non-party to the vehicle sales contracts, may enforce the Arbitration Provisions" in those contracts. *Fisher v. FCA US LLC*, 769 F.Supp.3d 587, 603 (E.D.Mich. 2025); *see also Bernardoni v. FCA US LLC*, 2024 WL 3103316, *4 (E.D.Mich. 2024); *Battle v. Gen. Motors, LLC*, 2024 WL 51025, *3 (E.D.Mich. 2024); *Roe v. Ford Motor Co*., 2023 WL 2449453, *2 (E.D.Mich. 2023); *Simpson v. Nissan of N. Am., Inc*., 2023 WL 5120240, *5 (M.D.Tenn. 2023); *In re Chevrolet Bolt EV Battery Litig*., 633 F.Supp.3d 921, 950-52 (E.D.Mich. 2022); *Bossart v. GM, LLC*, 2022 WL 3573855, *4 (E.D.Mich. 2022).

The Court should apply the same rule to reach the same result here.  Berns, Kreb, Liahkova, May, Otto, Perrera, Stueve and Vasquez signed contracts providing that any claims or disputes "including the interpretation and scope of this Arbitration [Clause, Provision or Agreement] and the arbitrability of the claim or dispute [shall] be resolved by neutral, binding arbitration and not by a court action."  *See* Exs. B, C, K, N, O, P, R, S, V, W.

Those delegation clauses are essentially identical to that in *Harper*, *see* 2023 WL 2586298 at *2, and at least as broad as *Swiger*, *see* 989 F.3d at 503. *See also Danley v. Encore Capital Grp., Inc.*, 680 Fed.Appx. 394, 398 (6th Cir. 2017) (finding an agreement "clearly and unmistakably" delegated the issue of arbitrability because it provided for arbitration of disputes about its "application, enforceability, or interpretation").

Walker's delegation clause is even broader, encompassing not only the agreement's interpretation and scope, but also its validity and construction. *See* Ex. Y. Fee and Landes also signed agreements saying the arbitrator must decide claims about "validity," "scope," and "interpretation" of the agreement. *See* Exs. D, L. Freedman's agreement says, "[a]ny dispute as to the validity, existence, scope, jurisdiction, or applicability of this arbitration agreement shall be arbitrated and decided by the arbitrator." *See* Ex. F. And Johnston and Reid signed contracts agreeing to arbitrate claims and disputes including the validity of the arbitration provision. *See* Exs. I, T.

Aiello, Fee, Frisch, Johnston, Kongos, Liakhova, Moore, Reid, Spackman, and Wadleigh signed agreements like the one in *Blanton* that provides their arbitrations will be administered or resolved in accordance with the AAA's procedures and rules, which empower the arbitrator to decide "any objections with

12

respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* Exs. A, E, G, H, J, M, Q, T, U, X.

"By incorporating the AAA rules, the parties agreed that an arbitrator would decide gateway questions of arbitrability." *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582 (6th Cir. 2021). In each case, the contract language "clearly and unmistakably" shows that the parties agreed to arbitrate issues of arbitrability. *See, e.g., Swiger*, 989 F.3d at 506; *see also In re StockX*, 19 F.4th at 883 (explaining that when a signatory argues "that the non-signatory seeking to compel arbitration lack[s] ability to invoke the arbitration agreement," the signatory necessarily raises "an issue of 'enforceability' under the delegation provision in the contract, and thus it [is] a question of arbitrability that the arbitration agreement delegated to an arbitrator").

2.    *Arbitration Is Required Even If The Court Considers Arbitrability.*

Even if the Court decides to reach whether these Plaintiffs agreed to arbitrate their claims, it still should compel arbitration because: (i) Fee's agreement unequivocally says it applies to disputes with FCA US; (ii) all the arbitration agreements are valid contracts that cover the claims Plaintiffs assert; and (iii) FCA US can enforce the arbitration agreements by their plain language and as a third-party beneficiary.

i.   *Valid Arbitration Agreements Cover The Claims.*

Whether a valid arbitration agreement exists is "a matter of contract." *Rent-A-Center*, 561 U.S. at 67.  As such, the enforceability of an arbitration agreement is governed by "the applicable state law of contract formation." *Seawright v. Am. Gen. Fin., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007).

A.   *The Arbitration Agreements Are Valid.*

All of the arbitration agreements are governed by state laws recognizing "the cardinal rule that, in the absence of fraud or willful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000).  Consistent with the FAA, all relevant states have enacted statutes that say arbitration agreements are valid and enforceable save upon such grounds as exist for the revocation of any contract.[5]

The contracts these Plaintiffs signed contain conspicuous language identifying the arbitration agreement and explaining that "any" or "all" covered disputes are subject to arbitration.   Fee and Freedman both signed separate

---

[5] <u>AZ</u>: Ariz. Rev. Stat. § 12-3006; <u>CA</u>: Cal. Civ. Proc. Code § 1281; <u>FL</u>: Fla. Stat. Ann. § 682.02(1); <u>IL</u>: 710 Ill. Comp. Stat. Ann. 5/1; <u>MI</u>: Mich. Comp. Laws Ann. § 691.1686; <u>MO</u>: Mo. Ann. Stat. § 435.350; <u>NJ</u>: N.J. Stat. § 2A:24-1; <u>NM</u>: N.M. Stat. Ann. § 44-7A-7 (a); <u>NY</u>: N.Y. C.P.L.R. 7503; <u>NC</u>: N.C. Gen. Stat. Ann. § 1-569.6 (a); <u>OH</u>: Ohio Rev. Code Ann. § 2711.01(A); <u>OK</u>: Okla. Stat. Ann. tit. 12, § 1857; <u>PA</u>: 42 Pa. C.S. § 7321.7(a) and (c); <u>TX</u>: Tex. Civ. Prac. & Rem. Code Ann. § 171.001 (a); <u>WA</u>: Wash. Rev. Code Ann. § 7.04A.060 (1).

14

agreements with capitalized, underlined headings in bold font: "<u>AGREEMENT TO ARBITRATE</u>" or "<u>ARBITRATION AGREEMENT.</u>"  *See* Exs. E, F.

Aiello, Berns, Kreb, Landes, Liakhova, May, Otto, Perrera, Reid, Stueve, Vasquez and Wadleigh signed separate agreements with capitalized headings in bold font: "ARBITRATION CLAUSE," "ARBITRATION," "AGREEMENT TO ARBITRATE ALL CLAIMS," "ARBITRATION PROVISION," or "ARBITRATION AGREEMENT."  *See* Exs. B, C, K, L, N, P, R, S, V, W.

Similarly, May signed an agreement with a capitalized, underlined heading in red text: "<u>ARBITRATION AGREEMENT.</u>"  *See* Ex. O.

Frisch, Johnston, Liakhova, Moore, Spackman, and Wadleigh each signed agreements with sections preceded by the capitalized heading in white text on a black background that announces "ARBITRATION."  *See* Exs. G, H, M, Q, U, X.

And Kongos signed an agreement with a heading in bold font: "Buyer's Order Arbitration Clause."  *See* Ex. J.

B.   *The Arbitration Agreements Cover The Subject Claims.*

"[B]roadly written arbitration clauses must be taken at their word."  *Watson Wyatt & Co. v. SBC Holdings, Inc*, 513 F.3d 646, 650 (6th Cir. 2008).  Where an arbitration provision is broad like one covering "any dispute arising out of" the agreement, "only an express provision excluding a specific dispute, or 'the most

15

forceful evidence of a purpose to exclude the claim from arbitration'" will avoid arbitration. *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004).

The expansive language in the arbitration agreements here—saying they cover "any" or "all" disputes, controversies, and claims—covers the claims in this case. For example, Fee signed an agreement that covers "*any dispute* arising out of or relating to any aspect [of] the relationship between you and FCA." *See* Ex. E. And the agreements that Berns, Kreb, Liahkova, May, Otto, Perrera, Stueve and Vasquez signed cover "*Any claim or dispute ...* which arises out of or relates to [the] purchase or condition of this vehicle, [this contract] or any resulting translation or relationship." *See* Exs. B, C, K, N, P, R, S, V, W.

Others, like Aiello, Freedman, Frisch, Johnston, Kongos, Landes, Liakhova, May, Moore, Reid, Spackman, Wadleigh and Walker, signed agreements with similar language about "*any*" or "*all*" disputes arising out of the purchase/lease or relating to the vehicle.[6] The word "any" makes these provisions "extremely broad." *Mann v. Equifax Info. Servs.*, 2013 WL 3814257, *9 (E.D. Mich. 2013).

_____

[6] *See* Exs. A, X (Aiello, Wadleigh, covering "all claims, disputes, or controversies … that may arise out of relating to this agreement and the sale or lease identified in this agreement"); F (Freedman, applying to "any controversy or claim arising out of or relating to" vehicle sale); G, H, Q, U (Frisch, Johnston, Moore, covering "Any controversy or claim … including, but not limited to, those arising out of or relating to the Vehicle"); I (Johnston, applying to "any claim or dispute … arising from this transaction"); K (Kongos, covering "all claims, controversies and disputes … regarding purchase, lease, or other acquisition"); L (Landes, applying to "any claim, despite, or controversies … includ[ing] relating to any representations, promises,

Plaintiffs' claims fall within the broad scope of these arbitration agreements because all the claims arise out of or relate to the purchase or condition of the vehicle. The unifying premise of all claims is that FCA US sold vehicles with hybrid batteries that "can suddenly catch on fire while charging," *see* SAC, ¶ 1 (PageID.3503), which FCA US supposedly concealed, *id.* at ¶¶ 4, 8-9 (PageID.3504, 3507-0893). Plaintiffs aver that, had they known about the alleged defect, they "would not have purchased or leased those vehicles; paid substantially less for them; or purchased non-hybrid versions of the vehicles, which are significantly less expensive." *Id.* at ¶ 20 (PageID.3512).

The claims also relate to a covered "relationship" resulting from the sales contract or lease, *i.e.*, the relationship between Plaintiffs and FCA US through Plaintiffs' purchase or lease of those vehicles.  Plaintiffs would have no basis for their claims against FCA US but for the contracts they signed to buy or lease their vehicles.  No contracts, no vehicles, no claims against FCA US.

---

undertakings, warranties … [and ] any resulting transaction, service, or relationship, including … third parties who do not sign this Agreement"); M (Liakhova, applying to "Any controversy or claim … arising out of or relating to the Vehicle"); O (May, applying to "[a]ny dispute, claim, or controvert arising out of or relating to the sale … or any resulting transaction or relationship"); T (Reid, covering "[a]ny claim, dispute or controversy … arising from or relating to … the actions of you, us, or third parties" and applies to "dispute[s] of any kind [that] arise[] out of [the lease] agreement"); Y (Walker, covering "any disputes or claims … arising out of or relating to or from the relationships that likely result from this Lease").

      ii.   *FCA US Can Enforce The Arbitration Agreements Under The Plain Language And As A Third Party Beneficiary.*

          A.   *The Agreement's Plain Language.*

Fee's agreement *explicitly says* it applies to disputes with FCA US. *See* Ex. E. The agreements signed by Berns, Kreb, Landes, Johnston, Liakhova, May, Otto, Perrera, Reid, Stueve, and Vasquez apply to "third parties" who do not sign the contract or "any other party" arising from the sales or lease transaction. *See* Exs. B, C, I, K, L, N, P, R, S, T, V, W. And Landes and Walker's agreements say they apply to disputes with the dealerships' affiliates, such as FCA US. *See* Exs. L, Y. The plain language of each of these agreements covers disputes with third parties like FCA US that "relates to" the purchase, sale, or lease.

These Plaintiffs' contracts (other than Reid's) also say the arbitration provision covers the resulting relationships of the sale or lease. *See* Exs. B, C, D, I, K, L, N, O, P, R, S, V, W, Y. The relationship between Plaintiffs and FCA US was created when Plaintiffs signed the sales or lease contracts for their vehicles. The arbitration agreements thus allow FCA US to compel arbitration because the relationship between FCA US and Plaintiffs resulted from the contract. If FCA US could not compel arbitration, language in the agreements covering claims related to third parties or resulting relationships would be superfluous, and "courts should interpret contracts to avoid superfluous words." *See, e.g., Gallo v. Moen Inc.*, 813 F.3d 265, 273 (6th Cir. 2016).

The Fifth Circuit's decision in *Sherer v. Green Tree Serv. LLC* is instructive. 548 F.3d 379 (5th Cir. 2008).  The plaintiff signed a loan agreement with a bank requiring arbitration of all disputes "arising from or relating to this Agreement or the relationships which result from this Agreement." *Id.* at 380.  The defendant—a non-signatory—later obtained servicing rights to the loan.  *Id.*  The plaintiff sued, and the district court refused to compel arbitration.  The Fifth Circuit reversed because the plaintiff had agreed to arbitrate claims arising from "the relationships which result from the agreement" and the defendant's relationship as a loan servicer would not have existed if the plaintiff had not signed the loan agreement.  *Id.* at 382.

Like that case, these Plaintiffs also agreed to arbitrate any claims that arise out of any "relationship" that resulted from their lease or purchase, and the relationship between Plaintiffs and FCA US "is just such a 'relationship.'"  *Sherer*, 548 F.3d at 382.  Doubts about that conclusion "should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983).

### B.   *Third-Party Beneficiary.*

The Court should compel these Plaintiffs to arbitration for the separate reason that FCA US is a third-party beneficiary of the arbitration agreements.  "To compel arbitration as a third-party beneficiary, the third-party must be more than incidentally benefitted by the contract."  *Collins v. BMW of N. Am., Ltd. Liab. Co*., 2021 WL 242938, *3 (S.D. Cal. 2021) (cleaned up).  The beneficiary need not be identified in

the agreement so long as he "shows that he is a member of a class of persons for whose benefit the arbitration agreement was made." *Id.*

The agreements that Berns, Kreb, Landes, Johnston, Landes, Liakhova, May, Otto, Perrera, Reid, Stueve, Vasquez and Walker signed apply to "third parties" who do not sign the contract or "any other party" arising from the sales or lease transaction and dealership affiliates. *See* Exs. B, C, I, K, L, N, P, R, S, T, V, W, Y; *see also* Ex. E. The parties to these agreements clearly "intended for third-party beneficiaries to fall within the scope of the contract." *O'Connor v. BMW of N. Am., LLC*, 2020 WL 5260416, *3 (D. Colo. 2020).

## C. Plaintiffs Who Availed Themselves Of Their Warranties' Benefits Should Be Compelled to Arbitration.

Plaintiffs' warranties include a mandatory provision (i) requiring that they arbitrate "any dispute arising out of or relating to any aspect of the relationship between [them] and FCA US" and (ii) incorporate the Consumer Arbitration Rules of the AAA. *See* Exs. PP-TT, p. 5. As discussed above, incorporation of those rules "provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Blanton*, 962 F.3d at 844-46. Because a contract exists that contains an arbitration provision with a delegation provision, the arbitrator—not this Court— must decide the validity, enforceability or unconscionability of the arbitration provision in the warranty. *See Henry Schein*, 586 U.S. at 69 ("[I]f a valid agreement

20

exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."); *see also In re StockX*, 19 F.4th at 880.

1.    *The Warranty Contract Was Formed At Purchase Or Lease.*

The warranty is a bilateral contract that was formed when Plaintiffs paid for the right to the warranty and replacement parts under it "at the time of the retail sale." *Dept. of Revenue v. Gen. Motors LLC*, 104 So.3d 1191, 1195-96 (Fla. Dist. Ct. App. 2012) (applying Florida law); *see also Gen. Motors Corp. v. Dept. of Treas.*, 644 N.W.2d 734, 735 (Mich. 2002) (applying Michigan law). And, here, the inside cover of that written warranty booklet informs vehicle owners that it "contains a binding arbitration provision that may affect your legal rights, and you agree that, pursuant to the arbitration provision contained in this book, that either you or FCA US LLC may elect to resolve any dispute by neutral, biding arbitration" and then identifies the exact section in the written warranty, *i.e.*, "section 1.3," where that provision appears. *See supra* § II.B; *see also* Exs. PP, QQ, RR, SS, TT, at inner front cover.

Plaintiffs could have opted out of arbitration, *see* Exs. PP, QQ, RR, SS, at p. 5; Ex. TT, at pp. 8-9, but none did.[7]

---

[7] *See* Plaintiffs' Responses to Interrogatory 2 where they deny communicating with FCA US about any arbitration agreement or arbitration-related document relating to their vehicles, which would categorically mean none communicated an "opt out" to FCA US in accordance with the warranty's terms. *See* Exs. UU (Aiello); VV (Carter); WW (Frisch); XX (Kongos); YY (Kreb); ZZ (Landes); AAA (Liscano); BBB (May); CCC (McCrary); DDD (Moore); EEE (Otto); FFF (Park); GGG

2.    *Plaintiffs Reaffirmed Their Acceptance Through Their Actions.*

A contract's terms can be accepted by engaging in acts that infer an intent to agree to the contract's terms.  *See, e.g., Stackpole Intl. Engineered Prods., Ltd. v. Angstrom Auto. Grp., LLC,* 52 F.4th 274, 280 (6th Cir. 2022).  A party "objectively manifest[s]" assent to an agreement where a party behaved as if there was a contract by accepting the services that the other party provided "pursuant to the terms of the Agreement," and "[i]t is the objective manifestation of assent that is determinative, not the subjective intention of the party."  *Select Rehab., LLC v. Sana Health, Inc.,* 2018 WL 2009578, **3-4 (E.D.Mich. 2018).

Courts agree that where a purchaser uses a warranty, the purchaser is bound by its terms.  *See, e.g., Grundy v. FCA US,* 2024 WL 1699500, *5 (E.D.Mich. 2024) (finding "purchasers who take advantage of a warranty cannot later disavow the application of that warranty's terms, even if they did not receive a copy of those terms"); *see also Mathews v. REV Recreation Grp., Inc.,* 931 F.3d 619, 623 (7th Cir. 2019) (rejecting argument that plaintiffs were not bound by their vehicle's warranty booklet because they did not receive a copy of it, explaining that plaintiffs "cannot have it both ways" by "relying on the contract when it works to their advantage to get repairs done" and then claiming ignorance of the warranty's terms later in

---

(Perrera); HHH (Spackman); III (Teger).

litigation); *McDougal v. Comcast Corp.*, 2017 WL 3726040, *3 (S.D.Fla. 2017) (use of services after receiving an arbitration provision deemed acceptance); *Dixon v. Monaco Coach Corp.*, 2009 WL 187837, *3 (N.D.Ind. 2009) ("[T]he evidence is undisputed that the [plaintiffs] took direct advantage of the warranty prior to the filing of their claim, requesting and receiving numerous repairs from Monaco during the applicable warranty period … [a]s such, [they] cannot now argue that they are suddenly surprised by the application of the limited warranty and its terms[.]"); *Merricks v. Monaco Coach Corp.*, 2008 WL 5210856, *5 (W.D.Va. 2008) (where plaintiffs had "taken advantage of the beneficial portions of the warranty, receiving free repairs and service under it, they must also accept the less advantageous portions of the warranty"); *Guelff v. Mercy Health Servs.*, 1999 WL 33444156, *2 (Mich.Ct.App. 1999) (holding that plaintiff "conveyed assent to the written policies," including the provision to arbitrate, when "she availed herself of many of the benefit provisions contained" in the policies).

This rule includes a warranty's arbitration provisions. *See*, *e.g.*, *Mendoza v. Hyundai Motor Am.*, 2022 WL 19333333, *5 (C.D.Cal. 2022) ("Plaintiffs cannot reasonably claim … they lacked notice of Defendant's arbitration terms. Plaintiffs invoked Defendant's Warranty numerous times for repairs during the Warranty period … Plaintiffs cannot selectively ignore the Warranty's arbitration provision while knowingly exploiting the Warranty's benefits.").

Here, Aiello, Carter, Frisch, Kongos, Kreb, Landes, Liscano, May, McCrary, Moore, Otto, Park, Perrera, Spackman, Teger and Vasquez accepted the terms of the warranty upon purchase and reaffirmed their acceptance when they used the contract to obtain free services and repairs.[8]  *See supra*, § II.C.  They are therefore bound by all terms of the warranty, including its arbitration provision.

3.    *Plaintiffs Are Equitably Estopped From Refusing Arbitration.*

Equitable estoppel "prevents a party from picking and choosing the contract terms that it alleges govern its relationship with the other litigant."  *AtriCure, Inc. v. Meng*, 12 F.4th 516, 527 (6th Cir. 2021).  If a party accepts the benefits of the contract, it must also accept "the burdens, including an arbitration mandate."  *Id.*

Here, Plaintiffs attempt to do just that, by picking and choosing the contract terms that benefit them (*i.e.*, free services and repairs) while eschewing "the burden" of arbitrating their claims.  Plaintiffs cannot "have it both ways" by holding FCA US to the terms in the warranty while simultaneously claiming the terms do not apply to them, so the Court should compel arbitration on this basis as well.

## IV.  CONCLUSION

The Court should (i) compel the above-mentioned Plaintiffs to arbitrate their claims; and (ii) stay their claims pending arbitration.

---

[8] *See also supra*, § III.C.1 at n.7.

24

Respectfully submitted,

**KLEIN THOMAS LEE & FRESARD**

|  | _/s/ Stephen A. D'Aunoy_ |
|---|---|
| Fred J. Fresard (P43694) | Stephen A. D'Aunoy (MO/54961) |
| Ian K. Edwards (P82021) | Thomas L. Azar, Jr. (MO/56634) |
| 89 Kercheval Ave. | Scott H. Morgan (MO/61853) |
| Grosse Pointe Farms, Michigan 48236 | 100 N. Broadway, Ste. 1600 |
| T: (248) 764-5275 | St. Louis, Missouri 63102 |
| fred.fresard@kleinthomaslaw.com | T: (314) 888-2970 |
| ian.edwards@kleinthomaslaw.com | steve.daunoy@kleinthomaslaw.com |
|  | tom.azar@kleinthomaslaw.com |
|  | scott.morgan@kleinthomaslaw.com |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 10, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

*/s/ Stephen A. D'Aunoy*