# Exhibit F

Deal# 36169
Stock# PW537100

# Delivery Agreement

Deal #: 36169   Date: 12/04/2023

| Customer 1 | MELISSA L FREEMAN | | | Seller | LITHIA CJD OF SANTA FE |
| --- | --- | --- | --- | --- | --- |
| Customer 2 | KEVIN M FREEMAN | | | | 7401 CERRILLOS ROAD |
| Address | | | | | SANTA FE, NM 87507 |
| City, County, State, Zip | SANTA FE, NM 87507 | | | | |
| Phone #: Home | | Work | | | |

| Stock # | Year | Make & Model | Color | Vehicle Identification Number | Lic. No. | New/Used | No. Cyls. |
| --- | --- | --- | --- | --- | --- | --- | --- |
| PW537100 | 2023 | JEEP WRAN | PDN/C | 1C4JJXR61PW537100 | | NEW | 4 |

### DESCRIPTION OF TRADE-IN(S)

| Stock # | Year | Make & Model | Color | Vehicle Identification Number | Lic. No. | | No. Cyls. |
| --- | --- | --- | --- | --- | --- | --- | --- |
| T12012 | 2020 | JEEP WRANU | GRAY | 1C4HJXDN7LW169688 | | | 4 |

**AGREEMENT:**

This Delivery Agreement ("Agreement") is incorporated into the applicable retail installment sale contract or lease agreement signed between Customer and Seller. In the event of a conflict between the terms of this Agreement and the terms of the retail installment sale contract/lease agreement, the terms of the applicable retail installment sale contract/lease agreement shall prevail.

**ARBITRATION AGREEMENT**

Seller has agreed to sell the vehicle noted above ("Vehicle") to Customer. As a material part of the consideration for entering into the transaction related to the Vehicle, and in an effort to quickly and cost effectively resolve any disputes, the parties, pursuant to the Federal Arbitration Act 9 U.S.O § 1 et. seq., agree as follows:

Seller and Customer agree that any controversy or claim arising out of or relating to: (a) the sale and/or financing of the Vehicle; (b) this Agreement; (c) the applicable retail installment sale contract or lease agreement signed between Customer and Seller; and/or (d) any alleged breach of this Agreement or such retail installment sale contract/lease agreement, shall be settled by binding arbitration in accordance with the rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitration shall be conducted by a single arbitrator and the parties agree that the arbiter shall be a retired judge from a State court of unlimited jurisdiction. The arbitrator may grant whatever relief the parties may be entitled to at law or in equity. Except as specifically provided herein, arbitration is mandatory and shall be binding upon the parties to this Agreement. The parties acknowledge that by agreeing to mandatory and binding arbitration they are giving up certain rights, including but not limited to the right to a jury trial, and certain rights to appeal. Further, the parties understand that the case will be subject to limited discovery and that procedures may be different than in State or Federal court. Any dispute as to the validity, existence, scope, jurisdiction, or applicability of this arbitration agreement shall be arbitrated and decided by the arbitrator.

If either party to this agreement files a lawsuit in contravention of the arbitration agreement and refuses to voluntarily withdraw such suit and submit to the arbitration process after receiving notice by the other party, then the party seeking to compel arbitration shall be entitled to reasonable attorneys' fees incurred in successfully compelling arbitration.

In any dispute Seller shall have the right to take a four hour deposition of Customer and Customer shall have the right to take a four hour deposition of one employee of Seller that has participated in this transaction. All other rights to discovery are waived.

The arbitration shall be held at a location reasonably convenient to the parties as determined by the arbitrator or at such other location as the parties may agree.

If you have questions regarding the American Arbitration Association or its rules and procedures you can reach their national headquarters at (212) 716-5800 or visit the Association's website at www.adr.org. A party may initiate a claim in arbitration by contacting the American Arbitration Association and following their instructions. These instructions are also available on the Association's website.

Each party, at its own cost, is entitled to be represented by legal counsel in any arbitration proceeding. Seller agrees to pay the fees and costs associated with the arbitration as set forth by the American Arbitration Association rules and parties agree that such payment shall not influence the arbitrator's rulings. Nonetheless, Customer may object to this arrangement and chose to pay fifty percent of the arbitrator's fees and costs.

Except as may be specified elsewhere in this Agreement, this arbitration agreement is incorporated into and made a part of any and all agreements or contracts entered into between the parties on or about the date contained herein relating to the Vehicle. This Arbitration Agreement shall survive the expiration or voiding of this or any other contract between Customer and Seller.

Nothing in this arbitration agreement binds the lender to whom Seller assigns this contract. The lender may or may not have an arbitration process that is not part of this contract. Even if the dispute is arbitrated Customer's vehicle may still be repossessed if Customer does not honor the lease or retail installment sale contract.

Nothing contained in the Section prevents Customer or Seller from pursuing claims in Small Claims Court provided that the claim is subject to that court's limited jurisdiction.

**TRADE-IN VEHICLE (If applicable):**

This Section is only applicable if there is one or more trade-in vehicles noted above ("Trade-in Vehicle").

If one or more Trade-In Vehicles is involved in this transaction then Seller has agreed to accept the Trade-In Vehicle as part of this transaction. As to the Trade-in Vehicle, Customer represents and warrants that: (a) Customer is the sole beneficial owner of and in title to the Trade-in Vehicle(s); (b) other than those liens disclosed to Seller, and in the amounts disclosed to Seller, in writing, there are no other liens or encumbrances against the Trade-in Vehicle(s); (c) Customer has the full right, power and authority to sell the Trade-in Vehicle(s) to Seller and hereby offers to do so; and (d) other than what has been disclosed to Seller in writing, the Trade-in Vehicle(s): (i) has not had major collision damage and/or frame damage; (ii) is not a rebuilt, reconstructed, salvage, flood damaged, emission or safety altered vehicle; and (iii) has not had its odometer replaced or altered.

In the event that the Trade-in Vehicle(s) is a different year, make, model, or otherwise is different in any way than has been heretofore represented by Customer, then Customer agrees that Seller, in its sole discretion, may require Customer to either: pay an amount of money equal to the difference in the value of the Trade-in Vehicle(s) as disclosed by Customer and as actually received by Seller; or pay the cost of reconditioning the Trade-in Vehicle to the condition as represented by Customer.

In the event that the actual payoff to the lien holder (if any) of the Trade-in Vehicle(s) is more than was initially represented in this transaction, Customer agrees to pay the difference within five days of notification of the additional amount due. In the event that the actual payoff is lower than was initially represented in this transaction, then Seller shall issue a credit to Customer.

LIT-113 (05/11)

PAGE 1 OF 2

40675*1*SFED-FI

Customer Initial
12/04/2023  05:39 pm

### CREDIT AND FINANCING (if applicable):

This Section is only applicable if Customer is financing all or a portion of the unpaid balance of the retail installment sale contract/lease agreement.

Customer understands that obtaining financing and assigning the retail installment sale contract/lease agreement to a financial institution other than Seller ("Lender") is a material part of this transaction. As such, Customer agrees to furnish Seller any documentation necessary to verify information contained in Customer(s)' credit application. Customer also acknowledges that it may take some time for Seller to verify the credit worthiness of Customer(s) and/or assign the retail installment sale contract/lease agreement to a Lender.

Customer agrees that if Seller is unable to assign the retail installment sale contract/lease agreement to a Lender for any reason, including but not limited to because the terms of assignment are not agreeable to Seller in its sole discretion, then this transaction shall be void and Customer must return the Vehicle to Seller immediately upon notice.

Customer understands the annual percentage rate or lease money factor (APR LMF), as applicable, may be negotiated with Seller. Customer further understands that Seller may retain a portion of the finance charge or receive other compensation for arranging Customer's financing.

Customer understands that Customer may obtain or arrange Customer's own financing.

### INSURANCE AND INSURANCE PRODUCTS:

Customer has been informed of the benefits of credit life and disability insurance. Customer understands that eligibility of the benefit for credit life and disability insurance is at the time of indebtedness only. In addition, the seller has presented and explained the benefits of the service contract programs, GAP programs, and accessory products for which Customer may be eligible. Customer understands these programs are provided as a customer service and not required by Seller or any applicable Lender. Customer understands that if any optional service contract is purchased that it is non-cancelable except as may be outlined on the service contract itself or pursuant to applicable law.

Customer understands that Seller does not provide liability insurance coverage (e.g., insurance for bodily injury and/or property damage to Customer or others) and that liability insurance coverage is not included in this transaction.

### TAXES:

All taxes and DMV fees charged on the retail installment sale contract / lease agreement are estimated amounts. Should the actual tax amount and/or DMV fees be more than represented in this transaction, then Customer agrees to pay the difference within five days of notification of the additional amount due. If the actual tax amount and/or DMV fees are less than represented, Seller will issue a credit to Customer.

### STATE LAW:

It is agreed between the parties that the law of the state in which the Seller is located applies to this transaction.

### ERRORS AND OMISSIONS AGREEMENT (IF APPLICABLE):

Customer(s), in consideration of the closing of certain documents relating to the purchase of the Vehicle, agrees, if requested by Seller, in the exercise of its reasonable discretion or that of its agent(s), to cooperate in the correction of any transaction documents, including but not limited to, all title transfer documents, loan closing documents, and official mileage disclaimer documents, so that all transaction documents accurately describe and reflect the agreement between the undersigned Customer(s) and Seller. Customer(s) agree to give full power of attorney to Seller or any of Sellers' designated employees or agents for thirty (30) days from the date first appearing on this document for the purpose of correcting any errors or omissions so that the transaction documents accurately reflect the agreement of the parties. Should Seller correct any document, Customer(s) will be provided with copies of such corrected document. Customer(s) further agree to pay all reasonable costs and expense, including but not limited to reasonable attorneys' fees and court costs, that result from Customer(s) failure to comply with the Seller's request to correct the error or omission within the specified thirty (30) days.

### NOTICE OF COMPLAINT PROCEDURES (Texas Only):

The undersigned acknowledges receipt of the Notice of Complaint Procedure for New Vehicle Owners and Lessees.

### NO OTHER PROMISES:

Customer(s) agrees that there were no verbal or implied promises made to Customer(s) other than those which Customer(s) received in writing as part of this transaction. This Agreement: (a) is not based upon any inducement, promises, assurance, representation, warranty, agreement or acknowledgment by Seller or its agents, representatives or employees that is not expressly set forth herein; (b) is fully integrated; and (c) contains all of the terms and conditions on which Customer is willing to purchase the Vehicle. But for this representation by Customer, Seller would not agree to sell the Vehicle to Customer.

COMPRENDO QUE EL VENDEDOR ME PROVEERA, SI YO LO SOLICITO DOCUMENTOS ESCRITOS EN ESPAÑOL CONTENIENDO LOS TERMINOS Y CONDICIONES DE ESTA VENTA.

I understand that the seller, at my request, will provide me with documents written in Spanish containing the terms and conditions of this sale and that I have received a copy of these documents.

I agree to the terms of this document

Customer 1 [signature]   Date: 12/04/2023

Customer 2 [signature]   Date: 12/04/2023

Dealer Representative [signature]   **ALEX MINEO**

LIT-113 (05/11)   PAGE 2 OF 2

CONFIDENTIAL   FCA-Freedman-0000005