# Exhibit O

DEAL # 22613

# PURCHASE AGREEMENT

TEMP #



OWASSO, OKLAHOMA
(918) 401-4600
10505 Owasso Expressway • Owasso, OK 74055
www.jimgloverdodge.com

Dealer & Stock #: JIM GLOVER CDJR / DT6949
Purchaser: ANDRE MAY / ERIN MAY
Address: [redacted]
City: BIXBY  State: OK  Zip Code: 740082156

Date: 10/29/2021
Customer #: 28865
Telephone: Home [redacted]
Telephone: Work [redacted]

Purchaser agrees to purchase from Dealer the following described vehicle subject to all terms and conditions set forth on the face and reverse side of this Purchase Agreement.

Salesman: SEAN M CONNELLY  Sales Manager: MATTHEW H CUMBIE  XX NEW  ☐ USED  Miles: 10

## VEHICLE PURCHASED DESCRIPTION

| YEAR | MFG. NAME | MODEL | BODY TYPE | COLOR | UPHOLSTERY |
|------|-----------|-------|-----------|-------|------------|
| 2021 | JEEP | WRANGLER 4 | 4DR 4WD | TUSCADERO | |

VEHICLE IDENTIFICATION NO.: 1C4JJXR68MW85241

ACCESSORIES TO BE INSTALLED BY DEALER OR VENDOR: $1495.00

PURCHASER IS RESPONSIBLE FOR ALL COSTS FOR THE TAG, TITLE AND PAYMENT OF TAXES ON VEHICLE PURCHASED.

PURCHASER: X [signature]

### PURCHASE PRICE DISCLOSURE

| | | |
|---|---|---|
| CASH PRICE | $ | 70555.00 |
| ACC. PURCHASED + | $ | 1495.00 |
| FACTORY REBATES − | $ | N/A |
| ADP* + | $ | 489.00 |
| TOTAL SELLING PRICE = | $ | 72539.00 |
| TRADE IN ALLOWANCE AND/OR DISCOUNT − | $ | N/A |
| TRADE DIFFERENCE OR SELLING PRICE = | $ | 72539.00 |
| PAYOFF ON TRADE IN + | $ | N/A |
| CUSTOMER CASH OR CHECK DOWN − | $ | 500.00 |
| EXTENDED SERVICE CONTRACT + | $ | 4664.00 |
| GAP INSURANCE + | $ | 1500.00 |
| IDENTITY THEFT + | $ | N/A |
| THEFT PROTECTION + | $ | N/A |
| DENT RESTORE + | $ | N/A |
| TIRE & WHEEL PROTECT | $ | N/A |
| + | $ | N/A |
| FILING FEES TO PUBLIC OFFICIALS + | $ | 10.00 |
| T.T.L. + | $ | N/A |
| BALANCE DUE | $ | 78213.00 |

TRADE-IN VEHICLE #1: (blank)
TRADE-IN VEHICLE #2: (blank)

I, Purchaser, agree as a part of this sale to pay to dealership any amount owed on Trade-In Vehicle to any third party, if different from amount shown as Trade-In Payoff on purchase of vehicle. I further certify that the vehicle identified as the Trade-In Vehicle is titled in my name, and is free and clear of all other liens and encumbrances other than what is shown above. I understand that if the title is not in my name, that it is my obligation to provide dealer with a clear title in the dealers name within five days after demand upon me by the dealer. I further warrant that the title to said Trade-In is not an insurance dated, rebuilt, salvage, theft, recovery or reconditioned title. I appoint the Dealer to act as my attorney in fact to sign my name on any document necessary to place title to the above described Trade-In Vehicle in Dealer's name.

### ARBITRATION AGREEMENT

Any dispute, claim or controversy arising out of or relating to the sale or attempted sale of the vehicle, your credit application, the purchase agreement, retail installment sales contract, or other agreement, or any resulting transaction or relationship, whether arising prior to, during, or subsequent to the sale or attempted sale of a vehicle, or the breach termination, enforcement, interpretation or validity any agreement, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Tulsa, oklahoma, before one arbitrator. The arbitration shall be administered by JAMS pursuant to JAMS' Streamlined Arbitration Rules and Procedures or the jurisdiction. This Agreement and the rights of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Oklahoma, exclusive of conflict or choice of law rules. Should any of the agreements executed by the parties contain language that conflicts with this provision, this provision shall override and replace the conflicting language. The parties acknowledge that this agreement evidences a transaction involving interstate commerce. The United States Arbitration Act shall govern the interpretation, enforcement, and proceedings. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties. Claims may only be brought in an individual capacity and you agree not to participate as a class representative or class member in any purported class or representative proceeding. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.

The arbitrator will have no authority to award punitive or other damages not measured by the prevailing party's actual damages, except as may be required by statute. The arbitrator shall not award any incidental, indirect or consequential damages, including damages for lost profits. The parties retain rights to self-help remedies and the right to take measures that do not involve a court or arbitration, including but not limited to repossessing property. A party may obtain a temporary court order necessary to prevent harm until the arbitration is completed. By exercising any retained rights or by taking measures that do not involve a court or arbitrator, the party is not waiving the right to arbitrate any claim or dispute.

PURCHASER: X [signature]  10/29/21  DEALER: X [signature]  10/29/21

MANAGER APPROVAL: [signature]

### SECURITY AGREEMENT

Purchaser grants to Dealer a security interest in the vehicle described herein to secure the payment of the purchase price or any down payment owed to Dealer and any retail installment sales contract executed herewith to secure: (1) all future advances by Dealer to Purchaser; (2) all other liabilities of Dealer (primary, secondary, direct or indirect, absolute or contingent, sole, joint or several) due or to become due or which may be hereafter contracted by or acquired, of Purchaser; and (3) the performance of all agreements, covenants and warrants of Purchaser to Dealer. This security interest also covers, in addition to the specifically described vehicle: (1) all personal property installed in or affixed to such vehicle, including additions and accessories; and (2) proceeds, including insurance proceeds payable by reason of damage to or loss of vehicle and (3) any trade-in vehicle described above. NOTICE TO THE PURCHASER: Do not sign this Agreement before you read it or if it contains any blank spaces. You are entitled to an exact copy of the Agreement you sign. Purchaser by his/her signature ACKNOWLEDGES that he/she has read and received a complete copy of the Agreement and that there are no other agreements between the parties oral or in writing, if not set forth herein, and that this Purchase is subject to Purchaser's satisfactory credit rating and the acceptance and funding of this Purchase Agreement and/or any Retail Installment Sales Contract executed herewith by a qualified lender or other financial institution. PURCHASER certifies that he/she is of legal age or older and no credit has been extended except as appears above. The Dealer and the Purchaser agree that if the Dealer must hire legal counsel to enforce the terms of this Purchase Agreement, or of any of the documents relating to the same matters, between the same parties, and made as part of substantially the same transaction described herein, that the Purchaser will pay to the Dealer attorneys fees and costs incurred in obtaining judgement or enforcing Dealer's legal rights. Further, should the Dealer be forced to hire legal counsel to defend Defender's legal rights under this Purchase Agreement, or any of the documents relating to the same matters, between the same parties, and made as part of substantially the same transaction described herein, including any of said documents, Purchaser will pay to the Dealer any and all legal fees and costs incurred by Dealer in Dealer's successful defense of Dealer's rights.

PURCHASER: X [signature]

This agreement does not bind the Dealer until approved by a Representative of the Dealer

PURCHASER: X [signature]
CO-PURCHASER: X [signature]

*ADP (Additional Dealer Profit) is additional dealer profit, part of which may be used to offset costs incurred for preparation sale and delivery of the vehicle, follow up of customer satisfaction programs, dealership programs, other costs, or as additional profit.

CONFIDENTIAL

FCA-May-0000064

## ADDITIONAL TERMS AND CONDITIONS

1. As used in this Order the terms (a) "Seller" shall mean the authorized Dealer to whom this Order is addressed and who shall become a party hereto by its acceptance hereof, (b) "Purchaser" shall mean the party executing this Order as such on the face hereof, and (c) "Manufacturer shall mean the Corporation that manufactured the vehicle or chassis, it being understood by Purchaser and Seller that Seller is in no respect the agent of Manufacturer, that Seller and Purchaser are the sole parties to this Order and that reference to Manufacturer herein is for the purpose of explaining generally certain contractual relationships existing between Seller and Manufacturer with respect to new motor vehicles.

2. **Trade-in Vehicle.** Purchaser represents that Purchaser has good title to any trade-in vehicle ("Trade-in") free and clear of all liens and encumbrances except as disclosed by Purchaser and identified on the reverse side hereof under "Balance Owed To". Purchaser shall deliver to Dealer satisfactory evidence of title to the Trade-In at the time of delivery of the Trade-in to Dealer. If the Trade-In has not been delivered to Dealer at the time of executing this Order, the Trade-In shall be reappraised at the time of delivery and the amount of the reappraised value shall be substituted for the original value indicated on the reverse side hereof under "Trade-In-Allowance". If the reappraised value is less than the original value, then Purchaser may, prior to delivery of the Vehicle cancel this Order. Purchaser shall be responsible and shall pay for the amount, if any, by which the Balance Owed on the Trade-In exceeds the final Trade-In-Allowance. Purchaser authorizes Dealer to sell the Trade-In in its usual course of business after delivery to Dealer, whether or not the purchase of the Vehicle is ever completed.

   (a) The Seller and customer have placed a value on customers trade-in vehicle. This value does not represent actual market value and is exaggerated for trade-in purposes only.

3. **Trade-In; Purchaser's Obligation.** At the time Purchaser delivers the Trade-In vehicle to Dealer, Purchaser promises to sign a Bill of Sale and a mileage certification statement and give Dealer satisfactory proof that Purchaser owns the vehicle. Purchaser warrants (guarantees) (a) that there are no liens on the Trade-In vehicle and that Purchaser owes no one any money for the vehicle or repairs to the vehicle, except as may be shown on the face of this agreement; (b) that the Trade-In vehicle does not have a welded or bent chassis and the motor block and cylinder heads are not cracked, welded or repaired; (c) that the vehicle has not been flood damaged or has insurance dated title or has been declared a total loss for insurance purposes; (d) that emission control devices have not been altered and/or removed, and nothing has been removed from the trade, including all seat belts, that was originally seen. The engine and/or transmission has not been tampered with to pass Dealer's inspection.

4. **Rights Concerning Vehicle Before Purchase Completed.** Purchaser shall not have any rights in the Vehicle to be purchased until dealer receives final payment. Dealer shall not be liable for any failure to deliver or delay in delivering the Vehicle to be purchased, if such failure or delay is caused, in whole or in part, by the acts or omissions of the Manufacturer, accidents, strikes, fires or any other events or casualties reasonably beyond Dealer's control.

5. **Changes in Design.** The Manufacturer of the Vehicle has reserved the right to make changes in the design of any motor vehicle, its constituent parts and any accessories without notice and without any obligation to make the same or similar changes to motor vehicles or accessories previously manufactured or under manufacture. If the Manufacturer determines to exercise such right, Dealer shall not be required to make the same or similar changes in design to the Vehicle or any accessories whether before or after delivery to Purchaser.

6. **Change in Price.** Under certain circumstances, the price of a new Vehicle ordered by Dealer and all accessories may be increased by the Manufacturer after such goods are ordered. Accordingly, Dealer reserves the right to increase the Price of the Vehicle prior to delivery in the event of such price increase by the Manufacturer. In the event of an increase, Purchaser may either:

   (a) pay the Balance Due on Delivery, as adjusted by the Dealer.

   (b) within three (3) calendar days from receiving notice (oral or written) of such increase from Dealer, cancel this Order by written notice to Dealer.

7. **Rights on Cancellation and Termination.** (a) If this Order is cancelled by Purchaser because of an increase in prices within the time provided in paragraph 6 or a decrease in the Trade-In Allowance as provided in paragraph 2, then Dealer shall return the cash deposit to Purchaser, without interest or deduction, and return any Trade-In delivered to Dealer, unless it has already been sold by Dealer.

   (b) If, for any other reason, Purchaser fails to accept delivery and purchase of the Vehicle as required in this Order, then Dealer may, at its option and in addition to all other rights or remedies: terminate this Order, retain the cash deposit made by Purchaser as liquidated damages, the parties acknowledging that dealer's actual damages would be difficult or impossible to calculate and that the amount of such deposit is reasonable approximation of such damages; and, on receipt of payment by Purchaser of Dealer's expenses incurred in connection with the Trade-In, including costs of repair, reconditioning, storage and advertising, return the Trade-In to Purchaser unless it has already been sold by Dealer. If Purchaser fails to pay Dealer's expenses in connection with the Trade-In, Dealer may, at its option, sell the Trade-In and deduct its expenses from the proceeds thereof and pay the balance of proceeds, if any, to Purchaser.

   (c) If the Trade-In has been sold by Dealer before cancellation or termination of this Order, Purchaser agrees to accept as full payment for the Trade-In the proceeds of the sale less a selling commission of fifteen percent (15%) paid to Dealer and less Dealer's expenses of repair, reconditioning, storage and, if applicable, advertising.

8. **IMPORTANT:** If your new passenger car or light truck purchased on or after January 1, 1985 is defective, and cannot be made to conform to its applicable express warranty coverage after four repair attempts, or it is out of service for more than forty-five (45) calendar days during the period of one year or the term of its applicable express warranty, whichever is earlier, you may be entitled under state law to a replacement or to a refund. You must first notify the manufacturer of the problem in writing and provide the manufacturer an opportunity to repair the vehicle. In the event of a refund, the value of the traded in vehicle will be established by the National Automobile Dealers Association Used Car Guide and not the value allowed in the sales contract. (Lemon Law does not apply to used vehicles.)

9. **THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

10. Purchaser certifies that all information contained herein is complete and accurate. Purchaser also authorizes an investigation of credit and employment history and the further release of any information about recent credit experience (Fair Credit Reporting Act) to Dealer.