# Exhibit S

# VEHICLE LEASE ORDER

**Date:** 12/04/2021

| Lessee Name and Address | Co-Lessee Name and Address | Dealer/Lessor Name and Address |
|---|---|---|
| DAVID ANTHONY PERRERA<br>CHARLOTTE NC 28269<br>Email:<br>Phone:<br>Cell: | N/A<br>Email: N/A<br>Phone: N/A<br>Cell: N/A | HENDRICK CHRYSLER DODGE JEEP RAM FIAT OF CONCORD<br>7630 HENDRICK AUTO PLAZA NW<br>CONCORD NC 28027<br>Salesperson: FORREST WILKINS<br>CUSTOMER NUMBER: 482898<br>Deal Number: 79788 |

PRIMARY USE FOR WHICH LEASED: PERSONAL, FAMILY, OR HOUSEHOLD UNLESS OTHERWISE INDICATED BELOW:
☐ BUSINESS ☐ AGRICULTURAL ☐ N/A

THIS LEASE ORDER IS FOR THE FOLLOWING ☒ NEW ☐ USED ☐ CAR ☒ TRUCK    TO BE DELIVERED ON OR ABOUT 12/04/2021

| Year | Make | Model | Type | Trim | Color | Mileage | Stock # |
|---|---|---|---|---|---|---|---|
| 2021 | JEEP | WRANGLER 4 | 4DR 4WD UN | UNLIMITED | BLK CLEARC | 12 | M401909 |

VIN: 1C4JJXP61MW868340

### TRADE-IN RECORD 1

| YR. | MAKE | MODEL | TYPE |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| COLOR | TRIM | MILEAGE |
|---|---|---|
| N/A | N/A | N/A |

VIN: N/A

| TITLE NO. | PLATE NO. | EXP. DATE |
|---|---|---|
| N/A | N/A | N/A |

| OWNER | LOAN # |
|---|---|
| N/A | N/A |

| LIENHOLDER | PHONE |
|---|---|
| N/A | N/A |

| ADDRESS | SPOKE WITH |
|---|---|
| N/A | N/A |

| AMOUNT | GOOD TILL | VERIFIED BY |
|---|---|---|
| N/A | N/A | N/A |

### TRADE-IN RECORD 2

| YR. | MAKE | MODEL | TYPE |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| COLOR | TRIM | MILEAGE |
|---|---|---|
| N/A | N/A | N/A |

VIN: N/A

| TITLE NO. | PLATE NO. | EXP. DATE |
|---|---|---|
| N/A | N/A | N/A |

| OWNER | LOAN # |
|---|---|
| N/A | N/A |

| LIENHOLDER | PHONE |
|---|---|
| N/A | N/A |

| ADDRESS | SPOKE WITH |
|---|---|
| N/A | N/A |

| AMOUNT | GOOD TILL | VERIFIED BY |
|---|---|---|
| N/A | N/A | N/A |

### COLLISION COVERAGE

| NAME OF AGENT | PHONE |
|---|---|
| PROGRESSIVE DIRECT | (800) 776-4737 |

ADDRESS: PO BOX 31260 TAMPA FL 33631

| POLICY NUMBER | COLLISION DEDUCTIBLE |
|---|---|
|  | 500.00 |

| INSURANCE CO. | SPOKE WITH |
|---|---|
| PROGRESSIVE |  |

| EFFECTIVE DATE | EXP. DATE | VERIFIED BY |
|---|---|---|
| 08/09/2021 | 02/09/2022 |  |

**NOTICE PROVIDED IN ACCORDANCE WITH N.C.G.S. 20-101.2**
Dealer may receive a fee, commission or other compensation for providing, procuring or arranging financing for the retail purchase or lease of a motor vehicle, for which Lessee may be responsible.

**DEALER ADMINISTRATIVE FEE**
The Dealer Administrative Fee represents Dealer costs such as administrative services, notary services, courier expense and cleaning, inspecting and adjusting new and used vehicle inventories as well as additional Dealer profit. It is not a government fee.

### CAPITALIZED COST

| Description | Amount |
|---|---|
| Agreed Value of the Vehicle | 58790.00 |
| Dealer Accessories: | |
| ACQUISITION FEE | 695.00 |
| OIL CHANGE PROGRAM (PREM) - BE | 391.95 |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| Dealer Administrative Fee | N/A |
| Insurance | N/A |
| Taxes | N/A |
| Official Fees | 94.75 |
| **GROSS CAPITALIZED COST** (The agreed upon value of the Vehicle and any items you pay over the Lease term, such as service contracts, insurance, and any outstanding prior credit or lease balance) | 59971.70 |
| Gross Trade-In Allowance | N/A |
| Net Trade-In Allowance | N/A |
| Rebates and noncash credits | 5817.83 |
| Amount to be paid in cash | 5400.00 |
| Other Credits | N/A |
| **CAPITALIZED COST REDUCTION** (The amount of any net Trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost) | 11217.83 |
| **ADJUSTED CAPITALIZED COST** (The amount used in calculating your base scheduled payment) | 48753.87 |



iLAW FORM NO. LAWNC-LOARB19_e (Rev. 10/19)
© 2019 The Reynolds and Reynolds Company

Lessee Initials     Co-Lessee Initials N/A    Page 1 of 4

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Scanned with CamScanner

CONFIDENTIAL    FCA-Perrera-0000025

**WARRANTIES.** The Vehicle is subject to the manufacturer's standard warranty, unless this box is checked: ☐
☐ If this box is checked, the Vehicle is subject to the following express warranties:

N/A
N/A
N/A

Warranty papers that are separate from this Lease Order state any coverage limits. The law gives you a warranty that the Vehicle conforms to the description in this Lease Order. **THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE.** Except as prohibited by law, the following sentence applies. **WE DISCLAIM ANY WARRANTIES IMPLIED BY LAW, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE.** If we make a written warranty covering the Vehicle or, within 90 days of the Lease Date we enter into a service contract covering the Vehicle, this disclaimer will not affect any implied warranties during the term of the warranty or service contract.

**Amount Due at Lease Signing or Delivery:**

| | |
|---|---|
| Capitalized cost reduction | $ 11217.83 |
| Taxes on capitalized cost reduction | $ 336.53 |
| First monthly payment | $ 624.64 |
| Refundable security deposit | $ N/A |
| Acquisition Fee | $ N/A |
| Title fees | $ N/A |
| License and Registration fees | $ 1.00 |
| Sales/Use Tax | $ 21.00 |
| DEALER ADMIN FEE | $ 699.00 |
| N/A | $ N/A |
| **TOTAL** | $ 12900.00 |

Lessee agrees that this Lease Order includes all of the terms and conditions on all pages of this agreement, that this Lease Order cancels and supersedes any prior agreement including oral agreements, and as of the date below comprises, with any related lease agreement, the complete and exclusive statement of the terms of the agreement relating to the subject matters covered by this Lease Order. You fully understand that the Vehicle will be equipped only with the optional equipment specifically listed in this Lease Order plus all standard equipment designated by the manufacturer at time of delivery. You agree that all equipment (including tires) as appraised on your Trade-in will remain.

This Lease Order and any related lease agreement will not remain binding if a third party finance source does not agree to the assignment of the lease agreement executed by you and us based on this Order and on the terms as submitted. See Section 8 on page 3 of this Lease Order, which survives the termination of this Lease Order for any reason.

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 4 of this Lease Order, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Lessee Signs X [signature]      Co-Lessee Signs X N/A

BY SIGNING BELOW, LESSEE ACKNOWLEDGES LESSEE HAS READ ALL PAGES OF THIS LEASE ORDER AND AGREES TO ALL TERMS AND CONDITIONS IN THIS ORDER. YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED A TRUE AND COMPLETED COPY OF THIS LEASE ORDER.

LESSEE SIGNS X [signature]      DATE 12/04/2021
CO-LESSEE SIGNS X N/A            DATE N/A
MANAGER'S APPROVAL (Must Be Accepted By An Authorized Representative of the Dealer)
X [signature]                    DATE 12/04/2021

ILAW FORM NO. LAWNC-LOARB19_0 (Rev. 10/19)   Lessee Initials    Co-Lessee Initials N/A   Page 2 of 4   THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Scanned with CamScanner

CONFIDENTIAL                                                                                   FCA-Perrera-0000026

# ally® SMARTLEASE

| Name and address, including county | Garaging address (if different) | HENDRICK CHRYSLER DODGE JEEP |
|---|---|---|
| DAVID ANTHONY PERRERA | N/A | RAM FIAT OF CONCORD |
| CHARLOTTE NC 28269 | Principal driver (if business use) | 7630 HENDRICK AUTO PLAZA NW |
| MECKLENBURG | N/A | CONCORD NC 28027 |

This is an agreement to lease a vehicle. This is not a purchase agreement. You are not buying the vehicle. By signing this lease, you agree to everything in it.

"We," "us," and "our" refer to Lessor named above and any assignee. An "assignee" is a person to whom this lease is assigned (if it is assigned).

☒ If this box is checked, Lessor will assign this lease and sell the vehicle to ALLY BANK LEASE TRUST _____ (Assignee).

☐ If this box is checked, Lessor intends not to assign this lease.

**Monthly Payment Lease.** If your payment schedule shows monthly scheduled payments (Section 2(a)), your lease is a monthly payment lease.
**Single Payment Lease.** If your payment schedule shows a single scheduled payment (Section 2(b)), your lease is a single payment lease.

| New/Used | Year | Make & Model | Body Style | Vehicle ID # | Mileage | Primary Use: Personal, unless otherwise indicated below |
|---|---|---|---|---|---|---|
| NEW | 2021 | JEEP WRANGLER 4 | 4DR 4W | 1C4JJXP61MW868340 | 12 | ☐ Commercial, Business, or Agricultural |
| Dealer Installed Options N/A | | | | | GVW (if truck) | ☐ Public Conveyance |

**1. Amount Due at Lease Signing or Delivery** (Itemized Below)*

**2(a). Monthly Scheduled Payments**
Your first monthly payment of $ 624.64 is due on 12/04/2021, followed by 47 payments of $ 624.64 due on the 4th of each month. The total of your monthly payments is $ 29982.72

**2(b). Single Scheduled Payment**
Your single payment of $ N/A is due on N/A. This is the total of your scheduled payments.

$ 12900.00

**3. Other Charges** (not part of your scheduled payment)
Disposition fee (if you do not purchase the vehicle and we do not waive the fee under Section 13) $ 395.00
$ N/A
Total $ 395.00

**4. Total of Payments** (The amount you will have paid by the end of the lease.)
$ 42653.08

**\* Itemization of Amount Due at Lease Signing or Delivery**

**5. Amount Due at Lease Signing or Delivery:**
- a. Capitalized cost reduction ... $ 11217.83
- b. First monthly payment ... $ 624.64
- c. Single scheduled payment ... $ N/A
- d. Refundable security deposit ... $ N/A
- e. Title fees ... $ N/A
- f. Registration fees ... $ 1.00
- g. Sales/use tax ... $ 357.53
- h. DEALER ADMINISTRATIVE FEE $ 699.00
- i. N/A ... $ N/A
- j. N/A ... $ N/A
- k. Total ... $ 12900.00

**6. How the Amount Due at Lease Signing or Delivery will be paid:**
- a. Net trade-in allowance ... $ N/A
- b. Rebates and noncash credits ... $ 7500.00
- c. Amount to be paid in cash ... $ 5400.00

d. Total ... $ 12900.00

**7. Your scheduled payment is determined as shown below:**
- a. Gross capitalized cost. The agreed upon value of the vehicle ($ 58790.00) and any items you pay for over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) ... $ 59971.70
- b. Capitalized cost reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost ... - $ 11217.83
- c. Adjusted capitalized cost. The amount used in calculating your base scheduled payment ... = $ 48753.87
- d. Residual value. The value of the vehicle at the end of the lease used in calculating your base scheduled payment ... - $ 35091.00
- e. Depreciation and any amortized amounts. The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term ... = $ 13662.87
- f. Rent charge. The amount charged in addition to the depreciation and any amortized amounts ... + $ 15460.17
- g. Total of base scheduled payment(s). The depreciation and any amortized amounts plus the rent charge ... = $ 29123.04
- h. Lease payments. The number of payments in your lease ... + 48
- i. Base scheduled payment ... = $ 606.73
- j. Sales/use tax (estimated) ... + $ 17.91
- k. N/A ... + $ N/A
- l. Total scheduled payment ... = $ 624.64

**Early Termination.** You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

**8. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 12000 miles per year at the rate of $ 0.20 per mile.

**9. Purchase Option at End of Lease Term.** You have an option to buy the vehicle at the end of the lease term for $ 35091.00 plus official fees and taxes.

**10. Other Important Terms.** See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, and insurance.

SEE THE OTHER PAGES OF THIS LEASE FOR OTHER IMPORTANT AGREEMENTS INCLUDING A PROHIBITION OF TRANSFER OF YOUR INTEREST.

Lease Agreement 10 AF-671-MULTISTATE-e 10/18     Page 1 of 5     Lessee's Initials: DAP / Co-Lessee's Initials: N/A

Scanned with CamScanner

CONFIDENTIAL                                                                                              FCA-Perrera-0000027

**11. Itemization of Gross Capitalized Cost:**

| | | |
|---|---|---|
| a. Agreed upon value of the vehicle | $ | 58790.00 |
| b. Ally administrative fee | + $ | 695.00 |
| c. License/registration/title fees | + $ | 94.75 |
| d. Sales tax | + $ | N/A |
| e. Other tax (describe) N/A | + $ | N/A |
| f. Optional service contract | + $ | N/A |
| g. Optional maintenance contract | + $ | 391.95 |
| h. Optional life insurance | + $ | N/A |
| i. Optional disability insurance | + $ | N/A |
| j. N/A | + $ | N/A |
| k. N/A | + $ | N/A |
| l. N/A | + $ | N/A |
| m. N/A | + $ | N/A |
| n. Gross Capitalized Cost | = $ | 59971.70 |

**12. Official Fees and Taxes.** You will pay all government license, title, registration, testing, and inspection fees for the vehicle. You will pay all taxes on the lease, payments due under the lease, or the vehicle that the government levies on you, the vehicle, or us (except our net income taxes). We may change your monthly payment if taxes change. We may bill you separately for official fees and taxes.

**Estimated Total Official Fees and Taxes You Must Pay During Lease.** $ 3817.69

The actual total of official fees and taxes may be higher or lower depending on tax rates in effect or the vehicle value when a fee or tax is assessed.

**13. Disposition Fee Waiver.** We will waive any Disposition Fee shown in Section 3 if, at the time this lease ends, you enter into a motor vehicle lease or installment sale contract that the dealer assigns to Ally.

**14. Lease Term:** 48 months.

**15. Total Allowed Mileage.** The total mileage allowed on the odometer at lease end is 48012 miles.

**Extra Miles.** The total allowed mileage includes N/A extra miles that you are buying at $ N/A per mile. If this lease ends on or after the start of the next-to-last monthly period, we will give you a credit for each unused extra mile you bought. **There will be no credit if the lease ends earlier, you buy the vehicle, or the vehicle is a total loss.**

**16. Required Vehicle Insurance Information.** You affirm that liability and physical damage policies that meet our requirements (see Section 22) are in force on the date of this lease as follows:

Insurance company name: PROGRESSIVE
Insurance agency name: PROGRESSIVE DIRECT
Agency address: PO BOX 31260 TAMPA FL 33631
Agency phone no.: (800)776-4737
Agent's name:
Policy no.: 903491604
Deductibles: Collision $ 500.00 Comprehensive $ 500.00

**17. WARRANTY AND EXCLUSION OF WARRANTY.** You have the benefit of the standard manufacturer's warranty unless this box is checked. ☐

☐ If this box is checked, you have the benefit of the following warranty:
N/A

Warranty papers that are separate from this lease state any coverage limits. The law gives you a warranty that the vehicle conforms to the description in this lease. **THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE.**

**Unless Lessor makes a written warranty or enters into a service contract within 90 days from the date of this lease, LESSOR MAKES NO IMPLIED WARRANTY OF MERCHANTABILITY, AND THERE IS NO IMPLIED WARRANTY THAT THE VEHICLE IS FIT FOR A PARTICULAR PURPOSE. If Lessor makes a written warranty or enters into a service contract within 90 days from the date of this lease, then any implied warranty of merchantability and any warranty that the vehicle is fit for a particular purpose are limited in duration to the longer of the term of the written warranty or the term of the service contract.**

**18. Optional Insurance, Service Contracts, and Maintenance Agreements. We do not require any of the insurance, products, or services listed in this section.** Your decision to buy them or not buy them is not a factor in our decision to approve this lease. We will try to get any optional insurance coverage(s) that you initial below. A notice you receive when you sign this lease describes the coverage(s) in greater detail. Life insurance and disability insurance may not cover taxes and other amounts due besides the base monthly payment.

| Optional Insurance | Coverage | Charge or Premium | Provider | By initialing below, you indicate you want the insurance |
|---|---|---|---|---|
| Life Insurance (Monthly Payment Lease Only) | ___ Lessee ___ Co-Lessee<br>Coverage is for lease term<br>Coverage limit $ N/A | $ N/A | N/A | Lessee/Co-Lessee initials<br>N/A / N/A |
| Disability Insurance (Monthly Payment Lease Only) | Lessee<br>Coverage is for lease term<br>Monthly Coverage limit $ N/A | $ N/A | N/A | Lessee/Co-Lessee initials<br>N/A / N/A |
| N/A | N/A Months N/A Miles<br>Coverage limit $ N/A | $ N/A | N/A | Lessee/Co-Lessee initials<br>N/A / N/A |

| Other Optional Product or Service | Term |
|---|---|
| OIL CHANGE PROGRAM (PREM) - BE | N/A Months, 30000 Miles |
| N/A | N/A Months, N/A Miles |

COPY

Lease Agreement 10 AF-671-MULTISTATE-e 10/18 Page 2 of 5 Lessee's Initials: ____ / Co-Lessee's Initials: N/A

Scanned with CamScanner

CONFIDENTIAL FCA-Perrera-0000028

**19. Excess Mileage Charge.** See Section 8 for the charge per excess mile and Section 15 for the total allowed mileage. If the lease ends before the start of the last monthly period and the vehicle is not a total loss, any Early Excess Mileage and Wear Charge (Section 35(c)) will not exceed the Residual Value (Section 7(d)) minus the Realized Value (Section 35(b)). If the vehicle is a total loss before the scheduled lease end date, any excess mileage charge will not exceed the applicable limitation specified in Section 38 (Monthly Payment Lease) or Section 39 (Single Payment Lease). There is no excess mileage charge if you buy the vehicle.

**20. Late Charge.** If we do not receive a full monthly payment within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.

**21. Charge for Fines and Other Items.** You will pay promptly any fine, parking ticket, toll charge, toll penalty charge, moving violation fine, or similar charge relating to the vehicle. If you do not, we may pay it. Each time we pay any such fine or charge, you will pay us the amount we pay plus $10. If we pay to remove a lien we did not agree to, you will pay us the amount we pay.

**22. Required Vehicle Insurance.** You must insure the vehicle through liability and physical damage policies acceptable to us. The policies must not exclude or restrict coverage if you were to drive the vehicle, or when the driver is someone you allow to drive the vehicle or who is likely to drive the vehicle. The policies must show any additional insureds and loss payees that we require. You must give us proof of insurance when we ask. **We require no other insurance.**

Liability insurance must (a) cover the state specific minimums shown in the table below, or (b) have a combined single limit of at least $250,000 for bodily injuries and property damage for any one accident.

| State | Bodily | Property | State | Bodily | Property |
|---|---|---|---|---|---|
| AZ, DE, NV | 15,000 | 30,000 | 10,000 | UT | 25,000 | 65,000 | 15,000 |
| DC, NM | 25,000 | 50,000 | 10,000 | MN | 30,000 | 60,000 | 10,000 |
| TN | 25,000 | 50,000 | 15,000 | NC | 30,000 | 60,000 | 25,000 |
| MT, VA | 25,000 | 50,000 | 20,000 | AK | 50,000 | 100,000 | 25,000 |
| GA, KY, ND, OH, SD | 25,000 | 50,000 | 25,000 | | | | |

For trucks of 10,000 lbs. GVW or more and public conveyance vehicles, liability insurance must instead (a) provide primary coverage of at least $50,000 for property damage, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries for any one accident, and umbrella coverage of $1,000,000 or (b) have a combined single limit of at least $1,000,000 for bodily injuries and property damage for any one accident.

Physical damage insurance must be for the full value of the vehicle with deductibles of no more than $1,000 for collision and upset loss and $1,000 for comprehensive fire and theft loss.

If you move to a new state, we will require coverage amounts in keeping with our requirements for the new state. We now estimate that those amounts will be the same as those in this lease, but they may be higher.

**23. Use.** You will **not**:
— Use the vehicle illegally, improperly, or for hire.
— Use the vehicle in a way that causes the insurance coverage on the vehicle to be ineffective.
— Remove the vehicle from the United States, except for trips to Canada of under 60 days.
— Move the vehicle to another state for more than 30 days without telling us.
— Change the vehicle without our written consent.
— Replace parts, accessories, or tires with rented or leased items.
— Expose the vehicle to seizure, confiscation, forfeiture, or other involuntary transfer.
— Allow a lien to be placed on the vehicle unless we agree.
You will not let anyone else do any of these things.

**24. Maintenance, Repairs, Operating Expenses, and Damage.** You will maintain and repair the vehicle to keep it in good condition. Replacement sheet metal must be new original equipment manufacturer parts. Other replacement parts must be original equipment manufacturer parts or parts of equal quality and design. (If insurance will pay for repairs, ask your insurance company to specify original equipment manufacturer sheet metal.) You will pay all maintenance, repair, and operating expenses, including gas and oil. If the odometer stops working, you must fix it immediately. You will service the vehicle as the manufacturer recommends. You will follow the manufacturer's instructions in any recall. If you don't do these things, we may do them. You will owe us our cost if we do. We may inspect the vehicle at any reasonable time and place.

When you take possession of the vehicle, you take on the risks of loss of the vehicle and of damage to it. If the vehicle is damaged, stolen, or destroyed and money becomes available from insurance, a judgment, a settlement, or the like, we will treat the money as an insurance settlement. We and/or Vehicle Asset Universal Leasing Trust will be entitled to this money. If the lease ends in connection with our receipt of the money, we will treat any money we do not use to repair the vehicle as sale proceeds.

**25. Excess Wear.** Excess wear is wear that is beyond the minor wear reasonably expected to result from ordinary, everyday use, assuming that you use the vehicle as this lease permits (see Section 23) and maintain it as this lease requires (see Section 24). Excess wear includes: (a) glass that is damaged, engraved, or that you tinted; (b) a damaged or corroded body, trim, frame, crossmember, suspension, engine, powertrain, or other mechanical part; (c) damaged paint; (d) a torn, damaged, or stained interior or trunkliner; (e) sheet metal that is not original equipment sheet metal; (f) missing equipment or parts that were in or on the vehicle when delivered and not replaced with equipment or parts of equal quality and design (including a missing wheel, wheel cover, jack, or wheel wrench); (g) a tire (including spare) that is unsafe, is not the size and type the manufacturer recommends, is recapped or a snow tire, or has less than 1/8 inch of tread left at the shallowest point; (h) a damaged or worn brake that does not meet government safety standards; (i) oil leaks or low oil pressure; (j) a malfunctioning electrical system, battery, or lights; (k) holes that you drilled in the vehicle; (l) any change to the vehicle that damages the vehicle or compromises its structural integrity; (m) any other condition that makes the vehicle run in a noisy, rough, improper, unsafe, or unlawful way; and (n) any other damage, whether or not insurance covers it.

**26. Scheduled End.**
**Monthly Payment Lease** - This lease is scheduled to end on the date that is determined as follows: (1) Start with the date on which the second payment is due (even if that date is not an actual calendar date because the month has too few days) (See Section 2(a)); (2) Move that date forward by the number of months in the lease term (Section 14), minus one month; and (3) Subtract one day. If the resulting date is not an actual calendar date (because the month has too few days), the scheduled lease end date is the last actual date in that month minus one day.

**Single Payment Lease** - This lease is scheduled to end on the date that is determined as follows: (1) Start with the date of the lease; (2) Move that date forward by the number of months in the lease term (Section 14); and (3) Subtract one day. If the resulting date is not an actual calendar date (because the month has too few days), the scheduled lease end date is the last actual date in that month minus one day.

**27. Lease End Daily Extension.** At scheduled lease end, if you keep the vehicle and do not buy it at that time, you elect to extend the lease. You will pay a daily extension charge beginning on the eighth day after the scheduled lease end date and ending when you return the vehicle. The charge per day is the greater of: (1) 0.0017 times the Residual Value (Section 7(d)), or (2) $25. Unless we agree to a longer extension, you may not extend the lease for more than 30 days. We may set a shorter limit. During the daily extension period, you agree to comply with the terms of this lease, other than terms that apply to monthly payments and early end. The total allowed mileage will not increase.

**28. Early End.** You may end this lease anytime. We may end this lease if you are in default or if the vehicle is a total loss.

**29. Default.** <u>You will be in default if any of these things happens:</u>
— You do not pay on time.
— You made a material misrepresentation when you applied for this lease.
— You start a bankruptcy, receivership, or insolvency proceeding or one is started against you or your property.
— <u>You break any other agreements in this lease.</u>
— You do anything the law says is a default.
If you are in default, we may end this lease and exercise our rights upon default (see Section 37).

**30. Vehicle Return.** Unless you buy the vehicle, you will return the vehicle (including any dealer-installed options you do not buy outright) at lease end to any reasonable place we tell you. After you return the vehicle, you will call us promptly and tell us where you returned the vehicle.

**31. Option to Buy the Vehicle.** You have an option to buy the vehicle. The price to buy the vehicle on or after the start of the last monthly period is disclosed in Section 9. The purchase option price disclosed in Section 9 is the price for which we would sell the vehicle to you after the start of the last monthly period.

If this is a monthly payment lease, the price to buy the vehicle before the start of the last monthly period is: (1) the price to buy the vehicle disclosed in Section 9, plus (2) the base monthly payment times the number of payments not yet due, minus (3) any unearned rent charge figured by the Actuarial Method (see Section 41) based on the number of full monthly periods between early end and scheduled end.

If this is a single payment lease, the price to buy the vehicle before the start of the last monthly period is: (1) the price to buy the vehicle disclosed in Section 9, plus (2) the Remaining Prepaid Depreciation (Section 36(b)). If this is a single payment lease and you buy the vehicle before the start of the last monthly period, we will give you a credit for (1) the Remaining Prepaid Depreciation (Section 36(b)), plus (2) any unearned rent charge figured by the Actuarial Method (see Section 41) based on the number of full monthly periods between early end and scheduled end.

Regardless of when you buy the vehicle, you must also pay any related official fees and taxes, plus any amounts due because you broke agreements in this lease.

**32. Odometer Disclosure.** Federal law requires you to tell us the vehicle's mileage in connection with a transfer of vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.

33. What You Owe if You End the Vehicle. If you have paid us the amount you must pay us to end under Section 34 and kept your agreements, you will owe us nothing more.

**34. What You Owe at Scheduled End, or If You End This Lease On or After the Start of the Last Monthly Period, and You Do Not Buy the Vehicle.** You will owe us: (1) any Disposition Fee shown in Section 3 (unless waived; see Section 13), (2) any excess mileage charge (Sections 8, 15, and 19); (3) our estimated or actual cost of repairing excess wear (we do not have to make repairs); (4) any lease end daily extension charge (Section 27); and (5) any additional amounts due under Section 40. We will give you any credits due under Section 40. However, if the vehicle is a total loss before the scheduled lease end date, you will owe us the amount described in Section 38 (Monthly Payment Lease) or Section 39 (Single Payment Lease).

**35. What You Owe If You End This Lease Before the Start of the Last Monthly Period, and You Do Not Buy the Vehicle - Monthly Payment Lease.**
**(a) What You Owe:** You will owe us an Early End Charge as follows:
  The base monthly payment times the number of payments not yet due.
  - Any unearned rent charge figured by the Actuarial Method (see Section 41), based on the number of full monthly periods between early end and scheduled end
  - Any Surplus (see definition in this section) on the vehicle sale
  = The total. If this total is less than zero, we will not give you a refund or credit.

If there is no Surplus, you will also owe us any Early Excess Mileage and Wear Charge (see definition in this section).

You will also owe us: (1) any Disposition Fee shown in Section 3 (unless waived; see Section 13); and (2) any additional amounts due under Section 40. We will give you any credits due under Section 40.

**(b) Definition of "Realized Value" and "Surplus":** We will sell the vehicle at wholesale. We will use the sale price of the vehicle as its Realized Value, unless you get an independent appraisal of the wholesale value of the vehicle that could be realized at sale (see below in this section). If you get such an appraisal, we will use the appraised value of the vehicle as its Realized Value. If the Realized Value exceeds Residual Value (Section 7(d)), the excess is the Surplus. If the Realized Value is the same as or less than Residual Value, there is no Surplus.

**Your Right to Obtain an Independent Appraisal of the Vehicle's Wholesale Value.** You may get a professional appraisal of the wholesale value of the vehicle that could be realized at sale. The appraiser must be an independent third party. You and we must agree on the appraiser. You must pay for the appraisal and get it within a reasonable time after lease end. The appraised value will then be used as the Realized Value.

**(c) Definition of "Early Excess Mileage and Wear Charge":** Our estimated or actual cost of any repairs the vehicle needs because of excess wear (we do not have to make repairs), plus any excess mileage charge (Sections 8, 15, and 19). This charge will not exceed the Residual Value (Section 7(d)) of the vehicle minus its Realized Value (Section 35(b)).

**36. What You Owe If You End This Lease Before the Start of the Last Monthly Period, and You Do Not Buy the Vehicle - Single Payment Lease.**
**(a) What You Owe:** The single scheduled payment due at lease signing prepays the rent charge, depreciation, and any amortized amounts.
We will give you a credit for any unearned rent charge, figured by the Actuarial Method (see Section 41) based on the number of full monthly periods between early end and scheduled end.

We will give you a credit for any Surplus (see Section 35(b)), up to the amount of the Remaining Prepaid Depreciation (see definition in this section). If the vehicle's Realized Value (Section 35(b)) is less than its Residual Value, you will also owe us any Early Excess Mileage and Wear Charge (Section 35(c)).

You will also owe us: (1) any Disposition Fee shown in Section 3 (unless waived, see Section 13); and (2) any additional amounts due under Section 40. We will give you any credits due under Section 40.

If the sum of the credits exceeds the sum of the amounts due, we will refund the difference to you. If the sum of the amounts due exceeds the sum of the credits, you will owe us the difference.

**(b) Definition of "Remaining Prepaid Depreciation":** The Remaining Prepaid Depreciation is:
  The base single scheduled payment
  ÷ The number of months in the lease
  x The number of full monthly periods between early end and the scheduled lease end date
  - The unearned rent charge credit

**37. Our Rights Upon Default (Including What You Owe Upon Default).** If you are in default, we may:
— End this lease and require you to pay the amount you would have owed: (1) under Section 35 (Monthly Payment Lease) or Section 36 (Single Payment Lease) if you had ended the lease before the start of the last monthly period; or (2) under Section 34 if you had ended the lease on or after the start of the last monthly period.
— Take the vehicle from you without demand. If the law permits, we may go on your property to take the vehicle. If the vehicle has an electronic locating device, we may use the device to find the vehicle.
— Sue you for damages and to get the vehicle back.
— Pursue any other remedy the law gives us.

We will exercise our rights without breach of the peace, at reasonable times and places, in a reasonable way, as the law permits. We may take and store any personal items that are in the vehicle. If you do not ask for these items back, we may dispose of them as the law allows. You will pay our reasonable expenses of taking these actions as the law allows. These expenses may include expenses of taking and storing the vehicle, attorney's fees, collection costs, and court costs.

**38. Total Loss Before the Scheduled Lease End Date - Monthly Payment Lease.**
**(a) Total Loss With a Settlement Under the Required Insurance Coverage:** If the vehicle is a total loss before the scheduled lease end date, and we get an insurance settlement under a policy that complies with our requirements (Section 22), you have gap protection.

If the money we get from your insurance is more than the Unamortized Capitalized Cost (see definition in this section), we will not give you a credit for any excess.

If the money we get from your insurance is less than the Unamortized Capitalized Cost (see definition in this section), you will owe the difference up to the amount of your insurance deductible. If the difference is more than your insurance deductible, you will also owe an excess mileage charge (Sections 8, 15, and 19), up to the amount by which the difference exceeds your deductible. We will figure the excess mileage charge as if the lease had ended as scheduled. There will be no credit for unused extra miles.

You will also owe us any additional amounts due under Section 40. We will give you any credits due under Section 40.

**(b) Total Loss Without a Settlement Under the Required Insurance Coverage:** There is no gap protection if the vehicle is a total loss before the scheduled lease end date and: (1) we do not get an insurance settlement; or (2) we get an insurance settlement under a policy that does not comply with our requirements (see Section 22). You will owe us: (1) the Unamortized Capitalized Cost (see definition in this section); minus (2) any money we get from your insurance; minus (3) if the vehicle is returned to us, its Realized Value (Section 35(b)). If the vehicle is not returned to us, the Realized Value is zero, and you will not have an independent appraisal right (Section 35(b)). If any money we get from your insurance plus the realized value exceeds the Unamortized Capitalized Cost, we will not give you a credit for any excess.

You will also owe us any additional amounts due under Section 40, plus, if the vehicle is returned to us, any Disposition Fee shown in Section 3 (unless waived; see Section 13). We will give you any credits due under Section 40.

**(c) Definition of "Unamortized Capitalized Cost":** The base monthly payment times the number of payments not yet due, minus any unearned rent charge figured by the Actuarial Method (see Section 41) based on the number of full monthly periods between early end and scheduled end, plus the Residual Value (Section 7(d)).

**39. Total Loss Before the Scheduled Lease End Date - Single Payment Lease.**
**(a) Total Loss With a Settlement Under the Required Insurance Coverage:** If the vehicle is a total loss before the scheduled lease end date, and we get an insurance settlement under a policy that complies with our requirements (Section 22), you have gap protection.

We will give you a credit for any unearned rent charge, figured by the Actuarial Method (see Section 41) based on the number of full monthly periods between early end and scheduled end.

We will give you a credit for the Remaining Prepaid Depreciation (Section 36(b)).

If the money we get from your insurance is more than the sum of the Residual Value (Section 7(d)) plus the Remaining Prepaid Depreciation (Section 36(b)), we will not give you a credit for any excess.

If the money we get from your insurance is less than the sum of the Residual Value (Section 7(d)) plus the Remaining Prepaid Depreciation (Section 36(b)), you will owe the difference up to the amount of your insurance deductible. If the difference is more than your insurance deductible, you will also owe an excess mileage charge (Sections 8, 15 and 19), up to the amount by which the difference exceeds your deductible. We will figure the excess mileage charge as if the lease had ended as scheduled. There will be no credit for unused extra miles.

You will also owe us any additional amounts due under Section 40. We will give you any credits due under Section 40.

If the sum of the credits exceeds the sum of the amounts due, we will refund the difference to you. If the sum of the amounts due exceeds the sum of the credits, you will owe us the difference.

**(b) Total Loss Without a Settlement Under the Required Insurance Coverage:** There is no gap protection if the vehicle is a total loss before the scheduled lease end date and: (1) we do not get an insurance settlement; or (2) we get an insurance settlement under a policy that does not comply with our requirements (see Section 22). You will owe us: (1) the Residual Value (Section 7(d)); minus (2) any money we get from your insurance; minus (3) if the vehicle is returned to us, its Realized Value (Section 35(b)). If the vehicle is not returned to us, the Realized Value is zero, and you will not have an independent appraisal right (Section 35(b)). If any money we get from your insurance, plus the Realized Value exceeds the Residual Value, we will give you a credit for the excess, up to the amount of the Remaining Prepaid Depreciation (Section 36(b)). We will give you a credit for any unearned rent charge, figured by the Actuarial Method (see Section 41) based on the number of full monthly periods between early end and scheduled end.

You will also owe us any additional amounts due under Section 40, plus, if the vehicle is returned to us, any Disposition Fee shown in Section 3 (unless waived; see Section 13). We will give you any credits due under Section 40.

If the sum of the credits exceeds the sum of the amounts due, we will refund the difference to you. If the sum of the amounts due exceeds the sum of the credits, you will owe us the difference.

Lease Agreement 10 AF-671-MULTISTATE-e 10/18        Page 4 of 5        Lessee's Initials: _____ / Co-Lessee's Initials: N/A

Scanned with CamScanner

CONFIDENTIAL                                                                                                          FCA-Perrera-0000030

**40. Additional Credits and Amounts Due.** Regardless of how the lease ends, you will owe us any unpaid fees and taxes, including any tax on what you owe because this lease ends early, plus any amounts due because you broke agreements in this lease. We may cancel any optional insurance or service, maintenance, or other contracts that we financed for you. We will give you a credit for any amount we get from cancellations. If the lease ends on or after the start of the next-to-last monthly period and you do not buy the vehicle, we will give you a credit for any unused extra miles, unless the vehicle is a total loss (see Section 15).

**41. Actuarial Method of Figuring the Unearned Rent Charge.** We will use the Actuarial Method to figure the unearned rent charge on a monthly basis. We will treat the rent charge for each monthly period as fully earned on the period's first day. If this is a monthly payment lease, we will treat each monthly payment that you made as if we received it on its due date. We will give you a written explanation of the Actuarial Method upon request.

**42. Security Deposit.** If you paid a security deposit, we will use it at lease end to pay anything you owe under this lease and do not pay. We will not pay you interest on the security deposit. We will not add to the security deposit any proceeds, money, or funds we receive from the security deposit. After lease end, we will give back any part of the security deposit that remains.

**43. Assignment By Lessor.** If this lease is assigned, the assignee may designate Vehicle Asset Universal Leasing Trust, or its trustee, as agent to hold title for the benefit of the assignee on the vehicle's certificate of title and/or registration.

Any sale and assignment will not be considered to change materially your duties, burden, or risk under this lease. Neither the assignee nor Vehicle Asset Universal Leasing Trust will have to make any repairs to the vehicle, get any insurance, or perform any service Lessor has agreed to perform under this lease. You will look only to Lessor for these services.

If we assign this lease, you will not receive notice of assignment.

**44. PROHIBITION OF TRANSFER OF YOUR INTEREST.** YOU WILL NOT SUBLEASE OR OTHERWISE TRANSFER (EXCEPT TO YOUR ESTATE) ANY RIGHT OR INTEREST YOU HAVE UNDER THIS LEASE OR IN THE VEHICLE WITHOUT OUR PRIOR WRITTEN CONSENT.

**45. Indemnity.** You will protect us from all losses, damages, injuries, claims, demands, and expenses arising out of the condition, maintenance, use, or operation of the vehicle. You agree to indemnify, and hold harmless, us and our assigns from all such losses, damages, injuries, claims, demands, and expenses.

**46. Servicing and Collection Contacts.** We may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. We may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

---

**THIS IS THE ENTIRE AGREEMENT.** This lease contains the entire agreement between you and us relating to the lease of the vehicle. Any change to this lease must be in writing, and we must sign it. No oral changes are binding.

LESSEE: X _[signature]_      BY: X _____      CO-LESSEE: X N/A

We may delay or refrain from enforcing any of our rights under this lease without losing them.

**NOTICE TO LESSEE.  1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT.  2. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.**

YOU AGREE TO THE TERMS OF THIS LEASE. YOU CONFIRM THAT BEFORE YOU SIGNED THIS LEASE, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT.

YOU CONFIRM THAT YOU SIGNED THIS AGREEMENT AND RECEIVED A COPY AT CONCORD  NC   ON  12   04   2021
                                                                     (city)  (state)   (month) (day) (year)

LESSEE: X _[signature]_      BY: X _____      CO-LESSEE: X N/A

Lessor agrees to the following: (1) Lessor accepts this lease. (2) If a party is identified in this lease as the Intended assignee ("Intended Assignee"), Lessor (i) assigns all right, title, and interest in this lease to the Intended Assignee, under the terms of the Lease Plan Dealer Agreement in effect from time to time with the assignee (the "Dealer Agreement"), and (ii) assigns all right, title, and interest in the leased vehicle to the Intended Assignee, or its designee, under the terms of the Dealer Agreement. Lessor acknowledges that neither the Dealer Agreement nor this assignment renders Lessor an agent of the assignee.

HENDRICK CHRYSLER DODGE JEEP
LESSOR: RAM FIAT OF CONCORD   BY: X _[signature]_   TITLE: F/I   DATE: 12/04/2021



Lease Agreement 10 AF-671-MULTISTATE-e 10/18                        Page 5 of 5
Copyright 2018 Ally Financial. All Rights Reserved. SmartLease is a registered service mark of Ally Financial.

Scanned with CamScanner

CONFIDENTIAL                                                                                         FCA-Perrera-0000031

## ADDITIONAL TERMS AND CONDITIONS

1. These definitions apply to this Lease Order:

   **"Order"** or **"Lease Order"** means this Lease Order.
   **"Dealer" "we" and "us"** refer to the Dealer/Lessor named in this Order. Dealer/Lessor is not the Manufacturer's agent and is not authorized to represent the Manufacturer as such.
   **"Lessee" and "you"** refer to the party or parties executing this Order.
   **"Manufacturer"** means the Vehicle manufacturer. Manufacturer is not a principal in its relationship with the Dealer.
   **"Supplier"** means a supplier, other than the Dealer, of goods or services in connection with the lease.
   **"Trade-in"** is the used vehicle you intend to use as a capitalized cost reduction in connection with this Order or which is to be otherwise transferred to us.
   **"Vehicle"** is the vehicle or chassis that is the subject of this Order.

2. The Manufacturer may change the design of any vehicle, accessories, or parts at any time without notice. The Manufacturer may also make the same or any similar change to any vehicle, accessories, or parts already bought by or shipped to us or being manufactured or sold in accordance with our orders. If the Manufacturer makes such a change, we have no obligation to you to notify you or make the same or any similar change in the Vehicle or its parts either before or after we deliver the Vehicle to you. The Manufacturer may change the price of new vehicles without notice. If the Manufacturer changes the price of the new vehicle of the series and body type of the Vehicle before we deliver it to you, we may change the Vehicle price to you accordingly. If we do, you may cancel this Order and we shall return the Trade-in to you if the Trade-in remains available. You agree to pay us reasonable storage and repair charges. If the Trade-in is unavailable, we will pay you the Trade-in allowance, less a sales commission of 15% and any expense in storing, insuring, conditioning or advertising the Trade-in for sale.

3. The Trade-in will be appraised or reappraised when it is delivered to us. The appraised value will be the Trade-in allowance. If the reappraised value is lower than the amount shown in this Order, you may cancel this Order. You must exercise such right to cancel before we deliver the Vehicle to you and you surrender the Trade-in to us.

4. You must give us satisfactory evidence of title to any Trade-in upon request. You warrant any Trade-in to be your property, free and clear of all liens and encumbrances unless otherwise noted in this Order, and that the Trade-in has never had a salvage or "branded" title, been reconstructed, rebuilt, flooded or had major mechanical damage causing the reconstruction of the Trade-in. You represent that the Trade-in's mileage shown in this Order is accurate. You authorize us to rely on this representation in entering into this Order. If you provide false information about the Trade-in you agree to repurchase the Trade-in for the full allowance given to you plus all costs we incur in resolving the matter including but not limited to reconditioning costs, legal fees, court and collection costs. You authorize us to sell the Trade-in without regard to whether the contingencies related to Lease assignment are satisfied as described below.

5. Except as permitted under **Sections 2** or **3** above, if you fail to accept delivery of the Vehicle or comply with this Order, without limiting any other rights we may have, you agree to pay any expenses and losses we incur or suffer because of your failure or refusal to comply with this Order, including, without limitation, reasonable attorney's fees. We are not liable for failure to deliver or delay in delivering the Vehicle where such failure or delay is due, in whole or in part, to a cause beyond our control or without our fault or negligence.

6. The payments required to be made in connection with the transaction reflected by this Order do not include any required sales taxes, use taxes or occupational taxes (federal, state or local) unless expressly stated. You agree to pay, unless prohibited by law, any taxes imposed on or that apply to the transaction reflected by this Order, regardless of who has primary liability for the tax. If you provide us payment with a check that is dishonored or unpaid for any reason, we may charge you a $35 returned check fee.

7. You agree to sign such agreements or documents as we may reasonably require to effect the terms and conditions shown in this Order and to otherwise carry out the intent of this Order.

8. We agree to deliver the Vehicle to you on the date shown on page 1 of this Lease Order. You understand that it may take a few days for us to verify your creditworthiness and assign the lease. You agree that if we are unable to assign the lease to any one of the third party finance sources with which we regularly do business on the terms as submitted, we may cancel this Order and the lease. We will give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date of this Order if we elect to cancel. Upon receipt of such notice, you must immediately return the Vehicle to us in the same condition as when delivered, reasonable wear and tear excepted. We must give you back all consideration we received, including any Trade-in. If you do not immediately return the Vehicle, you will be liable for all expenses we incur in taking the Vehicle from you, including, as permitted by law, reasonable attorney's fees. While the Vehicle is in your possession, all terms of this Order and the lease, including those relating to use of the Vehicle, are in full force. To the extent not prohibited by law, you must pay all reasonable costs for repair of any damage to the Vehicle not covered by your insurance until the Vehicle is returned to us.

9. We may assist in submitting credit applications to third parties. We will not lend you money or finance this transaction regardless of any notation to the contrary on any document. No agent, employee or manager of ours may change this policy.

10. In the event that any of the terms and conditions of this Order <u>other than those of Section 8, above,</u> are inconsistent with the terms and conditions of any lease agreement between you and us, the term of such lease agreement applies. Each provision of this Order is severable from every other provision of this Order in determining the legal enforceability of any provision hereof.

11. **IT IS YOUR RESPONSIBILITY TO OBTAIN INSURANCE ON THE VEHICLE. We may request insurance information from you to register the Vehicle or to verify Insurance coverage. Our request for insurance information does not constitute an agreement to transfer or obtain insurance coverage on the Vehicle. By signing this Order you agree that you have obtained, or will obtain, before the Vehicle is driven by anyone, insurance on the Vehicle.**

12. You agree that we as well as any third party calling on our behalf and any assignee may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we as well as any third party calling on our behalf and any assignee may try to contact you in these and other ways at any address or phone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to provide us with current information.

LAW FORM NO. LAWNC-LOARB19_e (Rev. 10/19)
© 2019 The Reynolds and Reynolds Company   Lessee Initials    Co-Lessee Initials **N/A**   Page 3 of 4

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Scanned with CamScanner

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, lease or condition of this Vehicle, this Lease Order or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease Order) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Dealer/Lessor named on page 1 of this Lease Order is a party to the claim or dispute, in which case the hearing will be held in the federal district where this Lease Order was executed. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee in accordance with the rules and procedures of the chosen arbitration organization. If the rules of the chosen arbitration organization do not specify how fees must be allocated, we will pay the filing, administration, service or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law requires us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control.

Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover amounts you owe, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this Lease Order. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.



ILAW FORM NO. LAWNC-LOARB19_e (Rev. 10/19)
© 2019 The Reynolds and Reynolds Company     Lessee Initials     Co-Lessee Initials N/A    Page 4 of 4

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Scanned with CamScanner

CONFIDENTIAL                                                                                                         FCA-Perrera-0000033