# Exhibit Y



# MOTOR VEHICLE LEASE AGREEMENT (NEW YORK)

FINANCIAL SERVICES US

## 1. PARTIES AND VEHICLE DESCRIPTIONS
### A. LESSEE AND LESSOR

LEASE DATE: 08/22/2023

| LESSEE | CO-LESSEE | LESSOR (DEALER) |
|---|---|---|
| HEIDI M WALKER<br>VERONA NY 13478-2011 ONEIDA | RICHARD L WALKER<br>VERONA NY 13478 ONEIDA | NYE CHRYSLER DODGE JEEP RAM<br>1553 UPPER LENOX AVE<br>ONEIDA NY 13421 |

Vehicle Garaging Address:

Lessee and Co-Lessee ("you" or "your") agree to lease the leased vehicle described below, including all equipment, parts and accessories ("Vehicle") from Lessor ("we", "us" or "our") according to the terms and conditions of this Motor Vehicle Lease Agreement (New York) ("Lease"). This Lease will be assigned to SFS Leasing, Ltd or its successors and assigns ("Assignee", "we", "us" or "our"). The consumer lease disclosures included in this Lease are made on behalf of Lessor and Assignee and any administrator, servicer, beneficial owner or any other person who may be considered a "lessor" with respect to this Lease for purposes of the Federal Consumer Leasing Act only. The address for Assignee: 5757 Woodway Drive, Suite 400, Houston, Texas 77057. The administrator and servicer of this Lease is Stellantis Financial Services, Inc. SINGLE PAYMENT LEASE: ☐ (check if applicable) / SIGN AND DRIVE: ☐ (check if applicable)*
* = If the "Sign and Drive" box is checked, SFS Leasing, Ltd. will pay the first Monthly Payment described in Section 3.A. below.

### B. VEHICLE DESCRIPTIONS

(1) Leased Vehicle

| | Year | Make | Model | Body Style | Odometer Reading | Vehicle Identification Number |
|---|---|---|---|---|---|---|
| ☒ New<br>☐ Demo<br>☐ Used | 2023 | JEEP | GR CHEROKEE 4 | TRAILHAWK | 31 | 1C4RJYC65P8807564 |

Primary Vehicle Use. The Vehicle will be used primarily for personal, family or household purposes. However, if the following box is checked, the Vehicle will be used primarily for business or commercial purposes: ☐

(2) Trade-In Vehicle

| Year | Make | Model | Odometer Reading | Vehicle Identification Number |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |

## FEDERAL CONSUMER LEASING ACT DISCLOSURES

| 2. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized below)** | 3. MONTHLY PAYMENTS OR SINGLE PAYMENT | 4. OTHER CHARGES (Not part of your Monthly Payment or Single Payment) | 5. TOTAL OF PAYMENTS (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| $ 14944.00 | A. Your first Monthly Payment of $944.46 is due on 08/22/23, followed by 35 payments of $944.46 due on the 22nd of each month, beginning on 09/22/23<br>B. The total of your Monthly Payments is $34000.56.<br>C. Your Single Payment of $N/A is due on N/A. | A. Turn-In Fee: ............ $395.00 (if you do not purchase the Vehicle)<br>B. N/A $ N/A<br>C. Total ............... $ 395.00 | $ 48395.10 |

## 6. **ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

| A. Amount Due at Lease Signing or Delivery | | B. How the Amount Due at Lease Signing or Delivery will Be Paid: | |
|---|---|---|---|
| (1) Capitalized Cost Reduction | $ 13752.04 | (1) Net Trade-In Allowance | $ N/A |
| (2) Upfront Sales/Use Tax, if applicable | N/A | (2) Rebates and Noncash Credits | 14000.00 |
| (3) First Monthly Payment | 944.46 | (3) Amount to Be Paid in Cash | 944.00 |
| (4) Single Payment | N/A | (4) N/A | N/A |
| (5) Refundable Security Deposit | N/A | | |
| (6) Initial Title, Registration and License Fees | 60.00 | | |
| (7) Acquisition Fee | N/A | | |
| (8) Capitalized Cost Reduction Tax, if applicable | N/A | | |
| (9) WASTE TIRE FEE | 12.50 | | |
| (10) DELIVERY FEE | 175.00 | | |
| (11) N/A | | | |
| (12) Total | $ 14944.00 | (5) Total | $ 14944.00 |

[rest of page intentionally left blank]

Form #: SFS-L-NY-L 12/22

Initials: _____ (Lessee)/ _____ ✔ (Co-Lessee)
Page 1 of 8

## 7. YOUR MONTHLY OR SINGLE PAYMENT IS DETERMINED AS SHOWN BELOW

**A. Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ 72975.00 ) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance) ............. $ 77065.37

**B. Capitalized Cost Reduction.** The amount of any Net Trade-in Allowance, Rebate, Noncash Credit, or Cash you pay that reduces the Gross Capitalized Cost ............. - 13752.04

**C. Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment or Base Single Payment ............. = 63313.33

**D. Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment or Base Single Payment ............. - 38756.25

**E. Depreciation and Any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term ............. = 24557.08

**F. Rent Charge.** The amount charged in addition to the Depreciation and Any Amortized Amounts ............. + 9443.48

**G. Total of Base Monthly Payments or Single Payment.** The Depreciation and Any Amortized Amounts plus the Rent Charge ............. = 34000.56

**H. Lease Payments.** The number of payments in your Lease (Lease Term: 36 months) ............. = 36

**I. Base Monthly Payment or Base Single Payment** ............. = 944.46

**J. Monthly Sales/Use Tax** or Single Payment Sales/Use Tax ............. + N/A

**K.** N/A ............. + N/A

**L. Total Monthly Payment ("Monthly Payment") or Total Single Payment ("Single Payment")** ............. = $ 944.46

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

## 8. EXCESSIVE WEAR AND USE

You may be charged for excessive wear based on our standards for normal use and for excess mileage at the rate of $0.25 per mile for each mile on the odometer more than the Contract Miles, at the termination of the Lease. Contract Miles is the sum of "regular mileage" plus any additional miles purchased at Lease signing. The regular mileage is 12000 miles per year.
No rebate or credit will be paid to you if the mileage on the odometer is less than the Contract Miles.
You have the option to purchase additional miles at Lease signing. You hereby agree to purchase N/A total additional miles (not per year) at $0.20 per mile. Amounts paid for additional miles that are not used upon termination of this Lease are not refundable.

## 9. PURCHASE OPTION AT END OF LEASE TERM

☒ A. At the end of the Lease Term, you have an option to purchase the Vehicle for a Purchase Option Price of $ 38756.25 plus a Purchase Option Fee of $350 plus any official fees and taxes.

☐ B. You do not have an option to purchase the Vehicle

Other Important Terms. See all pages of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

## 10. ITEMIZATION OF GROSS CAPITALIZED COST

A. Agreed Upon Value of Vehicle ............. $ 72975.00
B. Sales/Use Tax ............. + 4040.37
C. Initial Title, Registration and License Fees ............. + 50.00
D. Outstanding Prior Credit or Lease Balance+ ............. N/A
E. Acquisition Fee ............. + N/A
F. Dealer Documentation Fee ............. + N/A
G. Optional Service Contract ............. + N/A
H. Optional Maintenance Contract ............. + N/A
I. Optional Excess Wear & Tear Plan ............. + N/A
J. Other (Describe Item) N/A ............. + N/A
K. Other (Describe Item) N/A ............. + N/A
L. Other (Describe Item) N/A ............. + N/A
M. Other (Describe Item) N/A ............. + N/A
N. Total = Gross Capitalized Cost ............. $ 77065.37

## 11. OPTIONAL PRODUCTS

You are not required to purchase any Optional Product to enter into this Lease. An Optional Product will not be provided unless you initial below and are accepted by the Optional Product Provider. By initialing below, you acknowledge receipt of a notice of the terms of the Optional Product contract, you want to obtain the Optional Product and you agree to pay the charge shown. We may retain or receive a portion of the Optional Product price.

| Optional Product | Charge of Premium | Provider | Term | By initialing below, you indicate that you elect to purchase the Optional Product |
|---|---|---|---|---|
| N/A | $ N/A | N/A | N/A | N/A (Lessee Initials) N/A (Co-Lessee Initials) |
| N/A | $ N/A | N/A | N/A | N/A (Lessee Initials) N/A (Co-Lessee Initials) |
| N/A | $ N/A | N/A | N/A | N/A (Lessee Initials) N/A (Co-Lessee Initials) |
| N/A | $ N/A | N/A | N/A | N/A (Lessee Initials) N/A (Co-Lessee Initials) |

## 12. ESTIMATED OFFICIAL FEES AND TAXES

The total estimated amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included with your Monthly Payments or Single Payment or assessed otherwise: $ 4212.87 . The actual total of official fees and taxes may be higher or lower depending on the tax rates in effect at the time the value of the Vehicle when a fee or tax is assessed, the garaging address of the Vehicle, or the requirements of the taxing jurisdiction.
THE AMOUNT INDICATED ON THIS SALES CONTRACT OR LEASE AGREEMENT FOR REGISTRATION AND TITLE FEES IS AN ESTIMATE. IN SOME INSTANCES, IT MAY EXCEED THE ACTUAL FEES DUE THE COMMISSIONER OF MOTOR VEHICLES. THE LESSOR WILL AUTOMATICALLY, AND WITHIN SIXTY DAYS OF SECURING SUCH REGISTRATION AND TITLE, REFUND ANY AMOUNT OVERPAID FOR SUCH FEES.

[rest of page intentionally left blank]

CONFIDENTIAL    FCA-Walker-0000002

## 13. WARRANTIES

If the Vehicle is new or is a demo, it is covered by the standard manufacturer's new vehicle warranty and any other express warranty identified below. If the Vehicle is used, there is no express warranty(ies) on the Vehicle unless identified below:

☐ The Vehicle is covered by the remainder of the standard manufacturer's new vehicle warranty.

☐ The Vehicle is covered by an extended warranty purchased from the manufacturer or other third-party provider.

We assign to you all rights we have under any of these warranties. You acknowledge that you have received a copy of the indicated warranties.

**WE LEASE THE VEHICLE TO YOU "AS IS". WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED AS TO THE VEHICLE OR ANY PART OR ACCESSORY THEREOF. WE MAKE NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXCEPT AS PROHIBITED BY APPLICABLE LAW.**

## 14. VEHICLE INSURANCE

A.  INSURANCE. You must provide primary insurance coverage in the amount and types indicated below at your expense during the Lease Term and until the Vehicle is returned to us: (1) liability insurance with limits of not less than $100,000 per person for bodily injury, $300,000 per accident for bodily injury and $50,000 per accident for property damage, or $750,000 combined single limit; (2) collision insurance with a deductible no higher than $1000; (3) comprehensive fire and theft insurance with a deductible no higher than $1000; and (4) uninsured motorist coverage as required by law in the state where the Vehicle is registered. **The insurance listed above is required in connection with this Lease. You have the option of providing the required insurance through an existing policy of insurance owned or controlled by you or through a policy paid for by you and obtained from any insurance company authorized to transact business in the state in which this Lease was signed. We may for reasonable cause decline the insurance provided by you. PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS LEASE.**

You agree to immediately inform us of any insurance claim, loss, or accident involving the Vehicle.

B.  ADDITIONAL INSURED AND LOSS PAYEE. The Assignee must be named as "additional insured" and "loss payee" on any insurance policy you maintain. Each such policy must provide that Assignee will be notified in writing at least 10 days before the insurance is cancelled or coverage altered and that Assignee or its representative may have full access to your insurer's claim file in the event of an insurable loss. Named Driver exclusions and limiting endorsements are not permissible. In the event of an insurance claim where the insurance proceeds exceed the amount that you owe under this Lease, we will retain the difference.

## 15. VEHICLE MAINTENANCE, USE AND TAXES

A.  VEHICLE MAINTENANCE AND OPERATING COSTS. You must maintain the Vehicle in good condition and operating order, and have all necessary and warranty repairs made at an authorized Stellantis dealer. You are responsible for all costs of maintaining, servicing and repairing the Vehicle. You agree to maintain, service and repair the Vehicle according to the manufacturer's recommendations and to ensure that the warranty, if any, remains valid. All parts installed on the Vehicle will be produced by the original equipment manufacturer. You will keep all maintenance, service and repair records. You agree to comply with all manufacturer recall notices. You agree to pay for all operating costs including, but not limited to, gas, oil, antifreeze, parking fees, towing and replacement tires.

B.  VEHICLE USE. You will not use or permit the Vehicle to be used: (1) outside the United States; (2) for any unlawful purpose; (3) to transport passengers, goods or food for hire, including driving for a transportation network or ridesharing company; (4) in any manner that would be prohibited by the insurance policy or in any manner that will cause a loss or cancellation of any applicable insurance or warranty; (5) by unauthorized or unlicensed drivers; (6) for racing or speed contests; (7) in any manner that is not in accordance with the Vehicle owner's manual; (8) in any manner that would cause the Vehicle to be subject to liens, fines, seizure or confiscation; (9) by any person who is driving the Vehicle while impaired or under the influence of alcohol, cannabis, prescription or non-prescription drugs, or illegal substances; (10) for police or security purposes; (11) as an emergency vehicle; or (12) in any way that would alter the original condition of the Vehicle without our consent.

C.  TAXES, REGISTRATION AND TITLING. You agree to pay all title, registration, license, inspection, testing, personal property taxes and other fees, taxes and charges imposed by government authorities in connection with the Vehicle, this Lease or any amounts due or payable arising from this Lease. In some states, official fees and taxes, such as personal property taxes, are assessed for a period during the Lease Term but may not be due until after the Lease ends. You agree to pay these amounts even if you receive the bill after the Lease ends, after you have paid all of your other Lease obligations or if you have purchased the Vehicle (e.g., exercised the purchase option if available). You agree to title, register and license the Vehicle in the state in which it is garaged. You must request any power of attorney required from us to title, register or license the Vehicle. You agree to pay a $20 title transfer fee each time the Vehicle is re-titled.

## 16. PURCHASE OPTIONS AND VEHICLE RETURN

A.  PURCHASE OPTION AT END OF LEASE TERM. If <u>Section 9.A.</u> is checked above, at scheduled Lease termination, you may purchase the Vehicle under the conditions and for the amount set forth in <u>Section 9</u> above.

B.  PURCHASE OPTION PRIOR TO END OF LEASE TERM. If <u>Section 9.A.</u> is checked above, at any time prior to scheduled Lease termination, you have an option to purchase the Vehicle AS-IS if you are not in default. The purchase option price will be the amount calculated under <u>Section 18(C)(2) through (7)</u>; plus the Purchase Option Fee of $350. At any time before the scheduled Lease termination, if the box at <u>Section 9.B.</u> is checked, you do not have the option to purchase the Vehicle.

C.  VEHICLE RETURN. If you do not exercise your Purchase Option (if available), you must return the Vehicle to us at an authorized Stellantis dealer at the time and place we specify at your expense. If you do not return the Vehicle to us at the time and place we specify, you must pay to us our actual costs to return the Vehicle to the place we specify. You must cooperate in the completion of a condition report prepared by someone of our choosing at the time you return the Vehicle. You must obtain our consent to use the Vehicle after Lease termination. If you do not return the Vehicle within 10 days following Lease termination, you will be billed for additional Monthly Payments according to the additional Monthly Payment schedule provided by us. This charge is in addition to all other charges under this Lease. This charge does not give you any right to use the Vehicle after the Lease ends.

[rest of page intentionally left blank]

## 17. SCHEDULED END OF LEASE TERM OBLIGATIONS

**A. SCHEDULED TERMINATION.** If this Lease is not terminated early and you do not exercise your purchase option at the end of the Lease Term (if available), this Lease will terminate or end upon: (1) The end of the Lease Term; (2) Return of the Vehicle; (3) Completion of a signed odometer statement and Vehicle condition report; and (4) Payment of the following amounts: (I) The Turn-In Fee, **plus** (II) Any amounts owed for excessive wear, **plus** (III) Any amounts owed for excess mileage, **plus** (iv) All unpaid amounts that are due or past due under this Lease, **plus** (V) Any official fees and taxes related to scheduled termination. If all or any portion of the above amounts are not received by us within 30 days after the date on which we send you a bill, then you will pay to us interest upon the unpaid balance at the maximum rate permitted by law until the entire unpaid amount is paid to us.

**B. WAIVER OF TURN-IN FEE.** We will waive the Turn-In Fee at the termination of this Lease if you are not in default and if you either: (1) purchase a new Stellantis vehicle and pay cash for such purchase, (2) finance the purchase of a new Stellantis vehicle through Stellantis Financial Services, (3) lease a new Stellantis vehicle through Stellantis Financial Services, or (4) purchase the Vehicle (if the purchase option is available). The waiver of the Turn-In Fee is only available to the Lessee or Co-Lessee.

**C. EXCESSIVE WEAR.** Upon scheduled termination the Vehicle must be in the same condition as it was when delivered to you, except for reasonable wear as if the Vehicle was used for personal, family or household purposes. You must pay to us the cost of repair, whether or not such repairs are actually made, or the loss in value resulting from excessive wear, including, but not limited to: (1) Mechanical, electrical or battery defects or malfunctions; (2) Tires which are unmatched (including spare), damaged, defective or have less than 1/8-inch of tread at their shallowest points; (3) Damage from water, hail or sand; (4) Glass, lights, paint, body panels, doors, chrome, moldings, trim and grill work that are missing, broken, mis-matched, loose, chipped, scratched, pitted, cracked, dented or rusted; (5) Interior scratches, rips, stains, burns or worn-out areas on any interior part or upholstery; (6) Additions to the Vehicle that cannot be easily removed or if removed would decrease the value of the Vehicle; (7) Any missing accessories or equipment originally delivered with or installed in the Vehicle; or (8) Any other damage that makes the Vehicle unsafe or unlawful to operate.

If the odometer malfunctioned or was tampered with and you cannot prove the mileage shown on the odometer is accurate, you agree to pay the greater of: (a) fifteen percent (15%) of the Purchase Option Price; or (b) the amount we estimate the Vehicle's fair market value has been reduced by reason of additional miles not reflected on the odometer and/or the inability to determine the Vehicle's actual mileage. This sum is in addition to any other sums due per this Lease.

**D. LEASE EXTENSION.** At the Lessor's sole discretion after expiration of the original Lease Term, you may be able to extend the Lease upon receipt of Lessor's written approval. You understand that all contractual obligations will apply under any approved Lease extension and such extension period shall not exceed six (6) months in duration. In the case of such extension, additional Monthly or Single Payment terms will be specified in a written lease extension agreement between you and us.

## 18. EARLY TERMINATION

You shall not be liable for early termination if you die before the end of the Lease. The Lease will remain in effect if you die and there is a surviving lessee except as, and to the extent, required by law.

You have the right to terminate the Lease voluntarily at any time if you are in full compliance with the terms of the Lease and you satisfy your Early Termination Liability. Early termination may require you to pay a substantial charge.

**A. LESSEE'S RIGHT TO TERMINATE EARLY.** You may terminate this Lease before the end of the Lease Term if you are not in Default. If you do not exercise your purchase option (if available), the charge for such early termination is either the Early Termination Liability set forth below in Section 18(C) for a Monthly Payment Lease or Section 18(D) for a Single Payment Lease.

**B. LESSOR'S RIGHT TO TERMINATE EARLY.** We may terminate this Lease before the end of the Lease Term if you are in Default. If you do not exercise your purchase option (if available), upon such termination we shall be entitled to the Early Termination Liability under Section 18(C) or the Early Termination Liability Single Payment Lease under Section 18(D).

**C. EARLY TERMINATION LIABILITY: MONTHLY PAYMENT LEASE.** Your early termination liability for a Monthly Payment Lease is calculated as follows: (1) An Additional Early Termination Charge equal to the Turn-In Fee; **plus** (2) All unpaid amounts that are due or past due under this Lease; **plus** (3) Any official fees and taxes related to early termination; **plus** (4) All collection costs and expenses related to recovering, obtaining, storing, preparing for sale and selling the Vehicle, including reasonable attorneys' fees (for an attorney who is not a salaried employee of the holder, up to 15% of the amount due under the Lease), collection costs and court costs to the extent not prohibited by law; **plus** (5) The Residual Value; **plus** (6) The Base Monthly Payment times the number of Monthly Payments not yet due; **minus** (7) Unearned Rent Charges included in the Base Monthly Payments not yet due calculated according to the Actuarial Method (see Section 18(F)); **minus** (8) The Realized Value of the Vehicle (see Section 18(E)). In the event that the total of Sections 18(C)(1)-(7) is less than the Realized Value of the Vehicle, then a surplus will result and any surplus will be retained by us.

**D. EARLY TERMINATION LIABILITY: SINGLE PAYMENT LEASE.** Your early termination liability for a Single Payment Lease is calculated as follows: (1) An Additional Early Termination Charge equal to the Turn-In Fee; **plus** (2) Any unpaid amounts that are due or past due under this Lease; **plus** (3) Any official fees and taxes related to early termination; **plus** (4) All collection costs and expenses related to recovering, obtaining, storing, preparing for sale and selling the Vehicle, including reasonable attorneys' fees (for an attorney who is not a salaried employee of the holder, up to 15% of the amount due under the Lease), collection costs and court costs to the extent not prohibited by law; **minus** (5) a credit for any unearned Rent Charge calculated by the Actuarial Method (Section 18(F)) based on the full monthly periods between the early termination date and the scheduled termination date of this Lease; **minus** (6) a credit for any surplus of the Realized Value minus the Residual Value, up to the amount of the Remaining Prepaid Depreciation (see Section 18(G)). If the Vehicle's Realized Value is less than its Residual Value, you also will owe any excess mileage and wear charge. If the sum of Section 18(D)(5) and Section 18(D)(6) exceeds the sum of Section 18(D)(1)-(4), then we will refund the difference to you. If the sum of Section 18(D)(5) and Section 18(D)(6) is less than the sum of Section 18(D)(1)-(4), then you will owe us the difference.

**E. REALIZED VALUE.** The Realized Value will be determined in one of the following ways: (1) By a written agreement between you and us; (2) Within 10 days of early termination, you may obtain, at your own expense, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value; (3) We determine the Realized Value in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles by obtaining a wholesale cash bid for the purchase of the Vehicle or by disposing of the Vehicle in an otherwise commercially reasonable manner; (4) If the Vehicle is subject to a Total Loss, as defined in Section 19(A), the Realized Value will equal: (i) the amount of any proceeds we receive from your required insurance; plus (ii) the amount of your deductible under such insurance if that amount has been paid to us. If there are no insurance proceeds, the Realized Value will be zero; or (5) If we elect to retain ownership of the Vehicle for use or to lease to a subsequent lessee, the wholesale value of the Vehicle as specified in the "average" column of the current weekly edition of the Black Book Official Used Car Market Guide or a comparable used vehicle guide that is nationally recognized.

**F. ACTUARIAL METHOD.** We will use the Actuarial Method to figure the unearned Rent Charge on a monthly basis. We will treat the Rent Charge for each monthly period as fully earned on the period's first day. If this is a Monthly Payment Lease, we will treat each Monthly Payment that you made as if we received it on its due date. We will give you a written explanation of the Actuanal Method upon request.

**G. REMAINING PREPAID DEPRECIATION.** For purposes of a Single Payment Lease, the Remaining Prepaid Depreciation is calculated as follows: (1) The Base Single Payment, divided by (2) The number of months in the Lease, multiplied by (3) The number of full monthly periods between the early termination date and the scheduled termination date of this Lease, minus (4) The unearned Rent Charges.

[rest of page intentionally left blank]

CONFIDENTIAL   FCA-Walker-0000004

## 19. GAP WAIVER

**A. TOTAL LOSS.** A total loss to the Vehicle ("Total Loss") occurs if the Vehicle is: (1) unintentionally damaged beyond repair due to a collision or destruction as determined by us; (2) seized or confiscated by any governmental agency; or (3) is lost or stolen without recovery.

**B. GAP WAIVER.**

**EXCEPT AS PROVIDED IN SECTION 19(C), YOU ARE NOT LIABLE UPON A TOTAL LOSS OF THE VEHICLE OCCASIONED BY ITS THEFT OR PHYSICAL DAMAGE FOR THE ADDITIONAL EARLY TERMINATION CHARGE UNDER 18(C)(1) OR FOR THE RESIDUAL VALUE PLUS REMAINING MONTHLY PAYMENTS AND MINUS UNEARNED RENT AND THE REALIZED VALUE ("GAP AMOUNT").**

We also agree to waive the Gap Amount if you had in effect the Vehicle insurance required under this Lease at the time of the Total Loss, in which case you will pay to us the sum of: (1) all unpaid amounts that are due or past due under this Lease; plus (2) the amount of your insurance deductible; plus (3) any other amounts that were subtracted from the Vehicle's actual cash value to determine the insurance proceeds we received for the Total Loss. Even if the Vehicle is insured, you must continue to pay your scheduled Monthly Payments until we receive your full insurance proceeds.

**C.** This paragraph applies if the Vehicle is a Total Loss and you are in default because of your fraud, intentional wrongful act or omission, gross negligence, or the forfeiture or confiscation of the Vehicle by a governmental authority, or a failure to maintain insurance. You will pay to us the difference between the Early Termination Liability set forth in <u>Section 18(C) or Section 18(D)</u> (excluding the Realized Value in <u>Section 18(E)(4)</u>) and the insurance proceeds we receive on account of the Total Loss.

**D.** We will retain any insurance proceeds that exceed what you owe under this Lease.

## 20. DEFAULT AND REMEDIES

**A. DEFAULT.** You will be in default if any of the following occur: (1) You fail to make any Monthly Payment in full when due or fail to pay any other charge; (2) You break any promise or condition made in this Lease or in any other agreement you have with us; (3) You fail to keep required insurance in force; (4) You fail to return the Vehicle to us at the time and place we specify; (5) You give us false or misleading information on your credit application or any other document; (6) You die, are declared incompetent, become insolvent, file a bankruptcy petition, have a bankruptcy petition filed against you or dissolve or cease active business affairs, or make an assignment for the benefit of creditors; (7) The Vehicle is seized, confiscated or levied upon by governmental or legal process; (8) The Vehicle is destroyed, stolen or damaged beyond repair; (9) Your driver's license expires or is suspended, revoked, cancelled or is otherwise restricted; (10) If the Vehicle will be used in a business, dissolution of that business or cessation of the active business affairs of that business; (11) The Vehicle becomes subject to a lien; (12) You rent, sublease, assign or transfer any right to use the Vehicle, or any interest in this Lease or in the Vehicle, without our prior written consent; (13) You allow anyone who is not properly insured or anyone without a driver's license, or with an expired, suspended, revoked, cancelled or otherwise restricted driver's license to operate the Vehicle; or (14) Anything else happens that we reasonably believe in good faith endangers the Vehicle or your ability to pay.

**B. REMEDIES FOR DEFAULT.** If this Lease is in Default, we may take any one or more of the following actions, to the extent not prohibited by state law: (1) Terminate this Lease and your rights to use the Vehicle; (2) Take possession of the Vehicle without prior demand, unless otherwise required by law. We may take any personal property that is in or on the Vehicle when we take it. The personal property will be held for you for thirty (30) days (or for a longer period when required by law), but we will neither be responsible for safekeeping such property nor be required to store it, unless otherwise required by law. If you do not pick up the property within that time, we may dispose of it in any way we determine; (3) Recover all expenses related to enforcing this Lease and obtaining, storing and selling the Vehicle, including, without limitation, reasonable attorneys' fees (for an attorney who is not a salaried employee of the holder, up to 15% of the amount due under the Lease) and court costs, to the extent not prohibited by law; (4) Take any reasonable action to correct the default or to prevent our loss. You agree to reimburse us for any amounts we pay to correct or cover your Default; (5) Require you to return the Vehicle and any related records or make them available to us in a reasonable manner; (6) Make a claim for any and all insurance or service contract benefits or refunds that may be available on your default or on the termination of the Lease and apply any amount received to the amount you owe; (7) Use any remedy we have at law or in equity; (8) Exercise any right we have under the Lease; or (9) Assess interest on all outstanding amounts owing to us under this Lease at the highest rate permitted by law.

**<u>Reinstatement</u>:** Notwithstanding the foregoing, if your default consists solely of the failure to make timely Monthly Payments, you are permitted to cure your default and reinstate the Lease without losing any rights or options, by paying all past due Monthly Payments and late charges and actual and reasonable costs of repossession, storage, pickup and redelivery, within 25 days after you are sent notice of your reinstatement rights, provided, however, that this right is restricted to those that have not previously been afforded the opportunity to reinstate the Lease.

## 21. OTHER FEES; SECURITY DEPOSIT; SECURITY INTEREST

**A. LATE CHARGE; RETURNED INSTRUMENT CHARGE.** If this is a Single Payment Lease, you will not be liable for any late charges. If all or any portion of a Monthly Payment is not received within 10 days after it is due, you will pay a late charge of the lesser of 5% of the unpaid portion of the Monthly Payment or $20. If any check, draft, order, electronic payment, or other similar instrument is returned to us unpaid for any reason, including but not limited to, non-sufficient funds, you will pay a returned instrument charge that is the lesser of $15 or the maximum allowed by law, to the extent permissible under applicable law.

**B. REIMBURSEMENT.** You agree to reimburse us for any amounts we pay under this Lease that you are required to pay. Our payment of any of these amounts is at our discretion. Each time we pay a charge, toll, parking ticket, fine or other item for you that you are required to pay under this Lease you will pay a service fee of $20. We will invoice you for this service fee in addition to the amount of any such charge, tax or other item. You agree to reimburse us for any and all liabilities arising out of: (1) the condition, maintenance, use, operation or storage of the Vehicle; (2) any accident or damage to any person or property involving the Vehicle; or (3) your failure to comply with the provisions of this Lease. Your agreement to reimburse us continues beyond the termination of this Lease.

**C. REFUNDABLE SECURITY DEPOSIT.** Your Refundable Security Deposit may be used by us to pay all amounts that you fail to pay under this Lease. Upon termination of this Lease and our determination that no additional amounts may be due after Lease termination (such as personal property taxes not yet billed), we will refund to you any portion of the Refundable Security Deposit not applied to amounts you owe and fail to pay under this Lease. Your Refundable Security Deposit cannot be used as a Monthly Payment. You will not earn interest on your Refundable Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Refundable Security Deposit will neither be paid to you nor applied to reduce your obligations under this Lease.

**D. SECURITY INTEREST.** You grant us a security interest, to the extent permitted by state law, in the property listed below to secure performance of your obligations under this Lease: (1) in loss proceeds of any insurance which you maintain with respect to the Vehicle; (2) in the proceeds of any ancillary product contract purchased with this Lease; and (3) any unearned premiums or refunds of any of the foregoing.

**E. ADDITIONAL CREDITS.** You remain responsible for all amounts owed under this Lease after the conclusion of this Lease and agree to pay all amounts regardless of when we bill you. You agree and understand that credit refunds for cancelled ancillary product contracts may not yet be calculated or paid by the contract provider at the time of Lease termination and that such amounts remain subject to the provisions of this Lease.

[rest of page intentionally left blank]

CONFIDENTIAL                                                                                    FCA-Walker-0000005

## 22. COMMUNICATION WITH LESSEE; CREDIT REPORTS

A. MOBILE PHONES AND CALL RECORDING. By signing below, you consent in writing to all calls and texts for servicing and collection purposes, including calls and texts to any mobile phone number you have provided that are made using automatic-dialing devices and pre-recorded or artificial voice messages or that are in any way limited or prohibited in the absence of affirmative written consent. You also consent to electronic communications regarding your Lease account to any email address you have provided, including as part of the application process, and you consent to all communications through the Lessor's mobile applications by installing those applications. You understand and agree that, depending on your data and messaging plan, such communications could cause you to incur charges with your telecommunications provider(s). To ensure that your inquiries are handled promptly, courteously, and accurately, some of the phone calls between you and Lessor may be monitored and recorded by us. You consent to this monitoring and recording.

B. NOTICES. You hereby agree, to the fullest extent permissible by law, that all notices and other communications may be sent electronically to an email address you have provided. You further agree that any notices will be mailed to the last residential address you have provided to us in writing. Unless another address is later provided, the residential address you provided at the top of this Lease is the agreed address for mailed notices.

C. CREDIT REPORTS. You are hereby notified that we may furnish negative information to credit reporting agencies if you fail to comply with the terms of this Lease. You authorize us to obtain your credit report, your credit score and any consumer reports from any consumer reporting agency during the term of this Lease and until all amounts owed to us are paid, and to reinvestigate your credit file for use in monitoring this Lease, extending or amending this Lease, or in collecting amounts you owe to the extent permitted by law.

## 23. ODOMETER STATEMENT

Federal Law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an odometer disclosure statement, failure to return it to us or making a false statement therein may result in fines and/or imprisonment. You will be provided an odometer disclosure statement to complete prior to the termination of the Lease.

## 24. ADDITIONAL OBLIGATIONS; GOVERNING LAW

A. OWNERSHIP; TAX FILINGS. This agreement is a lease only. We are the owner of the Vehicle. You have no rights of ownership or title to the Vehicle unless you exercise your purchase option (if available). You will not allow any lien or encumbrance to attach to the Vehicle. We make no promises regarding any tax benefits to you from leasing. You will not take a position on any federal, state or local tax return or report that is inconsistent with the ownership of the Vehicle with the Lessor or Assignee. You will not claim any depreciation, amortization or tax credits that are available in connection with the Vehicle.

B. PAYMENT RESPONSIBILITY. Each person who signs this Lease as Lessee or Co-Lessee is jointly and severally liable under this Lease. Each person who signs this Lease as Lessee or Co-Lessee is fully liable for all payments, whether or not we try to collect from the other signers. We do not have to notify you that payments are not being made.

C. ASSIGNMENT. You may not assign, sell, give a security interest in, sublease or arrange an assumption of your interests or rights under this Lease or in the Vehicle without our prior written permission. This Lease and the Vehicle will be assigned to the Assignee named on the front. You must make all payments to the Assignee unless we notify you otherwise. We can assign the Lease to another party, who will have all our rights. We may provide information about you, the Vehicle or this Lease to our affiliates at any time for the purpose of offering other products, servicing this Lease or for any other reasonable business purpose.

D. POWER OF ATTORNEY. You hereby grant us an irrevocable power of authority coupled with an interest to discuss your coverage with your insurance carrier, to act on our or your behalf in endorsing checks and settlements in your name, and to act on your behalf in connection with titling and registration of the Vehicle.

E. HEIRS AND REPRESENTATIVES. This Lease will bind and benefit you, your heirs, representatives and successors and will also bind and benefit us and our successors and assigns.

F. INDEMNIFICATION. You agree that Lessor is not responsible for any losses, liability, injuries, damage, expenses or claims related to the condition, operation, use or maintenance of the Vehicle and you agree to indemnify us and our assignees, successors, agents and insurers and hold us and such parties harmless for all such losses, liability, injuries, damages, expenses and claims whatsoever.

G. ADDITIONAL DOCUMENTS. You agree to provide and execute such documents as are reasonably necessary to verify any information you have provided to us and as necessary for you and us to satisfy our respective obligations under this Lease and to exercise our rights under this Lease, including in connection with Vehicle registration, taxes, and insurance.

H. INSPECTION. You agree to allow us to inspect the Vehicle at any reasonable time and place. If we ask to inspect the Vehicle, you will tell us the location of the Vehicle. Any inspection will be solely for our benefit.

I. GOVERNING LAW. This Lease will be governed and enforced by the internal laws of the state where the Dealer is located. If any provision in this Lease is held to be unenforceable, void, illegal or otherwise against applicable law, all other provisions shall survive and remain enforceable. We do not have to repossess the Vehicle to exercise any other rights. We do not give up any of our rights by delaying or failing to exercise them on any occasion.

## 25. CONSENT TO ELECTRONIC CONTRACT, AUTHORITATIVE COPY AND PAPER ORIGINAL

You agree that this Lease may be executed in an electronic format and you consent to such execution. By your electronic execution, you affirm your intent that this Lease will be fully enforceable against you in the same manner as if you executed this Lease on paper. Upon electronic execution of this Lease, you agree that the single authoritative copy ("Authoritative Copy") is the electronic record of this Lease maintained on the record management system we designate ("System"). At our election, we may convert the Authoritative Copy into paper form. If we do so, we will (i) identify the paper copy as the original copy ("Paper Original") and (ii) designate in the System that the Authoritative Copy has been converted into paper form. If we convert the Authoritative Copy to a Paper Original, you and we agree that (a) your electronic signature on this Lease, when displayed on the Paper Original, constitutes your signature on the Paper Original as well, (b) when you electronically sign this Lease you are also signing and delivering the Paper Original, and (c) the Paper Original will thereafter be the sole document evidencing your obligations under this Lease. You agree that both the Authoritative Copy and any Paper Original will be held by us in the ordinary course of business.

[rest of page intentionally left blank]

CONFIDENTIAL

## 26. ARBITRATION

**A. BINDING ARBITRATION.**

PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS RIGHTS THAT YOU MAY OTHERWISE HAVE. IT PROVIDES FOR RESOLUTION OF DISPUTES THROUGH BINDING ARBITRATION INSTEAD OF JUDICIAL PROCEEDINGS IN A COURT OF COMPETENT JURISDICTION AND CLASS ACTIONS. ARBITRATION IS FINAL AND BINDING AND SUBJECT TO ONLY VERY LIMITED REVIEW BY A COURT.

Any disputes or claims, including those against any of our subsidiary, parent or affiliate companies and our successors and assigns, arising out of or relating to or from the relationships that likely result from this Lease including issues of interpretation, scope, validity, construction of this arbitration provision and arbitrability of any dispute or claim (whether based in contract, tort, statute, fraud, equitable relief, misrepresentation or any other legal theory including state and federal statutory claims) at the option of either you or us will be resolved exclusively by neutral binding arbitration. IN ARBITRATION, YOU AND WE GIVE UP THE RIGHT TO A TRIAL BY A COURT OR A JURY. The information that can be obtained in discovery from each other or from third persons in arbitration is generally more limited than in a lawsuit. Other rights that you and/or we would have in court may not be available in arbitration.

This arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. Binding arbitration shall be conducted and administered by the American Arbitration Association ("AAA") and shall proceed before a single arbitrator under the applicable rules of the AAA, which can be obtained at Attn: Customer Service Department, 335 Madison Ave., 10th Floor, NY, NY 10017-4605 or on the Internet at http://www.adr.org/. If AAA declines or refuses to proceed, you and the Lessor will proceed in arbitration with an alternative agreed to by the parties. The arbiter shall be an attorney or retired judge and shall be selected in accordance with the applicable AAA rules. The arbiter shall apply the governing law of the jurisdiction where you reside consistent with the FAA and shall honor any claims of privilege recognized at law. Unless the AAA's rules require otherwise, the arbitration award shall be issued without a written opinion. The arbitration hearing shall be conducted in the federal district in which you reside. The arbiter shall not have the power to award punitive or treble damages against you or us.

YOU AND WE AGREE THAT ALL FORMS OF CLASS ACTION OR CLASS ARBITRATION ARE EXPRESSLY PROHIBITED.

For claims of less than $1,000, you will be obligated to pay $50 in arbitration fees and we will pay all other arbitration costs and fees. For claims over $1,000 but under $50,000, you will be obligated to pay your share of the arbitration fees, but no more than the highest equivalent court filing fee for a state court action filed in the jurisdiction where you reside. For arbitrations in excess of $50,000, all administrative fees and expenses of arbitration will be divided equally between you and us and we will front the arbitration fees if you are unable to pay your share due to your financial condition. The fees will be equitably divided by the arbiter in his or her final decision. In all arbitrations, each party will bear the expense of its own counsel, experts, witnesses and preparation and presentation of evidence at the arbitration unless otherwise mandated by state or federal law. Nothing in this arbitration clause shall prevent you from requesting that AAA reduce or waive any of your fees or that we voluntarily pay an additional share of the fees based upon your financial condition or nature of your claim.

Notwithstanding this clause, both you and we and our successors and assignees retain the right to exercise self- help remedies and to seek provisional remedies from a court, pending final determination of the dispute by the arbiter. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

Any arbitration with respect to any disputes or claims must be brought within two years after the cause of action arises, or within the applicable statute of limitations, whichever is shorter. This limitations period does not apply to any given cause of action when the statutory limitations period for that cause of action cannot be waived, restricted, or otherwise limited by you. If any part of this arbitration clause is deemed to be invalid or otherwise unenforceable or illegal, the balance of this arbitration clause shall remain in effect and shall be construed in accordance with its terms as if the invalid or illegal provision were not contained herein.

**B. OPT-OUT OF ARBITRATION.**

You may opt out of this Arbitration provision without penalty. Opting out on time means that neither you nor we will be bound by this Arbitration provision. If you want to opt out of this Arbitration provision, you must send written notice to Stellantis Financial Services, Inc., Attn: Compliance Department, 3065 Akers Mill Rd SE, Suite 700, Atlanta, GA 30339. The opt-out notice must be in writing; an oral opt-out notice is not effective. We must receive the written opt-out notice no later than thirty-five (35) days after the Lease Date. Any opt-out notice received after that date is ineffective.

[rest of page intentionally left blank]

CONFIDENTIAL     FCA-Walker-0000007

| 27. NOTICES |
| --- |

**Additional Disclosures Required by New York Law**

**"Capitalized cost": $__77065.37__.** The sum of the Adjusted Capitalized Cost and any Capitalized Cost Reduction (this sum equals the Gross Capitalized Cost in the Federal Consumer Leasing Act Disclosures). The "capitalized cost" and the amount of the rental payment may be negotiable.

**Adjusted Capitalized Cost: $__63313.33__.** The amount which is capitalized in connection with the Lease and is used in determining the amount of your periodic payment. this amount plus the Additional Early Termination Charge will be used in determining the legal limit on your early termination liability.

**Additional Early Termination Charge: $__395.00__.** An additional amount used in determining your Early Termination Liability.

Although the 'Adjusted Capitalized Cost' is not referred to in the early termination provisions of this Lease, the 'Adjusted Capitalized Cost' and the 'Additional Early Termination Charge' may be used to compare the early termination provisions of competing lessors.

**"Estimated residual value": $__38756.25__.**

**CLASS ACTION WAIVER. YOU HEREBY WAIVE ANY RIGHTS YOU MAY HAVE TO INITIATE OR PARTICIPATE IN A CLASS ACTION RELATED TO THIS CONTRACT.**

**THIS LEASE CONTAINS THE ENTIRE AGREEMENT BETWEEN YOU AND US.** No agreements exist between you and Lessor except as set forth in this Lease. The agreement between the parties may only be modified by a writing signed by you and Lessor. No course of performance will modify the agreement between the parties or constitute a waiver of any right under this Lease.

_____/_____ ✔ Lessee/Co-Lessee Initials

**NOTICE: (1) BY SIGNING BELOW, YOU AGREE TO ALL THE PROVISIONS OF THIS LEASE. (2) YOU ACKNOWLEDGE THAT YOU HAVE READ THE ENTIRE LEASE, INCLUDING THE REVERSE SIDE. (3) YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED A COMPLETELY FILLED-IN COPY OF THIS LEASE AND OF ANY OTHER AGREEMENTS, POLICIES OR CERTIFICATES THAT YOU SIGNED OR AGREED TO PURCHASE.**

| 28. SIGNATURES |
| --- |

**A. LESSEE SIGNATURE(S).**

**NOTICE TO THE LESSEE: 1. Do not sign this Lease before you read it or if it contains any blank space. 2. You are entitled to a completely filled in copy of this Lease when you sign it.**

By signing below, you acknowledge that you have received a completely filled-in copy of this Lease.

MOTOR VEHICLE LEASE AGREEMENT

Lessee Signature X _____     Co-Lessee Signature X _____

Name: HEIDI M WALKER     Name: RICHARD L WALKER

Date: 08/22/2023     Date: 08/22/2023

**B. BUSINESS LESSEE SIGNATURE.**

**WARNING: Important consumer protections may not apply if this Lease indicates that you are leasing the Vehicle primarily for agricultural, business or commercial use**

Signature X N/A

Name: N/A     Title: N/A

Date: N/A

**C. LESSOR SIGNATURE AND ASSIGNMENT.**

The authorized signature of the Lessor below has the effect of: (1) accepting the terms and conditions of this Lease; (2) acknowledging verification of the existence of the insurance coverage required by this Lease with the Lessee's insurance agent; and assigning to SFS Leasing, Ltd or its successors and assigns all right, title and interest in and to this Lease, the proceeds of this Lease and the Vehicle according to the terms and conditions of the dealer agreement in effect at the time this assignment becomes effective.

Authorized Signature X _____

Name: BRIAN LADD     Title: BUSINESS MANAGER

Date: 08/22/2023

This Motor Vehicle Lease Agreement (New York) form is for use in New York.

Form #: SFS-L-NY-L 12/22     Initials: _____ (Lessee)✔  _____ ✔ (Co-Lessee)  Page 8 of 8