**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GARY FRISCH, *et al.,* on behalf of
himself and all those similarly
situated,

                Plaintiffs,               Case No. 24-cv-10546

v.                                 Hon. Brandy R. McMillion
                                 United States District Judge

FCA US, LLC,

                Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART/DENYING IN PART**
**DEFENDANT'S SECOND RENEWED MOTION TO COMPEL**
**ARBITRATION AND STAY PROCEEDINGS (ECF NO. 64) AND**
**DENYING DEFENDANT'S RENEWED MOTION TO COMPEL AND**
**MOTION TO STAY THE PROCEEDINGS (ECF Nos. 57, 58) AS MOOT**

Plaintiffs bring this class action suit against Defendant FCA US LLC ("FCA")

for the risks and damages associated with the battery defects in their Jeep vehicles.

*See generally* ECF No. 61.[1]  Before the Court is FCA's Second Renewed Motion to

Compel Arbitration and Stay the Proceedings Pending Arbitration (the "Second

---

[1] On June 5, 2025, this Court issued its Opinion and Order Denying Defendant's Motion to Compel Arbitration and Denying Without Prejudice Defendant's Motion To Dismiss (ECF No. 44). Pursuant to that Order, the parties conducted "a period of limited targeted discovery on remaining contract formation questions."  ECF No. 44, at PageID.6130-6131 (internal quotations and citations omitted).  Plaintiffs then filed their Third Amended Class Action Complaint ("TAC") on November 14, 2025. ECF No. 61.  As such, the TAC became the operative pleading for all matters arising thereafter, including the instant Motion.

Renewed Motion").[2]  *See generally* ECF No. 64.  The Court held a hearing on all pending motions on June 23, 2026.  *See* ECF No. 74.  Having reviewed the parties' briefing and considered the arguments made at the hearing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Compel and Stay the Proceedings (ECF No. 64).  Accordingly, the Court **DENIES AS MOOT** the Defendant's First Renewed Motion to Compel and Motion to Stay the Proceedings (ECF Nos. 57, 58).

## I.

Plaintiffs bring this class action suit against Defendant FCA US LLC ("FCA") for the risks and damages associated with the battery defects in their model years 2020–2024 Jeep Wrangler 4xe and model years 2022–2024 Jeep Grand Cherokee 4xe plug-in hybrid electric vehicles (the "Class Vehicles").  *See generally* ECF No. 61.  Plaintiffs allege that the battery defect can cause fires and explosions in the Class Vehicles and has deprived them of the benefit of their vehicles' hybrid functionality and full purchase value.  *Id.* at PageID.7168-7169 ("The[] Class Vehicles . . . bear the stigma of an unexploded bomb, causing their resale values to plummet.").

Prior to discovering the alleged defect, each Plaintiff purchased or leased a Class Vehicle from an FCA-authorized dealership.  *See* ECF No. 61, PageID.6968.

---

[2] There are two additional pending motions that the Court also resolves in the instant order, the Defendant's first Renewed Motion to Compel Plaintiffs to Arbitration (ECF No. 57) ("First Renewed Motion"), and the Defendant's Motion to Stay the Proceedings Pending Resolution of the First Renewed Motion (ECF No. 58) ("Motion to Stay").

As relevant here, the record reflects two categories of agreements that FCA contends require arbitration. First, the Class Vehicles were accompanied by written warranty booklets (the "Warranty Booklets") provided by FCA.  *See* ECF Nos. 64-43–64-47. The Warranty Booklets contain a section entitled "Voluntary Binding Arbitration Provision," which purports to govern disputes between consumers and FCA and provides a thirty-day period in which consumers may opt out of arbitration.  *Id.* Second, several Plaintiffs executed purchase or lease agreements with their respective dealerships (the "Dealership Agreements") containing arbitration provisions.  ECF Nos. 64-2–64-26.  Several of those agreements also contain language delegating threshold questions of arbitrability to an arbitrator or incorporate the rules of the American Arbitration Association ("AAA").

In its prior Opinion and Order, the Court denied FCA's Motion to Compel Arbitration, finding that FCA had failed to establish, on the record then before the Court, that Plaintiffs assented to the arbitration provision contained in the Warranty Booklets.  ECF No. 44, PageID.6116–6125.  The Court concluded that Plaintiffs' awareness of the existence of written warranties did not, by itself, establish notice of the arbitration provision contained therein.  *Id.*  The Court further noted the absence of evidence that Plaintiffs had been informed of the arbitration provision, the right to opt out, or any requirement that affirmative action be taken to reject arbitration. At the same time, the Court recognized that additional evidence might exist bearing on contract formation and assent.  Accordingly, the Court denied the motion without

prejudice and ordered limited targeted discovery regarding whether Plaintiffs had otherwise agreed to arbitrate disputes with FCA, including through dealership-related agreements, arbitration acknowledgment forms, or evidence that Plaintiffs had exercised benefits under the written warranties.

At the close of the limited discovery period, FCA filed its Renewed Motion to Compel Arbitration (ECF No. 57), which became moot upon the plaintiffs' filing of their TAC.  FCA then filed its Second Renewed Motion to Compel Arbitration and Stay the Proceedings as to certain Plaintiffs (ECF No. 64), which is now before the Court.  As to certain Plaintiffs, FCA relies upon the arbitration provision contained in the warranties.  During discovery, FCA obtained records indicating that several Plaintiffs brought their vehicles to their dealerships for warranty-covered repairs and servicing after leasing or purchasing them.  *See* ECF Nos. 64-27–64-42. The record includes both recall-related service visits and non-recall warranty repairs for various Plaintiffs.  *Id.*  FCA also produced information regarding Plaintiffs' use of other warranty-related benefits after the expiration of the Warranty Booklets' thirty-day opt-out period.  *Id.*

FCA additionally relies upon dealership purchase and lease agreements executed by various Plaintiffs.  According to FCA, those agreements contain arbitration provisions with delegation clauses that either expressly delegate gateway questions of arbitrability to an arbitrator or incorporate AAA rules that grant arbitrators authority to decide issues concerning the existence, scope, validity, and

enforceability of arbitration agreements. ECF No. 64, PageID.8807. The agreements were executed in multiple states and contain varying language governing arbitration, delegation, and the parties' entitlement to invoke those provisions under the agreement.

In addition to addressing the remaining contractual disputes regarding the Warranty Booklets and raising new issues related to the Plaintiffs' respective dealership agreements, the parties addressed Plaintiff's Notice of Supplemental Authority, which the Court will also incorporate into its analysis. *See generally* ECF Nos. 64, 67, 68, 70, 72. For the reasons set forth below, having reviewed the parties' briefs and arguments at the hearing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Second Renewed Motion (ECF No. 64), and **DENIES** the First Renewed Motion and Motion to Stay (ECF Nos. 57, 58) as **MOOT** in light of the TAC and Second Renewed Motion.

## II.

The Federal Arbitration Act ("FAA" or "the Act") governs arbitration agreements. 9 U.S.C. § 1 et seq. The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable," except when there are legal or equitable grounds "for the revocation of any contract . . . ." 9 U.S.C. § 2. The Act thus "places arbitration agreements on an equal footing with other contracts and requires courts to enforce

5

them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010) (internal citations omitted).

Parties can also "delegate threshold arbitrability questions"—such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy—to the arbiter, so long as "the parties' agreement does so by 'clear and unmistakable' evidence." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir. 2021) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)).  Notwithstanding the presence of a delegation clause, "[a] challenge to arbitration agreement formation is always in the jurisdiction of the courts." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300, (2010)).

Under the FAA, 9 U.S.C. § 4, the Court must "hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue . . . make an order directing the parties to proceed to arbitration." *Id.*  However, if the "making of the agreement" is in issue, the Court must proceed to a trial thereof unless the moving party presents evidence from which a reasonable jury could find that a contract exists, and the non-moving party fails to present any evidence of a genuine dispute of material fact as to the validity of the arbitration agreement. *See Memmer v. United Wholesale Mortg.*, No. 23-cv-11261, 2023 WL 8818298, at *3 (E.D. Mich. Dec. 18, 2023) (citing *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir.

2002)); *In re StockX*, 19 F.4th at 881 ("To determine whether the existence of an agreement is 'in issue,' this court applies the standard for summary judgment.").

The Court applies "ordinary state-law principles that govern the formation of contracts." *In re StockX*, 19 F.4th at 881 (*quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under Michigan law, "[t]he party seeking to enforce a contract has the burden of showing that it exists." *Hergenreder v. Bickford Senior Living Grp.*, LLC, 656 F.3d 411, 417 (6th Cir. 2011) (citing *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 504 (Mich. Ct. App. 1992)). Meaning, as the moving party, FCA must first "carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists." *In re StockX*, 19 F.4th at 881.

## III.

FCA argues that the Court must compel Plaintiffs Aiello, Carter, Frisch, Kongos, Kreb, Landes, Liscano, May, McCrary, Moore, Otto, Park, Perrera, Spackman,[3] Teger, and Vasquez (the "Warranty Plaintiffs") to arbitrate pursuant to the arbitration agreement in their warranties based on their use of warranty benefits. ECF No. 64, PageID.8818. According to FCA, the warranty contract was formed upon these Plaintiffs' purchase or lease of their vehicles, and these Plaintiffs reaffirmed their acceptance of the warranty by bringing their vehicles in for warranty

---

[3] Shortly after the parties finished briefing the Second Renewed Motion, Plaintiff Kannon Spackman voluntarily dismissed his claims against FCA, and has since been terminated from the suit. *See* ECF No. 69.

7

repairs.  *Id.* at PageID.8819-8822.  Lastly, FCA argues that the Warranty Plaintiffs are equitably estopped from refusing to arbitrate because they accepted the benefits of the contract.  *Id.* at PageID.8822.

In response, Plaintiffs contend that FCA still has not shown that the Warranty Plaintiffs entered into an agreement to arbitrate based on the Warranty Booklets for various reasons.  First, Plaintiffs assert that the Court must consider whether the parties formed an agreement to arbitrate because the arbitration agreement within the Warranty Booklets did not contain a delegation clause.  ECF No. 67, PageID.9449 (citing ECF No. 44, PageID.6114 (citing *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022)).  Second, Plaintiffs argue that FCA failed to establish that the Warranty Plaintiffs had adequate notice of the arbitration provision in the Warranty Booklet.  *Id.* at PageID.9450.  Third, that the Warranty Plaintiffs' receipt of services under their Warranty does not bind them to the terms of the Warranty Booklet's arbitration clause.  *Id.* at PageID. 9453.  And lastly, that FCA's equitable estoppel arguments fail as a matter of law, none of the Plaintiffs' claims are premised on enforcing their warranties.  *Id.* at PageID.9456.

Despite Plaintiff's attempts to revive their dispute to formation, the Court now agrees with FCA.  The record supports a finding that FCA satisfied its initial burden to provide sufficient evidence for a reasonable jury to find that a contract exists, and that the Plaintiffs failed to show that they lacked adequate notice of the arbitration

8

clause or that they did not assent to its terms through their conduct. The Court will elaborate on its reasoning below.

## A. Plaintiffs Who Availed Themselves of Warranty Benefits Must Arbitrate[4]

The Court's original analysis of this issue remains applicable insofar as Plaintiffs' knowledge of the warranty, without more, did not automatically establish notice of the arbitration agreement or assent to its terms. ECF No. 44, PageID.6116–6125. As the Court previously explained, knowledge that a written warranty exists is not the same as knowledge that the warranty contains an agreement to arbitrate disputes with FCA. *Id.*; *see also Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 418 (6th Cir. 2011) ("it is incorrect to conflate" general knowledge of a document with knowledge of the arbitration agreement contained therein).

The Court nevertheless permitted limited discovery regarding the extent to which Plaintiffs exercised their warranties because the record at the time contained no evidence that Plaintiffs had actually availed themselves of the benefits provided under the Warranty Booklets. ECF No. 44, PageID.6127-6128. The Court expressly noted that the outcome might be different if discovery revealed that certain Plaintiffs had invoked the warranties they now seek to disclaim. *Id.* In particular, the Court

---

[4] For any plaintiff against whom FCA asserts both the warranty-booklet and dealership-agreement theories to compel arbitration, the Court declines to reach the alternative theory where one independently establishes a basis to compel arbitration.

observed that evidence that Plaintiffs exercised the warranties could support a finding that they manifested assent to the contractual framework as a whole. *Id.*

Discovery ultimately revealed that this is precisely what occurred for several Plaintiffs. FCA has now produced evidence demonstrating that the Warranty Plaintiffs sought and received warranty-covered repairs and services after acquiring their vehicles. ECF Nos. 64-27–64-42. Unlike the record before the Court at the time of the original motion, the present record establishes that these Plaintiffs affirmatively invoked the benefits provided under the Warranty Booklets and accepted free repairs pursuant to their terms.

Michigan courts have long recognized that a party may manifest assent to contractual terms through conduct. *See Guelff v. Mercy Health Servs.*, No. 200040, 1999 WL 33444156, at *2 (Mich. Ct. App. May 25, 1999) (finding assent where the plaintiff "availed herself of many of the benefit provisions contained" in the agreement). Indeed, the Sixth Circuit specifically distinguished *Guelff* in *Hergenreder* because there was no evidence that the plaintiff there had "availed herself of the benefits contained" in the document housing the arbitration provision. *Hergenreder*, 656 F.3d at 420. Here, by contrast, the record now contains evidence that certain Plaintiffs did exactly that.

The Court is likewise persuaded by the reasoning of those courts holding that a party may not selectively invoke favorable provisions of a contract while repudiating unfavorable ones. *See Grundy v. FCA US LLC*, No. 20-11231, 2024 WL

10

1699500, at *4 (E.D. Mich. Feb. 29, 2024) ("When customers invoke and seek to enforce a limited warranty, as plaintiffs do here, they cannot also claim they are not bound by the terms of that warranty."); *Mathews v. REV Recreation Grp., Inc.*, 931 F.3d 619, 623 (7th Cir. 2019) ("[Plaintiffs] cannot have it both ways: relying on the contract when it works to their advantage to get repairs done and then alleging that it is unconscionable when it doesn't."). As FCA notes, "requiring a more stringent set of rules for notice of the arbitration term than for notice of any other contractual term in the warranty would violate the Federal Arbitration Act because 'defenses that apply only to arbitration' are impermissible." *See* ECF No. 68, PageID.9571 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339-40 (2011)). Here, too, the Court will not ratify Plaintiffs' attempts to use their warranties as both a sword and a shield.[5]

> *i.*      *The Warranty Plaintiffs Waived their Right to Continue Disputing Notice*

FCA argues that Plaintiffs' use of warranty-covered services provides further evidence that they assented to the Warranty Booklets and the arbitration provision

---

[5] At oral argument, Plaintiffs suggested that the thirty-day opt-out provision alters the Court's analysis because none of the relevant Plaintiffs invoked their Warranties within thirty days of purchasing their vehicles. According to Plaintiffs, because they did not use their Warranties until after the opt-out period expired, they only became aware of the arbitration provision after losing the opportunity to opt out and therefore could not have meaningfully assented to its terms. The Court is unpersuaded. Plaintiffs had an independent responsibility to review the terms of their Warranty Booklets before electing to invoke them. Having affirmatively sought and accepted benefits under those Warranties, Plaintiffs cannot now disclaim assent to provisions they failed to review simply because those provisions later proved unfavorable.

contained therein. ECF No. 64, PageID.8820. Plaintiffs respond that they never received adequate notice of the arbitration provision prior to the close of the 30-day opt-out window and therefore cannot be deemed to have assented to arbitration. ECF No. 67, PageID.9449-9453. The Court agrees that, absent more, the notice deficiencies identified in its prior opinion would remain fatal to FCA's formation theory. Today's holding should not be construed otherwise. However, the Court finds that those Plaintiffs who subsequently invoked warranty benefits are differently situated.

Plaintiffs emphasize that many of their initial service visits involved safety recalls. ECF No. 67, PageID.9454. The Court would be reluctant to conclude that a consumer automatically assents to arbitration merely by presenting a vehicle for recall-related repairs. The record here, however, reflects more than recall compliance alone. The Warranty Plaintiffs each sought and received warranty-covered repairs and/or rental cars for vehicle issues and maintenance unrelated to recalls. *See* ECF No. 64, PageID.8820-8822; ECF No. 64-27–64-42. By accepting those benefits, the Warranty Plaintiffs objectively manifested assent to the contractual framework governing the warranties under which those services were provided. *See Kloian v. 'Domino's Pizza LLC*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006) (acceptance occurs when a party undertakes an unequivocal act demonstrating an intent to be bound). Although these repairs occurred after expiration of the 30-day opt-out period, the Warranty Plaintiffs nonetheless

continued to invoke the benefits of the Warranty Booklets throughout the life of the agreement. The Court therefore cannot conclude that the Warranty Plaintiffs may rely upon the Warranty Booklets when doing so secures free services, while simultaneously disavowing those same agreements when arbitration is sought.

Accordingly, the Court finds that those Plaintiffs who affirmatively sought and received non-recall warranty benefits waived their ability to continue challenging the arbitration provision based solely upon the notice deficiencies identified in the Court's prior opinion. For these Plaintiffs, the evidence developed during limited discovery establishes assent through conduct sufficient to compel arbitration under the Warranty Booklets based on the governing standard.

### ii.   FCA Cannot Compel Arbitration Based on the Doctrine of Equitable Estoppel as a Matter of Law

The Court reaches a different conclusion with respect to FCA's equitable estoppel theory. Although considerations underlying FCA's theory are implicated by the Court's analysis regarding notice, assent, and Plaintiffs' acceptance of warranty benefits, the equitable estoppel doctrine is not the proper vehicle for compelling arbitration in this case. Under the doctrine of equitable estoppel, a litigant may, in some circumstances, compel arbitration where the opposing party seeks to enforce rights from the same agreement containing the arbitration provision. *See AtriCure, Inc. v. Meng*, 12 F.4th 516, 527 (6th Cir. 2021) (explaining that equitable estoppel "prevents a party from picking and choosing the contract terms

13

that it alleges govern its relationship with the other litigant.").  However, Plaintiffs here do not seek to enforce the substantive terms of the express warranties themselves.  Rather, Plaintiffs assert claims for breach of implied warranty and related statutory causes of action.  ECF No. 67, PageID.9457.  As such, FCA's equitable-estoppel theory does not provide an independent basis for compelling arbitration.

In any event, the Court need not say more to resolve the parties' equitable estoppel arguments on their merits.  The 'Court's decision to compel arbitration as to the Warranty Plaintiffs rests upon the factual record developed during limited discovery.  The record presently demonstrates that the Warranty Plaintiffs affirmatively invoked and accepted benefits under their warranties, such that a reasonable jury could find that they assented to the contractual framework as a whole by their conduct, and therefore waived any grounds to continue challenging the arbitration provision solely on the basis of earlier notice deficiencies.  The Court therefore compels the Warranty Plaintiffs (Carter, Frisch, Kongos, Kreb, Landes, Liscano, May, McCrary, Moore, Otto, Park, Perrera, Teger, and Vasquez) to arbitrate their Claims against FCA.

## B.	Plaintiffs Who Signed Dealership Agreements Containing Delegation Clauses Do Not Have to Arbitrate

FCA separately argues that Plaintiffs Berns, Freedman, Johnston, Liakhova, Reid, Stueve, Wadleigh, and Walker (the "Dealership Agreement Plaintiffs") must

14

arbitrate their claims pursuant to arbitration provisions contained in agreements they executed with their respective dealerships. According to FCA, those agreements contain delegation clauses that require an arbitrator, not this Court, to determine threshold questions of arbitrability. FCA further contends that it may enforce those provisions either under the plain language of the agreements or as an intended third-party beneficiary. ECF No. 64, PageID.8816. Plaintiffs respond that the Court must decide arbitrability because FCA was not a party to the agreements containing the delegation clauses. ECF No. 67, PageID.9458. Plaintiffs further argue that the dealership agreements contain no clear and unmistakable evidence that they agreed to arbitrate threshold issues of arbitrability with FCA and that FCA cannot satisfy the requirements for third-party beneficiary status under the applicable state laws governing the various agreements. *Id.* at PageID.9463-9478.

The Court agrees with Plaintiffs. With the exception of Plaintiff Daken Fee, whose Retail Buyer Order expressly requires arbitration of disputes with FCA, the dealership agreements do not contain clear and unmistakable evidence that Plaintiffs agreed to delegate threshold questions of arbitrability to an arbitrator in disputes involving FCA.[6] The Court, therefore, retains authority to determine arbitrability and must also evaluate whether FCA may enforce the agreements as a non-signatory under the applicable state law. The record reveals that FCA failed to establish that

---

[6] Plaintiff Fee voluntarily submitted to arbitration with FCA in light of his signed Buyer Order agreeing to arbitrate with FCA. *See* ECF No. 64-6, PageID.8847; ECF No. 67, PageID.9442.

it was an intended third-party beneficiary under any of the remaining dealership agreements. Accordingly, arbitration will not be compelled as to Berns, Freedman, Johnston, Liakhova, Reid, Stueve, Wadleigh, or Walker.

> i. *There is No Clear and Unmistakable Evidence that the Dealership Agreement Plaintiffs Consented to Arbitrate with FCA*

FCA argues that the Court lacks authority to decide arbitrability as to the Dealership Agreement Plaintiffs because the arbitration provisions contained in their respective dealership agreements either expressly delegate threshold questions of arbitrability to an arbitrator or incorporate the rules of the American Arbitration Association ("AAA"), which grant arbitrators authority to determine issues concerning the existence, scope, validity, and enforceability of arbitration agreements. ECF No. 64, PageID.8806–8818. According to FCA, Sixth Circuit precedent requires the Court to refer threshold questions of arbitrability to an arbitrator even where the party seeking enforcement is a non-signatory. *Id.* Plaintiffs respond that the Court must first determine whether they ever agreed to arbitrate the arbitrability issue with FCA, because FCA was not a party to the agreements containing the delegation clauses. ECF No. 67, PageID.9458–9466. The Court agrees with Plaintiffs.

Under the current line of Sixth Circuit precedent, "[w]hether a non-signatory can enforce [an] arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant." *Swiger v. Rosette*, 989 F.3d 501, 507 (6th

16

Cir. 2021); *see also Blanton v. Domino's Pizza Franchising, LLC*, 962 F.3d 842, 845 n.1 (6th Cir. 2020). Likewise, "[w]hether a non-signatory can enforce a delegation clause is . . . a question of enforceability, not existence." *Becker v. Delek US Energy*, Inc., 39 F.4th 351, 356 (6th Cir. 2022). FCA relies heavily on this authority in arguing that the Court must compel arbitration and permit the arbitrator to decide whether FCA may invoke the Dealership Agreements' delegation provisions.

Plaintiffs contend that the Supreme Court's subsequent decision *in Coinbase, Inc. v. Suski* altered that analysis. 602 U.S. 143 (2024). The Court agrees. In *Coinbase*, the Supreme Court considered whether a user agreement containing an arbitration provision and delegation clause was superseded by a later agreement containing a forum-selection clause requiring litigation in California courts. *Id.* Although the ultimate issue before the Court concerned two allegedly conflicting agreements, the Supreme Court's analysis began with a more fundamental question: whether the parties had agreed to arbitrate the dispute. In answering that question, the Court reiterated that "arbitration is strictly a matter of consent" and instructed that "the first question in any arbitration dispute must be: What have *these parties* agreed to?" *Id.* at 148 (emphasis added).

FCA argues that *Swiger*, *Becker*, and *Blanton* require the Court to refer the question of arbitrability to an arbitrator. The Court disagrees. As an initial matter, *Blanton* expressly noted that the question of whether a non-signatory could enforce a delegation provision was not before the court. *See Blanton*, 962 F.3d at 845, n.1.

Likewise, *Swiger* and *Becker* arose in materially different procedural postures. In both cases, the Sixth Circuit emphasized deficiencies in the plaintiffs' challenges to the delegation provisions themselves. *See Swiger*, 989 F.3d at 506–07; *Becker*, 39 F.4th at 355–56. Neither decision addressed the effect of *Coinbase's* subsequent instruction that the threshold inquiry in "any arbitration dispute" is what "*these parties*" agreed to. *Coinbase*, 602 U.S. at 148 (emphasis added).

Moreover, unlike the plaintiffs in *Swiger* and *Becker*, Plaintiffs here directly challenge FCA's ability, as a non-signatory, to invoke the delegation provisions in the first instance. Thus, the Court is not confronted with a generalized attack on the arbitration agreements. Rather, it is confronted with a specific challenge to whether any agreement existed between Plaintiffs and FCA regarding the delegation of threshold questions of arbitrability. Under *Coinbase*, that question must be answered by the Court before arbitration may be compelled. During oral arguments, FCA maintained that, with respect to both the Warranty Booklets and the Dealership Agreements, no question of contract formation remains before the Court and that the only issue is enforceability. Although the Court now agrees with FCA's position as it pertains to the Warranty Booklets,[7] the Court reaches a different conclusion with respect to the Dealership Agreements. There, Plaintiffs have squarely placed

---

[7] As discussed above, the factual record developed through limited discovery demonstrates that certain Plaintiffs assented to the terms of their Warranties through their conduct by affirmatively invoking and accepting warranty benefits.

18

formation at issue by challenging whether they ever formed an agreement with FCA to arbitrate threshold questions of arbitrability.

During the hearing, FCA also directed the Court to *Frazee v. FCA US LLC*, where the court observed that "questions of formation are for the court. Questions of enforceability, by contrast, are arbitrability questions and thus may (or may not be, depending on the terms of the arbitration agreement) questions for the arbitrator." *Frazee v. FCA US LLC*, No. 2:24-cv-3448, 2026 WL 730313, at *7 (S.D. Ohio 2026). The Court does not disagree with that general proposition. But FCA's reliance on *Frazee* fails insofar as FCA treats the formation inquiry as though it drops out once FCA asserts that valid contracts exist.

That is not what *Frazee* or *Coinbase* requires. The question is not whether Plaintiffs ultimately prevail on their formation challenges before the Court may consider them. The question is whether Plaintiffs have raised a plausible challenge to the formation of the agreement to arbitrate or delegate. If they have, the Court must resolve that challenge because questions of contract formation are for courts, not arbitrators.

That conclusion is reinforced by *Coinbase*'s discussion of "the so-called severability principle." *Coinbase*, 602 U.S. at 150. Under that principle, "an arbitration provision is severable from the remainder of the contract," and "unless the challenge is to the arbitration [or delegation] clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* (citing

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006)). In *Coinbase*, the defendant argued that the Court should isolate the User Agreement's delegation provision and consider only arguments specific to that provision. The Supreme Court rejected that framing. Although the severability principle requires a party resisting arbitration to challenge the arbitration or delegation provision itself, "this rule does not require that a party challenge only the arbitration or delegation provision." *Id.* at 150–51 (emphasis in original). Rather, "where a challenge applies equally to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Id.* at 151.

That is the point here. Plaintiffs challenge both the relevant agreements and the arbitration/delegation provisions contained within them on formation grounds. As to the Warranty Booklets, Plaintiffs assert that they lacked adequate notice of the arbitration provision and therefore did not meaningfully assent to it. As to the Dealership Agreements, Plaintiffs assert that they never formed an agreement with FCA to arbitrate or delegate threshold questions of arbitrability. Those are formation challenges directed at the precise arbitration and delegation agreements FCA seeks to enforce. The Court must decide them before ordering compliance with those provisions, regardless of whether Plaintiffs ultimately prevail on the merits of those challenges.

FCA attempted to further distinguish *Coinbase* on the grounds that the issue before the Supreme Court was whether a forum-selection clause contained in a later

20

agreement superseded an earlier agreement containing a delegation clause.  ECF No. 68, PageID.9565.  The Court is unpersuaded.  While the factual posture and ultimate issues differ, the Supreme Court's reasoning applies in equal force here.   The Supreme Court made clear that before a delegation clause may divest a court of authority to determine arbitrability, the court must first determine whether the parties to that dispute agreed to arbitrate.  *Coinbase*, 602 U.S. at 148 ("[T]he first principle that underscores *all* of our arbitration decisions' is that '[a]rbitration is strictly a matter of consent. . . .[c]onsequently, the first question in *any* arbitration dispute must be: What have *these* parties agreed to?") (quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184, 139 S.Ct. 1407, 203 L.Ed.2d 636 (2019)) (citation modified) (emphasis added).  This threshold inquiry necessarily includes whether the parties agreed that a non-signatory, such as FCA, could invoke the delegation provision in the first instance.  Beginning with that question, the flaw in FCA's position becomes apparent.

Today, the Court does not suggest that Plaintiffs failed to form valid arbitration agreements altogether; to the contrary, Plaintiffs plainly agreed to arbitrate certain disputes with their respective dealerships.  The problem for FCA is narrower but dispositive: Plaintiffs never agreed to arbitrate disputes with FCA.  The express language of the Dealership Agreements, therefore, fatally undermines the foundational premise of FCA's delegation argument.  Thus, before an arbitrator may decide whether FCA can compel arbitration, the Court must first determine whether

Plaintiffs clearly and unmistakably agreed that *FCA* could invoke the delegation provisions at all. The Court finds that they did not.

The majority of the Dealership Agreements identify only the purchaser and dealership as parties to the arbitration agreement. *See*, *e.g.*, ECF No. 64-4, PageID.8842; ECF No. 64-7, PageID.8849; ECF No. 64-15, PageID.8892. Others authorize arbitration at the purchaser's or dealership's election while remaining silent regarding FCA. *See*, *e.g.*, ECF No. 64-14, PageID.8888; ECF No. 64-21, PageID.8929. Several incorporate AAA rules, but doing so merely demonstrates an agreement to delegate arbitrability disputes between the parties to the agreement. *See*, *e.g.*, ECF No. 64-21, PageID.8929. It does not, standing alone, constitute clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with a "theoretically limitless universe" of future non-signatories who might later seek to invoke the provision. *Olson v. FCA US LLC*, No. 24-6527, 2026 WL 1426411 at *6 (9th Cir. May 21, 2026).

The Court finds persuasive the Ninth Circuit's recent decision in *Olson*, which rejected materially similar arguments advanced by FCA. There, the court concluded that the relevant agreements lacked clear and unmistakable evidence that the consumer agreed to arbitrate arbitrability with FCA. *Id.* at *4. Rather, the better reading of the agreements was that they delegated threshold questions of arbitrability in disputes between the consumer and the dealership if either party elected to invoke arbitration. *Id.* at *6. This Court reaches the same conclusion.

Accordingly, the Court finds that, with the exception of Plaintiff Fee, the Dealership Agreements do not contain clear and unmistakable evidence that Plaintiffs agreed FCA could invoke the delegation provisions contained therein. The Court therefore retains authority to determine arbitrability as to the remaining Dealership Agreement Plaintiffs (Berns, Freedman, Liakhova, Reid, Stueve, Wadleigh, Walker, and Johnston).

### ii. *FCA Cannot Prove it Was an Intended Beneficiary Under the Dealership Agreements*

Although the governing state-law formulations vary somewhat, each jurisdiction represented by the Dealership Agreement Plaintiffs requires clear evidence that the contracting parties intended to confer enforceable rights upon the alleged third-party beneficiary. *See Shay v. Aldrich*, 790 N.W.2d 629, 639 (Mich. 2010); *Scarpitti v. Weborg*, 609 A.2d 147, 150–151 (Pa. 1992); *Valdez v. Cillessen & Son, Inc.*, 734 P.2d 1258, 1264 (N.M. 1987); *Mendez v. Hampton Ct. Nursing Ctr.*, LLC, 203 So.3d 146, 148 (Fla. 2016); *Huff v. FirstEnergy Corp.*, 957 N.E.2d 3, 7 (Ohio 2011); *Norton v. First Fed. Sav.*, 624 P.2d 854, 856 (Ariz. 1981); *Broadway Maint. Corp. v. Rutgers, State Univ.*, 447 A.2d 906, 909 (N.J. 1982); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208, 211–212 (N.Y. 1985). FCA has not satisfied that burden.

None of the agreements identify FCA as a party to the arbitration agreement. Nor do they expressly grant FCA the right to invoke arbitration, enforce delegation

provisions, or compel arbitration of disputes brought against it by consumers. At most, the agreements contain references to affiliates, related entities, or additional parties who may become involved in disputes arising from the dealership transaction. Such language falls well short of the clear manifestation of intent required to confer independent enforcement rights upon a non-signatory manufacturer. Accordingly, FCA cannot compel arbitration as an intended third-party beneficiary under any of the dealership agreements at issue.

Plaintiffs Berns, Johnston, Liakhova, Reid, and Stueve's agreements warrant separate discussion because FCA relies on language requiring arbitration of disputes between the purchaser and dealer, or the dealer's agents, employees, successors, or assigns, third parties, "along with any other party arising from this transaction." ECF No. 64, PageID.8816; ECF No. 64-4, PageID.8842; ECF No. 64-10, PageID.8870; ECF No. 64-14, PageID.8888; ECF No. 64-21, PageID.8929; ECF No. 64-21, PageID.8929. Plaintiffs argue that this language does not clearly confer independent enforcement rights upon FCA as a non-signatory. ECF No. 67, PageID.9472. Rather, they contend that the provisions merely contemplate multiparty disputes arising from the dealership transaction itself. *Id.* at 9473. The Court agrees. At most, the phrase "along with any other party arising from this transaction," when read in context, contemplates the inclusion of additional parties in disputes otherwise centered on the dealership relationship. These agreements do not clearly manifest an intent to confer independent contractual rights upon FCA or

24

any other non-signatory. Nor do these provisions clearly and unmistakably demonstrate that Plaintiffs agreed that FCA could independently invoke the delegation clause to compel arbitration of threshold arbitrability disputes. In fact, all of these agreements expressly state that either Plaintiffs or the Seller/Lessor may "choose," "request," or "elect" to enforce the delegation clauses, and none specify that FCA nor any other non-signatory has the power to do so. ECF No. 64, PageID.8816; ECF No. 64-4, PageID.8842; ECF No. 64-10, PageID.8870; ECF No. 64-14, PageID.8888; ECF No. 64-21, PageID.8929; ECF No. 64-21, PageID.8929. Thus, FCA may not compel the Dealership Agreement Plaintiffs (Berns, Freedman, Liakhova, Reid, Stueve, Wadleigh, Walker, and Johnston) to arbitrate their claims against them.

**C.  The Court will Stay the Proceedings in their Entirety Pending Resolution of the Compelled Plaintiffs' Arbitration Proceedings**

"Section 3 of the FAA, 9 U.S.C. § 3, mandates courts to stay proceedings pending completion of arbitration." *Prude v. McBride Rsch. Lab'ys, Inc.*, No. 07-13472, 2008 WL 360636, at *7 (E.D. Mich. Feb. 8, 2008). "[I]f the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Fazio v. Lehman Bros.*, 340 F.3d 386, 396 (6th Cir. 2003) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

25

Although the Court declines to compel arbitration as to the Dealership Agreement Plaintiffs, arbitration will proceed as to the Warranty Plaintiffs and Plaintiff Fee. The Court finds that a stay of the remaining proceedings is appropriate. Because some Plaintiffs will proceed in arbitration while others remain before the Court, and because arbitrability determinations may result in additional claims returning to this Court, a stay will promote judicial economy, conserve party resources, and avoid inconsistent procedural postures. The Court therefore stays this matter in its entirety pending completion of the compelled Plaintiffs' arbitration proceedings.

### IV.

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendant FCA US LLC's Second Renewed Motion to Compel Arbitration and Stay Proceedings (ECF No. 64) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff Daken Fee and Plaintiffs Carter, Frisch, Kongos, Kreb, Landes, Liscano, May, McCrary, Moore, Otto, Park, Perrera, Teger, and Vasquez shall submit their claims against FCA to binding arbitration in accordance with the applicable arbitration agreements.

**IT IS FURTHER ORDERED** that Defendant's Motion to Compel Arbitration is **DENIED** as to Plaintiffs Berns, Freedman, Johnston, Liakhova, Reid, Stueve, Wadleigh, and Walker.

**IT IS FURTHER ORDERED** that Defendant's Renewed Motion to Compel Arbitration (ECF No. 57) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Stay the Proceedings Pending Resolution of the Renewed Motion to Compel Arbitration (ECF No. 58) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that this action is **STAYED** in its entirety pending completion of the Warranty Plaintiffs' arbitration proceedings.

**IT IS SO ORDERED.**

Dated: June 25, 2026                          s/Brandy R. McMillion
    Detroit, Michigan                      HON. BRANDY R. MCMILLION
                                     United States District Judge